# EXHIBIT 1



## Liquidia Submits Amendment to Add PH-ILD Indication to Tentatively Approved NDA for YUTREPIA™ (treprostinil) Inhalation Powder

July 27, 2023

- No new clinical data is required to add PH-ILD indication as per FDA correspondence

- Recertified that YUTREPIA does not infringe any valid patents listed in the Orange Book for Tyvaso

- Preparing for potential launch of YUTREPIA between end of 2023 to mid-2024

MORRISVILLE, N.C., July 27, 2023 (GLOBE NEWSWIRE) -- Liquidia Corporation (NASDAQ: LQDA) announced today the submission of an amendment to the tentatively approved new drug application (NDA) for YUTREPIA™ (treprostinil) inhalation powder to add the treatment of pulmonary hypertension associated with interstitial lung disease (PH-ILD). The U.S. Food and Drug Administration (FDA) has previously confirmed in writing that the addition of the PH-ILD indication will not require any new clinical information. Upon acceptance of the amendment, the FDA will confirm the type of resubmission as Class 1 or Class 2. If approved by FDA, YUTREPIA would be indicated for the treatment of both PH-ILD and pulmonary arterial hypertension (PAH). The FDA can grant final approval of the PH-ILD indication in the YUTREPIA label after the new clinical investigation exclusivity granted to Tyvaso® expires on March 31, 2024.

Concurrent with the amendment, Liquidia recertified under 21 U.S.C. 355(b)(2)(A)(iv), also referred to as paragraph IV certification, that the patents listed for Tyvaso® in the FDA's publication of Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the Orange Book, are invalid and/or not infringed by YUTREPIA. All Orange Book patents previously asserted by United Therapeutics have already been found to be invalid or not-infringed as decided by U.S. District Court, confirmed on appeal, or by the Patent Trial and Appeal Board (PTAB), pending appeal.

Dr. Roger Jeffs, Chief Executive Officer of Liquidia, said: "We have submitted this request to ensure that patients may access YUTREPIA for both the PAH and PH-ILD indications as soon as possible. We continue to hear from the community that alternative inhaled products are needed, especially for those patients who may benefit from a low resistance dry powder inhaler that can be easily titrated to optimal therapeutic effect like YUTREPIA. This feedback reinforces our undeterred commitment to deliver on the full potential of YUTREPIA to improve patients' lives."

### About YUTREPIA™(treprostinil) inhalation powder

YUTREPIA is an investigational, inhaled dry powder formulation of treprostinil delivered through a convenient, low-resistance, palm-sized device. On November 5, 2021, the FDA issued a tentative approval for YUTREPIA, which is indicated for the treatment of pulmonary arterial hypertension (PAH) to improve exercise ability in adult patients with New York Heart Association (NYHA) Functional Class II-III symptoms. The FDA has confirmed that YUTREPIA may add the indication to treat pulmonary hypertension with interstitial lung disease (PH-ILD) without additional clinical studies. YUTREPIA was designed using Liquidia's PRINT® technology, which enables the development of drug particles that are precise and uniform in size, shape, and composition, and that are engineered for enhanced deposition in the lung following oral inhalation. Liquidia has completed INSPIRE, or Investigation of the Safety and Pharmacology of Dry Powder Inhalation of Treprostinil, an open-label, multi-center phase 3 clinical study of YUTREPIA in patients diagnosed with PAH who are naïve to inhaled treprostinil or who are transitioning from Tyvaso® (nebulized treprostinil). YUTREPIA was previously referred to as LIQ861 in investigational studies.

### About pulmonary arterial hypertension (PAH)

Pulmonary arterial hypertension (PAH) is a rare, chronic, progressive disease caused by hardening and narrowing of the pulmonary arteries that can lead to right heart failure and eventually death. Currently, an estimated 45,000 patients are diagnosed and treated in the United States. There is currently no cure for PAH, so the goals of existing treatments are to alleviate symptoms, maintain or improve functional class, delay disease progression, and improve quality of life.

### About pulmonary hypertension associated with interstitial lung disease (PH-ILD)

Pulmonary hypertension (PH) associated with interstitial lung disease (ILD) includes a diverse collection of up to 150 different pulmonary diseases, including interstitial pulmonary fibrosis, chronic hypersensitivity pneumonitis, connective tissue disease related ILD, and chronic pulmonary fibrosis with emphysema (CPFE) among others. Any level of PH in ILD patients is associated with poor 3-year survival. A current estimate of PH-ILD prevalence in the United States is greater than 60,000 patients, though population growth in many of these underlying ILD diseases is not yet known due to factors including underdiagnosis and lack of approved treatments until March 2021, when inhaled treprostinil was first approved for this indication.

### About Liquidia Corporation

Liquidia Corporation is a biopharmaceutical company focused on the development and commercialization of products in pulmonary hypertension and other applications of its PRINT® Technology. The company operates through its two wholly owned subsidiaries, Liquidia Technologies, Inc. and Liquidia PAH, LLC. Liquidia Technologies has developed YUTREPIA™ (treprostinil) inhalation powder for the treatment of pulmonary arterial hypertension (PAH) and pulmonary hypertension associated with interstitial lung disease (PH-ILD). Liquidia Technologies is also developing L606, an investigational liposomal formulation of treprostinil administered twice-daily with a short-duration next-generation nebulizer, for use in North America. Liquidia PAH provides the commercialization for pharmaceutical products to treat pulmonary disease, such as generic Treprostinil Injection. For more information, please visit www.liquidia.com.

Tyvaso® is a registered trademarks of United Therapeutics Corporation.

**Cautionary Statements Regarding Forward-Looking Statements**

This press release may include forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. All statements contained in this press release other than statements of historical facts, including statements regarding our future results of operations and financial position, our strategic and financial initiatives, our business strategy and plans and our objectives for future operations, are forward-looking statements. Such forward-looking statements, including statements regarding clinical trials, clinical studies and other clinical work (including the funding therefor, anticipated patient enrollment, safety data, study data, trial outcomes, timing or associated costs), regulatory applications and related submission contents and timelines, including the potential for final FDA approval of the NDA for YUTREPIA, the timeline or outcome related to appeals arising from our patent litigation in the U.S. District Court for the District of Delaware or *inter partes* review proceedings conducted at the PTAB, the issuance of patents by the USPTO and our ability to execute on our strategic or financial initiatives, involve significant risks and uncertainties and actual results could differ materially from those expressed or implied herein. The favorable decisions of the PTAB in the IPR for the '793 patent and of the Court and CAFC in the Hatch-Waxman litigation are not determinative of the outcome of any appeal of those decisions. The words "anticipate," "believe," "continue," "could," "estimate," "expect," "intend," "may," "plan," "potential," "predict," "project," "should," "target," "would," and similar expressions are intended to identify forward-looking statements. We have based these forward-looking statements largely on our current expectations and projections about future events and financial trends that we believe may affect our financial condition, results of operations, business strategy, short-term and long-term business operations and objectives and financial needs. These forward-looking statements are subject to a number of risks discussed in our filings with the SEC, including the impact of the coronavirus (COVID-19) outbreak on our Company and our financial condition and results of operations, as well as a number of uncertainties and assumptions. Moreover, we operate in a very competitive and rapidly changing environment and our industry has inherent risks. New risks emerge from time to time. It is not possible for our management to predict all risks, nor can we assess the impact of all factors on our business or the extent to which any factor, or combination of factors, may cause actual results to differ materially from those contained in any forward-looking statements we may make. In light of these risks, uncertainties and assumptions, the future events discussed in this press release may not occur and actual results could differ materially and adversely from those anticipated or implied in the forward-looking statements. Nothing in this press release should be regarded as a representation by any person that these goals will be achieved, and we undertake no duty to update our goals or to update or alter any forward-looking statements, whether as a result of new information, future events or otherwise.

**Contact Information**

**Media & Investors:**
Jason Adair
Chief Business Officer
919.328.4400
jason.adair@liquidia.com



Source: Liquidia Corporation

# EXHIBIT 2



**HIGHLY CONFIDENTIAL**


**Via Email and/or Fed Ex, Certified Mail Return Receipt Requested to:**

United Therapeutics Corporation
Attn: General Counsel
Attn: Shaun Snader, Vice President and Associate General Counsel (ssnader@unither.com)
1040 Spring Street
Silver Spring, MD 20910

The Corporation Trust, Incorporated
Attn: United Therapeutics Corporation
2405 York Road, Suite 201
Lutherville Timonium, MD 21093-2264

Goodwin Procter LLP, via email
Attn: William C. Jackson (WJackson@goodwinlaw.com)
1900 N Street NW
Washington, DC 20036


December 12, 2023


     **Re:**    **Notification Pursuant to § 505(b)(3)(B) of the Federal Food, Drug, & Cosmetic Act (21 U.S.C. § 355(b)(3)(B)(i)) and 21 C.F.R. §314.52)**


Dear Sir or Madam:

Liquidia Technologies, Inc. ("LIQUIDIA") hereby provides notice to the NDA holder and listed patent owner for currently available strengths of TYVASO® Treprostinil Inhalation Solution 0.6mg/ml (Product 001) Reference Listed Drug (the "RLD") pursuant to § 505(b)(3)(D) of the Federal Food, Drug and Cosmetic Act ("the Act") and §§ 314.50, 314.52 and 314.54 of Title 21 of the Code of Federal Regulations.  This letter is provided to United Therapeutics Corporation ("UTC") as the holder of New Drug Application ("NDA") No. N022387 for the RLD (as listed in FDA's *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book")) and as the assignee of U.S. Patent No. 11,826,327 (the "'327 patent").

1.   Pursuant to 21 U.S.C. § 355(b)(3)(D)(i) and 21 C.F.R. § 314.52(a), we hereby advise UTC that LIQUIDIA has submitted an amendment to its New Drug Application No. 213005 (as amended, "LIQUIDIA's NDA") and in accordance with 21 U.S.C. §§ 355(b)(2), is seeking approval to engage in the commercial manufacture, use and/or sale of LIQ861 (treprostinil)

inhalation powder (the "LIQUIDIA Product" or "LIQ861 Product") before the expiration
of the '327 patent.

2.  Pursuant to 21 USC 355(b)(3)(B)(ii), LIQUIDIA provides the required notice.

3.  The name of the proposed LIQUIDIA Product is Yutrepia.  The active ingredient is
    treprostinil (salt form treprostinil sodium).  The formulation is a dry powder of treprostinil
    sodium and novel excipients.  Yutrepia delivers a dry powder formulation of treprostinil
    through a dry powder inhaler ("DPI").  The Yutrepia DPI is the RS00 Model 8
    manufactured by Plastiape Group ("Plastiape").  The indications sought for the proposed
    LIQUIDIA Product are as follows:  "[F]or the treatment of pulmonary arterial hypertension
    (PAH) (WHO Group 1) to improve exercise ability;" and "[F]or the treatment of pulmonary
    hypertension associated with interstitial lung disease (PH-ILD; WHO Group 3) to improve
    exercise ability."

4.  LIQUIDIA purchases the treprostinil sodium powder used in the LIQ861 Product from
    third-party manufacturer Yonsung Fine Chemicals Co., LTD, operating out of South
    Korea.

5.  The LIQ861 DPI RS00 Model 8 manufactured by Plastiape was first made available in
    1976 and has been on the market in multiple pharmaceutical products for over 44 years.
    One example of a pharmaceutical product that utilized the RS00 Model 8 DPI was the
    Foradil® Aerolizer® formerly manufactured by Novartis Pharma AG, Basle, Switzerland,
    and distributed by Schering Corporation, a subsidiary of Merck & Co., Inc.

6.  The LIQUIDIA's NDA contains data from pharmacokinetic studies and Phase 3 safety
    studies to obtain approval to engage in the commercial manufacture use or sale of the
    LIQUIDIA Product, and identifies TYVASO® Treprostinil Inhalation Solution 0.6 mg/ml,
    NDA N022387, Product 001, as the RLD to support at least some of the information
    required for FDA approval.

7.  UTC, the holder of NDA N022387 for TYVASO® Treprostinil Inhalation Solution
    0.6 mg/ml, Product 001 (approved by the FDA on July 30, 2009), is listed in FDA's Orange
    Book as the NDA holder for TYVASO®.

8.  The '327 patent is listed in the Orange Book for drug product TYVASO® Treprostinil
    Inhalation Solution 0.6mg/ml.  LIQUIDIA has certified to the FDA that the '327 patent is
    invalid, unenforceable and will not be infringed by LIQUIDIA's manufacture, use or sale
    of the LIQ861 Product that is the subject of LIQUIDIA's NDA.

9.  Attached hereto, made pursuant to 21 U.S.C. § 355(b)(3)(D)(ii) and 21
    C.F.R.§ 314.52(c)(6), is a detailed statement of the present factual and legal basis of
    LIQUIDIA's belief that the claims of the '327 patent are invalid, unenforceable and/or are
    not, and will not, be infringed.  LIQUIDIA reserves its right to supplement this letter and
    the attached memorandum detailing the factual and legal basis for LIQUIDIA's assertions

HIGHLY CONFIDENTIAL

of invalidity, unenforceability and/or non-infringement of the '327 patent should subsequent investigations reveal additional grounds for asserting invalidity, unenforceability and/or non-infringement.

10. The information detailed in this letter and the attached memorandum is supplied for the sole purpose of complying with the above-referenced statutes and regulations, and neither LIQUIDIA nor its attorneys waive any attorney-client privilege or attorney work product immunity concerning the subject matter of this communication.

LIQUIDIA certifies that the name and address of the agents authorized to accept service of process for LIQUIDIA are:

> LIQUIDIA Contacts, by Courier:
>
> Russell Schundler, General Counsel & Secretary
> 419 Davis Drive, Suite 100
> Morrisville, NC 27560
> Phone: (919) 328-4377
> e-mail: russell.schundler@liquidia.com
>
> Sanya Sukduang, Cooley LLP
> 1299 Pennsylvania Ave., N.W.
> Washington, DC 20004
> Phone: (202)776-2982
> e-mail: ssukduang@cooley.com

Reservation of Legal Right

LIQUIDIA reserves the right to allege the same, similar, different or new theories of non-infringement, unenforceability and/or invalidity, and nothing in this Notice Letter or detailed statement is to be construed as limiting LIQUIDIA's rights to make any allegation in any currently pending or subsequent litigation regarding any issue concerning the aforementioned patents.

December 12, 2023                                                HIGHLY CONFIDENTIAL

<u>Offer of Confidential Access Pursuant to 21 U.S.C. § 355(c)(3)(D)(i)(III)</u>

**WHEREAS** LIQUIDIA has provided notice to UTC that LIQUIDIA submitted to the FDA an NDA to obtain approval to engage in the commercial manufacture, use or sale of LIQ861 (treprostinil) inhalation powder, that the NDA was received by the FDA and assigned NDA No. 213005 and that the NDA contains a Paragraph IV certification with respect to U.S. Patent No. 11,826,327 (the "'327 patent"), referenced herein as "the Listed Patent."

**WHEREAS** this document constitutes LIQUIDIA's Offer of Confidential Access to UTC to the drug product formulation and indications pursuant to 21 U.S.C. § 355(c)(3)(D)(i)(III), which provides:

> The document providing the offer of confidential access shall contain such restrictions as to persons entitled to access, and on the use and disposition of any information accessed, as would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information. A request for access to an application under an offer of confidential access shall be considered acceptance of the offer of confidential access with the restrictions as to the persons entitled to access, and on the use and disposition of any information accessed, contained in the offer of confidential access, and those restrictions and other terms of the offer of confidential access shall be considered terms of an enforceable contract. Any person provided an offer of confidential access shall review the application for the sole and limited purpose of evaluating possible infringement of the patent that is the subject of the certification under subsection (b)(2)(A)(iv) [of this section] and for no other purpose, and may not disclose information of no relevance to any issue of patent infringement to any person other than a person provided an offer of confidential access. Further, the application may be redacted by the applicant to remove any information of no relevance to any issue of patent infringement.

**WHEREAS** LIQUIDIA offers to provide UTC confidential access to certain information regarding LIQUIDIA's proprietary NDA drug product information ("NDA Confidential Information") subject to restrictions as to persons entitled access to, and on the use and disposition of, the NDA Confidential Information; and

**WHEREAS** this document accompanies LIQUIDIA's Notice and Detailed Statement under 21 U.S.C. § 355(b)(3)(B) with respect to the Listed Patent;

December 12, 2023                                        HIGHLY CONFIDENTIAL

**NOW THEREFORE**:

1. Pursuant to 21 U.S.C. § 355(c)(3)(D)(i)(III), and subject to the restrictions contained in section 2 below, LIQUIDIA hereby provides UTC this Offer of Confidential Access ("the Offer") to the NDA Confidential Information for the sole purpose of determining whether to bring an action referred to in 21 U.S.C. § 355(c)(3)(C) with respect to the Listed Patent.

2. This Offer is subject to the following restrictions as to persons entitled to access and the use and disposition of any information accessed:

   a. Persons Entitled Access: Persons entitled access to NDA Confidential Information ("Authorized Evaluators") under this offer are restricted to a maximum of two outside counsel representing UTC together with the staff of such outside counsel, including paralegal, secretarial and clerical personnel, tasked to assist such counsel, provided that such outside counsel do not engage, either formally or informally, in any patent prosecution for UTC and/or are involved in the subject matter related to treprostinil, and/or provide any FDA counseling, litigation or other work before or involving FDA.

   b. Use of the NDA Confidential Information:

      i. The NDA Confidential Information and all information contained therein or derived therefrom may be used for the sole and limited purpose of evaluating possible infringement of a Listed Patent and for no other purpose.

      ii. Authorized Evaluators shall not disclose any NDA Confidential Information contained or derived from the NDA or any notes, analyses, studies or other documents to the extent that they reflect any NDA Confidential Information, to any person other than Authorized Evaluators.

      iii. Notwithstanding the provision of subsections 2(B)(i) and 2(B)(ii) above, Authorized Evaluators shall be permitted to advise UTC whether to bring suit alleging infringement of any Listed Patent; provided however that the NDA Confidential Information is not thereby disclosed.

   c. Disposition of the Information in the NDA:

      i. UTC agrees that, if they do not file suit against LIQUIDIA alleging infringement of a Listed Patent within 45 days of receipt of the Notice and Detailed Statement (the "45-day period") which this Offer accompanies, UTC shall cause Authorized Evaluators, within 30 days after the expiration of the 45-day period, to destroy or return to LIQUIDIA any notes, analyses, studies or other documents to the extent that they contain NDA Confidential Information as such relates to opinions concerning the evaluation of the

December 12, 2023                                              HIGHLY CONFIDENTIAL

NDA Confidential Information for purposes relating to this Notice Letter, and UTC shall promptly notify LIQUIDIA that this has been done.

ii.  UTC agrees that if they file suit against LIQUIDIA alleging infringement of a Listed Patent within the 45-day period:

1.  While the litigation is pending, the notes, analyses, studies or other documents to the extent that they contain NDA Confidential Information relating to this Notice Letter, shall be treated as highly confidential information under any Stipulated Protective Order entered in that litigation.

2.  No NDA Confidential Information shall be included in any publicly available complaint or other publicly available pleading.

3.  UTC shall cause Authorized Evaluators to destroy or return to LIQUIDIA the NDA Confidential Information provided, and all notes, analyses, studies or other documents prepared to the extent that they contain NDA Confidential Information as such relates to opinions concerning the evaluation of the NDA Confidential Information for the purposes relating to this Notice Letter, within thirty (30) days after the final determination of the action brought against LIQUIDIA.

d.  Accidental Disclosure:  Should NDA Confidential Information be disclosed inadvertently or otherwise, UTC shall, at its earliest opportunity, by and through Authorized Evaluators, contact LIQUIDIA and identify:

i.  What has been disclosed;

ii.  The individuals to whom such information has been disclosed; and

iii.  Steps taken by UTC and Authorized Evaluators to ensure the NDA Confidential Information is not further disseminated.

3.  UTC acknowledges that violation of any provision of this Offer will cause irreparable injury to LIQUIDIA and that an adequate legal remedy does not exist.  LIQUIDIA, therefore, shall have the right, in addition to any other remedies available at law or in equity, to obtain from a court of competent jurisdiction an injunction to prohibit UTC from violating the terms of this Offer.  UTC agrees that in such an action LIQUIDIA is entitled to recover any and all damages, costs and expenses, including, but not limited to, all reasonable attorneys' fees, professional fees and court costs.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

4.  Should any provision set forth in this Offer be found by a court of competent jurisdiction to be illegal, unconstitutional or unenforceable, the remaining provisions shall continue in full force and effect.

5.  Nothing contained herein shall be construed as a grant of any license or other right to use the NDA Confidential Information except for the purpose expressly stated herein.

6.  When accepted by UTC, this document shall constitute the entire agreement of the parties with respect to the subject matter herein and may not be amended or modified except in writing executed by all of the parties.  Any failure by UTC to object to the terms of this Offer will be deemed a waiver of any objection hereto.

7.  This Agreement shall be construed in accordance with the laws of the State of Delaware, without regard to its conflict of law provisions.

8.  Nothing in this Offer shall be construed as an admission by LIQUIDIA regarding the validity, enforceability, and/or infringement of any U.S. Patent.  Further, nothing herein shall be construed as an agreement or admission by LIQUIDIA with respect to the competency, relevance, or materiality of any such NDA Confidential Information, document, or thing.  The fact that LIQUIDIA provides NDA Confidential Information upon request by UTC shall not be construed as an admission by LIQUIDIA that such NDA Confidential Information is relevant to the disposition of any issue relating to any alleged infringement of any Listed Patent, or to the validity or enforceability of any Listed Patent.

9.  UTC may request access to the NDA Confidential Information by executing a copy of this Offer where indicated and returning the executed copy to the contact person provided below, within the 45-day period, unless otherwise agreed pursuant to paragraph 6 above. Thereupon, the terms contained in this document shall be considered an enforceable contract between LIQUIDIA and UTC.

Liquidia Technologies, Inc.                    United Therapeutics Corp.

By its authorized agent:                        By its authorized agent:

 /s/  Russell Schundler                        _____

Rusty Schundler                                Name_____

General Counsel & Secretary                    Title:_____

December 12, 2023                              Date: _____

December 12, 2023                                                    HIGHLY CONFIDENTIAL

<u>Anticompetitive Behavior Warning</u>:
It is an antitrust violation to assert any patent known not to be infringed, or known not to be valid.  *See Loctite v. Ultraseal,* 781 F.2d 861, 877 (Fed. Cir. 1985) (overruled on other grounds by *Nobelpharma AB v. Implant Innovations, Inc.,* 141 F.3d 1059, 1068 (Fed. Cir. 1998) (clarifying that the Federal Circuit applies its own law, and not regional circuit law, to antitrust claims premised on the bringing of a patent infringement suit)); *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979), *cert. denied* 444 U.S. 1025 (1980).  If UTC launches any patent infringement lawsuit, either now or later, LIQUIDIA may pursue the appropriate remedies against UTC, including seeking fees, costs, and sanctions for potential violations of Rule 11 of the Federal Rules of Civil Procedures, exceptional case and frivolous suit statutes under the patent laws, and for violations of antitrust laws, plus any remedy the court deems fit to award.

<u>Contact Information</u>:
The name and address of the agent in the United States authorized to accept service of process for LIQUIDIA, limited to commencement of a patent infringement suit based on this notification of certification is:

LIQUIDIA Contacts:


                    Sanya Sukduang, Cooley LLP
                    1299 Pennsylvania Ave., N.W.
                    Washington, DC 20004
                    Phone: (202)776-2982
                    e-mail: ssukduang@cooley.com


Sincerely,

*/s/  Sanya Sukduang*

Sanya Sukduang


<u>Enclosure:</u>    Detailed factual and legal statement supporting LIQUIDIA's Paragraph IV Certification that U.S. Patent No. 11,826,327 (the "'327 patent") is not infringed and/or invalid and/or unenforceable.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

**Detailed factual and legal statement supporting LIQUIDIA's Paragraph IV Certification Regarding U.S. Patent No. 11,826,327 (the "'327 patent")**

## I.    INTRODUCTION

Pursuant to § 505(b)(3)(B) of the Federal Food, Drug, and Cosmetic Act and 21 C.F.R. § 314.52(c)(6), this document contains the detailed factual and legal basis for the Paragraph IV certification of Liquidia Technologies, Inc. ("LIQUIDIA") concerning U.S. Patent No. 11,826,327 (the "'327 patent") ("the Listed Patent").  As demonstrated in the following paragraphs, in LIQUIDIA's opinion and to the best of its knowledge, each claim of the Listed Patent will not be infringed by the commercial manufacture, use or sale of the drug product described in LIQUIDIA's 505(b)(2) application NDA 213005 (as amended, "LIQUIDIA's NDA") and/or each claim of the Listed Patent is invalid and/or unenforceable.  LIQUIDIA specifically reserves the right to advance any additional grounds for invalidity, unenforceability, and/or non-infringement, or any other claim construction, regarding the Listed Patent in the event of litigation or other proceeding that may result from the receipt of this letter.

Please be advised that LIQUIDIA considers the information in this statement to be confidential, is disclosing this information solely to comply with 21 U.S.C. § 355(b)(3)(B)(ii) and 21 C.F.R. § 314.52, and requests that this information be protected from disclosure to third parties by means consistent with its own standards for protecting its own confidential information.  THIS CONFIDENTIALITY APPLIES TO THIS STATEMENT, WHICH MAY NOT, AND SHOULD NOT, BE ATTACHED TO ANY COMPLAINT OR OTHER PUBLICLY AVAILABLE DOCUMENT.  *See Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1083 (C.D. Cal. 2006).

### LIQUIDIA's LIQ861 Product does not infringe any claim of the Listed Patent, either literally or under the doctrine of equivalents

Description of the Drug Product

The proposed LIQUIDIA Product is LIQ861 (treprostinil) inhalation powder.  The active ingredient is treprostinil (salt form treprostinil sodium).  The formulation is a dry powder of treprostinil sodium and excipients.  LIQ861 delivers a dry powder formulation of treprostinil through a dry powder inhaler ("DPI").  The LIQ861 DPI is the RS00 Model 8 manufactured by Plastiape Group ("Plastiape").  The indication sought for the proposed LIQUIDIA Product is as follows: "[F]or the treatment of pulmonary arterial hypertension (PAH) (WHO Group 1) to improve exercise ability;" and "[F]or the treatment of pulmonary hypertension associated with interstitial lung disease (PH-ILD; WHO Group 3) to improve exercise ability."  LIQUIDIA has submitted its proposed labeling to the FDA; therein, the dosage and administration are provided as follows:

December 12, 2023                                                    HIGHLY CONFIDENTIAL

## 2   DOSAGE AND ADMINISTRATION

### 2.1   Usual Dosage In Adults

YUTREPIA capsules are for oral inhalation only and should be used only with the supplied inhaler.

*YUTREPIA Dosing in treprostinil-naïve patients:*

In patients naïve to treprostinil, therapy should begin with 26.5 mcg 3 to 5 times per day, in 2 breaths based on patient response.

*Dosing in patients transitioning from treprostinil inhalation solution (Tyvaso):*

Patients transitioning from treprostinil inhalation solution (Tyvaso), can begin YUTREPIA therapy 3 to 5 times per day, in 2 breaths, using the doses specified below (Table 1):

**Table 1: YUTREPIA Dosing in Patients Transitioning from Treprostinil Inhalation Solution**

| Current Tyvaso Dose* | YUTREPIA Dose |
|---|---|
| Breaths | mcg |
| ≤5 | 26.5 |
| ≥6 and ≤8 | 53 |
| ≥9 and ≤11 | 79.5 |
| ≥12 and ≤14 | 106 |
| ≥15 and ≤17 | 132.5 |
| ≥18 | 159 |

*Each breath of Tyvaso delivers approximately 6 mcg of treprostinil

In treprostinil-naïve patients and those transitioning from treprostinil inhalation solution, dose increases of 26.5 mcg per dose each week may be implemented, as tolerated. The target maintenance dosage is 79.5-106 mcg, 4 times daily. Doses above 848 mcg per day have not been studied in patients with PAH.

The inhaler mentioned in the above proposed labeling dosage and administration section is intended to be the Plastiape DPI RS00 Model 8 described above.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

The proposed packaging for the LIQ861 Product further specifies that it is inhalation ***powder***:



As discussed in detail below LIQUIDIA will not directly infringe the claims of the '327 as LIQUIDIA does not perform any of the steps claimed in the '327 patent. Finally, as discussed in detail below, Liquidia will not directly or indirectly infringe any of the claims of the '327 patent because they are invalid.

## II.    APPLICABLE LEGAL STANDARDS

### A.    BURDENS AND PRESUMPTIONS

Each claim of a patent issued by the U.S. Patent and Trademark Office ("PTO") is presumed to be valid; this presumption is independent of the validity of other claims. 35 U.S.C. § 282 (2007). A party may overcome this presumption by presenting clear and convincing evidence of a patent's invalidity. *See Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 725 (Fed. Cir. 2002). The presumption of validity includes a "presumption of nonobviousness which the patent challenger must overcome by proving facts with clear and convincing evidence." *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 894 (1984); *see also Apotex USA, Inc. v. Merck & Co*., 254 F.3d 1031, 1036 (Fed. Cir. 2001).

Although prior art not presented during prosecution "may facilitate meeting the challenger's ability to meet the burden of proof on invalidity," and thus may make it easier to demonstrate invalidity where the party asserting invalidity relies upon prior art not previously considered by the PTO, the burden of presenting clear and convincing evidence by the challenger remains intact and does not change. *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1573 (1984); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110-11 (2011). A patent may also be found invalid based upon prior art already considered by the PTO Examiner if it can be shown through clear and convincing evidence that the PTO Examiner erred in interpreting or applying the prior art or principles of patent law. Thus, after due consideration of the presumption of validity, a trial court is free to come to a different conclusion of patentability from the PTO on the basis of

evidence before the court.  *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1329 (Fed. Cir. 2000); *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1245 (Fed. Cir. 2003).

### B.  NONINFRINGEMENT ANALYSIS

The patentee bears the burden of proving patent infringement and must demonstrate infringement by a preponderance of the evidence.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985).[1]

Proof of direct infringement is necessary for any patent infringement action.  For direct infringement, 35 U.S.C. § 27l (a) provides that "whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefore, infringes the patent."

To be liable for direct infringement, the accused device or process must contain each and every limitation of the asserted claim or its equivalent.  *See Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990).  Determining direct infringement is a two-step process.  First, the claim must be properly construed to determine its scope and meaning. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *see also Rapoport v. Dement*, 254 F.3d 1053, 1058 (Fed. Cir. 2001).  Second, the properly construed claim is compared to the alleged infringing product or process.  *See Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1323 (Fed. Cir. 2003), *cert. denied*, 539 U.S. 928 (2003).  For "product-by-process" claims (*i.e.*, claims to a product, limited at least in part by process steps), infringement can only be found if the accused product includes not only the product elements of the claim, but also the process elements (either literally or under the doctrine of equivalents).  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1291-96 (Fed. Cir. 2009).

A party that is not liable as a direct infringer under § 271(a) may be liable for inducing patent infringement under 35 U.S.C. § 271(b) or contributory infringement under 35 U.S.C. § 271(c). *See Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774-75 (Fed. Cir. 1993).

Proof of inducement under 35 U.S.C. § 271(b) requires a showing that the accused inducer had "knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011).  In the absence of proof of actual knowledge, an accused inducer can only be liable if there is "willful blindness"; in other words, "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact."  *Id.* at 2070.

For contributory infringement, 35 U.S.C. § 271(c) provides: "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a

---

[1] It is axiomatic that one cannot infringe an invalid patent.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1929 (2015); *see, e.g., Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1291 (Fed. Cir. 2005) (stating "there can be no ... induced infringement of invalid patent claims"); *Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983) ("The claim being invalid there is nothing to be infringed."). Thus, for any invalid claim of the Listed Patent, the issue of infringement should not arise.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  Thus, a party cannot be liable for contributory infringement for any patent covering a product that has substantial noninfringing uses.  *See C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.,* 911 F.2d 670, 673-75 (Fed. Cir. 1990).

It is black-letter law, however, that "[l]iability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement."  *Joy Techs.*, 6 F.3d at 774; *see also Limelight Networks, Inc. v. Akamai Techs., Inc*., 572 U.S. 915, 924(2014) (a defendant is not liable for inducing infringement under §271(b) when no one has directly infringed under §271(a) or any other statutory provision).

### CLAIM CONSTRUCTION

Generally, a claim term is given its ordinary and accustomed meaning as understood by one of ordinary skill in the art, unless the patentee ascribed a different meaning to the term in either the specification or the prosecution history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13, 1321 (Fed. Cir. 2005).  Claim interpretation involves consideration of the language of the patent claims, the specification, the prosecution history, and extrinsic evidence (if necessary).  *See id.* at 1314; *Markman*, 52 F.3d at 979-80; *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).  When construing a claim, a court principally consults the intrinsic evidence: the patent claims, the specification, and the prosecution history.  *Phillips*, 415 F.3d at 1317; *Vitronics,* 90 F.3d at 1582-83.  Usually, analysis of the intrinsic evidence suffices to enable one to determine the meaning of claim terms. *Vitronics*, 90 F.3d at 1582.

Within the intrinsic evidence, a hierarchy exists to guide a court's analysis.  *Phillips*, 415 F.3d at 1315; *Digital Biometrics, Inc. v. Identix, Inc*., 149 F.3d 1335, 1344 (Fed. Cir. 1998).  Fundamentally, claim construction must start with the claim language itself. *Vitronics*, 90 F.3d at 1582; *Digital Biometrics*, 149 F.3d at 1344 ("The actual words of the claim are the controlling focus.'").  Claim terms are "generally given their ordinary and customary meaning" as understood by one of ordinary skill in the art at the time the patent was filed.  *Phillips,* 415 F.3d at 1312-13; *Vitronics*, 90 F.3d at 1582.  Claim terms, however, are not to be interpreted "in a vacuum."  *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) (citation omitted); *Slimfold Mfg. Co. v. Kinkead Indus*., 810 F.2d 1113, 1116 (Fed. Cir. 1987).  Instead, a claim term must be analyzed not only within the context in which a term appears in the claim, but also in view of the entire patent, including the specification.  *Phillips*, 415 F.3d at 1313.

A court must also examine the specification to determine whether the patentee acted as his or her own lexicographer of a claim term.  *See Merck & Co. v. Teva Pharm. USA, Inc*., 395 F.3d 1364, 1370 (Fed. Cir. 2005).  In such cases, a court looks to the specification for meaning of terms at variance with the ordinary and accustomed meaning of terms. *See Phillips*, 415 F.3d at 1316; *see also Bell Cmmc'ns Research, Inc. v. Vitalink Cmmc'ns Corp.,* 55 F.3d 615, 619-20 (Fed. Cir. 1995) ("[C]laim are to be construed in the light of the specification.") (citation omitted).  A patentee may act as his or her own lexicographer as long as "he clearly states any special definitions of the claim terms in the patent specification or file history."  *Irdeto Access, Inc. v. Echostar Satellite Corp.*,

383 F.3d 1295, 1300 (Fed. Cir. 2004).  A patentee, however, need not provide guidance in the form of explicit definitions, but rather "may define claim terms 'by implication' such that the meaning may be 'found in or ascertained by a reading of the patent documents.'"  *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc*., 262 F.3d 1258, 1268 (Fed. Cir. 2001) (citing *Vitronics*, 90 F.3d at 1582, 1584 n.6).

Patentees may also limit claim scope by providing explicit definitions or by providing unequivocal guidance that dictates the manner in which the claims are to be construed.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.,* 242 F.3d 1337, 1344 (Fed. Cir. 2001).  Thus, the specification may be used to determine if a patentee has limited the scope of the claim language by explicitly limiting statements made therein.  *See Watts v. XL Sys., Inc.,* 232 F.3d 877, 882 (Fed. Cir. 2000); *O.I. Corp. v. Tekmar Co.*, 115 F.3d 1576, 1581 (Fed. Cir. 1997).

While claims are to be construed in light of the specification, they are not necessarily limited by particular embodiments or limitations described therein.  *See SRI Int'l,* 775 F.2d at 1121 n.15.  Thus, a distinction is recognized between using the specification to interpret the meaning of terms in a claim and reading limitations from the specification into the claims:

> It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim.  But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.  By "extraneous," we mean a limitation read into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim.  Where a specification does not require a limitation, that limitation should not be read from the specification into the claims.

*E.I du Pont de Nemours & Co. v. Phillips Petroleum Co.,* 849 F.2d 1430, 1433 (Fed. Cir. 1988) (citations & quotation omitted).  However, "the claims of [a] patent cannot be given a construction broader than the teachings expressed in the patent."  *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1324 (5th Cir. 1980); *see also In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991).

The prosecution history should be considered when construing the claims.  *See Phillips*, 415 F.3d at 1317; *Watts*, 232 F.3d at 882; *KCJ Corp. v. Kinetic Concepts, Inc*., 223 F.3d 1351, 1355 (Fed. Cir. 2000).  For example, statements made by the patentee during prosecution may impact claim construction by "demonstrating how the inventor understood the invention," and whether the inventor intended to narrow the claim scope by limiting the invention.  *Phillips*, 415 F.3d at 1317.  Statements made during the prosecution of a related application can also affect the scope of the disclosed invention, even where the prosecution history is relied on after the subject patent is issued.  *See NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1157 (2006) (abrogated on other grounds by *IRIS Corp. v. Japan Airlines Corp.,* 769 F.3d 1359, 1361 n. 1 (Fed.Cir.2014)); *Microsoft Corp. v. Multi-Tech Sys., Inc*., 357 F.3d 1340, 1350 (Fed. Cir. 2004).  The Court has cautioned, however, that because of the dynamic nature of the negotiation process between the Applicant and patent office, the prosecution history "often lacks the clarity of the specification," and thus may be less useful for claim construction purposes.  *See Phillips*, 415 F.3d at 1317.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

Finally, a court may also look to extrinsic evidence to assist in claim construction, which includes any evidence that is external to the patent and prosecution history, such as expert testimony, inventor testimony, dictionaries, technical treatises and articles. *Id.; Vitronics*, 90 F.3d. at 1583. While extrinsic evidence may be useful in shedding light on the relevant prior art, a reviewing court is limited in relying on extrinsic evidence for claim interpretation purposes. *Phillips*, 415 F.3d at 1317-18. Thus, if the intrinsic evidence (specification, claims, and prosecution history) resolves any ambiguity in a disputed claim, extrinsic evidence cannot be used to contradict the established meaning of the claim language. *See Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.,* 152 F.3d 1368, 1373 (Fed. Cir. 1998); *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.,* 132 F.3d 701, 706 (Fed. Cir. 1997).

**PRIORITY**

A continuation-in-part patent application may contain new matter which was not present in an earlier application to which it claims priority. However, claims that are not fully supported by the earlier application can have the effective filing date of the continuation-in-part. *PowerOasis, Inc. v. T-Mobile USA, Inc*., 522 F.3d 1299, 1306 (Fed. Cir. 2008). "It is elementary patent law that a patent application is entitled to the benefit of the filing date of an earlier filed application only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *In re Chu*, 66 F.3d 292, 297 (Fed. Cir. 1995); *see also Augustine Med., Inc. v. Gaymar Indus., Inc*., 181 F.3d 1291, 1302-03 (Fed. Cir. 1999) ("Different claims of [a CIP] application may therefore receive different effective filing dates. . . . Subject matter that arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application.").

The determination of the right to priority is controlled by the written description requirement of 35 U.S.C. § 112, and to satisfy the written description requirement the disclosure of the prior application must "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, [the inventor] was in possession *of the invention*." *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563-64 (Fed. Cir. 1991). The prior application must indicate to a person skilled in the art that the inventor was "in possession" of the invention as later claimed. *Ralston Purina Co. v. Far-Mar-Co, Inc*., 772 F.2d 1570, 1575 (Fed. Cir. 1985). "Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed." *In re Huston*, 308 F.3d 1267, 1277 (Fed. Cir. 2002) (quoting *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1571-72 (Fed. Cir. 1997)).

**UNCLAIMED SUBJECT MATTER IS DEDICATED TO THE PUBLIC**

It is a well-established concept that "subject matter disclosed but not claimed in a patent application is dedicated to the public." *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562-63 (Fed. Cir. 1991). Indeed, the Federal Circuit has confirmed the long-standing holding that "when a patent drafter discloses but declines to claim subject matter. . . this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). As such, "a patentee cannot narrowly claim an invention to avoid prosecution scrutiny by the PTO, and then, after patent issuance, use the doctrine of

December 12, 2023                                                    HIGHLY CONFIDENTIAL

equivalents to establish infringement because the specification discloses equivalents." *Id.; see also Sage Prods., Inc. v. Devon Indus., Inc*., 126 F.3d 1420, 1432-33 (Fed. Cir. 1997).

## LITERAL INFRINGEMENT

"Infringement, whether literal or under the doctrine of equivalents, is a question of fact." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016) (citing *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129–30 (Fed. Cir. 2011)).  A court generally examines literal infringement first.  Absent literal infringement, the court would then examine the possibility of infringement under the doctrine of equivalents (assuming such arguments were advanced by the patentee).

In order for a claim to be literally infringed, an accused device must include each and every limitation specified in the claim.  *Becton Dickinson*, 922 F.2d at 796-97; *see also Charles Greiner & Co. v. Mari-Med Mfg., Inc*., 962 F.2d 1031, 1034 (Fed. Cir. 1992).  Once a claim has been interpreted, a determination is made regarding whether the accused device includes each and every limitation of the claim in question.  Thus, "if even one limitation is missing or not met as claimed, there is no literal infringement."  *Mas-Hamilton Grp. v. LaGard, Inc*., 156 F.3d 1206, 1211 (Fed. Cir. 1998).

## INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS

Even if a product or process is not within the literal wording of the claim, it may be found to infringe under the doctrine of equivalents.  The analysis under this doctrine considers whether the allegedly infringing product or process contains an element that is equivalent to a claimed element that is not literally found in the accused product or process.  *Warner-Jenkinson Co., v. Hilton Davis Chem. Co.*, 520 U.S. 17, 18 (1997).  Thus, each element of a claim must be found in the accused product or process, or an equivalent of each element.  *Id*.  The ultimate question under the doctrine of equivalents is the substantiality of the differences between each element claimed and an equivalent of that element in the subject product.  *Id*. at 39.  This is subject to the requirement that the element or its equivalents cannot be missing altogether.  *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 938-39 (Fed. Cir. 1987) (en banc), *cert. denied*, 485 U.S. 961 (1988).  Where the differences between the claimed and the corresponding element in the subject product or process are not insubstantial, then there can be no liability under this doctrine.  *Warner-Jenkinson*, 520 U.S. at 39-40; *Honeywell Int'l Inc. v. Hamilton Sunstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (en banc).

One of the judicially-approved tests considers whether the allegedly infringing product and the claimed invention perform substantially the same function in substantially the same way to achieve the same overall result.  *Warner-Jenkinson*, 520 U.S. at 39-40.  Other factors may also inform the evaluation of equivalents, but these other factors must be based on objective evidence.  Known interchangeability of the accused and claimed elements can be potent evidence that one of ordinary skill in the art would have considered the differences to be insubstantial.  *Id*. at 36-37.

It is important to note that in applying the doctrine of equivalents, some meaning for each limitation in a claim must be maintained in order to preserve the boundaries of the invention's

December 12, 2023                                                    HIGHLY CONFIDENTIAL

patent protection. Because "[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention, … the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Id*. at 29. Accordingly, there should be no infringement if a claim element is totally missing from the accused device. *See Novartis Pharm. Corp. v. Abbott Labs*., 375 F.3d 1328, 1338-39 (Fed. Cir. 2004).

The range of equivalents cannot be so extended as to encompass the prior art. *See Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001), *cert. denied*, 537 U.S. 825 (2002); *Wilson Sporting Goods Co. v. David Geoffrey & Assocs*., 904 F.2d 677, 683 (Fed. Cir. 1990), *overruled in part on other grounds,* 508 U.S. 83 (1993). The doctrine of equivalents does "[not] give a patentee something which he could not lawfully have obtained from the PTO had he tried." *Wilson*, 904 F.2d at 684-685. In addition, the doctrine of equivalents cannot be read to encompass subject matter expressly disclosed in the specification but not claimed by the patent. *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) ("[a]pplication of the doctrine of equivalents to recapture subject matter deliberately left unclaimed would conflict with the primacy of the claims in defining the scope of the patentee's exclusive right.") (internal citation omitted).

The infringement inquiry in an action brought under 35 U.S.C. § 271(e)(2)(A) is "hypothetical." *Bayer AG v. Elan Pharm. Research Corp*., 212 F.3d 1241, 1248-49 (Fed. Cir. 2000). That is, the focus of the infringement inquiry under § 271(e)(2)(A) is on "what the... applicant will likely market if its application is approved, an act that has not yet occurred." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997). Therefore, it is the drug product which will be sold by LIQUIDIA only after the FDA gives its final approval to LIQUIDIA's NDA that is relevant to the infringement issue under § 271(e)(2)(A), and nothing else.

Prosecution history estoppel limits the broad application of the doctrine of equivalents by barring an equivalents argument for subject matter relinquished when a patent claim is narrowed during prosecution. *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1363 (Fed. Cir. 2006). Prosecution history estoppel can occur in one of two ways: "(1) by making a narrowing amendment to the claim ('amendment-based estoppel') or (2) by surrendering claim scope through argument to the patent examiner ('argument-based estoppel')." *Id.*

"When the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, 'courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed. In those instances, however, the patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.'" *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*, 347 F.3d 1314, 1325 (Fed. Cir. 2003) (*quoting Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722, 741 (2002)).

### DIVIDED INFRINGEMENT

In *Akamai*, The Federal Circuit affirmed the principle that "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity."

17

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("single-actor rule"). The court observed that "[w]here more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement." *Id.*

In 2017, the Federal Circuit further interpreted *Akamai* as expanding the scope of liability under § 271(a) such that one entity may be held responsible for another's performance of method steps under two general circumstances: (1) where that entity "directs or controls" the other's performance of those method steps; or (2) where the actors form a "joint enterprise." *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370, 1378 (Fed. Cir. 2017) (quoting *Akamai*, 797 F.3d at 1022).

Liability under § 271(a) can also be found when an alleged infringer (1) conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method; and (2) establishes the manner of timing of that performance. *Id.* (quoting *Akamai*, 797 F.3d at 1023), for the proposition that "an actor 'infringes vicariously by profiting from direct infringement' if that actor has the right and ability to stop or limit the infringement"). Whether a single actor directed or controlled the acts of one or more third parties is a question of fact. *Id; see also Eli Lilly and Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1366-69 (Fed. Cir. 2017) (physicians were liable for divided infringement where defendants were accused of inducing physicians' direct infringement of the method claims by instructing physicians to prescribe the generic drug in a manner that covered patented process claims).

### INFRINGEMENT OF DEPENDENT CLAIMS

Federal Circuit law makes clear that infringement of dependent claims cannot lie where non-infringement is found for the corresponding independent claim. *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007), *cert. dismissed*, 553 U.S. 1077 (2008), quoting *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552 (Fed. Cir. 1989) ("One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim."). "It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to be infringed." *Wahpeton Canvas Co*., 870 F.2d at 1553. Thus, once an assessment that a product does not infringe an independent claim is made, the dependent claims, which include the limitations of the independent claims, would not be infringed for the same reasons.

### INDIRECT INFRINGEMENT

In general terms, "[a] person induces infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard*, 911 F.2d at 675. The Federal Circuit has described the standard for determining inducement as a two-part test: "The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). As part of this analysis, the patentee must demonstrate, inter alia, that the defendant undertook "active steps taken to encourage direct infringement." *MEMC Elec. Materials, Inc. v, Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S.

913, 915 (2005)).  Thus, "inducement requires that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement."  *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part) (citation omitted).  The Federal Circuit has held that "where a product has substantial non-infringing uses, intent to induce infringement cannot be inferred even when the [alleged inducer] has actual knowledge that some users of its product may be infringing the patent," without more evidence as to the alleged infringer's intent.  *Warner—Lambert Co. v. Apotex Corp*., 316 F.3d 1348, 1365 (Fed. Cir. 2003); *see also Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d 1317, 1328-29 (Fed. Cir. 2009); *Takeda Pharm. U.S.A., Inc. v. West-Ward Pharm. Corp*., 785 F.3d 625, 630-34 (Fed. Cir. 2015).

The Federal Circuit has held that "[a] party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process.  That 'material or apparatus' must be a material part of the invention, have no substantial non-infringing uses, and be known (by the party) 'to be especially made or especially adapted for use in an infringement of such patent.'"  *See i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 850-51 (Fed. Cir. 2010) (citation omitted); *see also* 35 U.S.C. § 271(c).  Thus, to establish contributory infringement liability, the patent owner must show, among other things, that there are no substantial non-infringing uses.  "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Vita-Mix Corp*., 581 F.3d at 1327.

An implied license to use an invention is an affirmative defense to a claim of induced infringement or contributory infringement.  *Carborundrum Co. v. Molten Metal Equip. Innovations, Inc*., 72 F.3d 872, 878 (Fed. Cir. 1995).  The Federal Circuit held that the patentee's unrestricted sale of an unpatented machine useful only in performing a patented process carried an implied license to practice the patented process.  *Met-Coil Sys. Corp. v. Korners Unlimited, Inc*., 803 F.2d 684, 687 (Fed. Cir. 1986).  Thus, where there is an implied license to practice an invention, there can be no direct infringement, and, absent direct infringement, there can be no contributory infringement or induced infringement.  *Id.*; *Anton/Bauer, Inc. v. PAG, Ltd*. 329 F.3d 1343, 1351-52 (Fed. Cir. 2003) (holding that there was no induced infringement for selling unpatented male component of patented battery pack combination because patentee had granted an implied license to consumer by unrestricted sale of an unpatented female component of its patented combination where the unpatented female component had no non-infringing use).

As with all "traditional" suits for patent infringement, actions brought under § 271(e)(2)(A) require the patentee to prove infringement (of the product that will be sold if the ANDA or 505(b)(2) application is given "final" approval by the FDA) by a preponderance of the evidence.  *See e.g., Ferring B.V. v. Watson Labs., Inc.–Florida*, 764 F.3d 1401, 1408 (Fed. Cir. 2014).  The burden of proof does not shift to the filer merely by the filing of the application.  *Glaxo*, 110 F.3d at 1569-1570.  Instead, the Court in an ANDA or 505(b)(2) case must determine "whether the patentee has proven by a preponderance of the evidence that the alleged infringer will likely market an infringing product."  *Id*.  In the present situation, UTC will bear the burden of proof by a preponderance of the evidence that one or more claims of the Listed Patent will likely be infringed by the LIQUIDIA LIQ861 Product.

December 12, 2023                                                                    HIGHLY CONFIDENTIAL

### C.    INVALIDITY ANALYSIS

Patent invalidity is a complete defense to a charge of infringement. *See TypeRight Keyboard Corp.* v. *Microsoft Corp.,* 374 F.3d 1151, 1157 (Fed. Cir. 2004) (holding that a finding of invalidity is a complete defense to infringement); *Viskase Corp.* v. *Am. Nat'l Can Co.,* 261 F.3d 1316, 1323 (Fed. Cir. 2001) (same); *see also Weatherchem Corp. v. J.L. Clark, Inc.,* 163 F.3d 1326, 1335 (Fed. Cir. 1998) ("[I]nvalidity operates as a complete defense to infringement for any product, forever."). A patent is invalid if it fails to satisfy any of the conditions for patentability found in 35 U.S.C. §§ 101 *et seq.*

### BURDEN OF PROOF AND PRESUMPTION OF VALIDITY

The burden of proving invalidity rests with the party asserting it. "A patent, though presumed valid, 35 U.S.C. § 282 (1988), is actually a fragile entity, and must be propped up by a myriad of supports, each representative of one of the legal requirements of validity. If even a single one of these supports is removed, the patent will fall. For example, a patent may be declared invalid . . . if it is found to be anticipated by a prior art reference, *see id.* § 102; if it is rendered obvious by a combination of the prior art, *see id.* § 103; or if it fails to satisfy any one of a variety of other conditions." *Morton Int'l, Inc.* v. *Cardinal Chem. Co.,* 5 F.3d 1464, 1471-72 (Fed. Cir. 1993) (Mayer, J., concurring.)

The statutory presumption of validity merely assumes the PTO properly did its job by considering all prior art or other evidence material to patentability. *See Lannom Mfg. Co.* v. *U.S. Int'l Trade Comm'n,* 799 F.2d 1572, 1575 (Fed. Cir. 1986). "[W]here the PTO has not considered facts relevant to an issue in suit, there is no reason to give deference to its action in issuing the patent and a court may find those facts controlling in determining whether the burden of proof has been sustained." *Kalman* v. *Kimberly-Clark Corp.*, 713 F.2d 760, 773 n.3 (Fed. Cir. 1983), *overruled on other grounds by SRI Int'l* v. *Matsushita Elec. Corp. of Am.,* 775 F.2d 1107 (Fed. Cir. 1985). Thus, "[t]he courts are the final arbiter of patent validity and, although courts may take cognizance of, and benefit from, the proceedings before the patent examiner, the question is ultimately for the courts to decide, without deference to the rulings of the patent examiner." *Quad Envtl. Techs. Corp.* v. *Union Sanitary Dist.,* 946 F.2d 870, 876 (Fed. Cir. 1991).

### ANTICIPATION

Under 35 U.S.C. § 102 (post-AIA), a person shall be entitled to a patent unless "the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention," 35 U.S.C. § 102(a)(1), or "the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention." *Id.* § 102(a)(2).

A claimed invention may be rejected under 35 U.S.C. § 102 when the invention is anticipated (or is "not novel") over a disclosure that is available as prior art. "To reject a claim as anticipated by

December 12, 2023                                                    HIGHLY CONFIDENTIAL

a reference, the disclosure must teach every element required by the claim under its broadest reasonable interpretation."  MPEP § 2131.

"A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil Co. of California,* 814 F.2d 628, 631 (Fed. Cir. 1987). "When a claim covers several structures or compositions, either generically or as alternatives, the claim is deemed anticipated if any of the structures or compositions within the scope of the claim is known in the prior art."  *Brown v. 3M,* 265 F.3d 1349, 1351 (Fed. Cir. 2001); *see also* MPEP § 2131.02.  The elements must be arranged as required by the claim, but this is not an *ipsissimis verbis* test, i.e., identity of terminology is not required.  *In re Bond,* 910 F.2d 831 (Fed. Cir. 1990).  In some circumstances, it is permissible to use multiple references in a 35 U.S.C. § 102 rejection.  *See* MPEP § 2131.01.

### OBVIOUSNESS

Section § 103 (post-AIA) of Title 35 U.S.C. provides:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed invention is not identically disclosed as set forth in section 102, if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains. Patentability shall not be negated by the manner in which the invention was made.

Obviousness is ultimately a legal conclusion, based upon underlying factual inquiries.  *McNeil-PPC, Inc.* v. *L. Perrigo Co.,* 337 F.3d 1362, 1368 (Fed. Cir. 2003).  The required factual inquiry considers: (1) what is the level of ordinary skill in the pertinent art; (2) what was the scope and content of the prior art; and (3) what are the differences between the prior art and the asserted claims. *Graham* v. *John Deere Co.,* 383 U.S. 1, 17 (1966).  Objective evidence of nonobviousness, *i.e.,* so-called "secondary considerations," if any, is considered where relevant.  *See id.* at 17-18; *see also Stratoflex, Inc.* v. *Aeroquip Corp.,* 713 F.2d 1530, 1538-39 (Fed. Cir. 1983).

When, from the perspective of a person of ordinary skill in the art, the differences between the prior art and the claimed invention as a whole would be obvious, a *prima facie* case of obviousness is established under § 103, thus rendering the subject claim invalid.  *See In re Dillon,* 919 F.2d 688, 692-93 (Fed. Cir. 1990).

Obviousness may be based on one or more references.  However, either the prior art as a whole, or knowledge generally available to one of ordinary skill in the art, should suggest the desirability, and thus, the obviousness of combining and modifying the prior art to arrive at the claimed invention.  *See SIBIA Neurosciences, Inc.* v. *Cadus Pharm. Corp.,* 225 F.3d 1349, 1356 (Fed. Cir. 2000).  This requirement for a showing of motivation to combine references ensures that a combination is not improperly made in hindsight. *See In re Gartside,* 203 F.3d 1305, 1318-19 (Fed. Cir. 2000).  However, it is not necessary that the references be combined for the same reasons

21

as the inventor. *In re Beattie*, 974 F.2d 1309, 1312 (Fed. Cir. 1992) ("As long as some motivation or suggestion to combine the references is provided by the prior art taken as a whole, the law does not require that the references be combined for the reasons contemplated by the inventor"). Moreover, a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR,* 550 U.S. at 416. More specifically, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 417.

Yet, the mere fact that results are not entirely predictable in advance, and must be confirmed through testing, does not mean that subject matter is non-obvious. "[A] rule of law equating unpredictability to patentability" is improper because "the expectation of success need only be reasonable, not absolute." *See Pfizer, Inc.* v. *Apotex, Inc.,* 480 F.3d 1348, 1364 (Fed. Cir. 2007). That is, "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Id.* Where "there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *KSR,* 550 U.S. at 421. "If this leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." *Id.* In such instances "the fact that a combination was obvious to try might show that it was obvious under § 103." *Id.*

### WRITTEN DESCRIPTION AND ENABLEMENT

Section § 112(a) (post-AIA) of Title 35 U.S.C. provides:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

"The test for sufficiency of a written description is whether the disclosure clearly allow[s] persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011) (alterations in original) (citation omitted); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002) ("A claim does not become more descriptive by its repetition, or its longevity."); *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1357 n.8 (Fed. Cir. 2010) (en banc); *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001). Even assuming, *arguendo*, that the written description "provides formal textual support for each individual limitation recited in the claims of the patent, it nowhere describes the actual functioning variants that those limitations together define." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013); *D Three Enters., LLC v. SunModo Corp.*, 890 F.3d 1042, 1050 (Fed. Cir. 2018) ("As we have stated, '[i]t is not sufficient for purposes of the written description requirement of § 112 that the disclosure, when combined with the knowledge in the art, would lead one to speculate as to the modifications that the inventor might have envisioned, but failed to

December 12, 2023                                                        HIGHLY CONFIDENTIAL

disclose.'" (alteration in original) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572
(Fed. Cir. 1997))).

Additionally, while "examples are not always required to satisfy the written description
requirement, the lack of any disclosure of examples may be considered when determining whether
the claimed invention is adequately described." *Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d
1353, 1364 (Fed. Cir. 2011); *see also Nuvo Pharmaceuticals (Ireland) Designated Activity Co. v.
Dr. Reddy's Laboratories, Inc.*, 923 F.3d 1368 (Fed. Cir. 2019).

Further, to satisfy the enablement requirement of § 112(a), the specification must enable a person
having ordinary skill in the art to make and use the invention. *Wyeth & Cordis Corp. v. Abbott
Labs.*, 720 F.3d 1380, 1384 (Fed. Cir. 2013). This requirement is met when at the time of filing
the application, one skilled in the art, having read the specification, could practice the invention
without "undue experimentation." *ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed.
Cir. 2010) (quoting *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997));
*In re Cortright*, 165 F.3d 1353, 1360 (Fed. Cir. 1999) (affirming rejection of claim for method for
offsetting the effects of a lower level of male hormones being supplied by the arteries to the papilla
of scalp hair by the use of the invention as not being enabled because the specification did not
provide any actual data that low level of male hormones were offset by the use of the invention,
but only stated that it "surmised" and "believed" that was the case). To satisfy the statutory bargain
underlying § 112, the scope of the claims must be "commensurate" with teachings in the
specification. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1377 (Fed. Cir. 1999). "The
scope of the claims must be less than or equal to the scope of the enablement." *Nat'l Recovery
Techs., Inc. v. Magnetic Separation Sys., Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999). The fact that
a skilled artisan may be able to do testing to find compositions that actually work does not cure
the deficiency in the specification. *See Wyeth*, 720 F.3d at 1385.

## III.  LIQUIDIA DOES NOT INFRINGE THE CLAIMS OF THE '327 PATENT AND THE CLAIMS OF THE '327 PATENT ARE INVALID

### A.  LIQUIDIA DOES NOT INFRINGE U.S. PATENT NO. 11,826,327

U.S. Patent No. 11,826,327 (the '327 patent"), entitled "Treatment for Interstitial Lung Disease"
issued on November 28, 2023, from Application No. 17/233,061 (the '061 Application) filed on
April 16, 2021. The inventors on the face of the '327 patent are Leigh Peterson, Peter Smith, and
Chuniq Deng. According to the records of the PTO, the '327 patent is currently assigned to UTC.
The expiration date listed in the FDA Orange Book is January 4, 2042.

The '327 patent issued with 19 claims, of which claim 1 is independent and reads as follows:

December 12, 2023                                    HIGHLY CONFIDENTIAL

**1**. A method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease, comprising administering by inhalation to the patient having pulmonary hypertension associated with interstitial lung disease an effective amount of at least 15 micrograms up to a maximum tolerated dose of treprostinil or a pharmaceutically acceptable salt thereof in a single administration event that comprises at least 6 micrograms per breath.

Claims 2-19 depend directly or indirectly from claims 1 and therefore require all of the limitations of those claims and read as follows:

December 12, 2023                                                    HIGHLY CONFIDENTIAL

**2**. The method of claim **1**, wherein said administering provides a statistically significant increase of a 6 minutes walk distance in the patient after 8 weeks, 12 weeks, or 16 weeks of the administering.

**3**. The method of claim **1**, wherein said administering increases a 6 minutes walk distance of the patient by at least 10 m after 8 weeks, 12 weeks, or 16 weeks of the administering.

**4**. The method of claim **1**, wherein said administering provides a statistically significant reduction of a plasma concentration of NT-proBNP in the patient after 8 weeks, 12 weeks, or 16 weeks of the administering.

**5**. The method of claim **1**, wherein said administering reduces a plasma concentration of NT-proBNP in the patient by at least 200 pg/ml after 8 weeks, 12 weeks, or 16 weeks of the administering.

**6**. The method of claim **1**, wherein said administering provides a statistically significant reduction of at least one exacerbations of the interstitial lung disease.

**7**. The method of claim **1**, wherein said administering provides a statistically significant reduction of clinical worsening events due to the interstitial lung disease.

**8**. The method of claim **7**, wherein the clinical worsening events comprise at least one of hospitalization for cardiopulmonary indication and a decrease in a 6-minute walk distance by more than 15% compared a baseline 6-minute walk distance prior to the administering.

**9**. The method of claim **1**, wherein said administering provides a statistically significant improves of forced vital capacity (FVC) in the patient after 8 weeks, 12, weeks or 16 weeks of the administering.

**10**. The method of claim **9**, wherein said administering improves the forced vital capacity (FVC) in the patient by at least 20 ml after 8 weeks, 12 weeks, or 16 weeks of the administering.

**11**. The method of claim **1**, wherein said administering is performed by a pulsed inhalation device.

**12**. The method of claim **11**, wherein the pulsed inhalation device contains an inhalation solution comprising treprostinil or a pharmaceutically acceptable salt thereof.

**13**. The method of claim **11**, wherein the pulsed inhalation device is a nebulizer.

**14**. The method of claim **11**, wherein the pulsed inhalation device is a dry powder inhaler comprising a dry powder comprising treprostinil or a pharmaceutically acceptable salt thereof.

**15**. The method of claim **1**, wherein the effective amount of treprostinil or a pharmaceutically acceptable salt administered to the patient in a single inhalation administration event is from 15 μg to 100 μg.

**16**. The method of claim **15**, wherein the single inhalation administration event does not exceed 15 breaths by the patient.

December 12, 2023                                                    HIGHLY CONFIDENTIAL

> 17. The method of claim **1**, wherein said administering increases a 6 minutes walk distance of the patient by at least 10 m after 8 weeks of the administering.
>
> 18. The method of claim **1**, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 12 weeks of the administering.
>
> 19. The method of claim **1**, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 16 weeks of the administering.

The LIQ861 Product will not infringe claim 1 of the '327 patent under 35 U.S.C. § 271(a)-(c) because Liquidia does not perform the method steps recited in claims 1-19. Further, the LIQ861 Product will not infringe claims 4-5 and claims 9-10 of the '327 patent because the proposed label for the LIQ861 Product does not provide information regarding NT-proBNP or FVC. The LIQ861 Product will also not infringe claim 11, because the LIQ861 product does not utilize a "pulsed inhalation device." Because claims 12-14 depend from claim 11, the LIQ861 Product cannot infringe those claims. Finally, Liquidia does not infringe the claims of the '327 patent because they are invalid and/or unenforceable and one cannot infringe an invalid patent.

### B.    THE '327 PATENT IS INVALID

Claims 1-19 are recited above. Construction of the claims of the '327 patent is based on the ordinary meaning of the words used in the claims, in light of the definitions and explanations provided in the specification and prosecution history.

The claims of the '327 patent are invalid as being anticipated and/or obvious over at least U.S. Patent No. 10,716,793 ("the '793 patent) alone, or in combination with the Prescribing Information for Tyvaso dating back to at least 2009.

The claims of the '793 patent read as follows:

December 12, 2023                                                    HIGHLY CONFIDENTIAL

**1**. A method of treating pulmonary hypertension comprising administering by inhalation to a human suffering from pulmonary hypertension a therapeutically effective single event dose of a formulation comprising treprostinil or a pharmaceutically acceptable salt thereof with an inhalation device, wherein the therapeutically effective single event dose comprises from 15 micrograms to 90 micrograms of treprostinil or a pharmaceutically acceptable salt thereof delivered in 1 to 3 breaths.

**2**. The method of claim **1**, wherein the inhalation device is a soft mist inhaler.

**3**. The method of claim **1**, wherein the inhalation device is a pulsed ultrasonic nebulizer.

**4**. The method of claim **1**, wherein the inhalation device is a dry powder inhaler.

**5**. The method of claim **1**, wherein the inhalation device is a pressurized metered dose inhaler.

**6**. The method of claim **4**, wherein the formulation is a powder.

**7**. The method of claim **6**, wherein the powder comprises particles less than 5 micrometers in diameter.

**8**. The method of claim **1**, wherein the formulation contains no metacresol.

The District Court for the District of Delaware construed the phrase "pulmonary hypertension" as recited in claim 1 of the '793 patent to include all 5 PH Groups. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 464 (D. Del. 2022). That decision was affirmed by the Federal Circuit on July 24, 2023. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360 (Fed. Cir. 2023). Further, in accordance with the district court's claim construction, Table 3 of the '793 patent discloses, among other things, the "patient characteristics," of patients treated with inhaled treprostinil. (*See* '793 patent at Table 3, cols. 13-14.) Included are patients with pulmonary fibrosis, which is included within interstitial lung disease. (*Id.*)

Claim 1 of the '793 patent claims "administering by inhalation" a "single event dose" comprising "15 micrograms to 90 micrograms of treprostinil or a pharmaceutically acceptable salt thereof." (*See* '793 patent, claim 1.) Further, Example 1 of the '793 patent disclose the administration, by inhalation, of at least 6 micrograms per breadth ("TRE was delivered in 2 breaths (1000 ug/ml aerosol concentration; 30 ug/ dose; n=12). (*Id.* at Example 1.) Finally, improvement of exercise capacity in a PH patient is an inherent property of the administration of treprostinil by inhalation, a property recognized at least a decade before the '327 patent's priority date. (*See* 2009 Tyvaso label).) As such, the '793 patent anticipates at least claim 1 of the '327 patent.

The limitations of claims 2-10 and 17-19 of the '327 patent are inherent properties resulting from the inhalation of treprostinil and thus, the '793 patent anticipates these claims. Further, the '793 patent discloses the limitations of claims 11-14. *See* '793 patent at Claims 3 and 4; col. 7:7-49. Finally, the limitations of claims 15-16 are disclosed by the '793 patent, and thus the '793 patent anticipates these claims. *See* '793 patent at col. 7:55-64.

December 12, 2023                                                  HIGHLY CONFIDENTIAL

To the extent the '793 patent does not anticipate the claims of the '327 patent, the claims are rendered obvious by the '793 patent because a person of ordinary skill in the art would be motivated to modify the disclosure of the '793 patent to treat ILD patients in a manner to improve their exercise capacity. A POSA would have a reasonable expectation of success because the '793 patent discloses and claims treatment of all five PH groups through the inhalation of treprostinil.

To the extent the '793 patent alone does not anticipate and/or render obvious the claims of the '327 patent, the combination of the '793 patent and the Tyvaso label dating back to 2009, renders the '327 patent claims obvious.

The 2009 Tyvaso label discloses the inhalation of treprostinil to patient with pulmonary hypertension. The Tyvaso label discloses a "single administration event" that comprises delivery of 6 micrograms of treprostinil in a single breadth, and 18 micrograms of treprostinil with three breadths. *See* 2009 Tyvaso label at "Dosage and Administration." The 2009 Tyvaso label also disclosed that "Tyvaso is indicated to increase walk distance in patients with WHO Group I pulmonary arterial hypertension and NYHA Class III symptoms." *Id.* at "Indications and Usage." Thus, the Tyvaso label discloses improving exercise capacity as required by the '327 patent. The "Clinical Studies" portion of the Tyvaso label further discloses the results of the TRIUMPH I study, which demonstrated a statistically significant increase in the 6 minute walk distance test of 20 meters at week 12.

A person of ordinary skill in the art would be motivated to combine the teachings of the '793 patent with the 2009 Tyvaso label because both are directed to the same subject matter: treating pulmonary hypertension by the administration of treprostinil by inhalation. A person of ordinary skill in the art would have a reasonable expectation of success in achieving the invention claimed in the '327 patent through the combination of the '793 patent and the 2009 Tyvaso label because they both, alone and in combination, disclose the successful treatment of pulmonary hypertension. Accordingly, for the reasons discussed herein, the claims of the '327 patent are obvious in view of the '793 patent in combination with the 2009 Tyvaso label.

## IV.    CONCLUSION

The foregoing provides the detailed factual and legal bases in support of LIQUIDIA's position that the relevant claims of the Listed Patent are invalid, unenforceable, and/or will not be infringed by the manufacture, use, or sale of LIQUIDIA's LIQ861 Product.

As such, there is no reasonable basis upon which UTC or any owner or licensee of the Listed Patent can institute suit against LIQUIDIA for filing of its amendment to NDA No. 213005 as the information provided herein makes clear.

LIQUIDIA expressly reserves the right to develop and make other arguments and assert any defenses relating to non-infringement, invalidity and/or unenforceability of any or all of the claims of the Listed Patent.

**EXHIBIT 3**

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)
2024-01-10

# 42nd Annual J.P. Morgan Healthcare Conference

## Company Participants

- Michael Kaseta, Chief Financial Officer
- Roger Jeffs, Chief Executive Officer
- Rusty Schundler, General Counsel

## Other Participants

- Analyst
- Harry Pearson, JPMorgan Chase & Co.

## Presentation

### Harry Pearson  {BIO 23018115 <GO>}

Hello, all. Thank you for joining us this morning. My name is Harry Pearson. I'm a member of JPMorgan's Investment Banking Team. I'm pleased to welcome you all to Liquidia Corporation's Presentation and Q&A. Joined by Dr.Roger Jeffs, the CEO; Mike Kaseta, CFO; and Rusty Schundler, General Counsel. We'll have a presentation followed by Q&A. Take it away.

### Roger Jeffs  {BIO 2018787 <GO>}

Wonderful. Thank you, Harry. Everybody can hear me okay? Yes. So we're delighted to be presenting this -- our first podium presentation for Liquidia at JPM, and I think it signals an inflection moment for the company as a whole. I'm joined today by Mike Kaseta, our CFO; Rusty Schundler, our GC; Rajeev Saggar, our CMO; and Scott Moomaw, our Chief Commercial Officer. And I'd also like to welcome the Board members of Liquidia that are here today as well.

These are the regular forward-looking statements. I encourage you to read those and look to our filings for certain risk and uncertainties related to the stock and things I may or may not say today.

We are very excited about the acceleration and the progress that we're making at Liquidia, at the company. Our mission is to develop best-in-class therapies for patients with pulmonary hypertension, and we feel we've made significant strides towards that mission statement.

Strategically, we're positioned to drive significant market presence in a rapidly expanding PH market across our three verticals, what we call the three P's: PRINT platform technology; Products, which includes the pending approvals for YUTREPIA;

and our Pipeline asset, L606, which we licensed in this past year from our partner, Pharmosa, which is a twice-a-day sustained release formulation.

With regard to PRINT platform technology, and I want to spend a little bit of time here. Everything that we do in the pulmonary hypertension space is going to be accelerated by the way that we use our nano-molding technology to produce precise uniform particles of precise shape and composition. These particles we can really fine-tune into the appropriate range of the -- appropriate segment of the respirable range to maximize deep lung delivery.

YUTREPIA, as you may know, it has PAH approval, tentative approval for PAH. And for PH-ILD, in two weeks from today, we have a PDUFA date for that, which we're also seeking tentative approval. That approval, if granted, will be gated by market exclusivity that United Therapeutics has that ends in March.

We also have treprostinil injection. It's a generic form of Remodulin that we are the commercial partner with our partner Sandoz. And I talked to you about this sustained release formulation. But those are the three verticals where we're trying to maximize our business platform.

So, what are the markets and how do they look like? PAH and PH-ILD are highly attractive markets. And I'll break it down. If you don't know what pulmonary hypertension is, it's increased pulmonary pressure from vasculopathy in PAH or scarring of lung tissue in PH-ILD. Results in right ventricular hypertrophy and eventually death for these patients. So, a severe rare disease with continuing unmet need.

In WHO Group 1 there's 40,000 patients treated today, roughly. Three-year survival is better, it's 75%, five-year survival is about 50%. So still a lot to do there. Four mechanisms of action, 14 branded therapeutics, and over a $5 billion market opportunity if you just look at pulmonary hypertension alone. Of that, about $2.7 billion is in what we call the prostacyclin mimetic components of that. That's the market we're going after, both what's inhaled, what's in oral, and then also maybe infringing on the Remodulin franchise by having a durable therapy like YUTREPIA.

WHO Group 3 is a different beast. It was first approved in 2001, a study in WHO Group 3 patients with PH-ILD for nebulized Tyvaso. It's PAH associated with lung disease. In this instance, I'm showing that there's about 60,000 prevalent patients, which we can distill from academic research, syndicated academic research. Three-year survival is very morbid, 35%. Five-year survival is even worse, about 14%. Currently, the only available option to these patients is inhaled treprostinil, both in a nebulized and DPI format that United Therapeutics offer.

If you look on the right-hand curve, prior to 2021, the approval of PH-ILD, and 2022, the approval of the DPI format, Tyvaso was fairly static, about $400 million per annum. And you can see it's inflected a significant amount of revenue growth. And at

the end of third quarter, they reported $1.3 billion run-rate across the nebulized and DPI format. So those are the markets that we're going to enter into.

If you look at that more granularly, here's there, they broke it down for the first time, rapidly increasing demand for inhaled treprostinil. Really the value proposition though seems to be porting to the DPI formulation which we have with YUTREPIA. So again, stagnant through '21, ILD came to market, and then in '22 the DPI. If you look at the growth, the green bar is the DPI. Now the DPI accounts for about 65% of the inhaled treprostinil revenue, only 35% remains with nebulized Tyvaso. You can see it's cannibalized -- the DPI is cannibalizing nebulized share as well.

So, while all that looks good and the CAGR is impressive, the real-world reality is a little bit different. So here's a -- and I'll try to make sure I get these numbers right. Here's a prospective study from the National Jewish Health Center that was published or abstracted at the PHPN Symposia in September. National Jewish is one of the largest and best pulmonary centers in the world. It's a very capable expert in the treatment of patients with PH-ILD. They treated 26 patients that were naive to prostacyclines. So never experienced prostacyclines, but their disease demanded an increase in therapy. So they put them on inhaled treprostinil in the DPI format.

They also started 22 patients that were transitioned from Tyvaso, nebulized to Tyvaso DPI. Of the 26 that started, 18 discontinued in the naive subset group, so 69%. Of that, the main reason was clinical worsening and cough. In the naive group or the transition group, 22 started, 11 DCed, or 50% discontinuation. So, of the 18 DC's in the first group, 11 went back to nebulizer. Of the 11 DC's in the second group, 7 went back to the nebulizer. That tells you it's not the drug.

So they're going back from Tyvaso DPI back to nebulize formulation. So why is that? I think it's because they couldn't deliver the dose appropriately to the patients and titrate the dose to effect. So that's the real -- first real-world experience from a large prospective cohort of patients. The time on therapy on average was between three months to six months, so it didn't take long for the therapy to fail.

So that's the market opportunity. You see there's a preference for portability and DPI use versus nebulizer. But the sustainability of the therapy, at least the way this one center used it was not that impressive. So we think YUTREPIA is going to provide a much more attractive option. And why is that?

So it's the first and only product candidate using our PRINT technology. If you look on the left, we can reliably and with high fidelity print 1.3 micron MMAD particles. It's in a trefoil shape which mimics the natural form of pollen and it's free flowing. But what you also see here is no aggregation or clumping. The particles remain independent, which is critical.

On the right, this is a publication from one of our scientists in-house from 2012, where we looked within the respirable range. The respirable range is 1 micron to 5 microns. And we looked to see if we formulated particles at 4.6 microns or 1.3

microns, which is what YUTREPIA is. Look at the different distribution. And you can see on the right that the 1.3 microns performs beautifully, goes to the distal airways, fills the lungs and less deposition in the upper airway and throat. That's what you want when you have a dry powder formulation.

We have -- again, the history of what we did? How did we get this drug approved? It was through a 505 (b)(2) pathway. We showed comparable pharmacokinetics; we have a tablet formulation of 79.5 micrograms, which is comparable to nine breaths of Tyvaso. And everything now is viewed as breath equivalents, like how do you match the Tyvaso nebulized breath equivalent? So 79.5 micrograms for us matches a nine breath equivalents of Tyvaso, given four times a day.

We studied 121 patients, both naive or -- and/or transition from Tyvaso. And we've been continuing to treat patients since 2017, now with the longest duration of therapy of 5.5 years. We have seeking -- we have a PH-ILD indication which we filed for approval -- an amendment for approval over the summer, PDUFA date is January 24. So two weeks from today we'll get an answer on that application, hopefully. And critically, that application requires no additional clinical work, although we're beginning to do clinical work on PH-ILD to better inform our dosing strategy.

What we've learned at least in PAH patients through this open label extension study is that as patients progress over time, so here it's showing 2 months, 12 months, 24 months. The dose is on the left and the comparable breaths of Tyvaso is on the right.

The target breath dose is that gray bar, 9 to 12 breaths, that's what's in the indication label for Tyvaso and Tyvaso DPI. You can see, over time, the blue bars median dose that were at 15 breaths equivalents, and at 24 months 51% of patients are above 132.5 or 15 breath equivalents of Tyvaso with a max dose now at 30 breaths equivalent. This is completely changing the therapeutic profile of inhaled treprostinil. So these are at levels in terms of dose that have never been seen before. This is the clinical value and utility of YUTREPIA.

So the four elements that are critical to our success and why this would drive significant share are; that it's a portable therapy, it's tolerable, it's titratable, and durable. So, a simple pocket-sized device, convenient storage. We use a low-resistance pocket-sized inhaler, one here. Proven device, both in COPD and asthma that physicians and patients are going to be very comfortable with. It's a plastic device. You just twist it, open the capsule, hold the capsule, pierce it, close it, close it, and then two breaths. You're done. And that's the therapy. Do that four times a day based on your dose.

We've shown that it's tolerable, that's why we're achieving the breath equivalence that we're achieving. So with inhaled nebulized Tyvaso, the target dose is 9 to 12, but patients have really struggled. And I'll show you some data to get above that 9 to 12 breath threshold. And we do it with a low resistance DPI. And the reason we can use low resistance, and this is going to be important from a marketing standard, is

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)

because the particles are free-formed, mono-dispersed, and not agglomerated. You saw the pictures.

The competitive DPI molecule is not that. It's aggregated because its spray dried onto what's called an FDKP backbone. That's a co-opted technology from their inhaled insulin program. Because of that it clumps, you need a high resistance device to break that up. And then that takes more energy in a patient population where the number one symptom is shortness of breath. So probably not ideal for what you're trying to achieve.

We've shown it's titratable. Again, I showed you the curves where both the median dose and the max dose are increasing admirably over time. And then, we're trying to prolong the treatment. Again, it will help the patients and it will help from a revenue curve the longer we treat. So our goal with this type of profile is to be the best-in-class and first-in-choice prostacyclin.

And what does that mean? So that means, we're not just going to try to take the inhaled market, we're going to go after the oral market. So when a physician decides to add a prostacyclin in pulmonary arterial hypertension, they add YUTREPIA. And then we'll delay the time for the need for a more onerous parenteral therapy.

So, dose matters. And again, I think this is well-published data and it's across all routes. But I'll just show you specifically for inhaled treprostinil, first in PAH, and then I'll show it to you in PH-ILD. So this is a retrospective analysis of 5,000 patients, so a large survey sample from between 2009 and 2018. And it showed that if you got to 12 or more breaths in this data cut versus 9 breaths, you had a delayed transition to IV or subcu, greater persistence on therapy, and slightly improved survival rates.

At the bottom, though, you'll see only 25% of patients. This is real-world data, were titrated to greater than equal to 12 breaths four times a day of Tyvaso. So, with a nebulized formulation, it's been very hard to achieve satisfactory doses. That's the limitation of inhaled treprostinil.

In PH-ILD, similar story. So this is from the registration study for which PH-ILD was approved for a nebulized Tyvaso and then bridged for Tyvaso DPI. This time the data cuts are nine breaths, so greater than or equal to nine breaths with nine breaths. You can see on the left, if you got to nine breaths or more, more clinical improvement in the red, and less clinical worsening in the blue. The primary outcome measure, six minute walk distance, same thing. Better outcome, the higher the dose, particularly prominent as you got above into the 10 to 12 breath range. So we're excited about that because dose matters and we have the therapy that can deliver the highest and most effective dose, we believe.

And that will be manifest in our product labeling. So if you look at the products, people say, well, how do you differentiate? We're going to differentiate on formulation. So the print technology formulation allows the use of a low resistance device, which is easy for the patients to use. So it's highly user friendly. Our label will

encompass these higher doses. So if you look down to the dose titration described in the label, this is from our original submission. It included doses up to 24 breath equivalents of Tyvaso. The competitive molecule only has 11 to 12 breaths as their target indicated dose.

So we'll differentiate on the most critical aspect of the utility of a prostacyclin and an inhaled prostacyclin in particular as you've seen by dose. And we'll do it with a low resistance device. Our product requires no refrigeration during the product lifetime, and no loss of powder or required device orientation to the liver. So if you drop the device, no spillage. There's more sensitive and could spill drug if dropped.

I'll talk briefly about the legal just to frame it. In the Q&A, Rusty's here so he can answer questions on process. So, we had a Federal Circuit Court decision on December 20th that affirmed the invalidity of the 793 patent, the PTAB decision. That decision will override the previous district court decision. So now, in aggregate, all three patents that that were asserted against us, that were Orange Book listed, we found no claim that's either valid or infringed. So, we've passed the substantive bar of what we want to do. And we think this point forward for PAH, it's more of just a process issue, how do we turn the tentative approval that we have to a final approval.

For PH-ILD, there is a second Hatch-Waxman lawsuit that was filed. So when we filed the amendment, we had to recertify against the Orange Book listed patents. 793 was still in play at that time. Obviously, that will go away with the recent ruling. And the 327 patent, which we think is really -- we don't believe will -- we know it won't cause a regulatory stay. So it won't trigger a regulatory stay because it was not Orange Book listed at the time of our original NDA application. So it's more -- that would just be more of a legal case around what that patent is. And we press released it on Monday, what we think about that patent.

The next steps then from process, we're going to ask the district court to set aside the existing injunction. In fact, we did that on December 26. We have about, with the briefing schedules ongoing, by January 23, and Rusty can talk about the details. The case will be fully briefed in Judge Andrews' hands to releasing the existing injunction. And then, it's just determined by his own sort of schedule as to when that will happen.

In parallel, we're already in dialogue with the FDA on figuring out how we move the tentative approval to final approval. So they're aware of the affirmation in the Federal Circuit. And we're just -- we're trying to work with them now, especially with the pending tentative approval for ILD in play also, how do we get both done and on what timeline.

So the other question is, are you -- when will you be ready to launch? We're ready now. So that's the good news. So, we have 50 sales reps that we onboarded in October. They're very scientifically fluent and commercially capable. They have 10 years of rare disease experience on average. And about 60% to 70% of them have direct PAH experience, as you can see from companies at the bottom. If not, they're

superstars from the rare disease field and are used to these high-touch patients, and how to promote and sell into the space.

As I said, we put them in the field early. That was a bit at risk, but we wanted them trained and ready to go. Scott's had his team ready to go since January 1. So again, ready today. We're just waiting on the final things to happen from a process standpoint.

We also, in 2023, strengthened our pipeline. I won't spend a lot of time on this one as we begin to get more data. But if you look here, it's basically liposomal encapsulated treprostinil. The liposomal encapsulation extensive product PK from 4 hours to 12 hours. So it sets up for a twice a day versus 4x a day regimen. It has a 7x lower Cmax, which is good. So you've extended the PK curve, so having a lower Cmax should improve the tolerability profile. And we match on AUC to infinity, when you do the proper PKM comparisons.

We've got this license with very strong proof-of-concept data. So there was an existing open label ongoing study -- there's 20 of the 60 -- that study is enrolling now, there's 20 of those 60 patients event are in. Some heavy have gone past one year, some are already at the 25 to 27 breaths equivalents. So tolerable, titratable, durable. So the key hallmarks of YUTREPIA seem to be according to the twice-a-day formulation. And when you think about YUTREPIA and DPIs versus nebulized, we did four things, improved portability, tolerability, titratability, and durability. The one thing we didn't change was regimen, still 4x a day. L606 changes that fifth paradigm.

So that's the value proposition here. We're going to start that study, those plans by the end of this year. It'll go through its regular 18 months to 24 months enrollment. There's a precedent pathway, we'll just do the same study that UTHR did for Tyvaso nebulized, the INCREASE study. Six months to get the patients through this study; three months to analyze; one year for review and approval. So we think roughly four years from start we can get the goal. Low-hanging fruit. There's precedent knowledge that PH -- in PAH that inhaled treprostinil will work. We've just got a longer-acting formulation of that. So excited about that. And it also will be highly portable. It's using a modern breath actuated nebulizer, much different than what the current inhaled treprostinil format looks like.

We had an FDA Type C meeting in December. We got agreement with the agency that the comparable -- So we already -- the comparable vialability was done when we acquired the program. There are ongoing open label safety study I've talked about, which is informing dosing and how we'll design the algorithm in that patient. And then there was agreement that a single placebo control study in PH-ILD, which we'll do globally, will suffice for both PH-ILD and PAH approval. And the beauty of doing it in PH-ILD, there'll be no background therapy, so we just have to beat placebo, which should be a pretty low bar.

And finally, very well capitalized. We've been very active in the past month. We've raised $126 million since reporting Q3 earnings. We closed the third quarter with

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)

$76.2 million in cash. We added $26 million in an equity raise, including $11 million from insiders, some on our Board. Added $20 million from a healthcare royalty revenue interest finance agreement, just topped up on that. And then importantly for us, we raised $75 million via PIPE, with a fund related to Patient Square Capital here in San Francisco. So we feel, and this is a critical aspect here, that if we're able to launch in both PAH and PH-ILD in April, that this funding will bridge us to profitability.

So we're ready to launch, and we look forward to questions as we try to rewrite the future of these patients with pulmonary hypertension. Thank you.

## Questions And Answers

### Q - Harry Pearson  {BIO 23018115 <GO>}

(Question And Answer)

Great. Thank you, Roger. I think I might start off with one question, then we'll hand it over to the audience. Could you expand a little bit more on the process to getting final approval and launch in PAH, and then also in PH-ILD?

### A - Roger Jeffs  {BIO 2018787 <GO>}

Yes. So I'll turn it over to Rusty, because mostly in his -- the process of that is in his hands.

### A - Rusty Schundler  {BIO 18967477 <GO>}

So, as Roger pointed out earlier, we have two ongoing Hatch-Waxman lawsuits, and I'll touch on each of them.

In the first one, which is really the one that's gating our ability to get to market, that was the original Hatch-Waxman lawsuit that they filed. They asserted three different patents against us. With the December Federal Circuit decision that we received, we now have Federal Circuit-affirmed decisions that we don't infringe any valid claims of any of those patents.

So substantively, we feel like that first Hatch-Waxman lawsuit at this point is resolved. It's now processed. So the process is we need to; one, go to the FDA and seek final approval; and two, we think we're going to have to get Judge Andrews to rescind and set aside the injunction that he issued at the end of the trial.

Again, substantively, we don't think there's an issue. In fact, we had asked him for a stay of the injunction before the Federal Circuit decision. About a week before that decision came down he denied the stay, but he denied it on grounds that he wasn't going to speculate as to what the Federal Circuit was going to do. At this point, there's no question what the Federal Circuit's going to do. They did it.

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)

He also said, as part of that opinion, that it was his view that if we did get an affirmance at the Federal Circuit, that we'd be able to launch our product. So we think he's already signaled what he thinks the answer is. Again, we just have to go through the process.

So as Roger said, on December 26 we filed our opening brief, asking him to set aside the injunction. Their response brief is due a week from yesterday, so next Tuesday. We'll get a reply the week after, on January 23. And at that point, as Roger said, it's in the judge's hands. We anticipate we'll get a decision relatively quickly on that because we do think this is top of mind for him.

The second lawsuit, we don't think is a gating issue for us on any of the indications. They again asserted the 793 patent. With December's decision we don't think there's really an issue in that lawsuit at all anymore. In fact, we filed, as we announced on Monday, a motion to dismiss all claims related to that patent.

The other patent, the 327 patent. I think there are a couple of things that are important to point out about that. First, as Roger noted, there's no 30-month stay. A 30-month stay, by statute, it has to be a patent that was submitted to the Orange Book before the original NDA was filed. There's no question the 327 patent was not submitted to the Orange Book before our original NDA was filed. What that means is that United Therapeutics would have to affirmatively get the court to issue a preliminary injunction for them to be able to interfere at all with our ability to launch in PAH and PH-ILD.

In order to do that, they've got to convince the judge that they're substantially likely to succeed on the merits. And as we've been saying, we pointed out this patent was coming last June. We've talked about it in our earnings calls. And as we said all along, we think there's substantial prior auth before this patent. And we think there are going to be significant challenges to United Therapeutics upholding the validity of that patent. We started showing some of our work in what we filed on Monday, and we press released that pointing out at least some of the prior auth. But I'd note that's not all the prior auth that's out there. This was a patent application they filed in 2020, meaning everything prior to 2020 is prior auth. That includes the 793 patent, which covers almost the same thing.

And the other thing to keep in mind is the 327 patent, what that's really covering is physicians treating PH-ILD patients with Tyvaso in accordance with the Tyvaso label. And doctors have been doing that for more than 10 years. Rajeev Saggar, our CMO, when he was treating patients, he was treating patients with Tyvaso, PH-ILD patients with Tyvaso. So again, we don't think there's anything in that patent that's anything new, and certainly not new as of 2020. Again, we anticipate that they will seek a preliminary injunction, but we feel confident that we've got the prior auth that we'll be ready for that assertion of a preliminary injunction.

## A - Roger Jeffs {BIO 2018787 <GO>}

And again, that's specific to PH-ILD. Won't interfere with what we're doing in PAH in terms of launch.

## Q - Analyst

Assuming no preliminary injunction --

## Q - Harry Pearson {BIO 23018115 <GO>}

Sorry. Would you just mind into the microphone?

## Q - Analyst

Assuming no preliminary injunction, are you willing to launch at risk in 2024 in PH-ILD?

## A - Rusty Schundler {BIO 18967477 <GO>}

Yes. So what we've said consistently is, we'll make that decision at the time that we're preparing to launch. But if we look at and survey the patents that are out there at that time, and we don't think there are any valid patents that have been issued at that point in time. We're not going to hold back our launch for a patent that we think is invalid.

## Q - Analyst

And then similarly, if there's some way you can't launch in PH-ILD, would you consider just launching in PAH, and then waiting until PH-ILD is resolved?

## A - Roger Jeffs {BIO 2018787 <GO>}

Yes. We're going to launch the product as soon as we're able. I mean, our goal is to get this therapy to patients. We've been waiting a long time to do this. There's a demand curve that I think warrants that we get there, and get there soon. And you can see potentially that the current existing therapies are problematic, that we can improve upon that. So, as soon as we're able to launch, as I said, we're ready to launch. We have the sales team in force, sales aides, marketing materials, everything is ready to go as soon as we have freedom to operate.

## Q - Analyst

Thank you.

I just had a question. What drove the timing of the ILD amendment? Why didn't you file earlier, I guess?

## A - Roger Jeffs {BIO 2018787 <GO>}

Some of it was just to see -- really nothing drove it. And again, what's really driving it is the back end. Market exclusivity expires in end of March, so we worked from that point backwards. And we wanted to have a decision in hand. Again, what's going to happen on the 24 if the agency agrees is they'll give us another tentative approval and add PH-ILD to the tentative approval indication. So it's really just trying to get ahead of that timeline, nothing specific about trying to try to do anything clever.

## Q - Analyst

All right. So it was just coincidence I was close to the pot of the patent.

## A - Roger Jeffs  {BIO 2018787 <GO>}

Like I said, we worked backwards.

## A - Rusty Schundler  {BIO 18967477 <GO>}

And just to be clear, for them to have gotten a 30 month stay that patent would have had to be submitted to the Orange Book before the original NDA, not the amendment. And again, the statute's very clear at that point.

## Q - Harry Pearson  {BIO 23018115 <GO>}

I guess maybe one follow-up question. Sorry, I think there's one more in the audience.

## Q - Analyst

How are you guys thinking about pricing? Is this going to be a premium product priced at parity or discounted Tyvaso?

## A - Roger Jeffs  {BIO 2018787 <GO>}

Yes. Maybe Mike, you've been managing that, you can talk about it.

## A - Michael Kaseta  {BIO 20437086 <GO>}

Yes. So, obviously, it's one of the areas of launch that we've been thinking about and strategizing, and having a lot of discussions about. We're not going to divulge our specific pricing strategy. I think our goal from day one has always been to make sure have -- that patients have choice. Patients haven't had choice in 20 years in this space. And we want to make sure that patients have the option to be able to get our product.

And we're committed to that goal and that is top of mind in all of our thinking. We have great relationships with the payers. We've had discussions with them over the last couple of years. They've obviously ramped up and are aware of the situation. And we are, like I said, our main commitment is to patients in PAH and PH-ILD, and we're going to do what we need to do to make sure that they have access to our product.

## A - Roger Jeffs  {BIO 2018787 <GO>}

And we've had top-to-top conversations with the leadership at the payers already.

## Q - Harry Pearson  {BIO 23018115 <GO>}

What is the strategy of the new PH-ILD study?

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)

2024-01-10

## A - Roger Jeffs {BIO 2018787 <GO>}

Yes. So principally -- so really there's been no prospective DPI study with inhaled treprostinil in the space. So for us, we thought, it would be the right thing to do is to try to study the drug in that patient population for which we are seeking approval. So it's really just a better-informed dosing.

And what we want to learn there is, what's the pace of titration in PH-ILD with YUTREPIA? And how does that compare to the pace of titration for patients with pulmonary arterial hypertension? Because they have a comorbid lung disease, it is possible they could be a little bit more sensitive to dose increase. And not that they won't tolerate it, but you may have to go a little bit slower. Because everybody wants to tweak and tune the dose to maximum effect so you get maximum benefit with minimal side effects, so the patient feels better. They come into your office, they're short of breath, fatigued, miserable. So, they want to feel better faster.

So really that study we're going to now, for the first time, put YUTREPIA into a PH-ILD patient and see does it -- do they behave, from a tolerability standpoint, like a PH patient? Or do we need to go a little bit softer. So that's all we're trying to do. We think that, personally, I think the product profile is going to be the same in both populations, but we're going to test that theory.

It's open label data, so we're going to have a good hard look at it, and we'll present that data as it accrues over time. So I think it will inform a lot of things, and hopefully contradict what the experience that's being seen at the National Jewish Health Center, where there's clear issues. They're not getting to an effect that warrants that those patients want to stay on that drug, they're coming off. We're going to do the research to make sure that doesn't happen with YUTREPIA.

## Q - Harry Pearson {BIO 23018115 <GO>}

Any other questions in the audience? I think one follow-up I just had, and Roger, you touched upon this briefly, is about the cash runway. And Mike, I wonder if you have any color you wanted to add to that and how you feel about that?

## A - Michael Kaseta {BIO 20437086 <GO>}

No, thanks for the question. I think, over the last couple of years, maintaining strength on our balance sheet has always been important to us. And I think we feel today, as Roger talked about, the $126 million that we raised, we've never been in a stronger position. It has afforded us the opportunity to onboard our sales force, have them hit the ground running. We've been building commercial supply since the beginning of 2002 -- 2022. So we have sufficient commercial supply for what we anticipate to be the first years of demand, and we are accelerating that production.

So, we feel very confident, as Roger said, if we're able to launch, let's say by April in both PAH and PH-ILD, we think our current cash, as it stands now, can bridge us to profitability. And we'll not need to access capital markets unless we chose to.

FINAL TRANSCRIPT
Liquidia Corp (LQDA US Equity)

## Q - Harry Pearson  {BIO 23018115 <GO>}

Fantastic.

## A - Roger Jeffs  {BIO 2018787 <GO>}

Yes. And it's -- I mean, I think the thing is it just -- we have the proper amount of fuel to really fire it on all cylinders on all things we're trying to achieve. So across the three verticals of platform, products, and pipeline, we now can spend away and maximize the value of the product. That's what we're trying to do because it's going to benefit patients and it'll benefit other stakeholders, obviously.

## Q - Harry Pearson  {BIO 23018115 <GO>}

Sure. Fine.

## Q - Analyst

Thanks. I guess, a question for Rusty. Can you just review one more time, can you de-link PAH from ILD to get a full approval on PAH first? Or how, what are the mechanics of that?

## A - Rusty Schundler  {BIO 18967477 <GO>}

Yes. So I think that's part of the dialogue with the agency. Again, from our perspective, though, first of all, if somehow they got an injunction on PH-ILD, yes, ultimately we will decouple the two. I think the specific sequence over the next three months is what we're talking to the agency about with the regulatory exclusivity that goes until March 31. So that's part of the dialogue with the agency. But from our perspective, again, you're talking about a couple weeks here or there, probably. So, again, it's part of the dialogue, though.

## A - Roger Jeffs  {BIO 2018787 <GO>}

But that's the exact logistics that we're trying to say, like, what's the best opportunity for us to convert the tentative for PAH to full. And then, once you decide on PH-ILD, what's the implication of that favorable decision and how do we then convert that.

## Q - Harry Pearson  {BIO 23018115 <GO>}

Great. Well, if there are no other questions, any last remarks? Otherwise, I think we can wrap up.

## A - Roger Jeffs  {BIO 2018787 <GO>}

No. So, we appreciate your time and attention, even those online. Thank you for listening in. And we look forward to working hard and providing the value we all seek. Thank you.

*This transcript may not be 100 percent accurate and may contain misspellings and other inaccuracies. This transcript is provided "as is", without express or implied warranties of any kind. Bloomberg retains all rights to this transcript and provides it solely for your personal, non-commercial use. Bloomberg, its suppliers and third-party agents shall have no liability for errors in this transcript or for lost profits, losses, or direct, indirect, incidental, consequential, special or punitive damages in connection with the furnishing, performance or use of such transcript. Neither the information nor any opinion expressed in this transcript constitutes a solicitation of the purchase or sale of securities or commodities. Any opinion expressed in the transcript does not necessarily reflect the views of Bloomberg LP. © COPYRIGHT 2024, BLOOMBERG LP. All rights reserved. Any reproduction, redistribution or retransmission is expressly prohibited.*

**EXHIBIT 4**



## Liquidia Corporation Provides Update on New Drug Application for YUTREPIA™ (treprostinil) inhalation powder

January 25, 2024

MORRISVILLE, N.C., Jan. 25, 2024 (GLOBE NEWSWIRE) -- Liquidia Corporation (the Company) (NASDAQ: LQDA) announced today that the U.S. Food and Drug Administration (FDA) provided an update on its review of the New Drug Application (NDA) for YUTREPIA™ (treprostinil) inhalation powder to treat pulmonary arterial hypertension (PAH) and pulmonary hypertension associated with interstitial lung disease (PH-ILD). The FDA informed the Company that it is confirming the process for adding the PH-ILD indication as an amendment to the NDA for YUTREPIA. Accordingly, the FDA is not able to issue an action letter in time to meet the previously issued Prescription Drug User Fee Act (PDUFA) goal date of January 24, 2024, and their review remains ongoing. The FDA did not request any additional clinical data to support the NDA and did not issue a new PDUFA goal date.

Dr. Roger Jeffs, Chief Executive Officer, said: "We are in active communication with the FDA regarding the process we followed to amend our NDA to add PH-ILD to the labeled indication. Whether the NDA is amended or supplemented, we will continue to prepare for the final FDA approval of YUTREPIA to treat both PAH and PH-ILD patients following the expiration of regulatory exclusivity for Tyvaso® on March 31, 2024. As communicated by the tentative approval to treat PAH, YUTREPIA has already met the regulatory standards for quality, safety and efficacy. We remain committed to addressing the unmet needs across all patients whose lives may be improved by the unique benefits of YUTREPIA."

On November 5, 2021, the FDA issued a tentative approval for YUTREPIA for the treatment of PAH to improve exercise ability in adult patients with New York Heart Association (NYHA) Functional Class II-III symptoms. In July 2023, Liquidia filed an amendment to its New Drug Application for YUTREPIA, seeking to add PH-ILD to the label. The FDA previously confirmed that YUTREPIA may include the treatment of PH-ILD to the proposed label for YUTREPIA without additional clinical studies.

YUTREPIA also remains subject to ongoing litigation. Liquidia filed a request for Judge Andrews of the U.S. District Court for the District of Delaware (District Court) to set aside the injunction that was instituted in August 2022 tied to litigation filed by United Therapeutics (UTHR) alleging patent infringement of U.S. Patent No. 10,716,793 (the '793 Patent) in Case No. 1:20-cv-00755-RGA (the Original Hatch-Waxman Litigation). On December 20, 2023, the United States Court of Appeals for the Federal Circuit (CAFC) affirmed the earlier decision by the Patent Trial and Appeal Board (PTAB), which found all claims of the '793 Patent to be unpatentable due to the existence of prior art cited by Liquidia in *inter partes* review proceedings.

Additionally, in September 2023, UTHR filed a second complaint for patent infringement in District Court in Case No. 1:23-cv-00975-RGA (the New Hatch-Waxman Litigation). As of January 22, 2024, the only patent at issue is U.S. Patent No. 11,826,327 (the '327 Patent) which issued November 30, 2023. UTHR has stipulated to the dismissal of the '793 Patent from the New Hatch-Waxman Litigation as a result of the CAFC decision affirming invalidity of the '793 Patent. The '327 Patent, the sole remaining patent at issue in the New Hatch-Waxman Litigation, was not issued before Liquidia submitted the NDA for YUTREPIA in January 2020 to treat PAH. Therefore, the Company believes that final FDA approval for YUTREPIA will not be subject to any statutory 30-month stay arising from the New Hatch-Waxman Litigation per Section 505(c)(3)(C) of the Federal Food, Drug and Cosmetic Act.

**About YUTREPIA™(treprostinil) inhalation powder**

YUTREPIA is an investigational, inhaled dry powder formulation of treprostinil delivered through a convenient, low-resistance, palm-sized device. YUTREPIA was designed using Liquidia's PRINT® technology, which enables the development of drug particles that are precise and uniform in size, shape, and composition, and that are engineered for enhanced deposition in the lung following oral inhalation. Liquidia has completed INSPIRE, or Investigation of the Safety and Pharmacology of Dry Powder Inhalation of Treprostinil, an open-label, multi-center phase 3 clinical study of YUTREPIA in patients diagnosed with PAH who are naïve to inhaled treprostinil or who are transitioning from Tyvaso® (nebulized treprostinil). YUTREPIA is currently being studied in the ASCENT trial, an Open-Label Prospective Multicenter Study to Evaluate Safety and Tolerability of Dry Powder Inhaled Treprostinil in Pulmonary Hypertension, with the objective of informing YUTREPIA's dosing and tolerability profile in patients with PH-ILD. YUTREPIA was previously referred to as LIQ861 in investigational studies.

**About Liquidia Corporation**

Liquidia Corporation is a biopharmaceutical company focused on the development and commercialization of products in pulmonary hypertension and other applications of its PRINT® Technology. The Company operates through its two wholly owned subsidiaries, Liquidia Technologies, Inc. (Liquidia Technologies) and Liquidia PAH, LLC (Liquidia PAH). Liquidia Technologies has developed YUTREPIA™ (treprostinil) inhalation powder for the treatment of PAH and PH-ILD. Liquidia Technologies is also developing L606, an investigational liposomal formulation of treprostinil administered twice-daily with a short-duration next-generation nebulizer, for use in North America. Liquidia PAH provides for the commercialization of pharmaceutical products to treat pulmonary disease, such as generic Treprostinil Injection. For more information, please visit www.liquidia.com.

Tyvaso® is a registered trademark of United Therapeutics Corporation.

**Cautionary Statements Regarding Forward-Looking Statements**
This press release may include forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. All statements contained in this press release other than statements of historical facts, including statements regarding our future results of operations and financial position, our strategic and financial initiatives, our business strategy and plans and our objectives for future operations, are forward-looking statements. Such forward-looking statements, including statements regarding clinical trials, clinical studies and other clinical work (including the funding therefor, anticipated patient enrollment, safety data, study data, trial outcomes, timing or associated costs), regulatory applications and related submission contents and timelines, including the potential for final FDA approval of the NDA for YUTREPIA, the FDA's authority to request new or additional information related thereto and any potential delays of regulatory approval in connection therewith, the timeline or outcome related to patent litigation in the U.S. District Court for the District of Delaware or *inter partes* review proceedings conducted at the PTAB, including appeals of decisions in any such proceedings, the timeline associated with any regulatory stay provisions, the issuance of patents by the USPTO and our ability to execute

on our strategic or financial initiatives, involve significant risks and uncertainties and actual results could differ materially from those expressed or implied herein. The favorable decisions of lower tribunals are not determinative of the outcome of the appeals of the decisions. The words "anticipate," "believe," "continue," "could," "estimate," "expect," "intend," "may," "plan," "potential," "predict," "project," "should," "target," "would," and similar expressions are intended to identify forward-looking statements. We have based these forward-looking statements largely on our current expectations and projections about future events and financial trends that we believe may affect our financial condition, results of operations, business strategy, short-term and long-term business operations and objectives and financial needs. These forward-looking statements are subject to a number of risks discussed in our filings with the SEC, as well as a number of uncertainties and assumptions. Moreover, we operate in a very competitive and rapidly changing environment and our industry has inherent risks. New risks emerge from time to time. It is not possible for our management to predict all risks, nor can we assess the impact of all factors on our business or the extent to which any factor, or combination of factors, may cause actual results to differ materially from those contained in any forward-looking statements we may make. In light of these risks, uncertainties and assumptions, the future events discussed in this press release may not occur and actual results could differ materially and adversely from those anticipated or implied in the forward-looking statements. Nothing in this press release should be regarded as a representation by any person that these goals will be achieved, and we undertake no duty to update our goals or to update or alter any forward-looking statements, whether as a result of new information, future events or otherwise.

**Contact Information**

**Media & Investors:**
Jason Adair
Chief Business Officer
919.328.4400
jason.adair@liquidia.com



Source: Liquidia Corporation

**EXHIBIT 5**

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: May 12, 2021 | First Named Inventor | Leigh Peterson |
| | Art Unit | 1629 |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet | 1 | of | 5 | Attorney Docket Number | 080618-2002 |

**U.S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | 4,306,075-A | 12-15-1981 | ARISTOFF, PAUL A. | |
| | A2 | 5,153,222-A | 10-06-1992 | TADEPALLI ET AL. | |
| | A3 | 5,234,953-A | 08-10-1993 | CROW ET AL. | |
| | A4 | 6,054,486-A | 04-25-2000 | CROW ET AL. | |
| | A5 | 6,441,245-B1 | 08-27-2002 | MORIARTY ET AL. | |
| | A6 | 6,521,212-B1 | 02-18-2003 | CLOUTIER ET AL. | |
| | A7 | 6,528,688-B2 | 03-04-2003 | MORIARTY ET AL. | |
| | A8 | 6,700,025-B2 | 03-02-2004 | MORIARTY ET AL. | |
| | A9 | 6,756,033-B2 | 06-29-2004 | CLOUTIER ET AL. | |
| | A10 | 6,756,117-B1 | 06-29-2004 | BARNES, MICHAEL D. | |
| | A11 | 6,803,386-B2 | 10-12-2004 | SHORR ET AL. | |
| | A12 | 6,809,223-B2 | 10-26-2004 | MORIARTY ET AL. | |
| | A13 | 7,199,157-B2 | 04-03-2007 | WADE ET AL. | |
| | A14 | 7,384,978-B2 | 06-10-2008 | PHARES ET AL. | |
| | A15 | 7,417,070-B2 | 08-26-2008 | PHARES ET AL. | |
| | A16 | 7,544,713-B2 | 06-09-2009 | PHARES ET AL. | |
| | A17 | 7,879,909-B2 | 02-01-2011 | WADE ET AL. | |
| | A18 | 7,999,007-B2 | 08-16-2011 | JEFFS ET AL. | |
| | A19 | 8,232,316-B2 | 07-31-2012 | PHARES ET AL. | |
| | A20 | 8,242,305-B2 | 08-14-2012 | BATRA ET AL. | |
| | A21 | 8,252,839-B2 | 08-28-2012 | PHARES ET AL. | |
| | A22 | 8,349,892-B2 | 01-08-2013 | PHARES, KENNETH R. | |
| | A23 | 8,350,079-B2 | 01-08-2013 | WALSH, DAVID A. | |
| | A24 | 8,410,169-B2 | 04-02-2013 | PHARES ET AL. | |
| | A25 | 8,461,393-B2 | 06-11-2013 | SHARMA, VIJAY | |
| | A26 | 8,481,782-B2 | 07-09-2013 | BATRA ET AL. | |
| | A27 | 8,497,393-B2 | 07-30-2013 | BATRA ET AL. | |
| | A28 | 8,536,363-B2 | 09-17-2013 | PHARES ET AL. | |
| | A29 | 8,563,614-B2 | 10-22-2013 | WADE ET AL. | |
| | A30 | 8,609,728-B2 | 12-17-2013 | ROTHBLATT ET AL. | |
| | A31 | 8,653,137-B2 | 02-18-2014 | JEFFS ET AL. | |
| | A32 | 8,658,694-B2 | 02-25-2014 | JEFFS ET AL. | |
| | A33 | 8,747,897-B2 | 06-10-2014 | KIDANE ET AL. | |
| | A34 | 8,765,813-B2 | 07-01-2014 | WADE ET AL. | |
| | A35 | 8,940,930-B2 | 01-27-2015 | BATRA ET AL. | |
| | A36 | 9,029,607-B2 | 05-12-2015 | MCGOWAN ET AL. | |
| | A37 | 9,050,311-B2 | 06-09-2015 | PHARES ET AL. | |
| | A38 | 9,156,786-B2 | 10-13-2015 | BATRA ET AL. | |
| | A39 | 9,199,908-B2 | 12-01-2015 | PHARES ET AL. | |
| | A40 | 9,255,064-B2 | 02-09-2016 | INSMED INCORPORATION | |
| | A41 | 9,278,901-B2 | 03-08-2016 | PHARES ET AL. | |
| | A42 | 9,278,902-B2 | 03-08-2016 | TANG ET AL. | |
| | A43 | 9,278,903-B2 | 03-08-2016 | TANG ET AL. | |
| | A44 | 9,339,507-B2 | 05-17-2016 | OLSCHEWSKI ET AL. | |
| | A45 | 9,346,738-B2 | 05-24-2016 | JAIN ET AL. | |
| | A46 | 9,358,240-B2 | 06-07-2016 | OLSCHEWSKI ET AL. | |
| | A47 | 9,371,264-B2 | 06-21-2016 | BECKER ET AL. | |
| | A48 | 9,388,154-B2 | 07-12-2016 | YIANNIKOUROS ET AL. | |
| | A49 | 9,394,227-B1 | 07-19-2016 | ZHANG ET AL. | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| | Complete if Known |
|---|---|
| Substitute for form 1449/PTO | |
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | |

| | |
|---|---|
| **Application Number** | 17/233061 |
| **Filing Date** | 4/16/2021 |
| **First Named Inventor** | Leigh Peterson |
| Art Unit | 1629 |
| Examiner Name | Unassigned |
| Attorney Docket Number | 080618-2002 |

Date Submitted: May 12, 2021

*(use as many sheets as necessary)*

Sheet | 2 | of | 5

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number / Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A50 | 9,422,223-B2 | 08-23-2016 | PHARES ET AL. | |
| | A51 | 9,469,600- | 10-18-2016 | MALININ ET AL. | |
| | A52 | 9,505,737-B2 | 11-29-2016 | BECKER ET AL. | |
| | A53 | 9,624,156-B2 | 04-18-2017 | PHARES ET AL. | |
| | A54 | 9,643,911-B2 | 05-09-2017 | ZHANG ET AL. | |
| | A55 | 9,701,616-B2 | 07-11-2017 | ZHANG ET AL. | |
| | A56 | 9,758,465-B2 | 09-12-2017 | LAING, PETER | |
| | A57 | 9,776,982-B2 | 10-03-2017 | BECKER ET AL. | |
| | A58 | 9,845,305-B2 | 12-19-2017 | BECKER ET AL. | |
| | A59 | 9,878,972-B2 | 01-30-2018 | PHARES ET AL. | |
| | A60 | 9,957,200-B2 | 05-01-2018 | BEALL ET AL. | |
| | A61 | 10,010,518-B2 | 07-03-2018 | MALININ ET AL. | |
| | A62 | 10,053,414-B2 | 08-21-2018 | ZHANG ET AL. | |
| | A63 | 10,246,403-B2 | 04-02-2019 | ZHANG ET AL. | |
| | A64 | 10,343,979-B2 | 07-09-2019 | MALININ ET AL. | |
| | A65 | 10,344,012-B2 | 07-09-2019 | BECKER ET AL. | |
| | A66 | 10,376,525-B2 | 08-13-2019 | OLSCHEWSKI ET AL. | |
| | A67 | 10,450,290-B2 | 10-22-2019 | BECKER ET AL. | |
| | A68 | 10,464,877-B2 | 11-05-2019 | ZHANG ET AL. | |
| | A69 | 10,464,878-B2 | 11-05-2019 | ZHANG ET AL. | |
| | A70 | 10,494,327-B2 | 12-03-2019 | LAING, PETER | |
| | A71 | 10,526,274-B2 | 01-07-2020 | MALININ ET AL. | |
| | A72 | 10,703,706-B2 | 07-07-2020 | ZHANG ET AL. | |
| | A73 | 10,716,793-B2 | 07-21-2020 | OLSCHEWSKI ET AL. | |
| | A74 | 10,752,733-B2 | 08-25-2020 | ISHIHARA, YU | |
| | A75 | 2008/0200449-A1 | 08-21-2008 | OLSCHEWSKI ET AL. | |
| | A76 | 2008/0280986-A1 | 11-13-2008 | WADE ET AL. | |
| | A77 | 2009/0036465-A1 | 02-05-2009 | ROSCIGNO ET AL. | |
| | A78 | 2009/0124697-A1 | 05-14-2009 | CLOUTIER ET AL. | |
| | A79 | 2012/0197041-A1 | 08-02-2012 | BATRA ET AL. | |
| | A80 | 2013/0184295-A1 | 07-18-2013 | SPRAGUE ET AL. | |
| | A81 | 2013/0331593-A1 | 12-12-2013 | ALPHORA RESEARCH INC. | |
| | A82 | 2014/0024856-A1 | 01-23-2014 | GIUST ET AL. | |
| | A83 | 2014/0275262-A1 | 09-18-2014 | PHARES ET AL. | |
| | A84 | 2014/0275616-A1 | 09-18-2014 | BATRA ET AL. | |
| | A85 | 2014/0323567-A1 | 10-30-2014 | LAING, PETER | |
| | A86 | 2015/0148414-A1 | 05-28-2015 | INSMED INCORPORATION | |
| | A87 | 2015/0299091-A1 | 10-22-2015 | BATRA ET AL. | |
| | A88 | 2015/0315114-A1 | 11-05-2015 | CAYMAN CHEMICAL COMPANY INC. | |
| | A89 | 2015/0328232-A1 | 11-19-2015 | INSMED INCORPORATION | |
| | A90 | 2015/0376106-A1 | 12-31-2015 | BATRA ET AL. | |
| | A91 | 2016/0030355-A1 | 02-04-2016 | KIDANE ET AL. | |
| | A92 | 2016/0030371-A1 | 02-04-2016 | PHARES ET AL. | |
| | A93 | 2016/0045470-A1 | 02-18-2016 | DR. REDDY'S LABORATORIES LIMITED | |
| | A94 | 2016/0051505-A1 | 02-25-2016 | PHARES ET AL. | |
| | A95 | 2016/0107973-A1 | 04-21-2016 | BATRA ET AL. | |
| | A96 | 2016/0129087-A1 | 05-12-2016 | CHRISTE ET AL. | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: May 12, 2021 *(use as many sheets as necessary)* | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| | First Named Inventor | Leigh Peterson |
| | Art Unit | 1629 |
| | Examiner Name | Unassigned |

| Sheet | 3 | of | 5 | Attorney Docket Number | 080618-2002 |
|---|---|---|---|---|---|

### U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A97 | 2016/0143868-A1 | 05-26-2016 | OLSCHEWSKI ET AL. | |
| | A98 | 2016/0152548-A1 | 06-02-2016 | GAO ET AL. | |
| | A99 | 2016/0175319-A1 | 06-23-2016 | FREISSMUTH ET AL. | |
| | A100 | 2017/0095432-A1 | 04-06-2017 | PHARES ET AL. | |
| | A101 | 2018/0153847-A1 | 06-07-2018 | PHARES ET AL. | |
| | A102 | 2019/0321290-A1 | 10-24-2019 | GUARNERI ET AL. | |
| | A103 | 2021/0054009-A1 | 02-25-2021 | PHARES ET AL. | |

### UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document Serial Number-Kind Code[2] *(if known)* | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A104 | 63/036,561 | 06-09-2020 | BATRA ET AL. | |
| | A105 | 63/125,145 | 12-14-2020 | PHARES ET AL. | |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | A106 | WO-00/57701-A1 | 10-05-2000 | UNITED THERAPEUTICS CORP | | |
| | A107 | WO-2005/007081-A3 | 01-27-2005 | UNITED THERAPEUTICS CORP | | |
| | A108 | WO-2014/085813-A1 | 06-05-2014 | INSMED INCORPORATED | | |
| | A109 | WO-2016/038532-A1 | 03-17-2016 | MYLAN LABORATORIWA LIMITED | | |
| | A110 | WO-2016/055819-A1 | 04-14-2016 | CHINOIN GYÖGYSZER ÉS VEGYÉSZETI TERMÉKEK GYÁRA ZRT | | |
| | A111 | WO-2016/081658-A1 | 05-26-2016 | INSMED INC | | |
| | A112 | WO-2016/105538-A1 | 06-30-2016 | SANDIA CORPORATION SANDIA NATIONAL LABORATORIES | | |
| | A113 | WO-2017/192993-A1 | 11-09-2017 | LIQUIDIA TECHNOLOGIES, INC. | | |
| | A114 | WO-2018/058124-A1 | 03-29-2018 | UNITED THERAPEUTICS CORPORATION | | |
| | A115 | WO-2019/237028-A1 | 12-12-2019 | MANNKIND CORPORATION | | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO<br><br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br><br>Date Submitted: May 12, 2021<br><br>*(use as many sheets as necessary)* | | ***Complete if Known*** | |
|---|---|---|---|
| | | Application Number | 17/233061 |
| | | Filing Date | 4/16/2021 |
| | | First Named Inventor | Leigh Peterson |
| | | Art Unit | 1629 |
| | | Examiner Name | Unassigned |
| Sheet | 4 | of | 5 | Attorney Docket Number | 080618-2002 |

| **NON PATENT LITERATURE DOCUMENTS** | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A116 | Agarwal et al., "Inhaled Treprostinil in Group-3 Pulmonary Hypertension," J. Heart Lung Transplant., 2015 34(Suppl S343):959, abstract. | |
| | A117 | Bajwa et al., "The safety and tolerability of inhaled treprostinil in patients with pulmonary hypertension and chronic obstructive pulmonary disease," Pulmonary Circulation, 2017, 7(1):82-88. | |
| | A118 | Bonner et al., "Susceptibility of Cyclooxygenase-2-Deficient Mice to Pulmonary Fibrogenesis," American Journal of Pathology, August 2002, 161(2):459-470. | |
| | A119 | Collard et al., "Acute Exacerbation of Idiopathic Pulmonary Fibrosis: An International Working Group Report," Am. J. Respir. Crit. Care Med., August 1, 2016, 194(3):265-275. | |
| | A120 | Dernaika et al., "Iloprost Improves Gas Exchange and Exercise Tolerance in Patients with Pulmonary Hypertension and Chronic Obstructive Pulmonary Disease," Respiration, 2010, 79:377-382. | |
| | A121 | du Bois et al., "Six-Minute-Walk Test in Idiopathic Pulmonary Fibrosis," Am. J. Respir. Crit. Care Med., 2011, 183:1231-1237. | |
| | A122 | Faria-Urbina et al., "Inhaled Treprostinil in Pulmonary Hypertension Associated with Lung Disease," Lung, 2018, 196:139-146. | |
| | A123 | Keerthisingham et al., "Cyclooxygenase-2 Deficiency Results in a Loss of the Anti-Proliferative Response to Transforming Growth Factor-Beta in Human Fibrotic Lung Fibroblasts and Promotes Bleomycin-Induced Pulmonary Fibrosis in Mice," American Journal of Pathology, April 2001, 158(4):1411-1422. | |
| | A124 | King et al., "The Trouble With Group 3 Pulmonary Hypertension in Interstitial Lung Disease," Chest, 2020, 158(4):1651-1664. | |
| | A125 | Lettieri et al., "The distance-saturation product predicts mortality in idiopathic pulmonary fibrosis," Respiratory Medicine, 2006, 100:1734-1741. | |
| | A126 | McLaughlin et al., "Addition of Inhaled Treprostinil to Oral Therapy for Pulmonary Arterial Hypertension," Journal of the American College of Cardiology, 2010, 55(18):1915-1922. | |
| | A127 | Meyer et al., "Role of pirfenidone in the management of pulmonary fibrosis," Therapeutics and Clinical Risk Management, 2017, 13:427-437. | |
| | A128 | Nathan et al., "Pulmonary Hypertension due to Lung Disease and/or Hypoxia," Clin. Chest Med., 2013, 34:695-705. | |
| | A129 | Nathan et al., "Pulmonary hypertension in interstitial lung disease," Int. J. Clin. Pract., July 2008, 62(Suppl. 160):21-28. | |
| | A130 | Nathan et al., "Riociguat for idiopathic interstitial pneumonia-associated pulmonary hypertesion (RISE-IIP): a randomised, placebo-controlled phase 2b study," Lancet Respir. Med., 2019, 7:780-790. | |

| Examiner Signature | /PAUL V WARD/  {02/27/2023} | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: May 12, 2021 *(use as many sheets as necessary)* | | *Complete if Known* | |
|---|---|---|---|
| | | Application Number | 17/233061 |
| | | Filing Date | 4/16/2021 |
| | | First Named Inventor | Leigh Peterson |
| | | Art Unit | 1629 |
| | | Examiner Name | Unassigned |
| Sheet | 5 | of | 5 | Attorney Docket Number | 080618-2002 |

| | | NON PATENT LITERATURE DOCUMENTS | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | A131 | Nathan et al., "Validation of test performance characteristics and minimal clinically important difference of the 6-minute walk test in patients with idiopathic pulmonary fibrosis," Respiratory Medicine, 2015, 109:914-922. | |
| | A132 | Simonneau et al., "Haemodynamic definitions and updated clinical classification of pulmonary hypertension," Eur. Respir. J., 2019, 53:1801913, 13 pages. | |
| | A133 | Sorbera et al.n "UT-15. Treatment of Pulmonary Hypertension Treatment of Peripheral Vascular Disease," Drug of the Future, 2001, 26(4):364-374. | |
| | A134 | Trammell et al., "Use of pulmonary arterial hypertension-approved therapy in the treatment of non-group 1 pulmonary hypertension at US referral centers," Pulm. Circ., 2015, 5(2):356-363. | |
| | A135 | Wang et al., "Hemodynamic and gas exchange effects of inhaled iloprost in patients with COPD and pulmonary hypertension," International Journal of COPD, 2017, 12:3353-3360. | |
| | A136 | Whittle et al., "Binding and activity of the prostacyclin receptor (IP) agonists, treprostinil and iloprost, at human prostanoid receptors: Treprostinil is a potent DP1 and EP2 agonist," Biochemical Pharmacology, 2012, 84:68-75. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

**EXHIBIT 6**

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet  1   of  17 | Attorney Docket Number | 080618-2002 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number — Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | C1 | 3,664,337 | 05-23-1972 | LINDSEY ET AL. | |
| | C2 | 4,001,650-A | 01-04-1977 | ROMAIN, JACK | |
| | C3 | 4,007,238-A | 02-08-1977 | GLENN, JOSEPH G. | |
| | C4 | 4,281,113-A | 07-28-1981 | AXEN ET AL. | |
| | C5 | 4,306,075-A | 12-15-1981 | ARISTOFF, PAUL A. | |
| | C6 | 4,306,076-A | 12-15-1981 | NELSON, NORMAN A. | |
| | C7 | 4,349,689-A | 09-14-1982 | ARISTOFF, PAUL A. | |
| | C8 | 4,473,296 | 09-25-1984 | SHOFNER ET AL. | |
| | C9 | 4,486,598-A | 12-04-1984 | ARISTOFF, PAUL A. | |
| | C10 | 4,495,944 | 01-29-1985 | BRISSON ET AL. | |
| | C11 | 4,635,647-A | 01-13-1987 | CHOKSI, PRADIP V. | |
| | C12 | 4,668,814-A | 05-26-1987 | ARISTOFF, PAUL A. | |
| | C13 | 4,677,975-A | 07-07-1987 | EDGAR ET AL. | |
| | C14 | 4,683,330-A | 07-28-1987 | ARISTOFF, PAUL A. | |
| | C15 | 4,692,464-A | 09-08-1987 | SKUBALLA ET AL. | |
| | C16 | 4,708,963-A | 11-24-1987 | SKUBALLA ET AL. | |
| | C17 | 4,976,259 | 12-11-1990 | HIGSON ET AL. | |
| | C18 | 4,984,158 | 01-08-1991 | HILLSMAN | |
| | C19 | 5,063,922 | 11-12-1991 | HAEKKINEN | |
| | C20 | 5,080,093-A | 01-14-1992 | RAABE ET AL. | |
| | C21 | 5,153,222-A | 10-06-1992 | TADEPALLI ET AL. | |
| | C22 | 5,234,953-A | 08-10-1993 | CROW ET AL. | |
| | C23 | 5,322,057-A | 06-21-1994 | RAABE ET AL. | |
| | C24 | 5,361,989-A | 11-08-1994 | MERCHAT ET AL. | |
| | C25 | 5,363,842-A | 11-15-1994 | MISHELEVICH ET AL. | |
| | C26 | 5,497,763-A | 03-12-1996 | LLOYD ET AL. | |
| | C27 | 5,551,416-A | 09-03-1996 | STIMPSON ET AL. | |
| | C28 | 5,727,542-A | 03-17-1998 | KING, RUSSELL WAYNE | |
| | C29 | 5,865,171-A | 02-02-1999 | CINQUIN, GERARD | |
| | C30 | 5,881,715-A | 03-16-1999 | SHIBASAKI, MASAE | |
| | C31 | 5,908,158-A | 06-01-1999 | CHEIMAN, VLADIMIR | |
| | C32 | 6,054,486-A | 04-25-2000 | CROW ET AL. | |
| | C33 | 6,123,068-A | 09-26-2000 | LLOYD ET AL. | |
| | C34 | 6,242,482-B1 | 06-05-2001 | SHORR ET AL. | |
| | C35 | 6,357,671-B1 | 03-19-2002 | CEWERS, GORAN | |
| | C36 | 6,521,212-B1 | 02-18-2003 | CLOUTIER ET AL. | |
| | C37 | 6,626,843-B2 | 09-30-2003 | HILLSMAN, DEANE | |
| | C38 | 6,756,033-B2 | 06-29-2004 | CLOUTIER ET AL. | |
| | C39 | 6,765,117-B2 | 07-20-2004 | MORIARTY ET AL. | |
| | C40 | 6,803,386-B2 | 10-12-2004 | SHORR ET AL. | |
| | C41 | 6,809,223-B2 | 10-26-2004 | MORIARTY ET AL. | |
| | C42 | 7,172,557-B1 | 02-06-2007 | PARKER ET AL. | |
| | C43 | 7,199,157-B2 | 04-03-2007 | WADE ET AL. | |
| | C44 | 7,261,102-B2 | 08-28-2007 | BARNEY ET AL. | |
| | C45 | 7,384,978-B2 | 06-10-2008 | PHARES ET AL. | |
| | C46 | 7,417,070-B2 | 08-26-2008 | PHARES ET AL. | |
| | C47 | 7,544,713-B2 | 06-09-2009 | PHARES ET AL. | |
| | C48 | 7,726,303-B2 | 06-01-2010 | TYVOLL ET AL. | |
| | C49 | 9,155,846-B2 | 10-13-2015 | KERN, JOACHIM | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet | 2 | of | 17 | Attorney Docket Number | 080618-2002 |

## U.S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | C50 | 9,358,240-B2 | 06-07-2016 | OLSCHEWSKI ET AL. | |
| | C51 | 9,713,599- | 07-25-2017 | WADE, MICHAEL | |
| | C52 | 10,076,505-B2 | 09-18-2018 | WADE, MICHAEL | |
| | C53 | 10,695,308- | 06-30-2020 | WADE, MICHAEL | |
| | C54 | 10,716,793-B2 | 07-21-2020 | OLSCHEWSKI ET AL. | |
| | C55 | 2003/0192532-A1 | 10-16-2003 | HOPKINS, ANDREW DAVID | |
| | C56 | 2004/0063912-A1 | 04-01-2004 | BLUMBERG ET AL. | |
| | C57 | 2004/0105819-A1 | 06-03-2004 | HALE ET AL. | |
| | C58 | 2004/0149282-A1 | 08-05-2004 | HICKLE | |
| | C59 | 2004/0265238-A1 | 12-30-2004 | CHAUDRY, LMTIAZ | |
| | C60 | 2005/0080140-A1 | 04-14-2005 | HATAE ET AL. | |
| | C61 | 2005/0165111-A1 | 07-28-2005 | WADE ET AL. | |
| | C62 | 2005/0166913-A1 | 08-04-2005 | SEXTON ET AL. | |
| | C63 | 2005/0183719-A1 | 08-25-2005 | WUTTKE ET AL. | |
| | C64 | 2005/0282901-A1 | 12-22-2005 | PHARES ET AL. | |
| | C65 | 2006/0147520-A1 | 07-06-2006 | RUEGG, CURTIS | |
| | C66 | 2006/0201500-A1 | 09-14-2006 | VON HOLLEN ET AL. | |
| | C67 | 2008/0200449-A1 | 08-21-2008 | OLSCHEWSKI ET AL. | |
| | C68 | 2008/0280986-A1 | 11-13-2008 | WADE ET AL. | |
| | C69 | 2009/0036465-A1 | 02-05-2009 | ROSCIGNO ET AL. | |
| | C70 | 2010/0076083-A1 | 03-25-2010 | OLSCHEWSKI ET AL. | |
| | C71 | 2010/0236545-A1 | 09-23-2010 | KERN, JOACHIM | |
| | C72 | 2010/0282622-A1 | 11-11-2010 | PHARES, KENNETH R. | |
| | C73 | 2012/0129941-A1 | 05-24-2012 | WADE ET AL. | |
| | C74 | 2012/0177693-A1 | 07-12-2012 | CIPOLLA ET AL. | |
| | C75 | 2012/0216801-A1 | 08-30-2012 | OLSCHEWSKI ET AL. | |
| | C76 | 2013/0096200-A1 | 04-18-2013 | WADE ET AL. | |
| | C77 | 2014/0018431-A1 | 01-16-2014 | WADE ET AL. | |
| | C78 | 2019/0365778- | 12-05-2019 | OLSCHEWSKI ET AL. | |
| | C79 | 2021/0177787- | 06-17-2021 | WADE, MICHAEL | |

## UNPUBLISHED U.S. PATENT APPLICATION DOCUMENTS

| Examiner Initials* | Cite No.[1] | U.S. Patent Application Document Serial Number-Kind Code[2] *(if known)* | Filing Date of Cited Document MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | C80 | 17/486721 | 09-27-2021 | OLSCHEWSKI ET AL. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | C81 | AU-1999959533-B2 | 02-03-2000 | TORAY INDUSTRIES, INC. | | |
| | C82 | DE-19838711.1-C1 | 06-21-2000 | OTTO SCHILL GMBH & CO KG | | ✓ |
| | C83 | DE-19934582.2-C2 | 09-18-2003 | OTTO SCHILL GHMB & CO KG | | ✓ |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet  3   of  17 | Attorney Docket Number | 080618-2002 |

### FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Documents | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | C84 | FR-2783431-A1 | 03-24-2000 | SYSTEM ASSISTANCE MEDICAL | | A |
| | C85 | JP-2003-522003-A | 07-22-2003 | | | ✓ |
| | C86 | JP-2004-512101-A | 04-22-2004 | GLAXO GROUP LIMITED | | ✓ |
| | C87 | JP-2005-034341-A | 02-10-2005 | TEIJIN LTD. | | A |
| | C88 | WO-01/58514-A1 | 08-16-2001 | MEDIC-AID LTD | | |
| | C89 | WO-01/85241-A1 | 11-15-2001 | PARI GMBH | | |
| | C90 | WO-02/34318-A2 | 05-02-2002 | GLAXO GROUP LTD [GB] | | |
| | C91 | WO-93/00951-A1 | 01-21-1993 | INHALE INC | | |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | C92 | Abe et al., "Effects of inhaled prostacyclin analogue on chronic hypoxic pulmonary hypertension," J. Cardiovascular Pharmacology, 2001, 37, 239 251. | |
| | C93 | AccuNeb label, June 2005, 2 pages. | |
| | C94 | Agnew JE, Bateman RM, Pavia D, Clarke SW. (1984) Radionuclide demonstration of ventilatory abnormalities in mild asthma. Clinical Science; 66: 525-531. | |
| | C95 | Anderson, Paula J. M.D., "History of Aerosol Therapy: Liquid Nebulization to MDIs to DPIs," Respiratory Care, September 2005, 50(9):1139-1150. | |
| | C96 | Annals of the International Commission on Radiological Protection (ICRP) Vol 28, No. 3, 1998, Publication 80, Radiation Dose to Patients from Radiopharmaceuticals. | |
| | C97 | Aradigm Corporation Form 10-Q for the quarterly period ended June 30, 2009, 37 pages. | |
| | C98 | Aradigm Corporation news release October 24, 2005, "Aradigm and United Therapeutics Sign Development and Commercialization Agreement Targeting Pulmonary Hypertension," Red Orbit News, http://www.redorbit.com/modules/news/tools.php?tool=print&id=281787, 2 pages. | |
| | C99 | Aristoff et al., "Synthesis of benzopyran prostaglandins, potent stable prostacyclin analogs, via an intermolecular mitsunobu reaction," Tetrahedron Letters, 1984, 25(36):3955-3958. | |
| | C100 | Atkins, Paul J., Ph.D., "Dry Powder Inhalers: An Overview," Respiratory Care, October 2005, 50(10):1304-1312. | |
| | C101 | ATS 2020 Virtual Preview: Clinical Trials Session, June 24, 2020, conference.thoracic.org/program/session-information/virtual-clinical-trials.php. | |
| | C102 | AZMACORT label, May 2003, 16 pages. | |
| | C103 | BADESCH et al., "Prostanoid Therapy for Pulmonary Arterial Hypertension," Journal of the American College of Cardiology," 2004, 43(12:SupplS):56S-61S. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | | *Complete if Known* | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | **Application Number** | 17/233061 |
| | | **Filing Date** | 4/16/2021 |
| Date Submitted: February 16, 2022 | | **First Named Inventor** | Leigh Peterson |
| | | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | | Examiner Name | Unassigned |
| Sheet | 4 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C104 | Beasley et al., "Preservatives in Nebulizer Solutions: Risks without Benefit," Pharmacotherapy, 1998, 18(1):130-139. | |
| | C105 | Bein et al., "Cardiovascular and pulmonary effects of aerosolized prostacyclin administration in severe respiratory failure using a ventilator nebulization system," J. Cardiovascular Pharmacology, 1996, 27, 583-586. | |
| | C106 | Bender et al,. "Nonadherence in asthmatic patients: is there a solution to the problem?", Ann. Allergy Asthma Immunol., 1997, 79:177-186. | |
| | C107 | Benedict et al., "Evidence-based pharmacologic management of pulmonary arterial hypertension," Clinical Therapeutics, 2007, 29, 2134-2153. | |
| | C108 | Bindl et al., "Aerosolised prostacyclin for pulmonary hypertension in neonates," Archives of disease in childhood, Fetal and neonatal edition, 1994, 71(3), F214-6. | |
| | C109 | Blanchard, J.D., Cipolla, D., Liu, K., Morishige, R., Mudumba, S., Thipphawong, J., Taylor, G., Warren, S., Radhakrishnan, R., Van Vlasselaer, R., Visor , G. and Starko, K. (2003) Lung Deposition of Interferon Gamma-1b following Inhalation via AERx® System vs. Respirgard II™ Nebulizer Proc. ATS Annual Meeting (Abstract A373), Seattle. | |
| | C110 | Booke et al., "Prostaglandins in Patients with Pulmonary Hypertension: The Route of Administration," Anesth. Analg., 1998, 86:917, Letter to the Editor. | |
| | C111 | Boyd, B., Noymer, P., Liu, K., Okikawa, J., Hasegawa, D., Warren, S., Taylor, G., Ferguson, E., Schuster, J., Farr, S., and Gonda, I. (2004) Effect of Gender and Device Mouthpiece Shape on Bolus Insulin Aerosol Delivery Using the AERx Pulmonary Delivery System. Pharmaceutical Research. 21 (10) 1776-1782. | |
| | C112 | Boyle et al., "So Many Drugs, So Little Time: The Future Challenge of Cystic Fibrosis Care," Chest, January 2003, 123(1):3-5. | |
| | C113 | Byron, Peter R. "Drug Delivery Devices, Issues in Drug Development," Proc. Am. Thorac. Soc., 2004, 1:321-328. | |
| | C114 | Channick et al., "Safety and efficacy of inhaled treprostinil as add-on therapy to bosentan in pulmonary arterial hypertension," J. American College of Cardiology, 2006, 48, 1433-1437. | |
| | C115 | Chattaraj, Sarat C., "Treprostinil sodium Pharmacia," Current Opinion in Investigational Drugs, April 2002, 3(4):582-586. | |
| | C116 | Chew et al., "Pharmaceutical Dry Powder Aerosol Delivery," KONA, 2001, 19:46-56. | |
| | C117 | Clark, A.R., "Medical Aerosol Inhalers: Past, Present, and Future," Aerosol Science and Technology, June 12, 2007, 22(4):374-391. | |
| | C118 | Colthorpe P, Taylor G, Farr SJ. (1997) A comparison of two non-invasive methods for quantifying aerosol deposition in the lungs of rabbits. J. Aerosol Med.; 10:255 | |
| | C119 | Dalby et al., "A review of the development of Respimat Soft Mist Inhaler," International Journal of Pharmaceutics," 2004, 283:1-9. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | **Application Number** | 17/233061 |
| | | **Filing Date** | 4/16/2021 |
| Date Submitted: February 16, 2022 | | **First Named Inventor** | Leigh Peterson |
| | | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | | Examiner Name | Unassigned |
| Sheet | 5 | of | 17 | Attorney Docket Number | 080618-2002 |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | C120 | De Wet et al., "Inhaled prostacyclin is safe, effective and affordable in patients with pulmonary hypertension, right heart dysfunction, and refractory hypoxemia after cardiothoracic surgery," J. Thoracic Cardiovasc. Surg., 2004, 127:1058-1067. | |
| | C121 | Defendant Watson Laboratories, Inc.'s Invalidity Contentions for U.S. Patent Nos. 9,339,507 and 9,358,240, in The United States District Court for the District of New Jersey, Civil Action 3.15:cv-05723-PGS-LHG, August 5, 2016, 56 pages. | |
| | C122 | Denyer et al., "The Adaptive Aerosol Delivery (AAD) Technology: Past, Present, and Future," Journal of Aerosol Medicine and Pulmonary Drug Delivery, 2010, 23(Supp1):S1-S10. | |
| | C123 | Dolovich et al., "Device Selection and Outcomes of Aerosol Therapy: Evidence-Based Guidelines," Chest, January 2005, 127(1):335-371. | |
| | C124 | Doyle et al., "Inhaled prostacyclin as a selective pulmonary vasodilator," Anaesthesia and Intensive Care, August 1996, 24(4):514-515. | |
| | C125 | Dumas et al,. "Hypoxic pulmonary vasoconstriction," General Pharmacology, 1999, 33, 289-297. | |
| | C126 | Dworetz et al., "Survival of infants with persistent pulmonary hypertension without extracorporeal membrane oxygenation," Pediatrics, 1989, 84, 1-6. | |
| | C127 | Eli Lilly Press Release, "Eli Lilly and Company Licenses U.S. Rights for Tadalafil PAH Indication to United Therapeutics Corporation," November 17, 2008, 4 pages. | |
| | C128 | English translation of OptiNeb User Manual, 2005, 33 pages. | |
| | C129 | EPA Integrated Risk Information System (IRIS): data sheet for 3-methylphenol (m-cresol). Accessed at  http://www.epa.gov/iris/subst/0301/htm on 3/9/2014. | |
| | C130 | EU Community Register, Annexes to Commission Decision C(2005)3436, September 5, 2005, http://ec.europa.eu/health/documents/communityregister/2005/2005090510259/anx_10259_en.pdf (Annex III –Ventavis® Labelling and Package Leaflet), 30 pages. | |
| | C131 | Ewert et al., "Aerosolized iloprost for primary pulmonary hypertension," New England Journal of Medicine, 2000, 343, 1421-1422. | |
| | C132 | Ewert et al., "Iloprost als inhalative bzw. Intravenose langzeitbehandlung von patienten mit primarer pulmonaler hypertonie," Z. Kardiol., 2000, 89, 987-999, English summary on first page. | |
| | C133 | Farber et al., "Pulmonary Arterial Hypertension," The New England Journal of Medicine," 2004, 351:1655-1665. | |
| | C134 | Farr et al., "Comparison of in vitro and in vivo efficiencies of a novel unit-dose liquid aerosol generator and a pressurized metered dose inhaler," International Journal of Pharmaceutics, 2000, 198:63-70. | |
| | C135 | Findlay et al., "Radioimmunoassay for the Chemical Stable Prostacyclin Analog, 15AU81: a Preliminary Pharmacokinetics Study in the Dog," Prostaglandins Leukot. Essent. Fatty Acids, February 1993, 48(2):167-174. | |
| | C136 | Fink et al., "Use of Prostacyclin and its Analogues in the Treatment of Cardiovascular Disease," Heart Disease, 1999, 1:29-40. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

4866-5355-4446.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | | | *Complete if Known* | |
|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | Application Number | 17/233061 |
| | | | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | | | **First Named Inventor** | Leigh Peterson |
| | | | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | | | Examiner Name | Unassigned |
| Sheet | 6 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C137 | FLOLAN label, September 2002, 24 pages. | |
| | C138 | Frijlink et al., "Dry Powder inhalers for pulmonary drug delivery," Expert Opin. Drug Deliv., 2004, 1(1):67-86. | |
| | C139 | Geller et al., " Bolus Inhalation of rhDNase with the AERx System in Subjects with Cystic Fibrosis," Journal of Aerosol Medicine, 2003, 16(2):175-182. | |
| | C140 | Geller, David E., M.D., "Comparing Clinical Features of the Nebulizer, Metered-Dose Inhaler, and Dry Powder Inhaler," Respir. Care, 2005, 50(10):1313-1321. | |
| | C141 | Gessler et al., "Ultrasonic versus jet nebulization of iloprost in severe pulmonary hypertension," Eur. Respir. J., 2001, 17, 14-19. | |
| | C142 | Ghofrani et al., "New therapies in the treatment of pulmonary hypertension," HERZ (Heart), June 2005, 30(4):296-302, with English translation. | ✓ |
| | C143 | GHOFRANI et al., "Hypoxia- and non-hypoxia-related pulmonary hypertension -- Established and new therapies," Cardiovascular Research, 2006, 72:30-40. | |
| | C144 | Goldsmith et al., "Inhaled Iloprost In Primary Pulmonary Hypertension," Drugs, 2004, 64(7):763-773. | |
| | C145 | Gonda, Igor, "A semi-empirical model of aerosol deposition in the human respiratory tract for mouth inhalation," J. Pharm. Pharmacol., 1981, 33:692-696. | |
| | C146 | Gonda, Igor, "Study of the effects of polydispersity of aerosols on regional deposition in the respiratory tract," J. Pharm. Pharmacol., 1981, 33(Supp):52P. | |
| | C147 | Hache et al., "Inhaled epoprostenol (prostacyclin) and pulmonary hypertension before cardiac surgery," The Journal of Thoracic and Cardiovascular Surgery, March 2003, 125:642-649. | |
| | C148 | Hallioglu et al., "Comparison of Acute Hemodynamic Effects of Aerosolized and Intravenous Iloprost in Secondary Pulmonary Hypertension in Children With Congenital Heart Disease," Am. J. Cardiol., 2003, 92:1007-1009. | |
| | C149 | Haraldsson et al., "Comparison of inhaled nitric oxide and inhaled aerosolized prostacyclin in the evaluation of heart transplant candidates with elevated pulmonary vascular resistance," Chest, 1998, 114, 780-786. | |
| | C150 | Hill et al., "Inhaled Therapies for Pulmonary Hypertension," Respiratory Care, June 2015, 60(6):794-805. | |
| | C151 | Hoeper et al., "Long-term Treatment of Primary Pulmonary Hypertension with Aerosolized Iloprost, a Prostacyclin Analogue," The New England Journal of Medicine," June 22, 2000, 342:1866-1870. | |
| | C152 | Hoeper et al., "A comparison of the acute hemodynamic effects of inhaled nitric oxide and aerosolized iloprost in primary hypertension," J. American College of Cardiology, 2000, 35, 176-182. | |
| | C153 | Hoeper et al., "Effects of inhaled nitric oxide and aerosolized iloprost in pulmonary veno-occlusive disease," Respiratory Medicine, 1999, 93, 62-70. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO<br>**INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT**<br>Date Submitted: February 16, 2022<br>*(use as many sheets as necessary)* | *Complete if Known* | |
|---|---|---|
| | **Application Number** | 17/233061 |
| | **Filing Date** | 4/16/2021 |
| | **First Named Inventor** | Leigh Peterson |
| | Art Unit | Unassigned |
| | Examiner Name | Unassigned |
| Sheet | 7 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C154 | Horn et al., "Treprostinil therapy for pulmonary artery hypertension," Expert Opinion on Investigational Drugs, 2002, 11(11):1615-1622. | |
| | C155 | Howarth, P.H., "Why particle size should affect clinical response to inhaled therapy," Journal of Aerosol Medicine, 2001, 14 Supp. 1, S-27-S-34. | |
| | C156 | Ichida et al., "Additive effects of beraprost on pulmonary vasodilation by inhaled nitric oxide in children with pulmonary hypertension," American Journal of Cardiology, 1997, 80, 662-664. | |
| | C157 | Konorza et al., "Klinisch-pharmakologische Austestung bei pulmonaler Hypertonie zur Therapiefuehrung," Herz, 2005, 30:286-295, English abstract on first page. | A |
| | C158 | Krause et al., "Pharmacokinetics and pharmacodynamics of the prostacyclin analogue iloprost in man," Eur. J. Clin. Pharmacol., 1986, 30, 61-68. | |
| | C159 | Labiris et al., "Pulmonary drug delivery. Part II: The role of inhalant delivery devices and drug formulations in therapeutic effectiveness of aerosolized medications," Br. J. Clin. Pharmacol., 2003, 56(6):600-612. | |
| | C160 | Laliberte et al., "Pharmacokinetics and Steady-State Bioequivalence of Treprostinil Sodium (Remodulin) Administered by the Intravenous and Subcutaneous Route to Normal Volunteers," J. Cardiovasc. Pharmacol, August 2004, 44(2):209-214. | |
| | C161 | Lee et al., "Current strategies for pulmonary arterial hypertension," J. Internal Medicine, 2005, 258, 199- 215. | |
| | C162 | Liquidia Technologies Press Release, "Liquidia Announces FDA Acceptance of New Drug Application for LIQ861 (treprostinil) Inhalation Powder for the Treatment of Pulmonary Arterial Hypertension," April 8, 2020, 3 pages. | |
| | C163 | Liquidia Technologies Press Release, "Liquidia Submits New Drug Application for LIQ861 (treprostinil) Inhalation Powder to U.S. Food and Drug Administration for the Treatment of Pulmonary Arterial Hypertension (PAH)," January 27, 2020, 3 pages. | |
| | C164 | MARTIN, John C., "Inhaled Form of Remodulin in the Pipeline," http://www.phneighborhood.com/content/in_the_news/archive_2320,aspx, ph Neighborhood, October 28, 2005, 2 pages. | |
| | C165 | Max et al., "Inhaled prostacyclin in the treatment of pulmonary hypertension," Eur. J. Pediatr., 1999, 158 Suppl 1, S23-S26. | |
| | C166 | McNulty et al., "The Pharmacokinetics and Pharmacodynamics of the Prostacyclin Analog 15AU81 in the Anesthetized Beagle Dog," Prostaglandins Leukot. Essent. Fatty Acids, February 1993, 48(2):159- 166. | |
| | C167 | Miller et al., "Standardisation of spirometry. Series ATS/ERS Task Force: Standardisation of Lung Function Testing'' Eur Respir J 2005; 26: 319–338. | |
| | C168 | Mueller et al., "Inhaled iloprost in the management of pulmonary hypertension in infants undergoing congenital heart surgery," European Journal of Anaesthesiology, June 2004, 21(Suppl.33):3, Abstract No. 084. | |
| | C169 | National Radiological Protection Board.  Doses to Patients from Medical Radiological Examinations in Great Britain. (1986) Radiological Protection Bulletin No. 77. | |
| | C170 | Nauser et al., "Pulmonary Hypertension: New Perspectives," CHF, 2003, 9:155-162. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO<br>**INFORMATION DISCLOSURE<br>STATEMENT BY APPLICANT**<br>Date Submitted: February 16, 2022<br>*(use as many sheets as necessary)* | | ***Complete if Known*** | |
|---|---|---|---|
| | | Application Number | 17/233061 |
| | | Filing Date | 4/16/2021 |
| | | First Named Inventor | Leigh Peterson |
| | | Art Unit | Unassigned |
| | | Examiner Name | Unassigned |
| Sheet | 8 | of | 17 | Attorney Docket Number | 080618-2002 |

| | | **NON PATENT LITERATURE DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C171 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 10 pages, December 19, 2016. | |
| | C172 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 10 pages, December 7, 2016. | |
| | C173 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 11 pages, February 1, 2017. | |
| | C174 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 11 pages, January 12, 2017. | |
| | C175 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 11 pages, March 1, 2017. | |
| | C176 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 11 pages, March 17, 2017. | |
| | C177 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 11 pages, March 9, 2017. | |
| | C178 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, April 13, 2017. | |
| | C179 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, February 9, 2017. | |
| | C180 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, July 13, 2017. | |
| | C181 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, July 19, 2017. | |
| | C182 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, July 31, 2017. | |
| | C183 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, July 5, 2017. | |
| | C184 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, June 19, 2017. | |
| | C185 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, June 2, 2017. | |
| | C186 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, March 27, 2017. | |
| | C187 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 12 pages, May 19, 2017. | |

| Examiner Signature | /PAUL V WARD/  {02/27/2023} | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | | Complete if Known | |
|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: February 16, 2022 *(use as many sheets as necessary)* | | Application Number | 17/233061 |
| | | Filing Date | 4/16/2021 |
| | | First Named Inventor | Leigh Peterson |
| | | Art Unit | Unassigned |
| | | Examiner Name | Unassigned |
| Sheet | 9 of 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C188 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, August 16, 2017. | |
| | C189 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, October 13, 2017. | |
| | C190 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, September 1, 2017. | |
| | C191 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, September 12, 2017. | |
| | C192 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, September 14, 2017. | |
| | C193 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, September 20, 2017. | |
| | C194 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 13 pages, September 8, 2017. | |
| | C195 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 14 pages, November 14, 2017. | |
| | C196 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 14 pages, October 25, 2017. | |
| | C197 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, December 20, 2019. | |
| | C198 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, March 6, 2018. | |
| | C199 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, October 10, 2019. | |
| | C200 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, October 23, 2019. | |
| | C201 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, October 28, 2019. | |
| | C202 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 15 pages, October 8, 2019. | |
| | C203 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, April 15, 2019. | |
| | C204 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, April 19, 2019. | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

4866-5355-4446.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| | | Substitute for form 1449/PTO | | |
|---|---|---|---|---|

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**

Date Submitted: February 16, 2022

*(use as many sheets as necessary)*

| | | | |
|---|---|---|---|
| | | | |

**Complete if Known**

| Application Number | 17/233061 |
|---|---|
| Filing Date | 4/16/2021 |
| First Named Inventor | Leigh Peterson |
| Art Unit | Unassigned |
| Examiner Name | Unassigned |
| Attorney Docket Number | 080618-2002 |

Sheet 10 of 17

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | C205 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, April 24, 2018. | |
| | C206 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, August 13, 2018. | |
| | C207 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, August 14, 2018. | |
| | C208 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, August 17, 2018. | |
| | C209 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, August 3, 2018. | |
| | C210 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, August 7, 2019. | |
| | C211 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, December 13, 2018. | |
| | C212 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, December 17, 2018. | |
| | C213 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, December 20, 2018. | |
| | C214 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, February 14, 2019. | |
| | C215 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, February 4, 2019. | |
| | C216 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, January 24, 2019. | |
| | C217 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, January 8, 2019. | |
| | C218 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, January 9, 2019. | |
| | C219 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, July 11, 2018. | |
| | C220 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, July 20, 2018. | |
| | C221 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, June 14, 2018. | |

| Examiner Signature | /PAUL V WARD/ {02/27/2023} | Date Considered | |
|---|---|---|---|

4866-5355-4446.1

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: February 16, 2022 *(use as many sheets as necessary)* | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| | Examiner Name | Unassigned |
| Sheet | 11 | of | 17 | Attorney Docket Number | 080618-2002 |

| | | **NON PATENT LITERATURE DOCUMENTS** | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C222 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, June 14, 2019. | |
| | C223 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, June 18, 2018. | |
| | C224 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, June 21, 2019. | |
| | C225 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, June 25, 2018. | |
| | C226 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, March 13, 2019. | |
| | C227 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, March 29 2019. | |
| | C228 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, May 16, 2018. | |
| | C229 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, May 24, 2019. | |
| | C230 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, November 2, 2018. | |
| | C231 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, November 21, 2018. | |
| | C232 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, November 7, 2018. | |
| | C233 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, October 1, 2018. | |
| | C234 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, October 11, 2018. | |
| | C235 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, October 22, 2018. | |
| | C236 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 16 pages, September 24, 2018. | |
| | C237 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 5 pages, December 11, 2015 | |
| | C238 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 5 pages, February 24, 2016. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO<br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br>Date Submitted: February 16, 2022<br>*(use as many sheets as necessary)* | *Complete if Known* | |
|---|---|---|
| | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| | Examiner Name | Unassigned |
| Sheet | 12 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C239 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 5 pages, March 14, 2016. | |
| | C240 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, August 15, 2016. | |
| | C241 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, June 23, 2016. | |
| | C242 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, June 6, 2016. | |
| | C243 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, June 7, 2016. | |
| | C244 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, May 23, 2016. | |
| | C245 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, May 31, 2016. | |
| | C246 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 6 pages, May 5, 2016. | |
| | C247 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 7 pages, August 26, 2016. | |
| | C248 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 7 pages, July 12, 2016. | |
| | C249 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 7 pages, July 21, 2016. | |
| | C250 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 7 pages, July 5, 2016. | |
| | C251 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 7 pages, September 9, 2016. | |
| | C252 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, April 30, 2020. | |
| | C253 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, February 26, 2020. | |
| | C254 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, January 7, 2020. | |
| | C255 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, May 29, 2020. | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | **Application Number** | 17/233061 |
| | **Filing Date** | 4/16/2021 |
| Date Submitted: February 16, 2022 | **First Named Inventor** | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet   13   of   17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C256 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, November 1, 2016. | |
| | C257 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, November 17, 2016. | |
| | C258 | NCT02630316, Safety and Efficacy of Inhaled Treprostinil in Adult PH with ILD Including CPFE, ClinicalTrials.gov, 9 pages, November 9, 2016. | |
| | C259 | Nebu-Tec med. Produkte Eike Kern GmbH, VENTA-NEB®-ir A-I-C-I® Operating Instructions, Sep. 2005. | |
| | C260 | Newman, S.P., "Aerosols," Chapter from Encyclopedia of Respiratory Medicine, 2006, 58-64. | |
| | C261 | Notes for Guidance on the Clinical Administration of Radiopharmaceuticals and Use of Sealed Radioactive Sources. Administration of Radioactive Substances Advisory Committee (ARSAC) (March 2006). ARSAC Secretariat, Chilton, Didcot, Oxon. OX11 0RQ. | |
| | C262 | Olin, Jeffrey W., D.O., "Thromboangiitis Obliterans (Buerger's Disease)," N. Engl. J. Med., 2000, 343:864-869. | |
| | C263 | Olschewski et al. for the German PPH Study Group, "Inhaled iloprost to treat severe pulmonary hypertension – An uncontrolled trial," Annals of Internal Medicine, 2000, 132, 435-443. | |
| | C264 | Olschewski et al., "Inhaled Iloprost for Severe Pulmonary Hypertension," The New England Journal of Medicine," August 1, 2002, 347(5):322-329. | |
| | C265 | Olschewski et al., "Aerosolized prostacyclin and iloprost in severe pulmonary hypertension,: Annals of Internal Medicine, 1996, 124, 820 824. | |
| | C266 | Olschewski et al., "Inhaled Iloprost for Severe Pulmonary Hypertension," N. Eng. J. Med., August 1, 2002, 347(5):322-329. | |
| | C267 | Olschewski et al., "Inhaled prostacyclin and iloprost in severe pulmonary hypertension secondary to lung fibrosis," Am. Respir. Crit. Care Med., 1999, 160, 600-607. | |
| | C268 | Olschewski et al., "Pharmacodynamics and pharmacokinetics of inhaled iloprost, aerosolized by three different devices, in severe pulmonary hypertension," Chest, 2003, 124, 1294-1304. | |
| | C269 | Olschewski et al., "Prostacyclin and its analogues in the treatment of pulmonary hypertension," Pharmacology and Therapeutics, 2004, 102, 139-153. | |
| | C270 | Olschewski et al., "Recovery from circulatory shock in severe primary pulmonary hypertension (PPH) with aerosolization of iloprost," Intensive Care Med., 1998, 24, 631-634. | |
| | C271 | Olschewski, Horst, "Therapie der pulmonalen Hypertonie," Pneumologe, 2004, 1:95-101. | |
| | C272 | OPTINEB®-ir Operating Instructions, Unit Type ON-100/2-2.4 MHz, 2005, 33 pages, verified English translation. | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | Complete if Known | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** Date Submitted: February 16, 2022 *(use as many sheets as necessary)* | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| | Examiner Name | Unassigned |
| Sheet | 14 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C273 | ORENITRAM label, October 2019, 17 pages. | |
| | C274 | Osterweil, Neil, "Treprostinil Improves Walk Distance in Pulmonary Hypertension," July 9, 2020, 9 pages, www.medscape.com/viewarticle/933674, | |
| | C275 | Pappert et al., "Aerosolized Prostacyclin Versus Inhaled Nitric Oxide in Children with Severe Acute Respiratory Distress Syndrome," Anesthesiology, June 1995, 82(6):1507-1511. | |
| | C276 | Petition for Inter Partes Review of U.S. Patent No. 10,716,793, Liquidia Technologies, Inc. (petitioner) v. United Therapeutics Corporation (patent owner), IPR2021-00406, and Exhibits 1002, 1003, 1004, 1005 and 1036. | |
| | C277 | Pitcairn et al., "Deposition of Corticosteroid Aerosol in the Human Lung by Respimat Soft Mist Inhaler Compared to Deposition by Metered Dose Inhaler or by Turbuhaler Dry Powder Inhaler," Journal of Aerosol Medicine, 2005, 18(3):264-272. | |
| | C278 | Prober et al., "Technical Report: Precautions Regarding the Use of Aerosolized Antibiotics," Pediatrics, December 2000, 106(6):1-6. | |
| | C279 | Publications of the International Commission on Radiological Protection (ICRP) (1977) Recommendations of the International Commission on Radiological Protection 26. | |
| | C280 | Pulmonary Delivery, ONdrugDelivery, 2006, 5 pages. | |
| | C281 | Pulmozyme label, April 2005, 2 pages. | |
| | C282 | Rau, Joseph L., "Determinants of Patient Adherence to an Aerosol Regimen," Respiratory Care, October 2005, 50(10):1346-1359. | |
| | C283 | REMODULIN label, November 2004, 11 pages. | |
| | C284 | RIGBY, Jonathan, Aradigm Corporation, "Technological advances for success: Product pipeline in targeted pulmonary delivery," Pulmonary Delivery Innovative Technologies Breathing New Life into Inhalable Therapeutics, ONdrugDelivery, http://www.ondrugdelivery.com/publications/Pulmonary.pdf, 2006, 17-19. | |
| | C285 | RUAN et al., "Prostacyclin therapy for pulmonary arterial hypertension," Texas Heart Institute Journal (2010) Vol. 37, No. 4, pages 391-399. | |
| | C286 | Rubin et al., "Evaluation and Management of the Patient with Pulmonary Arterial Hypertension," Ann. Intern. Med., 2005, 143:282-292. | |
| | C287 | Rubin et al., "Pulmonary Arterial Hypertension: A Look to the Future," Journal of the American College of Cardiology, June 18, 2004, 43(12,Suppl.S):89S-90S. | |
| | C288 | Saini et al., "Effect of Electrostatic Charge and Size Distributions on Respirable Aerosol Deposition in Lung Model," Industry Applications Conference, 2004, 39th IAS Annual Meeting, Conference Record of the 2004 IEEE Seattle, WA, October 3-7, 2004, 2:948-952. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | *Complete if Known* | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet | 15 | of | 17 | Attorney Docket Number | 080618-2002 |

### NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
|---|---|---|---|
| | C289 | Sandifer et al., "Effects of Aerosol vs IV UT-15 on Prostaglandin H2 Analog-Induced Pulmonary Hypertension in Sheep," Chest, 2005, 128:616S. | |
| | C290 | SANDIFER et al., "Potent effects of aerosol compared with intravenous treprostinil on the pulmonary circulation," J. Appl. Physiol., 2005, 99:2363-2368. | |
| | C291 | Santak et al., "Prostacyclin aerosol in an infant with pulmonary hypertension," Eur. J. Pediatr., 1995, 154, 233-235. | |
| | C292 | Scientific discussion for the approval of Ventavis, European Medicines Agency (EMEA), October 20, 2004, 30 pages. | |
| | C293 | Soditt et al., "Improvement of oxygenation induced by aerosolized prostacyclin in a preterm infant with persistent pulmonary hypertension of the newborn," Intensive Care Med., 1997, 23, 1275-1278. | |
| | C294 | Steffen et al., "The Effects of 15AU81, a Chemically Stable Prostacyclin Analog, on the Cardiovascular and Renin-Angiotensis Systems of Anesthetized Dogs," Prostaglandins, Leukotrienes and Essential Fatty Acids," 1991, 43:277-286. | |
| | C295 | Stein et al., "The History of Therapeutic Aerosols: A Chronological Review," Journal of Aerosol Medicine and Pulmonary Drug Delivery, 2017, 30(1):20-41. | |
| | C296 | Stricker et al., "Sustained improvement of performance and haemodynamics with long-term aerosolized prostacyclin therapy in severe pulmonary hypertension," Schweiz Med. Wochenschr., 1999, 129, 923- 927. | |
| | C297 | Telko et al., "Dry Powder Inhalation Formulation," Respiratory Care, September 2005, 50(9):1209-1227. | |
| | C298 | Tyvaso label, 2009, 49 pages. | |
| | C299 | United Therapeutics Press Release," United Therapeutics Announces FDA Approval of Third Generation Nebulizer for the Tyvaso Inhalation System," October 23, 2017, 5 pages. | |
| | C300 | Vachiery et al., "Transitioning From IV Epoprostenol to Subcutaneous Treprostinil in Pulmonary Arterial Hypertension," Chest, 2002, 121:1561-1565. | |
| | C301 | Van Heerden et al., "Inhaled aerosolized prostacyclin as a selective pulmonary vasodilator for the treatment of severe hypertension," Anaesthesia and Intensive Care, 1996, 24, 87-90. | |
| | C302 | Van Heerden et al., "Re: Delivery of inhaled aerosolized prostacyclin (IAP)," Anaesthesia and Intensive Care, 1996, 24, 624-625. | |
| | C303 | VENTAVIS (iloprost) Inhalation Solution product information, December 2004, 15 pages. | |
| | C304 | Voswinckel et al., "Acute effects of the combination of sildenafil and inhaled treprostinil on haemodynamics and gas exchange in pulmonary hypertension," Pulmonary Pharmacology & Therapeutics, 2008, 21, 824-832. | |
| | C305 | Voswinckel et al., "Favorable Effects of Inhaled Treprostinil in Severe Pulmonary Hypertension: Results from Randomized Controlled Pilot Studies" J. Am. Coll. Cardiol., 48(8):1672-1681 (2006) | |

| Examiner Signature | /PAUL V WARD/ (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO<br>**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**<br><br>Date Submitted: February 16, 2022<br><br>*(use as many sheets as necessary)* | | | ***Complete if Known*** | |
|---|---|---|---|---|
| | | | **Application Number** | 17/233061 |
| | | | **Filing Date** | 4/16/2021 |
| | | | **First Named Inventor** | Leigh Peterson |
| | | | Art Unit | Unassigned |
| | | | Examiner Name | Unassigned |
| Sheet | 16 | of | 17 | Attorney Docket Number | 080618-2002 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C306 | VOSWINCKEL et al., "Inhaled Treprostinil for Treatment of Chronic Pulmonary Arterial Hypertension," Annals of Internal Medicine, January 17, 2006, 144(2):149-150. | |
| | C307 | Voswinckel et al., "Inhaled treprostinil is a potent pulmonary vasodilator in severe pulmonary hypertension," European Heart Journal, Journal of the European Society of Cardiology, ESC Congress, August 28 - September 1, 2004, Munich, Germany, p. 22, abstract 218. | |
| | C308 | Voswinckel et al., "Inhaled Treprostinil Sodium (TRE) for the Treatment of Pulmonary Hypertension," Circulation, October 26, 2004, Supplement, 110(17):295, abstract 1414. | |
| | C309 | Voswinckel et al., Abstract 1414, "Inhaled Treprostinil Sodium (TRE) for the Treatment of Pulmonary Hypertension," Abstracts from the 2004 Scientific Sessions of the American Heart Association, Circulation, October 26, 2004, 110(17Supp):III-295. | |
| | C310 | Voswinckel et al., Abstract 218, "Inhaled treprostinil is a potent pulmonary vasodilator in severe pulmonary hypertension," European Heart Journal, 2004, 25:22. | |
| | C311 | Walmrath et al., "Aerosolized prostacyclin in adult respiratory distress syndrome," Lancet, 1993, 342:961-962. | |
| | C312 | Walmrath et al., "Direct Comparison of Inhaled Nitric Oxide and Aerosolized Prostacyclin in Acute Respiratory Distress Syndrome," Am. J. Respir. Crit. Care Med., 1996, 153:991-996. | |
| | C313 | Walmrath et al., "Effects of inhaled versus intravenous vasodilators in experimental pulmonary hypertension," Eur. Respir. J., 1997, 10, 1084-1092. | |
| | C314 | Wasserman et al., "Bronchodilator effects of prostacyclin (PGI2) in dogs and guinea pigs," European Journal of Pharmacology, 1980, 66, 53-63. | |
| | C315 | Watson Laboratories, Inc. (Petitioner) v. United Therapeutics Corp. (Patent Owner), Decision Granting Institute of Inter Partes Review 37 C.F.R. 42.108, IRP2017-01621, Patent No. 9,358,240, January 11, 2018. | |
| | C316 | Watson Laboratories, Inc. (Petitioner) v. United Therapeutics Corp. (Patent Owner), Decision Granting Institute of Inter Partes Review 37 C.F.R. 42.108, IRP2017-01622, Patent No. 9,339,507, January 11, 2018. | |
| | C317 | Watson Laboratories, Inc. (Petitioner) v. United Therapeutics, Inc. (Patent Owner), Petition for Inter Partes Review, IRP2017-01621, Patent No. 9,358,240, with only Exhibits 1002, 1059, 1161 and 1164 and not including exhibits already provide with C318. | |
| | C318 | Watson Laboratories, Inc. (Petitioner) v. United Therapeutics, Inc. (Patent Owner), Petition for Inter Partes Review, IRP2017-01622, Patent No. 9,339,507, with all Exhibits on exhibit list. | |
| | C319 | Waxman et al., "Inhaled Treprostinil in Pulmonary Hypertension Due to Interstitial Lung Disease," The New England Journal of Medicine, 2021, 284:325-334. | |
| | C320 | Webb et al., "The use of inhaled aerosolized prostacyclin (IAP) in the treatment of pulmonary hypertension secondary to pulmonary embolism," Intensive Care Med., 1996, 22, 353-355. | |
| | C321 | Welsh, Erin T., MA, "Inhaled treprostinil improves outcomes in ILD-associated pulmonary hypertension," June 30, 2020, 2 pages, www.healio.com/news/pulmonology/20200630/inhaled-treprostinil-improves-outcomes-in-ildassociated-pulmonary-hypertension. | |
| | C322 | Welsh, Erin T., MA., "FDA approves inhaled treprostinil for pulmonary hypertension associated with ILD, April 5, 2021, www.healio.com/news/pulmonology/20210405/fda-approves-inhaled-treprostinil-for-pulmonary-hypertension-associated-with-ild. | |

| Examiner Signature | /PAUL V WARD/  (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

PTO/SB/08 (modified)

| Substitute for form 1449/PTO | **Complete if Known** | |
|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | Application Number | 17/233061 |
| | Filing Date | 4/16/2021 |
| Date Submitted: February 16, 2022 | First Named Inventor | Leigh Peterson |
| | Art Unit | Unassigned |
| *(use as many sheets as necessary)* | Examiner Name | Unassigned |
| Sheet | 17 | of | 17 | Attorney Docket Number | 080618-2002 |

| | NON PATENT LITERATURE DOCUMENTS | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.) date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[6] |
| | C323 | Wensel et al., "Effects of iloprost inhalation on exercise capacity and ventilator efficiency in patients with primary pulmonary hypertension," Circulation, 2000, 101, 2388-2392. | |
| | C324 | Wetzel, R.C., "Aerosolized prostacyclin: in search of the ideal pulmonary vasodilator," Anesthesiology, 1995, 82, 1315-1317. | |
| | C325 | Wittwer et al., "Inhalative Pre-Treatment of Donor Lungs Using the Aerosolized Prostacyclin Analog Iliprost Ameliorates Reperfusion Injury," J. Heart Lung Transplant, 2005, 24:1673-1679. | |
| | C326 | Zanen et al., "Optimal particle size for beta 2 agonist and anticholinergic aerosols in patients with severe airflow obstruction," Thorax, 1996, 51, 977-980. | |
| | C327 | Zanen et al., "The optimal particle size for ß-adrenergic aerosols in mild asthmatics," International Journal of Pharmaceutics, 1994, 107, 211-217. | |
| | C328 | Ziegler et al., "Comparison of Cascade Impaction and Laser Diffraction for Particle Size Distribution Measurements," Journal of Aerosol Medicine, 2005, 18(3):311-324. | |
| | C329 | Zierenberg et al., "The Respimat, a New Soft Mist Inhaler for Delivering Drugs to the Lungs," Modified-Release Drug Delivery Technology, 2002, Chapter 78, 925-933. | |

| Examiner Signature | /PAUL V WARD/   (02/27/2023) | Date Considered | |
|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /P.V.W/

# EXHIBIT 7

17/233,061

**STIC Accession No. 677115**

| Application Number | 17233061 |
|---|---|
| **Original STIC Org** | EIC1600/2900 |
| **Requester Org Code** | P/1624 |
| **Status** | Assigned |
| **Rush Requested:** | No |
| **Date Created:** | 21-AUG-22 |
| **Effective Filing Date:** | 3/1/21 |
| **Has an Appeal been filed?** | No |
| **Description** | 1. Please search the method of claim 1.<br>2. Please conduct an inventor search. |

1.    (Currently Amended) A method of treating a pulmonary hypertension due to a condition which is selected from a chronic lung disease, hypoxia and a combination thereof, comprising administering <u>by inhalation</u> to a subject having the pulmonary hypertension due to the condition selected from a chronic lung disease, hypoxia and a combination thereof an effective amount of treprostinil~~, a prodrug thereof~~ or a pharmaceutically acceptable salt thereof <u>in an amount of at least 6 micrograms per breath</u>.

**Inventor search: 42 refs**

**Text search: 52 refs**

1

17/233,061

# Inventor Search History

```
file hcaplus

FILE 'HCAPLUS' ENTERED AT 12:53:48 ON 23 AUG 2022
USE IS SUBJECT TO THE TERMS OF YOUR STN CUSTOMER AGREEMENT.
COPYRIGHT (C) 2022 AMERICAN CHEMICAL SOCIETY (ACS)


Copyright of the articles to which records in this database refer is
held by the publishers listed in the PUBLISHER (PB) field (available
for records published or updated in Chemical Abstracts after December
26, 1996), unless otherwise indicated in the original publications.

The CA Lexicon is the copyrighted intellectual property of the
American Chemical Society and is provided to assist you in searching
databases on STN.  Any dissemination, distribution, copying, or storing
of this information, without the prior written consent of CAS, is
strictly prohibited.

FILE COVERS 1907 - 23 Aug 2022 VOL 179 ISS 11
FILE LAST UPDATED: 22 Aug 2022 (20220822/ED)

CAS Information Use Policies apply and are available at:

http://www.cas.org/legal/infopolicy

Tags for Claimed substances now available in selected patents.
See NEWS for details.

This file contains CAS Registry Numbers for easy and accurate
substance identification.

=> d que L46

L2            1 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L3           38 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  81846-19-7/CRN
L4          720 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L2 OR L3)
L5          700 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CT OR
                TREPROSTINIL SODIUM/CT
L6          756 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR
                15AU81 OR RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR
                ORENITRAM OR UT15 OR UT 15 OR TREPULMIX
L7       714258 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  LUNG+OLD/CT OR LUNG
                DISEASE+OLD,NT/CT
L8        46518 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  CHRONIC LUNG DISEASE+O
                LD,NT/CT
L9        20788 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMONARY HYPERTENSION
                +OLD,NT/CT
L10        3333 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMONARY ANTIHYPERTEN
                SIVES+OLD/CT
L11       12516 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INTERSTITIAL LUNG
                DISEASE+OLD,NT/CT
L12       34893 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  "HYPOXIA, ANIMAL"/CT
L13      219121 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  BRONCHIOLITIS+OLD,NT/C
                T OR PULMONARY EMPHYSEMA+OLD/CT OR PULMONARY FIBROSIS+OLD,NT/CT
```

2

```
                   OR INTERSTITIAL PNEUMONIA+OLD/CT OR PNEUMONIA+NT/CT OR
                   CHRONIC OBSTRUCTIVE PULMONARY DISEASE+OLD/CT
L14      461386 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR
                   LUNG OR BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?)
                   (2A) (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE
                   OR DISORDER)
L15       86966 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS
                   ? OR PAH
L16       26884 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  "BREATHING (ANIMAL)"/CT
L17       27754 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INHALATION DRUG
                   DELIVERY SYSTEMS+OLD,NT/CT OR MEDICAL INHALERS+OLD,NT/CT
L18      380794 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR
                   ATOMIZ? OR NEBULIZ?
L38        1701 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L39       12655 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L40       16044 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L41         280 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/P
                   A,CS
L42          64 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                   L41) AND (L4 OR L5 OR L6)
L43         958 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                   L41) AND (L7 OR L8 OR L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR L15)
L44         217 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                   L41) AND (L16 OR L17 OR L18)
L46          13 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L42 AND L43 AND L44


=> file wpix

FILE 'WPIX' ENTERED AT 12:54:00 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE LAST UPDATED:         23 AUG 2022   <20220823/UP>
MOST RECENT UPDATE:        2022066   <2022066/DW>
DERWENT WORLD PATENTS INDEX SUBSCRIBER FILE, COVERS 1963 TO DATE


>>> FOR THE LATEST DERWENT WORLD PATENTS INDEX (DWPI), DCR AND DWPIM
    STN USER DOCUMENTATION, PLEASE VISIT:
https://www.stn-international.com/reference_information_dwpi

===================================================================
+++ A new and enhanced version of the Derwent World Patents Index
    is now available including citations.
    If you run DCR structure searches or if you like to learn more,
    please see
    https://www.stn-international.com/en/DWPIRelease.pdf
    or contact your STN customer support.  +++
===================================================================


=> d que L70

L48           1 SEA FILE=DCR SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L49          34 SEA FILE=DCR SPE=ON  ABB=ON  PLU=ON  86001/DCSE
L50         229 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L48 OR L49)
```

17/233,061

```
L51        305 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR 15AU81
                OR RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR ORENITRAM OR
                UT15 OR UT 15 OR TREPULMIX
L52     114351 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR
                LUNG OR BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?)
                (2A) (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE
                OR DISORDER)
L53       8916 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS?
                OR PAH
L54     400670 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR
                ATOMIZ? OR NEBULIZ?
L62        539 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L63       3354 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L64      21629 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L65        121 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/PA,CS
L66         57 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                L65) AND (L50 OR L51)
L67        121 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                L65) AND (L52 OR L53)
L68        292 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                L65) AND L54
L70         14 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L66 AND L67 AND L68


=> file medline drugu biosis embase

FILE 'MEDLINE' ENTERED AT 12:54:15 ON 23 AUG 2022

FILE 'DRUGU' ENTERED AT 12:54:15 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE 'BIOSIS' ENTERED AT 12:54:15 ON 23 AUG 2022
Copyright (c) 2022 Clarivate Analytics

FILE 'EMBASE' ENTERED AT 12:54:15 ON 23 AUG 2022
Copyright (c) 2022 Elsevier B.V. All rights reserved.

=> d que L96

L2           1 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L3          38 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  81846-19-7/CRN
L72       3307 SEA (L2 OR L3)
L73       5229 SEA TREPROSTINIL? OR 15AU81 OR RUMODOLIN OR TREVYENT OR TYVASO
                OR UNIPROST OR ORENITRAM OR UT15 OR UT 15 OR TREPULMIX
L74    2957023 SEA (RESP? OR PULMON? OR LUNG OR BRONCH? OR ALVEOL? OR INHAL?
                OR BREATH? OR AIRWAY?) (2A) (CHRONIC OR HYPERTENS? OR INFLAM?
                OR CONDITION OR DISEASE OR DISORDER)
L75     332964 SEA PULMON? (2A) HYPERTENS? OR PAH
L76    1257984 SEA INHAL? OR BREATH? OR ATOMIZ? OR NEBULIZ?
L79       1436 SEA L73 (10A) L75
L81        619 SEA L73 (10A) L76
L83        707 SEA L73 (5A) (BREATH# OR DOSE OR AMOUNT OR CONC?)
L87       8527 SEA PETERSON L?/AU,AUTH
L88      41133 SEA SMITH P?/AU,AUTH
L89      13265 SEA DENG C?/AU,AUTH
L90       7566 SEA UNITED THERAPEUTICS?/PA,CS
```

4

17/233,061

```
L91        320 SEA (L87 OR L88 OR L89 OR L90) AND (L72 OR L73)
L92       2971 SEA (L87 OR L88 OR L89 OR L90) AND (L74 OR L75)
L93       1004 SEA (L87 OR L88 OR L89 OR L90) AND L76
L95         99 SEA L91 AND L92 AND L93
L96         29 SEA L95 AND L79 AND L81 AND L83


=> dup rem L46 L70 L96

FILE 'HCAPLUS' ENTERED AT 12:54:40 ON 23 AUG 2022
USE IS SUBJECT TO THE TERMS OF YOUR STN CUSTOMER AGREEMENT.
COPYRIGHT (C) 2022 AMERICAN CHEMICAL SOCIETY (ACS)

FILE 'WPIX' ENTERED AT 12:54:40 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE 'MEDLINE' ENTERED AT 12:54:40 ON 23 AUG 2022

FILE 'BIOSIS' ENTERED AT 12:54:40 ON 23 AUG 2022
Copyright (c) 2022 Clarivate Analytics

FILE 'EMBASE' ENTERED AT 12:54:40 ON 23 AUG 2022
Copyright (c) 2022 Elsevier B.V. All rights reserved.
PROCESSING COMPLETED FOR L46
PROCESSING COMPLETED FOR L70
PROCESSING COMPLETED FOR L96
L98         42 DUP REM L46 L70 L96 (14 DUPLICATES REMOVED)
               ANSWERS '1-13' FROM FILE HCAPLUS
               ANSWERS '14-21' FROM FILE WPIX
               ANSWERS '22-27' FROM FILE MEDLINE
               ANSWER '28' FROM FILE BIOSIS
               ANSWERS '29-42' FROM FILE EMBASE
```

# Inventor Search Results

```
=> d 1-13 ibib abs hitind; d 14-21 ibib ab; d 22-42 iall


L98  ANSWER 1 OF 42  HCAPLUS  COPYRIGHT 2022 ACS on STN DUPLICATE 4
ACCESSION NUMBER:        2021:2272969  HCAPLUS Full-text
DOCUMENT NUMBER:         176:397125
TITLE:                   Treprostinil for use in the treatment of
                         interstitial lung disease
INVENTOR(S):             Peterson, Leigh; Smith, Peter; Deng, Chunqin
PATENT ASSIGNEE(S):      United Therapeutics Corporation, USA
SOURCE:                  PCT Int. Appl., 96pp.
                         CODEN: PIXXD2
DOCUMENT TYPE:           Patent
LANGUAGE:                English
FAMILY ACC. NUM. COUNT:  1
PATENT INFORMATION:
    PATENT NO.           KIND  DATE      APPLICATION NO.        DATE
    ---------------      ----  --------  --------------------   --------
    WO 2021211916        A1    20211021  WO 2021-US27588        20210416
    US 20210330621       A1    20211028  US 2021-17233061       20210416
PRIORITY APPLN. INFO.:                   US 2020-63011810   P   20200417
                                         US 2021-63160611   P   20210312

PATENT STATUS PATENT INFORMATION:
    PATENT NO.           KIND  STATUS        STATUS DATE
    ---------------      ----  -------------  -----------
    WO 2021211916        A1    Alive          20211028
    US 20210330621       A1    Alive          20211111
AB   Methods of treating of interstitial lung disease, reducing pulmonary
     function decline in a subject with interstitial lung disease (ILD),
     and increasing forced vital capacity (FVC) in a subject suffering from ILD
     are provided, wherein the methods include administration of treprostinil.
IPCI A61K0031-5575 [I]; A61K0009-00 [I]; A61P0011-00 [I]
IPCR A61K0031-5575 [I]; A61K0009-00 [I]; A61P0011-00 [I]
CC   1-5 (Pharmacology)
ST   Treprostinil treatment interstitial lung disease COVID19
IT   Atomizers, physical
     Blood plasma
        Breathing (animal)
        Bronchiolitis
        COVID-19
        Chronic lung disease
     Homo sapiens
     Human
     Hypoxia
        Inhalation drug delivery systems
        Interstitial lung disease
     Prodrugs
        Pulmonary emphysema
        Pulmonary fibrosis
        Pulmonary hypertension
          (Treprostinil for use in the treatment of interstitial lung disease)
IT   Interstitial pneumonia
          (desquamative; Treprostinil for use in the treatment of
          interstitial lung disease)
```

6

17/233,061

```
                        income
                        patient
                        female
                        blood pressure
                        demography
                        statistics
                        heart
                        United States
                        exercise
                        pulmonary artery
                        confidence interval
CONTROLLED TERM:        Drug Descriptors:
                        treprostinil
```

17/233,061

# **Text Search History**

```
=> file hcaplus

FILE 'HCAPLUS' ENTERED AT 12:55:17 ON 23 AUG 2022
USE IS SUBJECT TO THE TERMS OF YOUR STN CUSTOMER AGREEMENT.
COPYRIGHT (C) 2022 AMERICAN CHEMICAL SOCIETY (ACS)


Copyright of the articles to which records in this database refer is
held by the publishers listed in the PUBLISHER (PB) field (available
for records published or updated in Chemical Abstracts after December
26, 1996), unless otherwise indicated in the original publications.

The CA Lexicon is the copyrighted intellectual property of the
American Chemical Society and is provided to assist you in searching
databases on STN.  Any dissemination, distribution, copying, or storing
of this information, without the prior written consent of CAS, is
strictly prohibited.

FILE COVERS 1907 - 23 Aug 2022 VOL 179 ISS 11
FILE LAST UPDATED: 22 Aug 2022 (20220822/ED)

CAS Information Use Policies apply and are available at:


http://www.cas.org/legal/infopolicy


Tags for Claimed substances now available in selected patents.
See NEWS for details.

This file contains CAS Registry Numbers for easy and accurate
substance identification.

=> d que L47

L2           1 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L3          38 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  81846-19-7/CRN
L4         720 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L2 OR L3)
L5         700 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CT OR
                 TREPROSTINIL SODIUM/CT
L6         756 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR
                 15AU81 OR RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR
                 ORENITRAM OR UT15 OR UT 15 OR TREPULMIX
L7      714258 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  LUNG+OLD/CT OR LUNG
                 DISEASE+OLD,NT/CT
L8       46518 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  CHRONIC LUNG DISEASE+O
                 LD,NT/CT
L9       20788 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMONARY HYPERTENSION
                 +OLD,NT/CT
L10       3333 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMONARY ANTIHYPERTEN
                 SIVES+OLD/CT
L11      12516 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INTERSTITIAL LUNG
                 DISEASE+OLD,NT/CT
L12      34893 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  "HYPOXIA, ANIMAL"/CT
L13     219121 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  BRONCHIOLITIS+OLD,NT/C
                 T OR PULMONARY EMPHYSEMA+OLD/CT OR PULMONARY FIBROSIS+OLD,NT/CT
```

82

```
                OR INTERSTITIAL PNEUMONIA+OLD/CT OR PNEUMONIA+NT/CT OR
                CHRONIC OBSTRUCTIVE PULMONARY DISEASE+OLD/CT
L14      461386 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR
                LUNG OR BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?)
                (2A) (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE
                OR DISORDER)
L15       86966 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS
                ? OR PAH
L16       26884 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  "BREATHING (ANIMAL)"/CT
L17       27754 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INHALATION DRUG
                DELIVERY SYSTEMS+OLD,NT/CT OR MEDICAL INHALERS+OLD,NT/CT
L18      380794 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR
                ATOMIZ? OR NEBULIZ?
L20         187 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L4 OR L5 OR L6) AND
                (L7 OR L8 OR L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR L15) AND
                (L16 OR L17 OR L18)
L21         311 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L4 OR L5) (L) (L14
                OR L15)
L22         196 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L7 OR L8 OR L9 OR
                L10 OR L11 OR L12 OR L13) (L) L6
L23         281 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L6 (5A) (L14 OR L15)
L24         137 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L20 AND (L21 OR L22
                OR L23)
L26         126 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L24 AND (L8 OR L9 OR
                L10 OR L11 OR L12) AND (L15 OR L16)
L27         126 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L26 AND (L9 OR L15)
L28          58 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L4 OR L5) (L) L18
L29          50 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L16 OR L17) (L) L6
L30          95 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L6 (5A) L18
L31          79 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L27 AND (L28 OR L29
                OR L30)
L32       14621 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L7 OR L8 OR L9 OR
                L10 OR L11 OR L12 OR L13) (L) L18
L33        3508 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L16 OR L17) (L) (L14
                OR L15)
L34       16301 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L14 OR L15) (5A) L18
L35          62 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L31 AND (L32 OR L33
                OR L34)
L36          55 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L35 AND (PY<2021 OR
                PRY<2021 OR AY<2021 OR REVIEW/DT)
L37          31 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L36 AND (BREATH# OR
                DOSE OR AMOUNT OR CONC?)
L38        1701 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L39       12655 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L40       16044 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L41         280 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/P
                A,CS
L42          64 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                L41) AND (L4 OR L5 OR L6)
L43         958 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                L41) AND (L7 OR L8 OR L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR
                L15)
L44         217 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR
                L41) AND (L16 OR L17 OR L18)
L46          13 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L42 AND L43 AND L44
L47          28 SEA FILE=HCAPLUS SPE=ON  ABB=ON  PLU=ON  L37 NOT L46
```

```
=> d que L71

L48            1 SEA FILE=DCR SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L49           34 SEA FILE=DCR SPE=ON  ABB=ON  PLU=ON  86001/DCSE
L50          229 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L48 OR L49)
L51          305 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR 15AU81
                 OR RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR ORENITRAM OR
                 UT15 OR UT 15 OR TREPULMIX
L52       114351 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR
                 LUNG OR BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?)
                 (2A) (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE
                 OR DISORDER)
L53         8916 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS?
                 OR PAH
L54       400670 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR
                 ATOMIZ? OR NEBULIZ?
L56           85 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L50 OR L51) AND (L52 OR
                 L53) AND L54
L57           73 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L56 AND L53
L58           71 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L57 AND (PY<2021 OR
                 PRY<2021 OR AY<2021)
L59           44 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L58 AND (BREATH# OR DOSE
                 OR AMOUNT OR CONC?)
L60           73 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L51 (10A) (L52 OR L53)
L61           21 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L59 AND L60
L62          539 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L63         3354 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L64        21629 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L65          121 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/PA,CS
L66           57 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                 L65) AND (L50 OR L51)
L67          121 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                 L65) AND (L52 OR L53)
L68          292 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR
                 L65) AND L54
L70           14 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L66 AND L67 AND L68
L71           15 SEA FILE=WPIX SPE=ON  ABB=ON  PLU=ON  L61 NOT L70


=> file medline drugu biosis embase

FILE 'MEDLINE' ENTERED AT 12:55:30 ON 23 AUG 2022

FILE 'DRUGU' ENTERED AT 12:55:30 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE 'BIOSIS' ENTERED AT 12:55:30 ON 23 AUG 2022
Copyright (c) 2022 Clarivate Analytics

FILE 'EMBASE' ENTERED AT 12:55:30 ON 23 AUG 2022
Copyright (c) 2022 Elsevier B.V. All rights reserved.

=> d que L97
```

17/233,061

```
L2           1 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
L3          38 SEA FILE=REGISTRY SPE=ON  ABB=ON  PLU=ON  81846-19-7/CRN
L72       3307 SEA (L2 OR L3)
L73       5229 SEA TREPROSTINIL? OR 15AU81 OR RUMODOLIN OR TREVYENT OR TYVASO
                 OR UNIPROST OR ORENITRAM OR UT15 OR UT 15 OR TREPULMIX
L74    2957023 SEA (RESP? OR PULMON? OR LUNG OR BRONCH? OR ALVEOL? OR INHAL?
                 OR BREATH? OR AIRWAY?) (2A) (CHRONIC OR HYPERTENS? OR INFLAM?
                 OR CONDITION OR DISEASE OR DISORDER)
L75     332964 SEA PULMON? (2A) HYPERTENS? OR PAH
L76    1257984 SEA INHAL? OR BREATH? OR ATOMIZ? OR NEBULIZ?
L78       1850 SEA (L72 OR L73) AND (L74 OR L75) AND L76
L79       1436 SEA L73 (10A) L75
L80        496 SEA L78 AND L79
L81        619 SEA L73 (10A) L76
L82        340 SEA L80 AND L81
L83        707 SEA L73 (5A) (BREATH# OR DOSE OR AMOUNT OR CONC?)
L84        123 SEA L82 AND L83
L85         95 SEA L84 AND (PY<2021 OR PRY<2021 OR AY<2021 OR MY<2021 OR
                 REVIEW/DT)
L86         30 SEA L85 AND BREATH# AND INHAL?
L87       8527 SEA PETERSON L?/AU,AUTH
L88      41133 SEA SMITH P?/AU,AUTH
L89      13265 SEA DENG C?/AU,AUTH
L90       7566 SEA UNITED THERAPEUTICS?/PA,CS
L91        320 SEA (L87 OR L88 OR L89 OR L90) AND (L72 OR L73)
L92       2971 SEA (L87 OR L88 OR L89 OR L90) AND (L74 OR L75)
L93       1004 SEA (L87 OR L88 OR L89 OR L90) AND L76
L95         99 SEA L91 AND L92 AND L93
L96         29 SEA L95 AND L79 AND L81 AND L83
L97         25 SEA L86 NOT L96


=> dup rem L47 L71 L97

FILE 'HCAPLUS' ENTERED AT 12:55:52 ON 23 AUG 2022
USE IS SUBJECT TO THE TERMS OF YOUR STN CUSTOMER AGREEMENT.
COPYRIGHT (C) 2022 AMERICAN CHEMICAL SOCIETY (ACS)

FILE 'WPIX' ENTERED AT 12:55:52 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE 'MEDLINE' ENTERED AT 12:55:52 ON 23 AUG 2022

FILE 'DRUGU' ENTERED AT 12:55:52 ON 23 AUG 2022
COPYRIGHT (C) 2022 CLARIVATE

FILE 'BIOSIS' ENTERED AT 12:55:52 ON 23 AUG 2022
Copyright (c) 2022 Clarivate Analytics

FILE 'EMBASE' ENTERED AT 12:55:52 ON 23 AUG 2022
Copyright (c) 2022 Elsevier B.V. All rights reserved.
PROCESSING COMPLETED FOR L47
PROCESSING COMPLETED FOR L71
PROCESSING COMPLETED FOR L97
L99         52 DUP REM L47 L71 L97 (16 DUPLICATES REMOVED)
                 ANSWERS '1-28' FROM FILE HCAPLUS
```

17/233,061

```
ANSWERS '29-42' FROM FILE WPIX
ANSWERS '43-44' FROM FILE MEDLINE
ANSWERS '45-46' FROM FILE DRUGU
ANSWERS '47-52' FROM FILE EMBASE
```

# Text Search Results

```
=> d 1-28 ibib abs hitind; d 29-42 ibib ab; d 43-52 iall
```

```
L99  ANSWER 1 OF 52  HCAPLUS  COPYRIGHT 2022 ACS on STN DUPLICATE 1
ACCESSION NUMBER:        2018:16467  HCAPLUS  Full-text
DOCUMENT NUMBER:         173:30452
TITLE:                   Inhaled Treprostinil in Pulmonary Hypertension
                         Associated with Lung Disease
AUTHOR(S):               Faria-Urbina, Mariana; Oliveira, Rudolf K. F.;
                         Agarwal, Manyoo; Waxman, Aaron B.
CORPORATE SOURCE:        Pulmonary and Critical Care Medicine, Brigham and
                         Women's Hospital and Harvard Medical School, Boston,
                         MA, USA
SOURCE:                  Lung (2018), 196(2), 139-146
                         CODEN: LUNGD9; ISSN: 0341-2040
DIGITAL OBJECT ID:       10.1007/s00408-017-0081-7
PUBLISHER:               Springer
DOCUMENT TYPE:           Journal; (online computer file)
LANGUAGE:                English
AB    Purpose: Pulmonary hypertension (PH) in the setting of parenchymal
      lung disease adversely affects quality of life and survival.  However,
      PH-specific drugs may result in ventilation/perfusion imbalance and
      currently, there are no approved PH treatments for this patient
      population.  In the present retrospective study, data from 22 patients
      with PH assocd. with lung disease treated with inhaled
      treprostinil (iTre) and followed up clin. for at least 3 mo are
      presented.  Methods: PH was defined by resting right heart catheterization
      as a mean pulmonary artery pressure (mPAP) ≥ 35 mmHg, or mPAP
      ≥ 25 mmHg assocd. with pulmonary vascular resistance ≥ 4
      Woods Units.  Follow-up evaluation was performed at the discretion of the
      attending physician.  Results: From baseline to follow-up, we obsd.
      significant improvement in functional class (n = 22, functional class
      III-IV 82 vs. 59%, p = 0.041) and 6-min walk distance (n = 11, 243 ±
      106 vs. 308 ± 109; p = 0.022), without a deleterious effect on resting
      peripheral oxygen satn. (n = 22, 92 ± 6 vs. 94 ± 4; p = 0.014).
      Most of the patients (86%, n = 19/22) were using long-term nasal
      supplemental oxygen at baseline.  During follow-up, only one patient had
      increased supplemental oxygen requirement.  The most common adverse events
      were cough, headache, and diarrhea.  No severe adverse event was reported.
      Conclusions: The results suggest that iTre is safe in patients with
      Group 3 PH and evidence of pulmonary vascular remodeling in terms of
      functional class, gas exchange, and exercise capacity.  Addnl., iTre was
      well tolerated.  The potential role of PH-specific drugs in Group 3 PH
      should be further assessed in larger prospective studies.
CC    1-8 (Pharmacology)
ST    treprostinil vasodilator pulmonary hypertension lung disease
IT    Blood pressure
         Breathing (animal)
      Homo sapiens
      Human
         Lung disease
         Pulmonary hypertension
      Remodeling (biological)
      Vascular resistance
```

```
        Vasodilators
            (inhaled treprostinil in pulmonary
            hypertension assocd. with lung disease)
IT   81846-19-7
            RL: PAC (Pharmacological activity); THU (Therapeutic use); BIOL
            (Biological study); USES (Uses)
            (inhaled treprostinil in pulmonary
            hypertension assocd. with lung disease)
OS.CITING REF COUNT:       4      THERE ARE 4 CAPLUS RECORDS THAT CITE THIS RECORD
                                   (4 CITINGS)
REFERENCE COUNT:          35      THERE ARE 35 CITED REFERENCES AVAILABLE FOR THIS
                                   RECORD. ALL CITATIONS AVAILABLE IN THE RE FORMAT


L99  ANSWER 2 OF 52  HCAPLUS  COPYRIGHT 2022 ACS on STN DUPLICATE 2
ACCESSION NUMBER:        2017:1775826  HCAPLUS Full-text
DOCUMENT NUMBER:         167:557832
TITLE:                   Dry powder treprostinil  for the treatment of
                         pulmonary  hypertension
INVENTOR(S):             Roscigno, Robert Frank; Farrer, Brian T.; Sprague,
                         Jacob J.; Maynor, Benjamin
PATENT ASSIGNEE(S):      Liquidia Technologies, Inc., USA
SOURCE:                  PCT Int. Appl., 144pp.
                         CODEN: PIXXD2
DOCUMENT TYPE:           Patent
LANGUAGE:                English
FAMILY ACC. NUM. COUNT:  1
PATENT INFORMATION:
      PATENT NO.          KIND  DATE        APPLICATION NO.          DATE
      ---------------     ----  --------    --------------------     --------
      WO 2017192993       A1    20171109    WO 2017-US31301          20170505
      CA 3023257          A1    20171109    CA 2017-3023257          20170505
      AU 2017261317       A1    20181213    AU 2017-261317           20170505
      IL 262720           A     20181231    IL 2017-262720           20170505
      EP 3452170          A1    20190313    EP 2017-793448           20170505
      JP 2019519489       T     20190711    JP 2018-558275           20170505
      US 20190151332      A1    20190523    US 2018-16099135         20181105
      US 10898494         B2    20210126
      US 20210077504      A1    20210318    US 2020-17104348         20201125
      US 20210353640      A1    20211118    US 2021-17390476         20210730
      US 20210353641      A1    20211118    US 2021-17390514         20210730
      US 20220257608      A1    20220818    US 2022-17719439         20220413
PRIORITY APPLN. INFO.:                      US 2016-62332013    P    20160505
                                            US 2016-62404960    P    20161006
                                            US 2016-62440078    P    20161229
                                            US 2017-62472204    P    20170316
                                            WO 2017-US31301     W    20170505
                                            US 2018-16099135    A1   20181105
                                            US 2020-17104348    A1   20201125
PATENT STATUS PATENT INFORMATION:
      PATENT NO.          KIND  STATUS        STATUS DATE
      ---------------     ----  ------------  -----------
      WO 2017192993       A1    Dead          20210202
      CA 3023257          A1    Alive         20201121
      AU 2017261317       A1    Alive         20201121
      IL 262720           A     Alive         20220721
      EP 3452170          A1    Alive         20201203
```

17/233,061

```
         US 20190151332     A1   Alive            20201121
         US 10898494        B2   Alive            20210204
         US 20210077504     A1   Alive            20210325
         US 20210353640     A1   Transitional     20220616
         US 20210353641     A1   Transitional     20220616
```

ASSIGNMENT HISTORY FOR US PATENT AVAILABLE IN LSUS DISPLAY FORMAT

OTHER SOURCE(S):      CASFORMULTNS 2017:1775826

AB    A dry powder **inhalation**   treatment for **pulmonary**   arterial
      **hypertension**   includes a **dose**   of dry particles comprising greater than
      25 µg of **treprostinil**   enclosed in a capsule.  The dry particles can
      include **treprostinil** , a wetting agent, a hydrophobicity modifying agent,
      a pH modifying agent and a buffer.  A method of treating a patient having
      **pulmonary**   arterial **hypertension**   includes providing a patient a dry
      powder **inhaler** , providing the patient at least one capsule for use in
      the dry powder **inhaler** , the capsule including at least 25 µg of
      **treprostinil** .

IPCI  A61P0009-12 [I]; A61K0009-72 [I]; A61K0031-00 [I]; A61K0031-192 [I];
      A61K0031-557 [I]; A61P0009-00 [I]

IPCR  A61P0009-12 [I]; A61K0009-72 [I]; A61K0031-00 [I]; A61K0031-192 [I];
      A61K0031-557 [I]; A61P0009-00 [I]

CC    63-6 (Pharmaceuticals)

ST    dry powder **treprostinil**   treatment **pulmonary**     **hypertension**

IT    Buffers
      Homo sapiens
      Human
        **Medical inhalers**
        **Pharmaceutical powder inhalants**
        **Pulmonary hypertension**
      Wetting agents
        (dry powder **treprostinil** for treatment of **pulmonary hypertension**)

IT    Nonreducing carbohydrates
      RL: THU (Therapeutic use); BIOL (Biological study); USES (Uses)
        (dry powder **treprostinil** for treatment of **pulmonary hypertension**)

IT    Hydrophobicity
      pH
        (modifying agent; dry powder **treprostinil** for treatment of
        **pulmonary hypertension**)

IT    **81846-19-7, Treprostinil**
      RL: PAC (Pharmacological activity); THU (Therapeutic use); BIOL
      (Biological study); USES (Uses)
        (dry powder **treprostinil** for treatment of **pulmonary hypertension**)

IT    61-90-5, L-Leucine, biological studies    6132-04-3, Sodium citrate
      dihydrate   6138-23-4, Trehalose dihydrate   7647-14-5, Sodium chloride,
      biological studies    9005-65-6, Polysorbate 80   **289480-64-4,**
      **Treprostinil** sodium
      RL: THU (Therapeutic use); BIOL (Biological study); USES (Uses)
        (dry powder **treprostinil** for treatment of **pulmonary**
        **hypertension**)

REFERENCE COUNT:          5    THERE ARE 5 CITED REFERENCES AVAILABLE FOR THIS
                               RECORD. ALL CITATIONS AVAILABLE IN THE RE FORMAT


L99  ANSWER 3 OF 52  HCAPLUS  COPYRIGHT 2022 ACS on STN DUPLICATE 3
ACCESSION NUMBER:       2016:565933  HCAPLUS Full-text
DOCUMENT NUMBER:        165:268009
TITLE:                  Safety and Tolerability of High-**dose Inhaled**
                        **Treprostinil** in **Pulmonary Hypertension**
```

17/233,061

```
AUTHOR(S):              Parikh, Kishan S.; Rajagopal, Sudarshan; Fortin,
                        Terry; Tapson, Victor F.; Poms, Abby D.
CORPORATE SOURCE:       Department of Medicine, Duke University Medical
                        Center, Durham, USA
SOURCE:                 Journal of Cardiovascular Pharmacology (2016),
                        67(4), 322-325
                        CODEN: JCPCDT; ISSN: 0160-2446
DIGITAL OBJECT ID:      10.1097/FJC.0000000000000357
PUBLISHER:              Lippincott Williams & Wilkins
DOCUMENT TYPE:          Journal; (online computer file)
LANGUAGE:               English
```

AB   **Pulmonary** arterial **hypertension** (**PAH**) has emerging therapeutic
     options including prostacyclin analogs.  **Inhaled** therapy offers
     advantages compared with alternative routes of administration.  We aimed
     to det. the safety and tolerability of **inhaled treprostinil** (iTRE)
     titrated to target maintenance **dose** higher than the labeled **dose** for
     **PAH**.  Our study included 80 consecutive patients (69% female, 70% White)
     followed at the Duke University Medical Center prescribed iTRE at **dose**
     >9 **breaths** (54 µg).  Etiol. of **pulmonary hypertension** was most
     frequently **PAH** (51%) or secondary to **lung disease** (35%).  Median
     follow-up was 20.3 mo (interquartile range 14.2-33.2).  Most patients
     (91%) had titrated iTRE **dose** to 12 **breaths** (72 µg) four times
     daily.  Common side effects reported with drug initiation were cough
     (41%), headache (28%), and throat irritation (8%); most of the side
     effects improved at follow-up.  Overall, 25% patients discontinued iTRE: 9
     transitioned to parenteral therapy, 4 had untolerable side effects, 3
     died, and 4 had other reasons.  Overall, iTRE taken at a higher **dose**
     than approved for use in **PAH** was safe and well-tolerated in our cohort
     of **pulmonary hypertension** patients.

```
CC   1-8 (Pharmacology)
ST   pulmonary hypertension treprostinil antihypertensive
IT   Antihypertensives
     Cough
     Drug toxicity
     Headache
     Homo sapiens
     Human
       Inhalation drug delivery systems
     Pharyngeal irritation
       Pulmonary hypertension
        (safety and Tolerability of High-dose Inhaled
        Treprostinil in Pulmonary Hypertension)
IT   81846-19-7, Treprostinil
     RL: ADV (Adverse effect, including toxicity); PAC (Pharmacological
     activity); THU (Therapeutic use); BIOL (Biological study); USES (Uses)
        (safety and Tolerability of High-dose Inhaled
        Treprostinil in Pulmonary Hypertension)
OS.CITING REF COUNT:    7     THERE ARE 7 CAPLUS RECORDS THAT CITE THIS RECORD
                              (7 CITINGS)
REFERENCE COUNT:        23    THERE ARE 23 CITED REFERENCES AVAILABLE FOR THIS
                              RECORD. ALL CITATIONS AVAILABLE IN THE RE FORMAT
```

```
L99  ANSWER 4 OF 52  HCAPLUS  COPYRIGHT 2022 ACS on STN DUPLICATE 6
ACCESSION NUMBER:       2013:332224  HCAPLUS  Full-text
DOCUMENT NUMBER:        158:723374
```

17/233,061

burdensome option for select patients with **pulmonary** arterial **hypertension** (**PAH**) who are receiving parenteral prostanoids. In this case series, we report preliminary results on the safety and feasibility of a protocol to transition patients from continuously infused **treprostinil** to **inhaled treprostinil** (4 times daily [q.i.d.]). METHODS: Two stable patients with **PAH** receiving intravenous and subcutaneous **treprostinil**, respectively, were transitioned to **inhaled treprostinil** at 3 **breaths** q.i.d. and up-titrated to a target dose of ≥ 9 **breaths** q.i.d. (54 µg per session) over a 4-day period. Simultaneously, the parenteral **treprostinil dose** was down-titrated by 25% daily. The patients had received parenteral **treprostinil** for 54 and 72 months, respectively, with no evidence of right heart failure. Safety, functional status, hemodynamic parameters, and exercise capacity were assessed before and after transition to **inhaled treprostinil**. RESULTS: At the time of transition, both patients were NYHA functional class II idiopathic **PAH**. Transition to **inhaled treprostinil** was performed because of a central line infection in 1 patient and subcutaneous infusion site discomfort in the other patient. Both patients were also receiving oral **PAH** therapy. Baseline **doses** of parenteral **treprostinil** were 46 and 50 ng/kg/min, respectively. Both patients were transitioned off of parenteral **treprostinil** and achieved a target **inhaled treprostinil dose** of ≥ 9 **breaths** q.i.d. by day 4. Neither patient deteriorated acutely after transitioning to **inhaled treprostinil**. Follow-up hemodynamic and 6-minute walk distance results will be presented. No significant adverse events requiring discontinuation were reported after transition to **inhaled treprostinil**. CONCLUSION: Transition from parenteral **treprostinil** to **inhaled treprostinil** appears feasible in select patients, as neither patient experienced acute clinical deterioration nor clinically significant adverse events. Follow-up safety and efficacy data will be presented. CLINICAL IMPLICATIONS: **Inhaled treprostinil** may have specific safety and convenience advantages compared with parenteral prostanoid treatment. This study may provide guidance to physicians considering **inhalational** therapy for select patients receiving parenteral prostanoids.


CONTROLLED TERM:      Medical Descriptors:
                      *patient
                      *safety
                      **\*pulmonary hypertension**
                      **breathing**
                      follow up
                      therapy
                      physician
                      functional status
                      case study
                      heart right ventricle failure
                      hemodynamic parameters
                      exercise
                      infection
                      subcutaneous drug administration
                      deterioration
                      **inhalational drug administration**
CONTROLLED TERM:      Drug Descriptors:
                      **\*uniprost**
                      prostanoid

# Full Search History

```
=> d his nofile

        FILE 'HCAPLUS' ENTERED AT 11:39:30 ON 23 AUG 2022
L1              1 SEA SPE=ON  ABB=ON  PLU=ON  US2021-0330621/PN

        FILE 'REGISTRY' ENTERED AT 11:39:51 ON 23 AUG 2022
                E TREPROSTINIL/CN
L2              1 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
                D IDE
L3             38 SEA SPE=ON  ABB=ON  PLU=ON  81846-19-7/CRN

        FILE 'ZCAPLUS' ENTERED AT 11:40:22 ON 23 AUG 2022
                E TREPROSTINIL/CT
                E TREPROSTINIL+ALL/CT
                E TREPROSTINIL SODIUM+ALL/CT
                E "BREATHING (ANIMAL)"+ALL/CT
                E LUNG+ALL/CT
                E LUNG DISEASE/CT
                E LUNG DISEASE+ALL/CT
                E BRONCHIOLITIS+ALL/CT
                E CHRONIC LUNG DISEASE+ALL/CT
                E INTERSTITIAL LUNG DISEASE+ALL/CT
                E PULMONARY HYPERTENSION+ALL/CT
                E PULMONARY EMPHYSEMA+ALL/CT
                E PULMONARY FIBROSIS+ALL/CT
                E INTERSTITIAL PNEUMONIA+ALL/CT
                E MEDICAL INHALERS+ALL/CT
                E PNEUMONIA+ALL/CT

        FILE 'HCAPLUS' ENTERED AT 11:59:48 ON 23 AUG 2022
L4            720 SEA SPE=ON  ABB=ON  PLU=ON  (L2 OR L3)
L5            700 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CT OR TREPROSTINIL
                SODIUM/CT
L6            756 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR 15AU81 OR
                RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR ORENITRAM OR
                UT15 OR UT 15 OR TREPULMIX
L7         714258 SEA SPE=ON  ABB=ON  PLU=ON  LUNG+OLD/CT OR LUNG DISEASE+OLD,NT/CT
L8          46518 SEA SPE=ON  ABB=ON  PLU=ON  CHRONIC LUNG DISEASE+OLD,NT/CT
L9          20788 SEA SPE=ON  ABB=ON  PLU=ON  PULMONARY HYPERTENSION+OLD,NT/CT
L10          3333 SEA SPE=ON  ABB=ON  PLU=ON  PULMONARY ANTIHYPERTENSIVES+OLD/CT
L11         12516 SEA SPE=ON  ABB=ON  PLU=ON  INTERSTITIAL LUNG DISEASE+OLD,NT/CT
L12         34893 SEA SPE=ON  ABB=ON  PLU=ON  "HYPOXIA, ANIMAL"/CT
L13        219121 SEA SPE=ON  ABB=ON  PLU=ON  BRONCHIOLITIS+OLD,NT/CT OR
                PULMONARY EMPHYSEMA+OLD/CT OR PULMONARY FIBROSIS+OLD,NT/CT OR
                INTERSTITIAL PNEUMONIA+OLD/CT OR PNEUMONIA+NT/CT OR CHRONIC
                OBSTRUCTIVE PULMONARY DISEASE+OLD/CT
L14        461386 SEA SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR LUNG OR
                BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?) (2A)
                (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE OR
                DISORDER)
L15         86966 SEA SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS? OR PAH
L16         26884 SEA SPE=ON  ABB=ON  PLU=ON  "BREATHING (ANIMAL)"/CT
L17         27754 SEA SPE=ON  ABB=ON  PLU=ON  INHALATION DRUG DELIVERY SYSTEMS+OL
                D,NT/CT OR MEDICAL INHALERS+OLD,NT/CT
```

17/233,061

```
L18    380794 SEA SPE=ON  ABB=ON  PLU=ON   INHAL? OR BREATH? OR ATOMIZ? OR
               NEBULIZ?
L19       591 SEA SPE=ON  ABB=ON  PLU=ON  (L4 OR L5 OR L6) AND (L7 OR L8 OR
               L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR L15)
L20       187 SEA SPE=ON  ABB=ON  PLU=ON  (L4 OR L5 OR L6) AND (L7 OR L8 OR
               L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR L15) AND (L16 OR L17
               OR L18)
L21       311 SEA SPE=ON  ABB=ON  PLU=ON  (L4 OR L5) (L) (L14 OR L15)
L22       196 SEA SPE=ON  ABB=ON  PLU=ON  (L7 OR L8 OR L9 OR L10 OR L11 OR
               L12 OR L13) (L) L6
L23       281 SEA SPE=ON  ABB=ON  PLU=ON  L6 (5A) (L14 OR L15)
L24       137 SEA SPE=ON  ABB=ON  PLU=ON  L20 AND (L21 OR L22 OR L23)
L25       135 SEA SPE=ON  ABB=ON  PLU=ON  L24 AND ((L8 OR L9 OR L10 OR L11
               OR L12) OR (L15 OR L16))
L26       126 SEA SPE=ON  ABB=ON  PLU=ON  L24 AND (L8 OR L9 OR L10 OR L11 OR
               L12) AND (L15 OR L16)
L27       126 SEA SPE=ON  ABB=ON  PLU=ON  L26 AND (L9 OR L15)
L28        58 SEA SPE=ON  ABB=ON  PLU=ON  (L4 OR L5) (L) L18
L29        50 SEA SPE=ON  ABB=ON  PLU=ON  (L16 OR L17) (L) L6
L30        95 SEA SPE=ON  ABB=ON  PLU=ON  L6 (5A) L18
L31        79 SEA SPE=ON  ABB=ON  PLU=ON  L27 AND (L28 OR L29 OR L30)
L32     14621 SEA SPE=ON  ABB=ON  PLU=ON  (L7 OR L8 OR L9 OR L10 OR L11 OR
               L12 OR L13) (L) L18
L33      3508 SEA SPE=ON  ABB=ON  PLU=ON  (L16 OR L17) (L) (L14 OR L15)
L34     16301 SEA SPE=ON  ABB=ON  PLU=ON  (L14 OR L15) (5A) L18
L35        62 SEA SPE=ON  ABB=ON  PLU=ON  L31 AND (L32 OR L33 OR L34)
L36        55 SEA SPE=ON  ABB=ON  PLU=ON  L35 AND (PY<2021 OR PRY<2021 OR
               AY<2021 OR REVIEW/DT)
L37        31 SEA SPE=ON  ABB=ON  PLU=ON  L36 AND (BREATH# OR DOSE OR AMOUNT
               OR CONC?)
L38      1701 SEA SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L39     12655 SEA SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L40     16044 SEA SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L41       280 SEA SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/PA,CS
L42        64 SEA SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR L41) AND (L4
               OR L5 OR L6)
L43       958 SEA SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR L41) AND (L7
               OR L8 OR L9 OR L10 OR L11 OR L12 OR L13 OR L14 OR L15)
L44       217 SEA SPE=ON  ABB=ON  PLU=ON  (L38 OR L39 OR L40 OR L41) AND
               (L16 OR L17 OR L18)
L45        44 SEA SPE=ON  ABB=ON  PLU=ON  L42 AND L43
L46        13 SEA SPE=ON  ABB=ON  PLU=ON  L42 AND L43 AND L44
L47        28 SEA SPE=ON  ABB=ON  PLU=ON  L37 NOT L46

        FILE 'DCR' ENTERED AT 12:30:44 ON 23 AUG 2022
               E TREPROSTINIL/CN
L48         1 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL/CN
               D IDE
L49        34 SEA SPE=ON  ABB=ON  PLU=ON  86001/DCSE

        FILE 'WPIX' ENTERED AT 12:31:26 ON 23 AUG 2022
L50       229 SEA SPE=ON  ABB=ON  PLU=ON  (L48 OR L49)
L51       305 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR 15AU81 OR
               RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR ORENITRAM OR
               UT15 OR UT 15 OR TREPULMIX
L52    114351 SEA SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR LUNG OR
```

161

```
                BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?) (2A)
                (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE OR
                DISORDER)
L53       8916 SEA SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS? OR PAH
L54     400670 SEA SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR ATOMIZ? OR
                NEBULIZ?
L55        190 SEA SPE=ON  ABB=ON  PLU=ON  (L50 OR L51) AND (L52 OR L53)
L56         85 SEA SPE=ON  ABB=ON  PLU=ON  (L50 OR L51) AND (L52 OR L53) AND
                L54
L57         73 SEA SPE=ON  ABB=ON  PLU=ON  L56 AND L53
L58         71 SEA SPE=ON  ABB=ON  PLU=ON  L57 AND (PY<2021 OR PRY<2021 OR
                AY<2021)
L59         44 SEA SPE=ON  ABB=ON  PLU=ON  L58 AND (BREATH# OR DOSE OR AMOUNT
                OR CONC?)
L60         73 SEA SPE=ON  ABB=ON  PLU=ON  L51 (10A) (L52 OR L53)
L61         21 SEA SPE=ON  ABB=ON  PLU=ON  L59 AND L60
L62        539 SEA SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU
L63       3354 SEA SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU
L64      21629 SEA SPE=ON  ABB=ON  PLU=ON  DENG C?/AU
L65        121 SEA SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/PA,CS
L66         57 SEA SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR L65) AND
                (L50 OR L51)
L67        121 SEA SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR L65) AND
                (L52 OR L53)
L68        292 SEA SPE=ON  ABB=ON  PLU=ON  (L62 OR L63 OR L64 OR L65) AND L54
L69         36 SEA SPE=ON  ABB=ON  PLU=ON  L66 AND L67
L70         14 SEA SPE=ON  ABB=ON  PLU=ON  L66 AND L67 AND L68
L71         15 SEA SPE=ON  ABB=ON  PLU=ON  L61 NOT L70

     FILE 'MEDLINE, DRUGU, BIOSIS, EMBASE' ENTERED AT 12:40:49 ON 23 AUG 2022
L72       3307 SEA SPE=ON  ABB=ON  PLU=ON  (L2 OR L3)
L73       5229 SEA SPE=ON  ABB=ON  PLU=ON  TREPROSTINIL? OR 15AU81 OR
                RUMODOLIN OR TREVYENT OR TYVASO OR UNIPROST OR ORENITRAM OR
                UT15 OR UT 15 OR TREPULMIX
L74    2957023 SEA SPE=ON  ABB=ON  PLU=ON  (RESP? OR PULMON? OR LUNG OR
                BRONCH? OR ALVEOL? OR INHAL? OR BREATH? OR AIRWAY?) (2A)
                (CHRONIC OR HYPERTENS? OR INFLAM? OR CONDITION OR DISEASE OR
                DISORDER)
L75     332964 SEA SPE=ON  ABB=ON  PLU=ON  PULMON? (2A) HYPERTENS? OR PAH
L76    1257984 SEA SPE=ON  ABB=ON  PLU=ON  INHAL? OR BREATH? OR ATOMIZ? OR
                NEBULIZ?
L77       4526 SEA SPE=ON  ABB=ON  PLU=ON  (L72 OR L73) AND (L74 OR L75)
L78       1850 SEA SPE=ON  ABB=ON  PLU=ON  (L72 OR L73) AND (L74 OR L75) AND
                L76
L79       1436 SEA SPE=ON  ABB=ON  PLU=ON  L73 (10A) L75
L80        496 SEA SPE=ON  ABB=ON  PLU=ON  L78 AND L79
L81        619 SEA SPE=ON  ABB=ON  PLU=ON  L73 (10A) L76
L82        340 SEA SPE=ON  ABB=ON  PLU=ON  L80 AND L81
L83        707 SEA SPE=ON  ABB=ON  PLU=ON  L73 (5A) (BREATH# OR DOSE OR
                AMOUNT OR CONC?)
L84        123 SEA SPE=ON  ABB=ON  PLU=ON  L82 AND L83
L85         95 SEA SPE=ON  ABB=ON  PLU=ON  L84 AND (PY<2021 OR PRY<2021 OR
                AY<2021 OR MY<2021 OR REVIEW/DT)
L86         30 SEA SPE=ON  ABB=ON  PLU=ON  L85 AND BREATH# AND INHAL?
L87       8527 SEA SPE=ON  ABB=ON  PLU=ON  PETERSON L?/AU,AUTH
L88      41133 SEA SPE=ON  ABB=ON  PLU=ON  SMITH P?/AU,AUTH
```

17/233,061

```
L89      13265 SEA SPE=ON  ABB=ON  PLU=ON  DENG C?/AU,AUTH
L90       7566 SEA SPE=ON  ABB=ON  PLU=ON  UNITED THERAPEUTICS?/PA,CS
L91        320 SEA SPE=ON  ABB=ON  PLU=ON  (L87 OR L88 OR L89 OR L90) AND
                (L72 OR L73)
L92       2971 SEA SPE=ON  ABB=ON  PLU=ON  (L87 OR L88 OR L89 OR L90) AND
                (L74 OR L75)
L93       1004 SEA SPE=ON  ABB=ON  PLU=ON  (L87 OR L88 OR L89 OR L90) AND L76
L94        270 SEA SPE=ON  ABB=ON  PLU=ON  L91 AND L92
L95         99 SEA SPE=ON  ABB=ON  PLU=ON  L91 AND L92 AND L93
L96         29 SEA SPE=ON  ABB=ON  PLU=ON  L95 AND L79 AND L81 AND L83
L97         25 SEA SPE=ON  ABB=ON  PLU=ON  L86 NOT L96
                SET COST OFF
                D SET

     FILE 'HCAPLUS' ENTERED AT 12:53:48 ON 23 AUG 2022
                D SET
                D QUE L46

     FILE 'WPIX' ENTERED AT 12:54:00 ON 23 AUG 2022
                D QUE L70

     FILE 'MEDLINE, DRUGU, BIOSIS, EMBASE' ENTERED AT 12:54:15 ON 23 AUG 2022
                D QUE L96

     FILE 'HCAPLUS, WPIX, MEDLINE, BIOSIS, EMBASE' ENTERED AT 12:54:40 ON 23
     AUG 2022
L98         42 DUP REM L46 L70 L96 (14 DUPLICATES REMOVED)
                     ANSWERS '1-13' FROM FILE HCAPLUS
                     ANSWERS '14-21' FROM FILE WPIX
                     ANSWERS '22-27' FROM FILE MEDLINE
                     ANSWER '28' FROM FILE BIOSIS
                     ANSWERS '29-42' FROM FILE EMBASE
                D 1-13 IBIB ABS HITIND
                D 14-21 IBIB AB
                D 22-42 IALL

     FILE 'HCAPLUS' ENTERED AT 12:55:17 ON 23 AUG 2022
                D QUE L47
                D QUE L71

     FILE 'MEDLINE, DRUGU, BIOSIS, EMBASE' ENTERED AT 12:55:30 ON 23 AUG 2022
                D QUE L97

     FILE 'HCAPLUS, WPIX, MEDLINE, DRUGU, BIOSIS, EMBASE' ENTERED AT 12:55:52
     ON 23 AUG 2022
L99         52 DUP REM L47 L71 L97 (16 DUPLICATES REMOVED)
                     ANSWERS '1-28' FROM FILE HCAPLUS
                     ANSWERS '29-42' FROM FILE WPIX
                     ANSWERS '43-44' FROM FILE MEDLINE
                     ANSWERS '45-46' FROM FILE DRUGU
                     ANSWERS '47-52' FROM FILE EMBASE
                D 1-28 IBIB ABS HITIND
                D 29-42 IBIB AB
                D 43-52 IALL
```

163