IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff | ) ) | C.A. No. 23-975 (RGA) (SRF) |
| v. | ) ) | REDACTED - PUBLIC VERSION |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR PRELIMINARY INJUNCTION**

<div style="columns:2">

OF COUNSEL

William C. Jackson
Katherine Cheng
GOODWIN PROCTER LLP
1900 N St. NW
Washington, DC 20036
(202) 346-4000

Eric T. Romeo
Louis L. Lobel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Douglas Carsten
Art Dykhuis
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633

MORRIS NICHOLS ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff
United Therapeutics Corporation*

Adam W. Burrowbridge
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

</div>

Originally Filed:  April 15, 2024
Redacted Version Filed:  April 22, 2024

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................... 1

    I.    UTC Is Likely to Succeed on the Merits .................................................................. 1

        A.    UTC Has Established Infringement ............................................................. 1

        B.    UTC Is Likely to Succeed in Defending the Validity of the '327 Patent .......................................................................................................... 2

    II.    UTC Will Suffer Irreparable Harm Absent Injunction ........................................... 9

    III.    The Balance of Hardships and Public Interest Favor UTC.................................. 10

CONCLUSION ...................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Apple Inc. v. Samsung Elecs. Co. Ltd.*,
  678 F.3d 1314 (Fed. Cir. 2012)..................................................................................................9

*AstraZeneca LP v. Apotex, Inc.*,
  633 F.3d 1042 (Fed. Cir. 2010)..................................................................................................1

*Atlas Powder Co. v. Ireco, Inc.*,
  190 F.3d 1342 (Fed. Cir. 1999)..................................................................................................4

*Aventis Pharma Deutschland GmbH v. Lupin Ltd.*,
  2006 WL 2008962 (E.D. Va. July 17, 2006), *rev'd on other grounds*, 499 F.3d
  1293 (Fed. Cir. 2007)..................................................................................................................4

*Eli Lilly & Co. v. Barr Labs., Inc.*,
  251 F.3d 955 (Fed. Cir. 2001)....................................................................................................4

*Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*,
  8 F.4th 1331 (Fed. Cir. 2021) ....................................................................................................7

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004)..................................................................................................5

*Glaxo Grp. Ltd. v. Kali Labs., Inc.*,
  2005 WL 1398507 (D.N.J. June 10, 2005) ................................................................................5

*Glaxo Grp. Ltd. v. Teva Pharms. USA, Inc.*,
  2004 WL 1875017 (D. Del. Aug. 20, 2004) ..............................................................................5

*Novartis Pharms. Corp. v. W.-Ward Pharms. Int'l Ltd.*,
  923 F.3d 1051 (Fed. Cir. 2019)..................................................................................................8

*OSI Pharms., LLC v. Apotex Inc.*,
  939 F.3d 1375 (Fed. Cir. 2019)..................................................................................................8

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005)..................................................................................................2

*Prometheus Labs., Inc. v. Roxane Labs., Inc.*,
  805 F.3d 1092 (Fed. Cir. 2015)..................................................................................................4

*Rapoport v. Dement*,
  254 F.3d 1053 (Fed. Cir. 2001)..................................................................................................5

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011)..........................................................................................10

*Sanofi Mature IP v. Mylan Labs. Ltd.*,
  757 F. App'x 988 (Fed. Cir. 2019) .....................................................................................3, 5

*Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2023 WL 4175334 (D. Del. June 26,
  2023) ..................................................................................................................................6, 8

*Sanofi v. Watson Labs. Inc.*,
  875 F.3d 636 (Fed. Cir. 2017)............................................................................................1, 8

*Titan Tire Corp. v. Case New Holland, Inc.*,
  566 F.3d 1372 (Fed. Cir. 2009)..............................................................................................2

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
  624 F. Supp. 3d 436 (D. Del. 2022)....................................................................................1, 4

*Wise v. Biowish Techs., Inc*,
  2019 WL 4344273 (D. Del. Sept. 12, 2019) .........................................................................2

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| '793 patent | U.S. Patent No. 10,716,793 (D.I. 8-1, also Opp. Ex. 7) |
| '327 patent | U.S. Patent No. 11,826,327 (D.I. 8-2, also Opp. Ex. 6) |
| Agarwal | M. Agarwal & A.B. Waxman, *Inhaled Treprostinil in Group-3 Pulmonary Hypertension*, J. Heart and Lung Transplantation, April 15-18, 2015 at S343 (UTC_PH-ILD_009828) (Opp. Ex. 21) |
| Br. | Plaintiff's Brief in Support of Its Motion for Preliminary Injunction (D.I. 26) |
| Channick Decl. | Declaration of Dr. Richard Channick, M.D. (D.I. 54) |
| COPD | Chronic obstructive pulmonary disease |
| DPI | Dry powder inhaler |
| Ex. | Except as noted, "Ex." refers to exhibits to the Flynn Declaration (D.I. 27) or Flynn Reply Declaration filed concurrently herewith |
| FDA | U.S. Food and Drug Administration |
| FVC | Forced vital capacity |
| ILD | Interstitial lung disease |
| Liquidia | Defendant Liquidia Technologies, Inc. |
| Nathan Decl. | Declaration of Steven D. Nathan, M.D. (D.I. 28) |
| Opp. | Liquidia's Answering Brief in Opposition to UTC's Motion for Preliminary Injunction (D.I. 52) |
| Opp. Ex. | Exhibits attached to Liquidia's Appendix (D.I. 53) in support of its opposition |
| PAH | Pulmonary arterial hypertension |
| PH | Pulmonary hypertension |
| PH-COPD | Pulmonary hypertension associated with chronic obstructive pulmonary disease |
| PH-ILD | Pulmonary hypertension associated with interstitial lung disease |
| POSA | Person of ordinary skill in the art |
| Saggar | Rajeev Saggar et al., *Changes in Right Heart Haemodynamics and Echocardiographic Function in an Advanced Phenotype of Pulmonary Hypertension and Right Heart Dysfunction Associated with Pulmonary Fibrosis*, 69 Thorax 123 (2014) (LIQ_PH-ILD_00000226) (Opp. Ex. 22) |
| Selck Decl. | Declaration of Frederic Selck, Ph.D. (D.I. 29) |
| UTC | Plaintiff United Therapeutics Corporation |

# TABLE OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 8 | Apr. 6, 2024 Deposition Transcript of Dr. Richard Channick, M.D. |
| 9 | LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438 (2015) (Channick Dep. Ex. 12) |
| 10 | Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018) (Channick Dep. Ex. 13), https://www.youtube.com/watch?v=gmyeDbpolvM |
| 11 | Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-cv-00755, D.I. 234 (D. Del. Nov. 12, 2021) (Channick Dep. Ex. 10) |
| 12 | Excerpt from Mar. 28, 2022 Trial Transcript, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755 (D. Del.) |
| 13 | Nathan, S., et al., *Riociguat for Idiopathic Interstitial Pneumonia‐Associated Pulmonary Hypertension (RISE‐IIP): A Randomised, Placebo‐Controlled Phase 2b Study*, 7 Lancet Respiratory Med. 780 (2019) (UTC_PH-ILD_010530) |
| 14 | Hoeper, M., et al., *Diagnosis, Assessment, and Treatment of Non-Pulmonary Arterial Hypertension Pulmonary Hypertension*, 54 J. Am. Coll. Cardiology S85 (2009) (Channick Dep. Ex. 4) |
| 15 | Channick, R., et al., *Inhaled Treprostinil: A Therapeutic Review*, 6 Drug Design, Development & Therapy 19 (2012) (Channick Dep. Ex. 5) |
| 16 | Nathan, S., et al., *Pulmonary Hypertension in Chronic Lung Disease and Hypoxia*, 53 Eur. Respiratory J., 2019, at 1 (Channick Dep. Ex. 7) |
| 17 | Saggar, R., et al., Letter to the Editor, 384 New Eng. J. Med. 1870 (2021) (LIQ_PH-ILD_00002458) (Channick Dep. Ex. 2) |
| 18 | Humbert, M., et al., *2022 ESC/ERS Guidelines for the Diagnosis and Treatment of Pulmonary Hypertension*, 43 Eur. Heart J. 3618 (2022) (Channick Dep. Ex. 8) |
| 19 | Apr. 3, 2024 Transcript of PHAware, *Episode 71 - Richard N. Channick, MD*, *available at* YouTube (June 26, 2017) (Channick Dep. Ex. 6), https://www.youtube.com/watch?v=QeQY-r5OJ6o |
| 20 | Apr. 5, 2024 Deposition Transcript of Douglas G. Kidder |
| Opp. Ex. 3 | Email from Sanya Sukduang dated Feb. 26, 2024 |
| Opp. Ex. 6 | U.S. Patent No. 11,826,327 (D.I. 8-2) |
| Opp. Ex. 7 | U.S. Patent No. 10,716,793 (D.I. 8-1) |
| Opp. Ex. 9 | Mar. 10, 2024 Deposition Transcript of Dr. Steven Nathan |
| Opp. Ex. 21 | Agarwal, M., et al., *Inhaled Treprostinil in Group-3 Pulmonary Hypertension*, J Heart Lung Transplant 2015; 34: Suppl:S343. Abstract (UTC_PH-ILD_009828) |
| Opp. Ex. 22 | Saggar, R., et al., *Changes in Right Heart Haemodynamics and Echocardiographic Function in an Advanced Phenotype of Pulmonary Hypertension and Right Heart Dysfunction Associated with Pulmonary Fibrosis*, 69 Thorax 123 (2014) |
| Opp. Ex. 23 | Waxman, A., et al., *Inhaled Treprostinil in Pulmonary Hypertension Due to Interstitial Lung Disease*, 384 N. Eng. J. Med. 325-34 (2021) (UTC_PHILD_010790) |

| Exhibit | Description |
|---|---|
| Opp. Ex. 24 | United Therapeutics Corp., Protocol RIN-PH-201, *A Multicenter, Randomized, Double-Blinded, Placebo-Controlled Trial to Evaluate the Safety and Efficacy of Inhaled Treprostinil in Subjects with Pulmonary Hypertension Due to Parenchymal Lung Disease* (INCREASE) (LIQ_PH-ILD_00000247) |
| Opp. Ex. 25 | Draft Yutrepia™ Label |
| Opp. Ex. 35 | Faria-Urbina, M., et al., *Inhaled Treprostinil in Pulmonary Hypertension Associated with Lung Disease*, Lung 196:139–46 (2018) (UTC_PH-ILD_009936) (Nathan Dep. Ex. 16) |

Pending trial, Liquidia should be enjoined from launching Yutrepia™ for PH-ILD. Infringement is established: ██████████████████████████████████████████

██████████████████████████████████████ Liquidia's infringement would irreversibly alter the PH-ILD market and irreparably harm UTC. Liquidia challenges the validity of the '327 patent but overlooks the crucial requirement that the asserted claims be performed to improve exercise capacity in PH-ILD patients. Lacking data, the POSA could not have intended or expected to improve exercise capacity for PH-ILD patients prior to the '327 patent's disclosure of the INCREASE trial results. Until those surprising results, all Phase III clinical trials seeking to use a PAH treatment for PH-ILD failed. Nathan Decl., ¶¶ 78-87. Unable to show invalidity and with no serious argument that a launch would not irreparably harm UTC, Liquidia should be preliminarily enjoined.

## ARGUMENT

### I. UTC Is Likely to Succeed on the Merits

#### A. UTC Has Established Infringement

████████████████████████████████████████████ Opp. 12-13. ████████

███████████████████████████████████ Opp. 13; *see also* Opp. Ex. 25 §§ 1.2, 2.1; Br. 8; Nathan Decl., ¶¶ 142-44; Ex.[1] 8 at 169:14-170:13. ██████████████████████████

████████████████████████████████████████ Opp. 13. That argument is legally flawed. This Court rejected Liquidia's similar argument in the parties' prior case, concluding that the label "just need[s] to instruct doctors and patients to administer a single event dose that is therapeutically effective." *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 462-63 (D. Del. 2022) (citing *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1060 (Fed. Cir. 2010)); *see also Sanofi v. Watson Labs. Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017).

---

[1] Except as expressly noted, all cited Exhibits are those filed with the Flynn Declaration (D.I. 27) or Flynn Reply Declaration filed contemporaneously herewith.

Liquidia's non-infringement arguments for claims 11 and 14 also fail. Claim 14 requires that the "pulsed inhalation device" of claim 11 is a "dry powder inhaler," and the specification confirms that pulsed inhalation devices include dry powder inhalers. Opp. Ex. 6, cls. 11, 14, 21:6-7; Br. 9; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) ("[T]he inventor's lexicography governs."). Liquidia and Dr. Channick's litigation-driven attempt to narrow the meaning of "pulsed inhalation device" lacks support in the claims or specification. They misread the term "may" to unjustifiably assert that "not all dry powder inhalers [(DPI)] are pulsed inhalation devices" and rely on extrinsic references to argue that a "pulsed" DPI must have "a mechanism … that generates a pulse." Channick Decl., ¶¶ 148-50; *see also* Opp. 14. Liquidia ignores the inventors' lexicography and improperly imports a limitation from extrinsic sources. Channick Decl., ¶¶ 148-49; Ex. 8 at 171:24-173:21; *Phillips*, 415 F.3d at 1317. ████████████████████████
████████████████████████████████████████████████████████ Opp. Ex. 25 §§ 16-17.

### B. UTC Is Likely to Succeed in Defending the Validity of the '327 Patent

Liquidia is not likely to meet the uphill battle it faces overcoming the '327 patent's presumption of validity. To raise a sufficient "substantial question" of invalidity, Liquidia must show that "it is more likely than not that [it] will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380 (Fed. Cir. 2009). Liquidia cannot meet this exacting standard—especially when its primary references were highlighted to the examiner (Opp. Ex. 6, 20:56-57, 27:39-28:3, 45:33-34)—and its arguments for anticipation and obviousness based on the '793 patent, Agarwal, and Saggar fail.[2]

*No anticipation.* Even if the '793 patent is prior art, it does not disclose improving exercise

---

[2] Liquidia's footnote (Opp. 5 n.3) attempt to rely on prior art cited *only* in Dr. Channick's declaration is waiver—particularly where ████████████████████████████
████████████████████████; *Wise v. Biowish Techs.*, 2019 WL 4344273, at *6 (D. Del. Sept. 12, 2019).

capacity in PH-ILD patients. As Dr. Channick admits, the claims of the '327 patent require improving exercise capacity, whereas the '793 patent does not mention "exercise capacity" at all. Ex. 8 at 98:11-20, 177:4-178:19. Nor does the '793 patent contain any data that would allow an individual to administer treprostinil with the intentional purpose or expectation of improving exercise capacity, as required by the '327 patent, claim 1. Br. 10; Nathan Decl., ¶¶ 165-66; *e.g.*, *Sanofi Mature IP v. Mylan Labs. Ltd.*, 757 F. App'x 988 (Fed. Cir. 2019) (preamble limiting when giving "intentional purpose … for which the method must be performed"). Instead, the '327 patent teaches a new and unknown benefit of inhaled treprostinil for PH-ILD patients.

Nothing in Liquidia's Opposition addresses these holes in its anticipation argument. UTC's description of the '793 patent as covering the new PH-ILD indication has nothing to do with anticipation. *But see* Opp. 7. While a post-patent method that infringes a patent would, if earlier, anticipate *that patent*, that logic does not extend to *two different patents* with different claim scopes. Liquidia argues that the '793 patent "cover[s]" PH-ILD, but that does not mean that it teaches the use of inhaled treprostinil to improve exercise capacity in PH-ILD patients. Rather, the '793 patent claims methods of improving hemodynamics in PH patients generally, while the '327 patent claims a surprising improvement over the '793 patent: *improving exercise capacity* in PH-ILD patients.

Liquidia also cites the specification of the '793 patent, *e.g.*, Table 3, as showing anticipation. *Id.* at 6-7. But neither Liquidia nor Dr. Channick have identified any disclosure in the '793 patent where a PH-ILD patient either: (i) received the treprostinil dose required by the claims of the '327 patent or (ii) experienced an improvement in exercise capacity. Ex. 8 at 119:1-129:17. Liquidia tries to fill this gap by pointing to improvements in hemodynamic parameters. Rather than citing scientific literature, Liquidia and Dr. Channick instead mischaracterize UTC's expert testimony in prior cases. Opp. 7-8; Channick Decl., ¶ 40; Ex. 8 at 81:15-83:18. And yet, tellingly,

3

nothing in Liquidia's five-exhibit string cite (Opp. 7-8) equates hemodynamic improvements with "improvement in exercise capacity as shown by the 6MWD test." Liquidia's mischaracterization of these exhibits (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793 patent was directed to hemodynamic improvements. *See* Ex. 9 at 443; Ex. 10 at 16:1-11; Ex. 11 ¶ 56; Ex. 8 at 86:23-92:2; *United Therapeutics*, 624 F. Supp. 3d at 461-62. The experts here agree that while hemodynamic improvements *may* be associated with improved exercise capacity, this is far from guaranteed. Nathan Decl., ¶¶ 73-75, 193-94, 209; Ex. 8 at 90:22-23; Ex. 12 at 24:18-25:8.

*No inherency.* Liquidia's inherency arguments fare no better. Liquidia's reliance on *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 958 (Fed. Cir. 2001) and *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342 (Fed. Cir. 1999)—a case not about medical technology—is unavailing because those cases involved "a species … patented prior to the genus [whereas] here, in contrast, [the] genus [was] patented before an alleged species." *Aventis Pharma Deutschland GmbH v. Lupin Ltd.*, 2006 WL 2008962, at *35 n.19 (E.D. Va. July 17, 2006), *rev'd on other grounds*, 499 F.3d 1293 (Fed. Cir. 2007); *Eli Lilly*, 251 F.3d at 971. Using treprostinil to achieve hemodynamic improvement for PH (genus) does not anticipate improving exercise capacity for PH-ILD (species). And in anticipation, the genus-species distinction has "particular relevance" where, as in this case, "a particular treatment may be effective with respect to one subset of patients and ineffective (and even harmful) to another subset." *Prometheus Labs., Inc. v. Roxane Labs., Inc.*, 805 F.3d 1092, 1098 (Fed. Cir. 2015). Targeting a subset of patients can "reflect a new and useful invention [despite] prior art … disclosing the treatment method to patients generally," particularly "where the new patient subset displayed unexpected results." *Id.* That is exactly the case here: before the '327 patent, there was widespread skepticism that PH-ILD could be treated with a PAH drug; the

4

INCREASE study results were an unexpected breakthrough. Nathan Decl., ¶¶ 78-87, 193, 215.

Liquidia suggests (Opp. 9) that the dosing regimens in the INCREASE study and the '793 patent are identical. Not so. *Compare* Opp. Ex. 24 at LIQ_PH-ILD_00000357, *with* Opp. Ex. 7, cl. 1. Because they differ, the INCREASE study does not show what inherently results from the '793 patent's methods. *Cf. Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004). Moreover, "[i]nherency … may not be established by probabilities or possibilities." *Rapoport v. Dement*, 254 F.3d 1053, 1063 (Fed. Cir. 2001). Liquidia must prove that increased exercise capacity in PH-ILD patients is "a necessary and inevitable consequence of practicing the invention claimed in the prior art under normal conditions." *Glaxo Grp. Ltd. v. Teva Pharms. USA, Inc.*, 2004 WL 1875017, at *19 (D. Del. Aug. 20, 2004). Liquidia could only satisfy its burden if "virtually all the designated recipients" of treprostinil under the '793 patent, including those who suffer from PH-ILD, would necessarily exhibit the outcome claimed by the '327 patent, *i.e.*, improved exercise capacity. *Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). Liquidia cannot credibly make such an assertion. Dr. Channick has not asserted that the method of the '793 patent would improve exercise capacity in patients of all five groups of PH, and in fact he admits that the method will not work for every PH-ILD patient. Ex. 8 at 95:2-25. Dr. Channick's analysis therefore cannot establish inherency. *Rapoport*, 254 F.3d at 1063.

Finally, even if some PH-ILD patients practiced the method of the '793 patent and experienced improved exercise capacity, that still does not support anticipation because performing the method of the '793 patent with the intentional purpose or expectation of improving exercise capacity would not be inherent. There is no data or teaching in the '793 patent that would allow a physician or patient to administer treprostinil with the intentional purpose or expectation of improving exercise capacity. *Sanofi Mature IP*, 757 F. App'x at 993; *Rapoport*, 254 F.3d at 1061.

Likewise, there is no inherent disclosure in the INCREASE study for a DPI. The INCREASE study used the Tyvaso® nebulizer with a solution of treprostinil, not claim 14's DPI.

*No obviousness.* The '793 patent, Agarwal, and Saggar do not render the '327 patent claims obvious. **First**, none of these references provide data that would cause a POSA to expect the claimed method to increase exercise capacity in PH-ILD patients. The '793 patent does not even mention exercise capacity, and Agarwal and Saggar describe uncontrolled, no-placebo studies of a small number of patients. Opp. Ex. 21; Opp. Ex. 22 at 123; Nathan Decl., ¶¶ 207, 211, 228, 232; *cf. id.* ¶ 178 (showing why placebo arms are necessary). Such data is not reliable and is hypothesis-generating at best—by 2020 the field was littered with examples of PAH drugs that showed promise in PH-ILD based on small, uncontrolled studies only to fail when subjected to a randomized clinical trial. Nathan Decl., ¶¶ 79-86, 207-08. Indeed, Agarwal and Saggar explicitly acknowledge their limitations, with Agarwal—which might have included patients with a PAH phenotype[3]— recommending a prospective clinical trial to robustly evaluate its findings and Saggar—which also included patients with PH comparable to PAH and used "parenteral," not inhaled treprostinil— describing its findings as "only hypothesis generating." *E.g.*, Opp. Ex. 22 at 123, 128-129; *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, 2023 WL 4175334, at *14 (D. Del. June 26, 2023); *see also* Ex. 16 at 8, 14 at 59; Ex. 8 at 64:18-66:14; Opp. Ex. 35 at 144; Opp. Ex. 9, 218:9-224:5. Likewise, Dr. Channick admitted that statistical significance in small studies is "irrelevant" and Saggar's reported FVC data would be "meaningless to clinicians." Ex. 8 at 153:14-154:3. Further, Dr. Channick said that Agarwal included both PH-ILD and PH-COPD patients and described increased exercised capacity in both groups. Ex. 8 at 145:15-148:13; Opp. Ex. 21. But when UTC ran Phase III randomized clinical trials with both groups, only the PH-ILD study (INCREASE) showed a

---

[3] *See* Opp. Ex. 21; Opp. Ex. 9, 201:2-15; Opp. Ex. 23 at DA0601 (FVC <70%), DA0616 (PVR).

confirmed benefit, while the PH-COPD study (PERFECT) was terminated early for safety concerns "with no signal of any benefit." Nathan Decl., ¶¶ 87, 93.

**Second**, Liquidia's reference to purported use of treprostinil to treat PH-ILD before 2020 (Opp. 1-2, 11-12) is both unsubstantiated and inconsistent with the contemporaneous literature. For example, several pre-INCREASE publications from Dr. Channick and others make no mention of this purported off-label use of treprostinil and instead emphasize that efficacy for PH-ILD had not yet been established. Ex. 14 at 587; Ex. 15 at 25; Ex. 16 at 8-9; Ex. 8 at 44:20-45:3, 51:22-52:1, 65:6-25; Ex. 13 at 787. Even after the INCREASE study results were published, the medical community, including Dr. Channick, remained skeptical. Ex. 17 at 1870; Ex. 18 at 3693. Liquidia's reliance on a 2018 UTC investor call, which Dr. Channick admitted would have been irrelevant to his clinical practice, and thus is not prior art, is similarly misplaced. Ex. 8 at 142:6-143:5.

**Third**, even if the references had material disclosure, the POSA would not be motivated to combine them with a reasonable expectation of success because of the numerous failed studies and skepticism regarding the efficacy of treprostinil for PH-ILD before the '327 patent. Nathan Decl., ¶¶ 78-87, 193, 198-99, 201, 203, 207-09, 214-16; *see Eli Lilly & Co. v. Teva Pharms. Int'l GmbH*, 8 F.4th 1331, 1348 (Fed. Cir. 2021) (uncertainty, unpredictability, and skepticism "counsel against finding a reasonable expectation of success"). Small, uncontrolled, pilot studies like Liquidia's asserted references could provide no more than a hypothesis or hope that inhaled treprostinil could improve exercise capacity for PH-ILD patients, and a POSA would appreciate that in this field, a properly controlled randomized clinical trial would be needed to demonstrate that a drug was actually effective. Ex. 19 at 3:9-4:17. Treatment of PH-ILD patients is highly unpredictable (Nathan Decl., ¶ 209; Ex. 8 at 111:13-112:4), and any "hope that a potentially promising drug will [work as claimed] is not enough to create a reasonable expectation of success in

7

[an] unpredictable art." *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1385 (Fed. Cir. 2019).

The lack of any motivation to combine or reasonable expectation of success is not solved by the announcement of UTC's INCREASE trial. "[A] POSA would [not] reasonably extrapolate from the fact that a Phase III trial had begun that a drug could be expected to be successful." *Sanofi-Aventis*, 2023 WL 4175334, at *14; *see also Watson Labs.*, 875 F.3d at 646-50 (finding no reasonable expectation of success despite a study's "rationale and design" because a POSA "would have been at best cautiously optimistic"); Opp. Ex. 9 at 165:2-6, 188:25-189:5; Ex. 8 at 56:9-58:1; Ex. 19 at 3:17-4:1. Given the industry skepticism, past failures, and ongoing unpredictability in treating PH-ILD patients with treprostinil (Ex. 8 at 111:19-112:4; Ex. 10 at 16), a POSA would not have had a reasonable expectation of success based on clinical trial design. *Novartis Pharms. Corp. v. W.-Ward Pharms. Int'l Ltd.*, 923 F.3d 1051, 1061 (Fed. Cir. 2019) (no reasonable expectation of success based on Phase I results); *Sanofi-Aventis*, 2023 WL 4175334, at *14 (no reasonable expectation of success absent Phase III results). Rather, the '327 patent is the quintessential example of surprising and unexpected results.

**Fourth**, the '793 patent, Agarwal, and Saggar do not disclose the limitations of claims 6 and 9-10. Neither the '793 patent nor Agarwal discusses the exacerbations of ILD or clinical worsening events of claim 6. Dr. Channick argues this limitation is met because Agarwal allegedly discloses that some patients—who may or may not have had ILD or COPD—had subjective improvement. Opp. 10. However, because acute exacerbations are defined by rapid, idiopathic declines in lung function, patients may report subjective improvement one day, and experience an exacerbation the next. Opp. Ex. 9 at 55:11-22. A POSA would thus not understand Agarwal to teach a *statistically significant* decline in exacerbations of ILD.

As for claims 9 and 10, Liquidia contends Saggar discloses FVC improvements in PH-ILD

8

patients (Opp. 10-11), but Saggar has grave limitations (*supra* pp. 6-7) and none of Saggar's patients received *inhaled* treprostinil. Opp. Ex. 22 at 123. The POSA would not have expected an increase in "FVC" in PH-ILD patients from inhaled treprostinil based on Saggar, let alone the claimed "statistically significant" increase. Ex. 8 at 153:9-154:3.

## II. UTC Will Suffer Irreparable Harm Absent Injunction

None of Liquidia's arguments rebut UTC's strong evidence of immediate and irreparable harm. *See* Br. 16-19. UTC did not "delay." UTC filed its motion before its PH-ILD regulatory exclusivity expired and briefing would have been completed before that expiration but for Liquidia's requested extension. *See* D.I. 41; Opp. Ex. 3. Liquidia's cite to *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012) is inapposite because unlike there, UTC did not wait for Liquidia to launch its infringing product before filing its motion.

*A "growing market" does not negate price erosion, lost market share, or lost sales.* Selck Decl., ¶¶ 88-94, 108-117. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉—efforts that will unfairly result in *Liquidia* sales—whereas there is no evidence that Liquidia's market entry will expand the PH-ILD market. Selck Decl., ¶ 88. Liquidia's expert admits that UTC will still be harmed even if the market grows, including from price erosion, lost market share and lost sales. Ex. 20 at 130:7-131:6.

*UTC's harm is not speculative.* If Yutrepia launches for PH-ILD, payors will leverage that dual-indication launch against UTC in price negotiations. *See, e.g.*, Selck Decl., ¶¶ 76-84. Liquidia cites certain UTC public statements and a ▉▉▉▉▉▉ internal forecast, but most of those were made before Liquidia announced that FDA accepted its submission to add PH-ILD to the Yutrepia market, rendering them irrelevant. Ex. 20 at 68:19-73:6, 89:25-93:3, 165:25-166:11.

*A causal nexus exists between Liquidia's PH-ILD launch and UTC's irreparable harm.* If Yutrepia launches in both the PAH and PH-ILD markets, UTC will be forced to lower prices to

9

a far greater extent than if Yutrepia only launches for PAH—the harm will be in the larger PH-ILD market, not the PAH market. *E.g.*, Selck Decl., § 4.3. Payors will require prior authorizations and diagnoses for both Tyvaso and Yutrepia products, so a Yutrepia launch for PH-ILD will directly and demonstrably result in lost UTC sales to PH-ILD patients. *Id.* ¶¶ 65-72. Further, UTC will not be fully compensated with monetary damages because of how drug reimbursement is computed. *Id.* ¶ 113. Liquidia's expert has no meaningful response as he admits that he does not understand competitive dynamics in pharmaceutical markets, including the gatekeeping role of payors. Ex. 20 at 30:9-31:2, 95:1-102:4.

***Liquidia offers no evidence that it could compensate UTC's harms.*** Liquidia argues that hypothetical future Yutrepia sales for the PAH indication can pay damages for infringing PH-ILD sales but has not provided any evidence in support. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011). And while Liquidia's expert argues that UTC's damages could be quantified, he failed to explain how he would do so other than his past experience quantifying damages in other industries. *E.g.*, Ex. 20 at 80:24-81:17, 166:12-167:25.

### III.   The Balance of Hardships and Public Interest Favor UTC

Liquidia has not offered any evidence that would outweigh the public interest in favor of protecting patent rights. Br. 19-20. Liquidia's claims regarding the parties' difference in size is likewise unavailing. In fact, that difference in size is exactly the issue that reinforces ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at the conclusion of the case. *See supra* § II.

### CONCLUSION

The Court should preliminarily enjoin Liquidia from marketing Yutrepia for PH-ILD.

10

| | |
|---|---|
| OF COUNSEL | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| William C. Jackson<br>Katherine Cheng<br>GOODWIN PROCTER LLP<br>1900 N St. NW<br>Washington, DC 20036<br>(202) 346-4000 | */s/ Michael J. Flynn*<br>_____<br>Jack B. Blumenfeld (#1014)<br>Michael J. Flynn (#5333)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>mflynn@morrisnichols.com |
| Eric T. Romeo<br>Louis L. Lobel<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>(617) 570-1000 | *Attorneys for Plaintiff<br>United Therapeutics Corporation* |
| Douglas Carsten<br>Art Dykhuis<br>MCDERMOTT WILL & EMERY LLP<br>18565 Jamboree Road, Suite 250<br>Irvine, CA 92615<br>(949) 851-0633 | |
| Adam W. Burrowbridge<br>MCDERMOTT WILL & EMERY LLP<br>The McDermott Building<br>500 North Capitol Street, NW<br>Washington, DC 20001<br>(202) 756-8000 | |
| April 15, 2024 | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 15, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Nathan R. Hoeschen, Esquire<br>Emily S. DiBenedetto, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Sanya Sukduang, Esquire<br>Jonathan Davies, Esquire<br>Adam Pivovar, Esquire<br>Brittany Cazakoff, Esquire<br>Rachel Preston, Esquire<br>COOLEY LLP<br>1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC  20004-2400<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Kyung Taeck Minn, Esquire<br>Lauren Strosnick, Esquire<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304-1130<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 22, 2024, upon the following in the manner indicated:

| | |
|---|---|
| Karen E. Keller, Esquire<br>Nathan R. Hoeschen, Esquire<br>Emily S. DiBenedetto, Esquire<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Sanya Sukduang, Esquire<br>Jonathan Davies, Esquire<br>Adam Pivovar, Esquire<br>Brittany Cazakoff, Esquire<br>Rachel Preston, Esquire<br>COOLEY LLP<br>1299 Pennsylvania Avenue, NW, Suite 700<br>Washington, DC  20004-2400<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |
| Kyung Taeck Minn, Esquire<br>Lauren Strosnick, Esquire<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA  94304-1130<br>*Attorneys for Defendant Liquidia Technologies, Inc.* | *VIA ELECTRONIC MAIL* |

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)