IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | **Redacted - Public Version** |
| v. | ) ) ) | C.A. No. 23-975-RGA-SRF |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) ) | ▮▮▮▮▮▮▮▮▮▮ |
| Defendant. | ) | |

### LETTER TO THE HONORABLE SHERRY R. FALLON FROM NATHAN R. HOESCHEN REGARDING DISCOVERY DISPUTE

OF COUNSEL:
Sanya Sukduang
Michael Klisch
Phillip E. Morton
Jonathan Davies
Adam Pivovar
John A. Habibi
Rachel Preston
Rosalynd D. Upton
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Lauren Strosnick
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Thomas Touchie
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Dated: November 14, 2024

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

# SHAW KELLER
## LLP

Nathan R. Hoeschen
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0709
nhoeschen@shawkeller.com

November 14, 2024

**BY CM/ECF**
The Honorable Sherry R. Fallon
United States District Court
844 N. King Street
Wilmington, DE 19801

Re:     *United Therapeutics Corp. v. Liquidia Technologies, Inc.* C.A. No. 23-975-RGA-SRF

Dear Judge Fallon,

Defendant Liquidia Technologies, Inc. ("Liquidia") respectfully submits this letter requesting the Court's assistance on the issues previously identified in Liquidia's November 4, 2024 letter. *See* D.I. 179. The parties conferred on November 13th where UTC agreed to respond later the same day to Liquidia's requests regarding further production of documents and communications and the de-designation of the deposition transcripts of Faria-Urbina and Rajan Saggar. Ex. 21 at 2. At 1:43 AM EST, UTC indicated it will respond "when able." *Id.* at 1. Shortly before Liquidia's letter was due, UTC asserted the issues were premature and attempted to continue to negotiate. Ex. 19 at 1. Given the case schedule, Liquidia submits the following issue.

## I.  The Court Should Compel UTC to Produce Documents Relevant to Liquidia's Invalidity Defenses

UTC has steadfastly refused to produce documents directly relevant to Liquidia's invalidity defenses–documents its witnesses have testified exist. Specifically, to support its invalidity defenses, Liquidia sought documents and communications concerning: (a) the use of Tyvaso in PH-ILD patients prior to Tyvaso's approval for this indication and UTC's knowledge of such activity; and (b) prior art studies and literature surrounding the use of Tyvaso in PH-ILD patients. The following RFPs encompass these requests: RFP Nos. 20, 21, 26, 27, 28, 40, 43, and 44. Pursuant to Rule 34, Liquidia served its First Set of Requests for Production ("RFP") (Nos. 1–75) on May 16, 2024 and UTC served its response to these document requests on June 17, 2024. Ex. 1.  In its responses, UTC offered to meet and confer on every request, except RFP No. 28 (which UTC outright refused to produce).

Liquidia deposed Dr. Rajan Saggar as a third-party witness on September 17, 2024. And UTC deposed Dr. Rajeev Saggar on October 16, 2024. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████



Liquidia also deposed Dean Bunce, UTC's Executive Vice President of Global Regulatory Affairs, and a designated corporate witness, who testified ███████ which would be responsive to at least RFP 38, among others. ███████. And during the deposition of Dr. Victor Tapson, one of the doctors leading UTC's clinical efforts in PH-ILD, he testified that, prior to 2013 and through 2020, he and his colleagues at Duke Medical and Cedars-Sinai were prescribing Tyvaso and had no issue getting those prescriptions reimbursed–reflecting prior art sales of Tyvaso falling within the scope of the claims– ███████ Ex. 5 at 63:23–64:15; *see also id.* at 64:22–25; Ex. 20 at ███████. Thus, responsive documents that are directly relevant to Liquidia's invalidity positions exist, but UTC has refused to produce them.

Pursuant to Rule 34, Liquidia emailed UTC on October 18 and 31, 2024, asking that it produce documents and communications responsive to RFP Nos. 20, 21, 26, 27, 40, 43, and 44, as identified by Drs. Rajan and Rajeev Saggar and Mr. Bunce. Ex. 6; Ex. 7. Liquidia explained that these documents and correspondences fell within Liquidia's original document requests because they related to invalidity. *Id.* The parties met and conferred on October 23, 2024 to discuss (*inter alia*) this issue; UTC agreed to consider Liquidia's request.

In the interim, on October 28, Dr. Rajan Saggar produced several documents ███████ ███████. On October 29, Liquidia again emailed UTC ███████ UTC responded on October 30, 2024, denying Liquidia's allegations and refusing to conduct an additional search. *See* Ex. 15. Liquidia responded on October 31, postponing the deposition of Mr. Kevin Laliberte, given that ███████ (b) UTC named Mr. Laliberte in its First Amended Initial Disclosures but failed to produce any custodial documents for this individual; and (c) ███████ UTC had not produced any correspondences between the Saggars and ███████, calling into question the thoroughness of their search. *See* Ex. 16. UTC responded on November 3, 2024, refusing to offer Mr. Laliberte at any other date. *See* Ex. 17. Despite UTC never producing any of these requested documents, Liquidia deposed Mr. Laliberte on November 8, 2024, for his convenience, because he no longer works for UTC.

The requested documents are highly relevant to Liquidia's invalidity defenses including prior public use, prior sale and obviousness (motivation and expectation of success.) *See* Ex. 18 at 44 (discussing invalidity due to prior public use of Tyvaso®); *see also id.* at 65 (discussing invalidity due to prior sale of Tyvaso®); *see also id.* at 81 (discussing invalidity due to various prior art combinations). Moreover, these documents exist as reflected in the ███████ And finding these documents is not unduly burdensome as ███████

███████████████████████████████████████████, and locating these should not be difficult as UTC is required to maintain them. Identifying ██████ and ███ referenced in already produced correspondence is also not burdensome as UTC knows exactly what to search.  These are the examples that Liquidia is aware of, but given the already obtained testimony, surely more exist.

UTC contends they already conducted a search and produced a plethora of documents. But, as discussed above, UTC did not even produce from its own files ████████████████ ██████████████████████████. As such, UTC might have produced a lot of documents, but appears to be reluctant to search for and produce these highly relevant documents and ██████ ███████.

During the November 13 meet and confer, Liquidia more narrowly tailored its request for documents to (1) those identified in its October 18 email—communications between either Dr. Rajeev or Rajan Saggar concerning the use of treprostinil in PH-ILD with the following UTC employees identified as having relevant information in the course of depositions in this case: ████████████████████████████████████████████████████████████, and (2) ████ ████████ as the basis for ████ understanding that Tyvaso was being used off label including in PH-ILD. Ex. 21; *see also* Ex. 7. Because the requested documents are relevant, testimony exists as to their existence, and Liquidia has significantly narrowed its request such that it is not unduly burdensome to produce these documents, Liquidia respectfully asks that the Court compel UTC to produce the documents encompassed by RFP Nos. 20, 21, 26, 27, 28, 40, 43, and 44.

## II. **Status Update on UTC's Improper Confidentiality Designations**

UTC has designated the following transcript and documents as "Highly Confidential": (a) the deposition transcripts of third-party witnesses, Drs. Mariana Faria-Urbina and Rajan Saggar; and (b) documents produced by Dr. Rajan Saggar. In doing so, however, UTC, who bears the burden, has not produced any agreement between itself and these third-party witnesses to substantiate its claim that these individuals owed any confidentiality to UTC, or anyone else, despite Liquidia requesting any such agreement more than a month ago. *See* D.I. 48, ¶ 26. Liquidia believes the issue can be readily resolved if UTC simply produced the agreements substantiating confidentiality. ██████████████████████████████████████████ Shortly before Liquidia's letter was due, UTC offered a compromise.  *See* Ex. 19 at 1. Liquidia is considering UTC's offered compromise and will raise the issue with the Court if an agreement cannot be reached.

Respectfully submitted,

*/s/ Nathan R. Hoeschen*

Nathan R. Hoeschen (No. 6232)

cc:    Clerk of the Court (via CM/ECF)
       All Counsel of Record (via CM/ECF & Email)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 23-975-RGA-SRF |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANT LIQUIDIA TECHNOLOGIES, INC.'S LETTER MOTION REQUESTING DOCUMENTS RESPONSIVE TO LIQUIDIA'S REQUESTS FOR PRODUCTION**

Upon consideration of Defendant Liquidia Technologies, Inc.'s ("Liquidia") letter motion seeking the Court's assistance in compelling the production of documents responsive to Liquidia's Request for Production Nos. 20, 21, 26, 27, 28, 40, 43, and 44 IT IS HEREBY ORDERED THAT:

1. UTC shall produce documents responsive to Liquidia's Request for Production Nos. 20, 21, 26, 27, 28, 40, 43, and 44 within seven (7) days of this Order.

**SO ORDERED** this _____ day of _____, 2024

_____
Sherry R Fallon
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) | |
| Plaintiff | ) ) ) | C.A. No. 23-975 (RGA) (SRF) |
| v. | ) ) | |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES AND OBJECTIONS
TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-75)**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff United

Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby

responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of

Requests for Production of Documents and Things (Nos. 1-75).

## PRELIMINARY STATEMENT

The following responses are made solely for the purpose of, and in relation to, this action.

Each response is provided subject to all appropriate objections (including, without limitation,

objections relating to competency, relevancy, propriety, proportionality, and admissibility) that

would require the exclusion of any statement provided herein if that statement were made by a

witness testifying in court. All such objections are reserved and may be interposed at the time of

trial.

The following responses are made based on the facts and information presently known to

UTC. The responses refer only to the contentions that have been asserted to date, based on facts

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may

bring to light additional facts, add meaning to known facts, establish new factual or legal

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 20:**

All presentations, papers, and posters concerning the use of treprostinil in patients with pulmonary hypertension associated with interstitial lung disease sponsored by UTC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, in seeking "[a]ll presentations, papers, and posters concerning"). UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control. UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 21:**

All communications between UTC and Rajeev Saggar M.D. and Rajan Saggar M.D. regarding the use or potential use of inhaled treprostinil, including TYVASO®, in patients with pulmonary hypertension associated with interstitial lung disease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case (i.e., information wholly unrelated to TYVASO®). UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, the term "[a]ll communications" is vague and ambiguous at least because the Request does not describe with whom at UTC the "communications" are with). UTC objects to this Request as duplicative with other Requests. UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia. UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 26:**

All communications between UTC and the authors of Rajeev Saggar et al., *Changes in right heart haemodynamics and echocardiographic function in an advanced phenotype of pulmonary hypertension and right heart dysfunction associated with pulmonary fibrosis*, 69 THORAX 123 (2014) (LIQ_PH-ILD_00000226), regarding the use or potential use of inhaled treprostinil, including TYVASO®, for the treatment of pulmonary hypertension associated with interstitial lung disease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case (i.e., information wholly unrelated to TYVASO®).    UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, the term "[a]ll communications" is vague and ambiguous at least because the Request does not describe with whom at UTC the "communications" are with).    UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia.    UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control.    UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request.    As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and communications regarding UTC's decision to fund of the study described in Rajeev Saggar et al., *Changes in right heart haemodynamics and echocardiographic function in an advanced phenotype of pulmonary hypertension and right heart dysfunction associated with pulmonary fibrosis*, 69 THORAX 123 (2014) (LIQ_PH-ILD_00000226)

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case (i.e., information wholly unrelated to TYVASO®). UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, the term "[a]ll documents and communications" is vague and ambiguous at least because the Request does not describe with whom the "communications" are with). UTC objects to this Request as duplicative with other Requests, e.g., Request Nos. 20, 21, 26. UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia. UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control. UTC objects to this Request to the extent that it calls for UTC to prepare documents and/or things that do not already exist or calls for information in a format other than in which it is ordinarily kept by UTC. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 28:**

All communications between UTC and the authors of K. Parikh., et al., *Safety and Tolerability of High-dose Inhaled Treprostinil in Pulmonary Hypertension*, J. CARDIOVASC PHARMACOL. 67(4); 322–25 (2016) (UTC_PH-ILD_010599), regarding the use or potential use of inhaled treprostinil, including TYVASO®, for the treatment of pulmonary hypertension associated with interstitial lung disease.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case (i.e., information wholly unrelated to TYVASO®). UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, the term "[a]ll communications" is vague and ambiguous at least because the Request does not describe with whom at UTC the "communications" are with). UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia. UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties.

Subject to and without waiving the foregoing general and specific objections, UTC will not produce or open for inspection documents and things responsive to this Request.  As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and communications regarding UTC's decision to sponsor the study described in K. Parikh., et al., *Safety and Tolerability of High-dose Inhaled Treprostinil in Pulmonary Hypertension*, J. CARDIOVASC PHARMACOL. 67(4); 322–25 (2016) (UTC_PH-ILD_010599).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case (i.e., information wholly unrelated to TYVASO®).  UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, the term "[a]ll documents and communications" is vague and ambiguous at least because the Request does not describe with whom the "communications" are with).  UTC objects to this Request as duplicative with other Requests, e.g., Request No. 20, 28.  UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia.  UTC objects to this Request to the extent it asks UTC to produce or analyze information not within its possession, custody, or control.  UTC objects to this Request to the extent that it calls for UTC to prepare documents and/or things that do not already exist or calls for information in a format other than in which it is ordinarily kept by UTC.  UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity

protected from discovery by the attorney-client privilege, attorney work product immunity, or any

other privilege or immunity from discovery.  UTC objects to this Request to the extent that it seeks

disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third

parties.

Subject to and without waiving the foregoing general and specific objections, UTC is

willing to meet and confer regarding this Request.  As with all other responses, UTC reserves the

right to supplement this response.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and things concerning the research, development, and/or testing of
treprostinil for its effect in patients with pulmonary hypertension associated with interstitial lung
disease, including but not limited to any correspondence, research proposals, or protocols relating
to treprostinil.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections

to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's

claim or defense nor proportional to the needs of the case.  UTC objects to this Request as vague,

ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for

example without limitation, in seeking "[a]ll documents and things concerning").  UTC objects to

this Request as duplicative with other Requests.  UTC objects to this Request as overly broad

because it is not limited in geographic scope or a time period that is relevant to this litigation.  UTC

objects to this Request as prematurely seeking expert discovery for which UTC's experts may

provide information responsive to this Request during expert discovery.  UTC objects to this

Request to the extent it asks UTC to produce or analyze information not within its possession,

custody, or control.  UTC objects to this Request to the extent that it calls for information that can

be obtained from others or public sources, or is otherwise equally accessible to Liquidia.  UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery.  UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties. UTC objects to this Request as duplicative of other Requests.

Subject to and without waiving the foregoing general and specific objections, UTC refers Liquidia to its response to Request for Production No. 1, above. Otherwise, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

## REQUEST FOR PRODUCTION NO. 41:

All documents and things, including but not limited to internal UTC presentations and meeting minutes, addressing clinical trials or proposals for clinical trials for the use of treprostinil to treat pulmonary hypertension associated with interstitial lung disease, including but not limited to use of TYVASO®.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 41:

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case.  UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, in seeking "[a]ll documents and things").  UTC objects to this Request as duplicative with other Requests.  UTC objects to this Request as overly broad because it is not limited in geographic scope or a time period that is relevant to this litigation.  UTC objects to this Request as prematurely seeking expert discovery for which UTC's experts may provide

"materials disseminated," and "meeting notes"). UTC objects to this Request as duplicative with

other Requests. UTC objects to this Request as overly broad because it is not limited in geographic

scope or a time period that is relevant to this litigation. UTC objects to this Request as prematurely

seeking expert discovery for which UTC's experts may provide information responsive to this

Request during expert discovery. UTC objects to this Request to the extent it asks UTC to produce

or analyze information not within its possession, custody, or control. UTC objects to this Request

to the extent that it calls for information that can be obtained from others or public sources, or is

otherwise equally accessible to Liquidia. UTC objects to this Request to the extent that it seeks

information that is protected from discovery by the attorney-client privilege, attorney work product

immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the

extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality

obligations to third parties.

Subject to and without waiving the foregoing general and specific objections, UTC refers

Liquidia to its response to Request for Production No. 1, above. Otherwise, UTC is willing to meet

and confer regarding this Request. As with all other responses, UTC reserves the right to

supplement this response.

## REQUEST FOR PRODUCTION NO. 43:

All documents and things related to NDA No. 022387 for TYVASO®, including without
limitation the complete file of NDA No. 022387 for TYVASO®, communications with the FDA,
and any supplemental applications and/or amendments thereto, including, but not limited to, all
investigational new drug ("IND") applications, regardless of whether they were filed with the
FDA.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 43:

UTC incorporates by reference the Preliminary Statement, General Objections, Objections

to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case. UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, in seeking "[a]ll documents and things related to"). UTC objects to this Request to the extent that it calls for UTC to prepare documents and/or things that do not already exist or calls for information in a format other than in which it is ordinarily kept by UTC. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties. UTC objects to this Request as duplicative of other Requests, e.g., Request No. 44. UTC further objects to the extent that this request seeks the production of documents already in Liquidia's possession due to its involvement in *United Therapeutics Corp. v. Liquidia Techs. Inc.*, No. 20-755-RGA (D. Del.), and are thus just as accessible to Liquidia as they are to UTC.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response

**REQUEST FOR PRODUCTION NO. 44:**

All documents and things related to NDA No. 214324 for TYVASO DPI®, including without limitation the complete file of NDA No. 214324 for TYVASO DPI®, communications with the FDA, and any supplemental applications and/or amendments thereto, including, but not limited to investigational new drug ("IND") applications, regardless of whether they were filed with the FDA.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case. UTC objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and disproportional to the needs of the case (for example, without limitation, in seeking "[a]ll documents and things related to"). UTC objects to this Request to the extent that it calls for UTC to prepare documents and/or things that do not already exist or calls for information in a format other than in which it is ordinarily kept by UTC. UTC objects to this Request to the extent that it seeks information that is protected from discovery by the attorney-client privilege, attorney work product immunity, or any other privilege or immunity from discovery. UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties. UTC objects to this Request as duplicative of other Requests, e.g., Request No. 43.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request. As with all other responses, UTC reserves the right to supplement this response.

**REQUEST FOR PRODUCTION NO. 45:**

Five TYVASO DPI® Inhaler inhalation devices disclosed in the 2022 Tyvaso DPI® Label (UTC_PH-ILD_010709).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

UTC incorporates by reference the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions set forth above as if fully stated herein.

UTC objects to this Request to the extent it seeks information not relevant to any party's claim or defense nor proportional to the needs of the case. UTC objects to this Request to the extent that it calls for information that can be obtained from others or public sources, or is otherwise equally accessible to Liquidia. UTC objects to this Request to the extent that it seeks

product immunity, or any other privilege or immunity from discovery.  UTC objects to this Request to the extent that it seeks disclosure of information that UTC cannot disclose pursuant to confidentiality obligations to third parties.  UTC objects to this Request as duplicative with other Requests, e.g., Request Nos. 69, 71-74.

Subject to and without waiving the foregoing general and specific objections, UTC is willing to meet and confer regarding this Request.  As with all other responses, UTC reserves the right to supplement this response.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mflynn@morrisnichols.com

*Attorneys for Plaintiff United Therapeutics Corporation*

OF COUNSEL

William C. Jackson
Katherine Cheng
Goodwin Procter LLP
1900 N St. NW
Washington, DC 20036
(202) 346-4000

Eric T. Romeo
Louis L. Lobel
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000

Douglas Carsten
Art Dykhuis
McDermott Will & Emery LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633

Adam W. Burrowbridge
McDermott Will & Emery LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001
(202) 756-8000

June 17, 2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 17, 2024, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Karen E. Keller, Esquire                                    *VIA ELECTRONIC MAIL*
Nathan R. Hoeschen, Esquire
Emily S. DiBenedetto, Esquire
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Sanya Sukduang, Esquire                                     *VIA ELECTRONIC MAIL*
Jonathan Davies, Esquire
Adam Pivovar, Esquire
Brittany Cazakoff, Esquire
Rachel Preston, Esquire
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*

Kyung Taeck Minn, Esquire                                   *VIA ELECTRONIC MAIL*
Lauren Strosnick, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304-1130
*Attorneys for Defendant Liquidia*
*Technologies, Inc.*


                                            */s/ Michael J. Flynn*
                                            _____
                                            Michael J. Flynn (#5333)

# EXHIBIT 2

Page 1

1              UNITED STATES DISTRICT COURT

2                        FOR THE

3                 DISTRICT OF DELAWARE

4   UNITED THERAPEUTICS        )
    CORPORATION,               )
5                              )
                 PLAINTIFF,    )   CIVIL ACTION NO.
6                              )   1:23-cv-00975-RGA
           VS.                 )
7                              )
    LIQUIDIA TECHNOLOGIES,     )
8   INC.,                      )
                               )
9            DEFENDANT.        )
    _____ )

10

11

12

13

14

15

16

17       VIDEOTAPED DEPOSITION OF RAJAN SAGGAR, MD

18           TUESDAY, SEPTEMBER 17, 2024

19

20

21

22

23

24   JOB NO. 6872552

25   REPORTED BY:  DAYNA HESTER, C.S.R. 9970

Page 2

```
 1   VIDEOTAPED DEPOSITION OF RAJAN SAGGAR, MD, TAKEN ON
 2   BEHALF OF DEFENDANT LIQUIDIA TECHNOLOGIES, INC., AT
 3   9:37 A.M., TUESDAY, SEPTEMBER 17, 2024, AT COOLEY
 4   LLP, 1333 SECOND STREET, SUITE 400
 5   ,SANTA MONICA, CALIFORNIA 90401, BEFORE DAYNA
 6   HESTER, C.S.R. NO. 9970, PURSUANT TO SUBPOENA.
 7
 8   APPEARANCES OF COUNSEL:
 9   FOR PLAINTIFF UNITED THERAPEUTICS CORPORATION:
10        MCDERMOTT WILL & EMERY
          BY:  ART DYKHUIS, ESQ.
11             (PRESENT IN PERSON)
          18565 JAMBOREE ROAD, SUITE 250
12        IRVINE, CALIFORNIA   92612-2565
          (949) 989-8292
13        ADYKHUIS@MWE.COM
14        MCDERMOTT WILL & EMERY
          BY:  COURTNEY SEAMS, ESQ.
15             (PRESENT IN PERSON)
          BY:  ADAM W. BURROWBRIDGE, ESQ.
16             (PRESENT VIA ZOOM VIDEOCONFERENCE)
          500 NORTH CAPITOL STREET, NW
17        WASHINGTON, D.C.   20001-1531
          (202) 951-6601
18        CSEAMS@MWE.COM
19
20
21
22
23
24
25        -- APPEARANCES CONTINUED ON NEXT PAGE --
```

Page 3

1    APPEARANCES OF COUNSEL (CONTINUED):
2    FOR DEFENDANT LIQUIDIA TECHNOLOGIES, INC.:
3        COOLEY LLP
         BY:  JONATHAN DAVIES, ESQ.
4            (PRESENT IN PERSON)
         1299 PENNSYLVANIA AVE NW, SUITE 700
5        WASHINGTON, D.C.  20004
         (202) 776-2049
6        JDAVIES@COOLEY.COM
7        COOLEY LLP
         BY:  ROBERT MINN, ESQ.
8            (PRESENT IN PERSON)
         55 HUDSON YARDS
9        NEW YORK, NEW YORK  10001
         (650) 843-5130
10       RMINN@COOLEY.COM
11
     ALSO PRESENT:
12
         KEVIN DEL CID, VIDEOGRAPHER
13       (PRESENT IN PERSON)
14
15
16
17
18
19
20
21
22
23
24
25

Page 82

 1        A.    Yes.

 2        Q.    Okay.  If you look in the disclosure

 3   statement at the end of your 2009 publication --

 4        A.    Yes.

 5        Q.    -- it says [as read]:

 6              "A research grant was provided by

 7         United Therapeutics."

 8         Do you see that?

 9        A.    Yes.

10        Q.    How, if at all, did United Therapeutics

11   support the work that is described in the

12   2009 publication?

13        A.    So Unit- --

14              MR. DYKHUIS:  Object to form.

15              THE WITNESS:  United Therapeutics at the

16   time gave us an ██████████████████████ grant to

17   conduct or pursue this work using parenteral

18   treprostinil.

19   BY MR. DAVIES:

20        Q.    What is an "████████████████████

21   grant"?

22        A.    ██████████████████████████

██  ███████████████████████████████████████████████

██  ███████████████████████████████████████████████

██  █████████████████████████████████  ██████████████

Page 83



6          Q.    Did you have discussions with United

7    Therapeutics about your 2009 and 2014 -- let me --

8    let me rephrase that.

9                Was United Therapeutics involved in the

10   decision to pursue the studies and the case report

11   that are described in your 2009 and 2014

12   publication?

13               MR. DYKHUIS:   Objection to form.

14               THE WITNESS:

22               So they were not involved with anything

23   except the                            grant.

24   BY MR. DAVIES:

25          Q.    And the work that you are talking about

Page 84

1    that that grant supported, that was the -- the use

2    of Remodulin for treatment of PH-ILD; correct?

3              MR. DYKHUIS:  Object --

4              THE WITNESS:  That's correct.

5              MR. DYKHUIS:  Object to form.

6    BY MR. DAVIES:

7         Q.  And that work is reflected in your 2009

8    and 2014 publication?

9              MR. DYKHUIS:  Same objection.

10             THE WITNESS:  Correct.

11   BY MR. DAVIES:

12        Q.  Who did you talk to, if you can recall, at

13   United Therapeutics about that work, you using

14   Remodulin for treatment of PH-ILD?

15        A.  Yeah, so he is now retired.  I cannot

16   remember his last name, but I can get that name for

17   you.  His first name is ███████.

18             At that time United Therapeutics was a

19   very small company and ████████████████████████

     ████████████████████████████████████████████████

     ████ ██████████████████████████████████████.  So I

22   had a one-on-one discussion with ████████, and they

23   were able to offer us this █████████████ grant.

24   But I think it was helpful in producing this data.

25        Q.  Do you recall when that discussion was

1   with ███████?

2           MR. DYKHUIS:  Object to form.

3           THE WITNESS:  No.

4   BY MR. DAVIES:

5       Q.   Do you recall when you received the

6   ████████████████████████  grant?

7       A.   No.  But this all would have had to have

8   been somewhere around -- prior to these manuscripts

9   becoming available.  So I suspect it was in the

10  2008 time space.

11      Q.   Was United Therapeutics involved in the

12  review, prior to publication, of either your 2009 or

13  2014 publications --

14          MR. DYKHUIS:  Object to form.

15          THE WITNESS:  No.

16  BY MR. DAVIES:

17      Q.   -- Exhibit 2 or 3?

18      A.   No.

19      Q.   In this initial discussion with ████████

20  at -- at UTC, did he express any skepticism about

21  the use of Remodulin for the treatment of PH-ILD?

22          MR. DYKHUIS:  Object to form.

23          THE WITNESS:  ██████  ███████████████████████

██  ████████████████████████████  ████████████████████

██  ████████████████████████████████████████████████████

Page 86

BY MR. DAVIES:

    Q.   The idea to conduct these studies on the use of Remodulin for treatment of PH-ILD was your idea, though, and not United Therapeutics.

        Is that fair?

    A.   Correct.

        MR. DYKHUIS:  Object to form.

BY MR. DAVIES:

    Q.   After this initial discussion with ████, did you have any other discussions with anyone at United Therapeutics about the work in either your 2009 or 2014 publications?

    A.

Page 87



Page 88



18     Q.   And just to be clear, when you say "at

19  this time," what time did these discussions with

20  United Therapeutics take place about ███████

███████████████████████████████████████

███████

23         MR. DYKHUIS:  Object to form.

24         THE WITNESS:  Yeah.  It -- I can't give

25  you an exact date, but it would have been -- ███████

Page 89

1    ████  these discussions happened ████████.  So

2    somewhere between ████  and ████.

3    BY MR. DAVIES:

4        Q.    In those discussions with United

5    Therapeutics, did you understand that ████████

     ████████████████████████████████████████

     ████████████████████████████████████

     ████████████

9            MR. DYKHUIS:  Objection to form.

10           THE WITNESS:  █████  ████████████

     ████████████████████████████████████

     ████████████████████

13   BY MR. DAVIES:

14       Q.    Uh-huh.

15       A.    ████████████████████████

     ██████████████████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████

     ██████████████████████████████████████

     ████████████████████  ████████

21       Q.    And was part of the motivation for ████

     ████████████████████████████████████████████

     ████████████████████████████████

24       A.    ████████████

25           MR. DYKHUIS:  Objection.  Form.

Page 90

1    BY MR. DAVIES:

2        Q.    Who were you talking to at United

3    Therapeutics during this ████ to ████ time period

4    about ███████?

5        A.    Boy, it's -- it's -- there's several

6    individuals.

7            So back in the day, we were dealing with

8    their ████████████.  His name was ██████

█    ████████.

10            And -- and I'm not sure what the title was

11   of ██████████████, but he was ████████████████

█    ████████████████████████████████████████████

█    ████████.  I'm not sure exactly what his title

14   was.  He may have been -- well, I don't want to

15   sur- -- surmise.

16            But he was -- these two -- these two

17   individuals were working with us to ██████████

█    ████████████████████████████

█    ████████████████████████

█    ████████████████

█            ████████████████

█    █████████████        ████████████████

█    ████████████████████        ████████████

█    ████████████████████

25       Q.    What was ████ response to ██████████?

Page 91

1          MR. DYKHUIS:  Object to form.

2          THE WITNESS:  ██████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

6  BY MR. DAVIES:

7      Q.   Do you recall about when that meeting with

8  ████████████  took place regarding ███████████

█  ██████████████████████████████

10          MR. DYKHUIS:  Object to the form.

11          THE WITNESS:  I'm going to guess around

12  ████.

13  BY MR. DAVIES:

14      Q.   Do you recall ████████████ expressing

15  any skepticism about ████████████████████

█  ██████████████████?

17          MR. DYKHUIS:  Objection to form.

18  BY MR. DAVIES:

19      Q.   ████████████.  I apologize.

20      A.   ███  ████████████████████

█  ██████████  ████████████████████

█  ███████████  ████████████  ████████

█  ██████████  ████████  █████████

█  ████████████████████████

█  ██████████████████████

Page 92



8      Q.    In this meeting with ███████████,

9   did you propose ████████████████████████

██████████████████████████████?

11            MR. DYKHUIS:  Objection.  Form.

12            THE WITNESS:  █████  █████████████

Page 93



13    BY MR. DAVIES:

14        Q.    Was there a name for ████████████ --

15              MR. DYKHUIS:  Objection to form.

16    BY MR. DAVIES:

17        Q.    -- or an identifier of any kind?

18        A.    No.

19        Q.    For these discussions between yourself and

20    United Therapeutics that occurred between

21    approximately ████ and ████, were there email

22    communications?

23              MR. DYKHUIS:  Object to form.

24              THE WITNESS:  Oh, I'm sure we -- I'm sure

25    we -- we have those.  Yeah.

```
 1    BY MR. DAVIES:

 2         Q.    Okay.  Would you -- were there

 3    presentations that were made to United Therapeutics

 4    during that time frame?

 5         A.    Yes.

 6         Q.    Do you recall about how many?

 7         A.    So the one we gave to ████████████████.

 8    And then we gave one ████████████████████.

 9         Q.    And when about was that?

10         A.    And, again, I'm guessing, but it would

11    have to have been after ████████████████████████

██    ████████████████████.

13         Q.    During all these meetings that you had

14    with UTC, did anyone at United Therapeutics ever

15    express any skepticism about ████████████████████

██    ██████████████████████████████████████████████

██    ████████████████████████████████████?

18               MR. DYKHUIS:  Object to form.

19               THE WITNESS:  ████████████████████████

██    ██████████████████████████████████████████████

██    ████████████    ████████████████████████████████

██    ██████████████████████████████████████

██    ████████████████████████████████████████

██    ██████████████████████████████████████████████

██    ████████████████████████████████████████████
```

Page 95



22    BY MR. DAVIES:

23         Q.    Based on your discussions with ▇▇▇▇

▇▇▇▇▇    and others at UTC during this ▇▇▇    to

25    approximately ▇▇▇ time frame, did you understand

Page 96

1    that they believed that ████████████████████████

     ████████████████████████████████████████

     ████████████████████████████████████████?

4                MR. DYKHUIS:  Objection to form.

5                THE WITNESS:  ████.  I think I -- I

6    mentioned earlier that, you know, the Brigham -- the

7    Brigham group had already put out an abstract, you

8    know, in -- around our circa 2015.

9                In fact, I think that was at the ISHLT

10   meeting in 2015.  And I remember it well because

11   Dr. Waxman, who is actually the first author on the

12   INCREASE study, was the -- was involved in this

13   abstract, which was looking at patients who had

14   Group 3 PH, both ILD and obstructive lung disease.

15               And that abstract, again, pointed to the

16   safety of inhaled treprostinil -- actually, in both

17   of these populations, again, both representing

18   Group 3 PH, and reinforced the safety profile that I

19   think everyone had already appreciated, even going

20   back as far as 1999, as I mentioned earlier.

21   BY MR. DAVIES:

22       Q.   During this ████ to ████ time period when

23   you were having discussions with UTC, did you

24   propose or someone from the group at UCLA propose █

     ████████████████████████████████████████

Page 97

1    ████████████████████████████████

2         MR. DYKHUIS:  Objection to form.

3         THE WITNESS:  ██████████████

4    BY MR. DAVIES:

5         Q.   Why did United Therapeutics, to the best

6    of your understanding, ████████████████████████

█    ████████████████████████████████████████

█    ████████████████   at that time?

9         MR. DYKHUIS:  Object to form.

10        THE WITNESS:  ████████████████████████

█    ██████████████████  ████████████████████████

█    ████████████████████  ██████████████████████

█    ████████████████████

14   BY MR. DAVIES:

15        Q.   Did -- in your discussions with United

16   Therapeutics and ████████████   from ██████  to

17   about ██████, did they express any skepticism about

18   ████████████████████████████████████████████?

19        MR. DYKHUIS:  Object to form.

20        THE WITNESS:  ██████  ██████████████████████

█    ████████████████████████████████████

█    ████████████████████████████████████

█    ██████████████████████████████████████████

█    ████████████

█         ████████████████████████████████████████

Page 98



24    BY MR. DAVIES:

25        Q.    And your understanding -- to the best of

Page 99

1    your understanding, █████████████████████████

█    ████████████████████████████████████████████

█    ████████████████████████████████████████████

█    ████████████████████████████████████████████

█    ██████████████████

6              Is that fair?

7              MR. DYKHUIS:  Objection to form.

8              THE WITNESS:  That's my understanding.

9    BY MR. DAVIES:

10        Q.    And what is that understanding based on?

11             MR. DYKHUIS:  Form.

12             THE WITNESS:  The -- that understanding is

13   based on the fact that █████████████████████

█    ████████████████████████████████████████████

█    ████████████████████████████████████████████

█    ████

█    ████████████████████████████████████

█    █████████████████████████████████████

█    ██████████████████████████████████████

█    ███████████████████████████████████

█    ██████████████████████████████████████

█    ████████████████████

█    ████████████████████████  ██████████████

█    █████████████████████████████████████████

█    ████████████  █████████████████████████

Page 100

████████████████████████    ████████████

██████████████████████    ████████████████████

██████████████

4  BY MR. DAVIES:

5       Q.   Do you have any understanding for why, as

6  a business reason, United Therapeutics wanted to

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████

11            MR. DYKHUIS:  Object to form.

12            THE WITNESS:  I don't -- I don't know if

13  I -- I don't know I am qualified to answer that

14  question.

15  BY MR. DAVIES:

16       Q.   To the best of your understanding, the

17  reason to ███████████████████████████████

████████████████████████████

████████████████████████████████

████████████████

21            Is that fair?

22            MR. DYKHUIS:  Objection to form.

23            THE WITNESS:  Oh.  ████████████  ████

██████████████████    ████████████

████████████████████████████████



Page 101

BY MR. DAVIES:

Q.    Did you provide electronic copies or physical documents to United Therapeutics or █████████████ as part of these meetings --

MR. DYKHUIS:  Object to form.

BY MR. DAVIES:

Q.    -- in ██████ to ██████ time period?

A.    Well, as I mentioned, we -- ████████████

MR. DAVIES:  Is it okay if we take a short break?

THE WITNESS:  Sure.

Page 102

1      1          THE VIDEOGRAPHER:  The time is now

2                      11:54  2          a.m.  This marks the end of

       Media Number 2.

3      3    We are off the record.

4      4          (Brief recess.)

5      5          THE VIDEOGRAPHER:  All right.  The time is

6                      12:08  6    now       p.m.  This marks the

       beginning of Media 3.

7      7    Back on the record.

8      8    BY MR. DAVIES:

9      9          Q.   Welcome back, Dr. Saggar.

10     10         A.   Thanks.

11     11         Q.   During this 2010 to 2016 time periods, in

12     12    the discussions with United Therapeutics that we

13     13    have talked about, you mentioned a -- a meeting and

14     14    discussion with ████████████; is that correct?

15     15         A.   Correct.

16     16         Q.   And that was in approximately ████?

17     17         MR. DYKHUIS:  Object to form.

18     18         THE WITNESS:  Correct.

19     19    BY MR. DAVIES:

20     20         Q.   You also mentioned another individual at

21     21    UTC a ████████████ that you spoke with.

22     22         Could you spell his name, if you can.

23     23         A.   Yes.

24     24         [Witness retrieves personal item].

       25         It's ████████████████.

```
 1        Q.    You also mentioned an individual at

 2    United Therapeutics that you spoke with named ███,

 3    last name ████████ [verbatim].

 4              Is that --

 5        A.    ████████ [phonetic emphasis].

 6        Q.    ████████

 7              Is that ████████████, or close

 8    enough?

 9        A.    I believe it is ████████████

10    [confirmed spelling].

11        Q.    Other than those three individuals, did

12    you have discussions or meet with anyone else from

13    United Therapeutics as part of these discussions in

14    ███ to ███?

15              MR. DYKHUIS:  Objection to form.

16              THE WITNESS:  Yeah, the only other people

17    that I talked to about this was their ███ who is

18    ████████ and ████████████.

19    BY MR. DAVIES:

20        Q.    Anyone else that you can recall?

21        A.    No.  I think that covers it.

22        Q.    When did you talk with ████████████?

23              MR. DYKHUIS:  Object to form.

24              THE WITNESS:  I would say during the

25    same -- it's all within that window of time between
```

Page 104

1      █████ and probably as late as █████.

2      BY MR. DAVIES:

3          Q.   In those discussions with ████████████,

4      did you suggest ███████████████████████████

█      ████████?

6               MR. DYKHUIS:  Objection to form.

7               THE WITNESS:  ████████████████

█      ██████████████████████████████████████████

█      █████████████████████████████    ████

██     ███████████████████████

11     BY MR. DAVIES:

12         Q.   So those discussions would have included

13     ███████████████████████████████████

██     ████████████████?

15         A.   ██████████

16              MR. DYKHUIS:  Objection to form.

17     BY MR. DAVIES:

18         Q.   Do you recall how many times you met with

19     or spoke with ███████████████?

20              MR. DYKHUIS:  Object to form.

21              THE WITNESS:  Handful of times.  I think

22     at least three.

23     BY MR. DAVIES:

24         Q.   At least three during the █████ to maybe

25     █████ time period?

Page 105

1          A.    Yeah.

2          Q.    Okay.  Were there any email communications

3     that you can recall between you and ██████████████?

4               MR. DYKHUIS:  Object to form.

5               THE WITNESS:  It's possible.  But most of

6     them were phone conversations.

7     BY MR. DAVIES:

8          Q.    Was ██████████████    involved in ████████████

██    ████████████████████████████████████

██    ████████████████████?

11         A.    ████

12         Q.    Okay.  Do you recall the general subject

13    matter of the conversations that you had with ████████

██    ██████████ during the time ████ to ████?

15              MR. DYKHUIS:  Objection to form.

16              THE WITNESS:  Well, yeah, ████████████████

██    ██████████████████████████████████████████████████

██    ██████████████████████████

██    ████████████████████████████████

██    ██████████████████████████████    ████████████████

██    ████████████████████████████████████

██    ████████████████████

██    ██████████████████████████████

██    ████████████████████████████████████

██    ████████████████████████████████████████

Page 106



12    BY MR. DAVIES:

13        Q.    Did you have any discussions with █████

███? 

15        A.    No.    I don't know who that is.

16        Q.    Did you have any discussions with █████

███? 

18        A.    With -- with █████████ [verbatim], yes.

23        Q.    Do you recall approximately when that was?

24              MR. DYKHUIS:    Just object to the form.

25              THE WITNESS:    [Witness retrieves personal



1    item].

2          One second.

3    BY MR. DAVIES:

4          Q.    And it's okay if you don't recall.

5          A.    ███████████████████████

     ███████████████████████████████

     ███████████████████████████████

     ████████████████████

          ███████████████████████████

     ███████████████████████████████

     █████████████████████      ████████

     ████████████████████████████████

     █████████████████████

14         Q.    Okay.

15         A.    So I would say around ████.

16         Q.    Was ████████████████, present at any

17    of the discussions during the ████ to ████ time

18    period that concerned ██████████████████████

     ██████████████████████

20         MR. DYKHUIS:  Objection to form.

21         THE WITNESS:  ██████████████████████

     ████████████████████████████████

     █████████████████████████████

     ████████████████████████████

     ████████████████████████

Page 108

█

███

██ ██

███ █

████

███

████

████

██ ██

9    BY MR. DAVIES:

10        Q.    And that presentation ████████

██    ████    that was in about ██?

12              MR. DYKHUIS:  Objection to form.

13              THE WITNESS:  Correct.

14    BY MR. DAVIES:

15        Q.    About how many participants were there

16    from UTC at that meeting?

17        A.    Oh, probably about ten to 12.

18        Q.    Was ████████ present at that

19    meeting?

20        A.    ████

21        Q.    Was ████████ present?

22        A.    ████

23              MR. DYKHUIS:  Objection to form.

24    BY MR. DAVIES:

25        Q.    Other than the United Therapeutics

Page 109

1    individuals you've identified so far, can you recall

2    any others that were present at a meeting where you

3    had discussions with about ████████████████████

     ██████████████████████████ in the ████ to ████ time

5    frame?

6         A.    No.

7         Q.    You said a couple times in your answers

8    that "we wanted to ████████████████████████████████

     ██████████████████████████████." 

10             Do you recall that?

11        A.    Yes.

12        Q.    When you said "we," who were you referring

13   to?

14        A.    So whenever I say "we," I mean our group

15   at UCLA.

16        Q.    And who from your group at UCLA was

17   involved in these discussions with United

18   Therapeutics?

19             MR. DYKHUIS:   Objection to form.

20             THE WITNESS:   Generally speaking, it was

21   myself and my brother.

22   BY MR. DAVIES:

23        Q.    Anyone else?

24        A.    Not really.

25        Q.    At the end of your 2009 publication, you

Page 110

1    mention that Dr. S- -- and this is in the disclosure

2    statement.  So if you just want to look there.

3    Still looking at the disclosure statement on the

4    last page.

5              Do you see that?

6        A.   I do.

7        Q.   Okay.  So it mentions that -- well, it

8    mentions the research grant that we've been talking

9    about.

10             Do you see that on the disclosure

11   statement?

12       A.   I do.

13       Q.   And after that, it says Dr. S Shapiro,

14   Rajeev Saggar, Rajan Saggar -- Rajan Saggar

15   [phonetic emphasis] -- apologies -- and D.A. Zisman,

16   disclose that they are consultants for United

17   Therapeutics.

18             Do you see that?

19       A.   I do.

20       Q.   Is your brother Rajeev Saggar that's

21   identified there?

22       A.   Yeah.  Correct.

23       Q.   Okay.  What was the nature of your

24   consulting work for United Therapeutics that's

25   referred to in this disclosure statement?

Page 183

```
 1   STATE OF CALIFORNIA                        )

 2   COUNTY OF LOS ANGELES                      )  SS.

 3

 4            I, Dayna Hester, C.S.R. No. 9970, in

 5   and for the State of California, do hereby certify:

 6            That, prior to being examined, the witness

 7   named in the foregoing deposition was by me duly

 8   sworn to testify to the truth, the whole truth, and

 9   nothing but the truth;

10            That said deposition was taken down by me

11   in shorthand at the time and place therein named and

12   thereafter reduced to typewriting under my

13   direction, and the same is a true, correct, and

14   complete transcript of said proceedings;

15            That if the foregoing pertains to the

16   original transcript of a deposition in a Federal

17   Case, before completion of the proceedings, review

18   of the transcript {  } was {  } was not required;

19            I further certify that I am not interested

20   in the event of the action.

21            Witness my hand this 19th day of

22   September, 2024.

23

24                 Certified Shorthand Reporter

25                    for the State of California
```

# EXHIBIT 3

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS
CORPORATION,

            Plaintiff

v.                          C.A. No. 23-975 (RGA)

LIQUIDIA TECHNOLOGIES, INC.,

            Defendant.

_____

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF RAJEEV SAGGAR, M.D.

WEDNESDAY, OCTOBER 16, 2024

VIA ZOOM

REPORTED BY:

PATRICIA Y. SCHULER, CSR No. 11949

JOB NO.: 9852

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 2

1                IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF DELAWARE

3

4

5    UNITED THERAPEUTICS
     CORPORATION,
6
              Plaintiff
7
     v.                              C.A. No. 23-975 (RGA)
8
     LIQUIDIA TECHNOLOGIES, INC.,
9
              Defendant.
10

11    _____
                                    __
12

13   Remote Videotaped Deposition of RAJEEV SAGGAR, M.D.,

14   taken on behalf of the Plaintiff via zoom, commencing

15   at 9:04 a.m., Wednesday, October 16, 2024, before

16   PATRICIA Y. SCHULER,  California Shorthand Reporter,

17   No. 11949.

18

19

20

21

22

23

24

25

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 3

1   APPEARANCES OF COUNSEL:

2   ATTORNEYS FOR THE PLAINTIFFS:

3           MCDERMOTT WILL & EMERY LLP

4           BY:  ARTHUR DYKHUIS, ESQ.

5           18565 Jamboree Road, Suite 250

6           Irvine, California  92612

7           Adykhuis@mwe.com

8           - and -

9           MCDERMOTT WILL & EMERY LLP

10          BY:  BENJAMIN EDIGER, ESQ.

11          300 Colorado Street, Suite 2200

12          Austin, Texas  78701

13          bediger@mwe.com

14          - and -

15          MCDERMOTT WILL & EMERY LLP

16          BY:  COURTNEY SEAMS, ESQ. [VIA ZOOM]

17          The McDermott Building

18          500 North Capitol Street, NW

19          Washington, DC 20001

20          - and -

21          GOODWIN PROCTER LLP

22          BY:  ERIC ROMEO, ESQ.

23          100 Northern Avenue

24          Boston, Massachussetts  02210

25          eromeo@goodwinlaw.com

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 4

1    APPEARANCES (CONTINUED);

2    Attorneys for Defendant Liquidia Technologies, Inc.:

3              COOLEY LLP

4              BY:  JONATHAN DAVIES, ESQ.

5              1299 Pennsylvania Avenue, NW, Suite 700

6              Washington, DC 20004

7              JDavies@cooley.com

8              - and -

9              COOLEY LLP

10             BY:  ROSALYND UPTON, ESQ.

11             1299 Pennsylvania Avenue, NW

12             Suite 700

13             Washington, DC 20004

14             RUpton@cooley.com

15             - and -

16             LIQUIDIA CORPORATION

17             BY:  RUSSELL SCHUNDLER, ESQ.

18             419 Davis Drive

19             Suite 100

20             Morrisville, North Carolina  27560

21

22    ALSO PRESENT:

23             Jake Thompson, videographer

24

25

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 221

1    in your pocket, as I stated.  You know, again, our

2    Yutrepia is handheld.  It's portable.  Put it in

3    your pocket.  That allows for substantial

4    improvement and inconvenience.  You take it in two

5    breaths, et cetera.  So all of those are

6    advantageous compared to the nebulizer.

7            Q.   Can you look at Topic 9?

8            A.   Yes.

9            Q.   In preparation for your testimony today

10   with respect to Topic 9, did you review regulatory

11   filings submitted as part of the Liquidia/Yutrepia

12   NDA?

13           A.   Yes, I did.

14           Q.   Did you review the amendment that was

15   submitted as part of that NDA to include the

16   indication for PH-ILD?

17           A.   Yes, I did.

18           Q.   Were you prepared to answer questions

19   about that today?

20           A.   Yes, I was.

21           Q.   Can you bring up Exhibit 8?  That was a

22   publication that we looked at earlier.

23           A.   Okay.

24                MR. DYKHUIS:  Which one, Counsel?

25                MR. DAVIES:  Exhibit 8.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 222

1              MR. DYKHUIS:  Ah, thank you.

2     BY MR. DAVIES:

3          Q.   And just for clarity, Exhibit 8 is the

4     2014 Thorax publication by Saggar, et al.

5               Are you there, Dr. Saggar?

6          A.   I am.

7          Q.   Okay.  When was this publication

8     published?

9          A.   Well, it is published in 2014, as stated

10    down below.  However, these are e-pub'd at the time

11    of acceptance.  Around the time of acceptance.  I

12    don't know the exact date.

13         Q.   Prior to 2014, had you been using Tyvaso

14    off-label for treatment of PH-ILD?

15         A.   Yes, I was.

16         Q.   When was the first time that you can

17    recall that you used Tyvaso off-label for treatment

18    of PH-ILD?

19         A.   On or around 2010.

20         Q.   When you were using Tyvaso off-label to

21    treat PH-ILD before its approval in PH-ILD, what

22    was the dose that you would use in your patients?

23         A.   Nine to 12 breaths, four times a day.

24         Q.   So it's the same dose escalation that's

25    described in the Tyvaso label for PAH; is that

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 223

1    correct?

2            MR. DYKHUIS:  Object to form.

3            THE WITNESS:  Yes.  So at the time, Tyvaso

4    was approved in Group 1 PAH.  At the time, we

5    believed that the molecule treprostinil would be

6    effective to treat pulmonary hypertension, whether

7    it's Group 1 PAH or it's Group 3 PH-ILD.

8            And so, at that time, given the

9    understanding of how to titrate Tyvaso nebulizer,

10   which was limited, and based on that study, we

11   followed the guidance of that study to help titrate

12   the patient.

13   BY MR. DAVIES:

14      Q.   Just you personally, how many PH-ILD

15   patients do you believe you've treated off-label

16   with Tyvaso prior to Tyvaso's approval for PH-ILD?

17           MR. DYKHUIS:  Objection to form.

18           THE WITNESS:  I would have to say

19   somewhere around 80 to over 100.

20   BY MR. DAVIES:

21      Q.   During the time of this 2014 -- well,

22   strike that.

23           The -- at the time this 2014 publication

24   that is Exhibit 8 was written, where were you

25   working?

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 224

1          MR. DYKHUIS:  Object to form.

2          THE WITNESS:  Well, I was -- when it was

3     published, I was working at -- it's a tricky time.

4     Hold on.  Let me job my memory.  Okay.

5          So the question was -- sorry, can you

6     repeat the question one more time?

7     BY MR. DAVIES:

8     Q.    I will withdraw the question.

9     A.    Okay.

10    Q.    Did you ever work at UCLA?

11    A.    Yes, I did.

12    Q.    When were you at UCLA?

13    A.    2008 to 2011.  I'm sorry.  That is when I

14    was employed.  I was at UCLA in 2007 as -- in

15    training.

16    Q.    During your time at UCLA, were you aware

17    of any other physicians who were using Tyvaso

18    off-label for treatment of PH-ILD?

19          MR. DYKHUIS:  Objection to form;

20    foundation.

21          THE WITNESS:  Well, it was approved around

22    2009, so in 2010, yes, there was -- there was a team

23    of people in -- that were -- who managed the PH

24    patients, period, just the PH patients, that would

25    use Tyvaso to treat PH-ILD.  We had a very large ILD

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 225

 1   program.

 2   BY MR. DAVIES:

 3        Q.   About how many doctors were part of that

 4   PH-ILD program at UCLA?

 5             MR. DYKHUIS:  Objection to form.

 6             THE WITNESS:  So we didn't have a PH-ILD

 7   program.  We had a PH program, just for clarity.

 8   And we had an ILD program.

 9             Specifically, in the PH program, there

10   was four to five attending physicians, and then the

11   constitute of fellows, which, obviously, changes

12   every three years.

13   BY MR. DAVIES:

14        Q.   Are you aware of other physicians, other

15   than yourself and others at UCLA, who were using

16   Tyvaso off-label for treatment of PH-ILD prior to

17   2020?

18             MR. DYKHUIS:  Objection to form.

19             THE WITNESS:  Oh, yes, absolutely.

20   BY MR. DAVIES:

21        Q.   And who are you aware of that was doing

22   that?

23             MR. DYKHUIS:  Form.

24             THE WITNESS:  So this is just personal

25   communications that I have had.  So, obviously, my

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 226

1    brother used it.  I'm just looking at the paper.

2    I'm confident David Ross used it.  John Belperio has

3    used it.  Richard Channick has used it.  Jeremy

4    Feldman has used it.  Shelley Shapiro has used it.

5    I know Aaron Waxman has used it.  I know Victor

6    Tapson has used it.  I mean, off the top of my head,

7    that is what I can recall.  I believe Paul Forfia

8    has used it.  Angeli Vavia has used it.

9    BY MR. DAVIES:

10       Q.   Once this paper in Exhibit 8, the 2014

11   Saggar publication was published, did you receive

12   any feedback from other clinicians in the pulmonary

13   hypertension space about this paper?

14            MR. DYKHUIS:  Objection to form.

15            THE WITNESS:  Yeah.  This was a -- we --

16   remember, prior to our paper, especially in

17   academia, it's usually -- you release sections of,

18   or if not, even early datasets of this dataset,

19   which, you know, I know I did -- I'm forgetting

20   whether my brother did -- over the -- you know,

21   dating back probably two, three years before this

22   was published, in various abstracts.

23            So this paper was a critical piece of the

24   pie that really, I think, accentuated that, yes,

25   indeed, treprostinil is a very effective molecule,

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 227

1  period, for the treatment of PH.  And to use it in

2  PH-ILD, although there was still scepticism that

3  parenteral is the best form of the drug because of

4  its -- you know, you've got to -- it's infused 24

5  hours.  It's cumbersome for patients.  It's

6  problematic.

7              It did highlight that, is there other

8  routes that can showcase its potency.  And, of

9  course, inhaled around this time was really

10 starting to gain a lot of traction, both in -- you

11 know, especially externally.

12 BY MR. DAVIES:

13     Q.   Do you recall counsel earlier asking you

14 some questions about some statements in this paper

15 related to safety?

16     A.   Yeah.  He made maybe one statement on it,

17 if I recall.

18     Q.   And do you recall your testimony

19 regarding some differences in terms of parenteral

20 as opposed to inhaled therapy with respect to those

21 statements?

22          MR. DYKHUIS:  Object to form.

23          THE WITNESS:  I am not recalling the

24 question line regarding safety, with exception of

25 the limitation section.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 228

 1   BY MR. DAVIES:

 2        Q.   And which section are you thinking of?

 3        A.   Actually, I'm not even -- I will -- just

 4   for the record, I actually don't recall anyone

 5   asking me a question regarding the safety of this

 6   very study.

 7        Q.   After -- or -- after your experience with

 8   the patients in this study, how, if at all, did it

 9   affect your use of treprostinil in the treatment of

10   PH-ILD patients?

11             MR. DYKHUIS:  Object to form.

12             THE WITNESS:  It didn't change it.  I

13   mean, we were using -- sorry.  I was using

14   treprostinil solely to treat patients with PH-ILD,

15   depending on the patient.  You know, if they were in

16   the hospital and they, you know, needed acute

17   hospitalized treatment, of course, we would use

18   Remodulin because that's what was available in the

19   hospital.  In the outpatient setting, we would use

20   parenteral Remodulin and/or Tyvaso.  I would use --

21   sorry, I would use Remodulin and/or inhaled therapy

22   Tyvaso.

23             MR. DAVIES:  Go off the record for one

24   second.

25             THE VIDEOGRAPHER:  The time is 4:36 p.m.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 229

1    We are now off the record.

2              (Recess taken.)

3              THE VIDEOGRAPHER:  The time is 4:38 p.m.

4    We are now back on the record.

5    BY MR. DAVIES:

6         Q.    Can you bring up Exhibit 9.

7         A.    Yes.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 230

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 231

20          So we wondered how effective it would

21   have been.  We didn't have that clinical strength

22   because it had just gotten approved.  But we had

23   experience with parenteral.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 232

██  ████████████████████████████████████████

██  ████████████████████████████████████████

██  ██████████████████████████████████████████

██  ████  ████████████████████  ████████████████

██  ████████████████████████████

6   BY MR. DAVIES:

7       Q.   Who is ██████████████?

8       A.   ██████████████ is currently still employed

9   by United Therapeutics.  I believe ██ works under

10  the banner of lung biotechnology.  I think ████ --

11  don't quote me.  You're going to quote me.  But I

12  think ████, like, VP or associate VP of clinical

13  development at lung biotech/UT.

██   ██   ████████████████████████████████

██  ████████████████████████████████████████

██  ██████████████████████████████

██          ██████████████  ████████████████

██          ██████████████  ██████████

██  ████████████████

██   ██   ████████████████████████████████

██          ██████████████  ████████████████

██          ██████████████  ████████████████

██  ██████████████████████████

██  ████████████████

██   ██   ████████████████

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 233

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 234

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 235

25   ///

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 236

1    BY MR. DAVIES:

2        Q.    ███████████████████████████████

    ██  ███████████████████████████████

4             By ████████, had you used Tyvaso in

5    PH-ILD patients?

6             MR. DYKHUIS:  Object to form.

7             THE WITNESS:  I can't recall when I

8    started my first patient in 2010 versus ████

██  ████████.

██  █████████████

██      ██  ████████████████████████████

██  ████████████████████████████████

██  ██████████████████████

██          ███████████  ████████████

██          ███████████  █████████████

██  ████████████  ██████████████████████

██  █████████████████████████████████████

██  ████████████████████████

██  ███████████████

██      ██  ███████████████████████████

██  █████████████████████████████████

██  ████████████

██          ███████████  █████████████

██          ███████████  ██████████████

██  ██████████████████████████████████

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 237

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 238

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 239

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 240

■ ▬▬▬▬  ▬▬▬▬▬▬▬▬

■ ▬▬

■   ▬▬▬▬▬▬▬

■ ▬▬▬▬▬▬▬▬▬▬

■ ▬▬▬▬▬▬▬

■ ▬▬▬▬▬▬▬▬

■ ▬▬▬▬▬▬▬

■ ▬▬▬▬▬

■   ▬▬▬▬▬▬▬

■ ▬▬▬▬▬  ▬▬▬▬

■ ▬▬▬

12   BY MR. DAVIES:

13        Q.    Who is ▬▬▬▬▬▬?

14        A.    ▬▬▬▬ is a very nice gentleman, but ■

15   works for, I believe, the substrate of Lung

16   Biotechnology.  ■ was a -- I believe right now,

17   ■ a VP or associate VP at Lung Biotechnology for

18   clinical.  So ■ has been there for a very long

19   time.  ■ was always part of clinical dev,

20   development.

■   ▬▬▬▬▬▬▬▬▬

■ ▬▬▬▬▬▬

■ ▬▬▬▬▬▬

■ ▬▬▬▬▬▬  ▬▬▬▬

■ ▬▬▬▬▬

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 241

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 242

11    BY MR. DAVIES:

12        Q.   Why, to your knowledge, did ███████████

█    ███████████?

14             MR. DYKHUIS:  Object to form.

15             THE WITNESS:  Again, this was when Tyvaso

16    just got -- you know, within ██████ of its approval

17    or so.  We had a very strong -- I'll speak to

18    myself.  I had a very -- I had a strong belief that

19    Remodulin was and is one of the best drugs that you

20    can use to treat patients with PH, irrespective of

21    their group.  As a practicing physician, that's true

22    until the day I stop practicing.

23             I think, because of that, we -- ███████████

█    ███████████████████████████████████████████

25    we kept pushing -- sorry, I keep using the word

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 243

1    "we."  I was very adamant that we should stick to

2    what we believed in and the why behind it.

9    BY MR. DAVIES:

10        Q.    You just said what you believed in.

11              What was it that you believed in?

12              MR. DYKHUIS:  Objection to form.

13              THE WITNESS:  That treprostinil is -- that

14    when you deliver treprostinil and you can get to

15    doses that are effective, it, without a doubt, is a

16    very effective drug to treat pulmonary hypertension,

17    irrespective of the group.  In other words, Group 1

18    PH, Group 3 PH.  You can attach a group to it.  It's

19    a very effective drug.

20    BY MR. DAVIES:

21        Q.    Why did you believe that?

22              MR. DYKHUIS:  Objection to form.

23              THE WITNESS:  Well, I mean, I've treated a

24    few thousand patients in my career.  At that time,

25    obviously, I was younger.  And so, you know,

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 244

1    obviously, at that time -- I don't know how I had

2    treated, but a significant number of patients.

3              So this is just through understanding the

4    science, understanding how pulmonary hypertension

5    acts, understanding the mechanism of action of

6    treprostinil, and just personal use in our program,

7    which was -- UCLA, at that time, was a very large

8    program.  It's considered, and still is, a center

9    of excellence for PH.  They're a center of

10   excellence for interstitial lung disease.  They're

11   a center of excellence for transplants.  So we had

12   a wealth of patients that needed our help and

13   support.

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 245

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 246

HIGHLY CONFIDENTIAL - UNDER PROTECTIVE ORDER

Page 252

1    today, right, but it's grown, that, you know, were

2    in PH centers that treated these patients.  And of

3    course, this is how, you know, interactions occur,

4    medicine is advanced, data is shared, et cetera.

5              MR. DYKHUIS:  Nothing else for us.  You

6    know, again, just refer back to our previous

7    statements in the deposition and holding it open.

8              Anything else from your side, John?

9              MR. DAVIES:  Nope.  And in our opinion,

10   the deposition is closed.

11             THE VIDEOGRAPHER:  Off the record?

12             MR. DYKHUIS:  Off the record.

13             MR. DAVIES:  Off the record.

14             MR. DYKHUIS:  I would like a rough.

15             MR. DAVIES:  I would like a rough.

16             THE VIDEOGRAPHER:  The time is 5:17 p.m.

17   This concludes today's deposition.  We are now off

18   the record.

19             (The videotaped deposition of

20             RAJEEV SAGGAR, M.D., concluded at

21             5:17 p.m.)

22

23

24

25

# EXHIBIT 4

```
                                              Page 1

 1     IN THE UNITED STATES DISTRICT COURT

 2     FOR THE DISTRICT OF DELAWARE

 3     --------------------------------x

       UNITED THERAPEUTICS                  Case No.

 4     CORPORATION,                         23-975-RGA-SRF

 5               Plaintiff,

 6        vs.

 7     LIQUIDIA TECHNOLOGIES, INC.,

 8               Defendant.

       --------------------------------x

 9

10

11              *** HIGHLY CONFIDENTIAL ***

12            VIDEOTAPED 30(b)(6) DEPOSITION

13                       OF

14            UNITED THERAPEUTICS CORPORATION

15            By DEAN BUNCE, Corporate Designee

16               (Taken by Defendant)

17              Raleigh, North Carolina

18              Tuesday, October 29, 2024

19

20

21

22

23

24     Reported by Andrea L. Kingsley, RPR

25
```

```
                                                    Page 2

 1                    A P P E A R A N C E S

 2

 3     ON BEHALF OF THE PLAINTIFF AND THE WITNESS:

 4                   Adam W. Burrowbridge, Esquire
                     Lillian Spetrino, Esquire

 5                   McDERMOTT WILL & EMERY LLP
                     The McDermott Building

 6                   500 North Capitol Street, NW
                     Washington, DC 20001-1531

 7                   (202)756-8797
                     aburrowbridge@mwe.com

 8                   lspetrino@mwe.com

 9

10     ON BEHALF OF THE DEFENDANT LIQUIDIA
       TECHNOLOGIES, INC.:

11

                     Rosalynd D. Upton, Esquire

12                   Jonathan R. Davies
                     COOLEY LLP

13                   1299 Pennsylvania Avenue NW
                     Washington, DC 20004

14                   (202) 776-2094
                     rupton@cooley.com

15                   jdavies@cooley.com

16

17

18

19

       ALSO PRESENT:

20

       ROB PATTERSON, Videographer

21

22

23

24

25
```

Page 20

1    Tyvaso to treat PH-ILD that you recall?

2        A.    Again, I'm not personally aware of any

3    circumstances.

4        Q.    Going down to your education, also on

5    page 2 of your LinkedIn bio, you're a lawyer by

6    training?

7        A.    I am not.

8        Q.    You're not.

9        A.    No.

10       Q.    It says you went to Campbell University

11   Norman Adrian Wiggins School of Law?

12       A.    I did.  And left after three and a half

13   semesters.

14       Q.    So your area of expertise is -- how

15   would you characterize that?

16              MR. BURROWBRIDGE:  Object to form.

17       A.    Regulatory affairs.

18       Q.    You can put that document to the side,

19   Mr. Bunce.  We're done with that.



Page 22

1      Q.    Do you recall which physicians were

2    using Tyvaso off-label for treating PH-ILD?

3                MR. BURROWBRIDGE:  Object to form.

4      A.    I do not specifically, no.



15      Q.    What is a drug safety report?

16      A.    It's a report filed by a -- it can be

17    filed by a patient, physician, caregiver, if they

18    feel there's an adverse effect of our drug.

Page 109

1        expedited?

2                        THE REPORTER:  Yes.  Three days?

3                        MR. DAVIES:  Yes.  Thank you.

4                        THE REPORTER:  Mr. Burrowbridge, a

5        rough and expedited?

6                        MR. BURROWBRIDGE:  Yes, please.

7            (Deposition concluded at 1:00 p.m.)

8                      (Signature reserved)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                    Page 110

 1     STATE OF NORTH CAROLINA

 2     WAKE COUNTY

 3                     REPORTER'S CERTIFICATE

 4             I, Andrea L. Kingsley, a Notary Public

 5     in and for the State of North Carolina, do hereby

 6     certify that there came before me on Tuesday,

 7     October 29, 2024, the person hereinbefore named,

 8     who was by me duly sworn to testify to the truth

 9     and nothing but the truth of his knowledge

10     concerning the matters in controversy in this

11     cause; that the witness was thereupon examined

12     under oath, the examination reduced to typewriting

13     under my direction, and the deposition is a true

14     record of the testimony given by the witness.

15             I further certify that I am neither

16     attorney or counsel for, nor related to or employed

17     by, any attorney or counsel employed by the parties

18     hereto or financially interested in the action.

19             IN WITNESS WHEREOF, I have hereto set

20     my hand this the 31st day of October, 2024.

21

22     _____

23             Andrea L. Kingsley, Notary Public

24             Notary Public #201903800023

25
```

# EXHIBIT 5

HIGHLY CONFIDENTIAL

Page 1

1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF DELAWARE

3                     ---oOo---

4

5     UNITED THERAPEUTICS
      CORPORATION,

6

7                        Plaintiff,

7

        vs.                 CASE NO. 23955RGA

8

      LIQUIDIA TECHNOLOGIES, INC.

9

                         Defendants.

10    _____

11

12              ***HIGHLY CONFIDENTIAL***

13     VIDEO-RECORDED DEPOSITION OF VICTOR TAPSON, M.D.

14              Santa Monica, California

15              Tuesday, November 5, 2024

16

17

18

19

20

21

22

23    Stenographically Reported by:  Ashley Soevyn,
      CALIFORNIA CSR No. 12019

24    Job No. PA 7001696

25    Pages 1 - 169

HIGHLY CONFIDENTIAL

Page 2

1                UNITED STATES DISTRICT COURT

2                    DISTRICT OF DELAWARE

3                        ---oOo---

4

5       UNITED THERAPEUTICS
        CORPORATION,
6
                        Plaintiff,
7
           vs.                  CASE NO. 23955RGA
8
        LIQUIDIA TECHNOLOGIES, INC.
9
                        Defendants.
10      _____

11

12

13

14            ***HIGHLY CONFIDENTIAL***

15

16                  Video-recorded Deposition of

17      VICTOR TAPSON, M.D., taken on behalf of the

18      Defendants Liquidia Technologies, Inc., Pursuant to

19      Notice, at the offices of Goodwin Procter, 520

20      Broadway, Santa Monica, California beginning at

21      9:59 a.m.  and ending at 1:45 p.m. on Tuesday,

22      November 5, 2024, before me, ASHLEY SOEVYN,

23      Certified Shorthand Reporter No. 12019.

24

25

HIGHLY CONFIDENTIAL

```
                                                    Page 3

 1       A P P E A R A N C E S :

 2       For the Plaintiff:

 3                 GOODWIN PROCTER LLP

 4                 BY:  ERIC T. ROMEO

 5                 BY:  HARRISON GUNN

 6                 Attorneys at Law

 7                 100 Northern Avenue

 8                 Boston, Massachusetts 02210

 9                 eromeo@goodwinlaw.com

10                 hgunn@goodwinlaw.com

11                 (617) 570-8145

12

13       For the Defendants Liquidia Technologies, Inc.:

14                 COOLEY LLP

15                 BY:  SANYA SUKDUANG

16                 BY:  RACHEL PRESTON

17                 Attorneys at Law

18                 1299 Pennsylvania Avenue

19                 NW STE. 700

20                 Washington, D.C. 20221

21                 ssukduang@cooley.com

22                 rpreston@cooley.com

23                 (202) 842-7800

24       Also Present:

25       Jonathan Hernandez, Videographer
```

HIGHLY CONFIDENTIAL

Page 62

1     any other parameter that says the patient has to

2     have this in order to take Tyvaso® for PH-ILD.

3          A    Not on the prescribing information, no.

4          Q    Now, if you look at maintenance dosage in

5     Exhibit 2, the 2021 version, it allows you to go to

6     a higher dose than the original label in 2009,

7     correct?

8          A    Correct.

9          Q    And if you took the original label -- if

10    you need to look, was up to nine breaths according

11    to the label?

12         A    Yes.

13         Q    And now this 2021 version allows you to

14    go to 12 breaths, correct?

15         A    Yes.

16         Q    And so while the original label let you

17    go up to approximately 216 micrograms per day, the

18    revised label now lets you go up to at least 288

19    micrograms per day?

20              MR. ROMEO:  Object to form.

21              THE WITNESS:  I will take your word for

22    it on the math.

23    BY MR. SUKDUANG:

24         Q    My math might be wrong, but at the very

25    least, it allows you to go higher than the 216 on

```
 1    the original label, correct?

 2         A    Yes.

 3         Q    And was that based on PAH studies, or was

 4    that based on the INCREASE trial?

 5              MR. ROMEO:  Object to form.

 6    BY MR. SUKDUANG:

 7         Q    To the extent you recall.

 8         A    I don't recall.

 9              MR. SUKDUANG:  Okay.  Why don't we take a

10    break?

11              THE WITNESS:  Sure.

12              THE VIDEOGRAPHER:  We are going off the

13    record.  The time is 11:03 a.m.

14              (Recess.)

15              THE VIDEOGRAPHER:  We're back on the

16    record.  The time is 11:16 a.m.

17    BY MR. SUKDUANG:

18         Q    Welcome back, Dr. Tapson.

19         A    Thank you.

20         Q    During the break, did you discuss the

21    substance of your testimony with counsel?

22         A    No.  I did not.

23         Q    Back when you were at Duke, you had

24    mentioned that the treprostinil products were

25    expensive.  How when you were prescribing Tyvaso®
```

HIGHLY CONFIDENTIAL

Page 64

1    for PH-ILD patients, how did you prescribe it such

2    that it would be reimbursed to the patient?

3                MR. ROMEO:  Object to form.

4                THE WITNESS:  Well, all the PH products

5    are expensive.  But fortunately I had a good clinic

6    nurse that would handle all that.  But if someone

7    had pulmonary hypertension and ILD and had very

8    severe pulmonary hypertension, this could easily be

9    considered, and what we felt was PH in the setting

10   of ILD or it was hard to distinguish from

11   ILD-causing PH or being coincidence.  So we didn't

12   really have difficulty.  We didn't do it that often

13   because we didn't have, you know, a lot of data but

14   when we did it and felt we needed to, we could get

15   it reimbursed.

16   BY MR. SUKDUANG:

17       Q    You had mentioned while you were at Duke,

18   you couldn't recall about how many patients you had

19   on Tyvaso® PH-ILD.  Do you recall now about how many

20   patients you may have had?

21       A    I really don't know, no.  I'm sorry.

22       Q    When you moved over to Cedars, in terms

23   of reimbursement, was there any difficult in getting

24   Tyvaso® reimbursed for PH-ILD patients?

25       A    I don't recall difficulty.

Page 65

1              MR. ROMEO:  Object to form.

2    BY MR. SUKDUANG:

3         Q    You had mentioned while you were at Duke

4    and also at Cedars that some of the patients with

5    PH-ILD taking Tyvaso® you did stop for various

6    reasons, and certain patients they were able to

7    continue on Tyvaso® with PH-ILD.  Is that fair?

8              MR. ROMEO:  Object to form.

9              THE WITNESS:  Yes.

10   BY MR. SUKDUANG:

11        Q    With the patient that both at Duke and

12   Cedars that were able to -- let me start over.  With

13   respect to the PH-ILD patients at Duke and Cedars

14   that were able to continue on Tyvaso® for their

15   treatment, did you see improvements in their

16   exercise capacity?

17             MR. ROMEO:  Object to form.

18             THE WITNESS:  I mean, I don't really

19   recall specific cases.  But in some cases, I know we

20   did.

21   BY MR. SUKDUANG:

22        Q    Okay.  What about reducing the time that

23   they might have had to go to hospital.  Would

24   Tyvaso® help reduce that clinical worsening of

25   hospitalization?

HIGHLY CONFIDENTIAL

Page 167

1              REPORTER'S CERTIFICATE

2              I, ASHLEY SOEVYN, a Certified Shorthand

3     Reporter of the State of California, do hereby

4     certify:

5              That the foregoing proceedings were taken

6     before me at the time and place herein set forth;

7     at which time the witness was put under oath by me;

8              That the testimony of the witness, the

9     questions propounded, and all objections and

10    statements made at the time of the examination were

11    recorded stenographically by me and were thereafter

12    transcribed;

13             That a review of the transcript by the

14    deponent was/ was not requested;

15             That the foregoing is a true and correct

16    transcript of my shorthand notes so taken.

17             I further certify that I am not a relative

18    or employee of any attorney of the parties, nor

19    financially interested in the action.

20             I declare under penalty of perjury under

21    the laws of California that the foregoing is true

22    and correct.  Dated this 11th day of November, 2024.

23    

24    

      ASHLEY SOEVYN

25    CSR No. 12019

# EXHIBIT 6

| | |
|---|---|
| **From:** | Habibi, John A |
| **Sent:** | Friday, October 18, 2024 4:05 PM |
| **To:** | Pappas, Katherine; McDermott, Sydney; Dykhuis, Art; Vallen, Jake; Burrowbridge, Adam; WJackson@goodwinlaw.com; mflynn@morrisnichols.com; Carsten, Douglas |
| **Cc:** | z/Liquidia v UTC 308970-201; UTCvLiquidia-Del-23cv975@mwe.com; DG-ILD@goodwinlaw.com |
| **Subject:** | UTC v. Liquidia (23-975) - UTC's Document Production Deficiencies |

Counsel,

During the depositions of Drs. Rajan and Rajeev Saggar they identified multiple communications and meetings between themselves and United Therapeutics regarding the use of treprostinil to treat PH-ILD before the approval of Tyvaso in PH-ILD.



These communications and documents are directly responsive to at least the following RFPs.  Please immediately produce all such responsive communications and documents.

- RFP 21: All communications between UTC and Rajeev Saggar M.D. and Rajan Saggar M.D. regarding the use or potential use of inhaled treprostinil, including TYVASO®, in patients with pulmonary hypertension associated with interstitial lung disease.

- RFP 26: All communications between UTC and the authors of Rajeev Saggar et al., Changes in right heart haemodynamics and echocardiographic function in an advanced phenotype of pulmonary hypertension and right heart dysfunction associated with pulmonary fibrosis, 69 THORAX 123 (2014) (LIQ_PH-ILD_00000226), regarding the use or potential use of inhaled treprostinil, including TYVASO®, for the treatment of pulmonary hypertension associated with interstitial lung disease.

- RFP 27: All documents and communications regarding UTC's decision to fund of the study described in Rajeev Saggar et al., Changes in right heart haemodynamics and echocardiographic function in an

advanced phenotype of pulmonary hypertension and right heart dysfunction associated with pulmonary fibrosis, 69 THORAX 123 (2014) (LIQ_PH-ILD_00000226)

- RFP 40: All documents and things concerning the research, development, and/or testing of treprostinil for its effect in patients with pulmonary hypertension associated with interstitial lung disease, including but not limited to any correspondence, research proposals, or protocols relating to treprostinil.

- RFP 43: All documents and things related to NDA No. 022387 for TYVASO®, including without limitation the complete file of NDA No. 022387 for TYVASO®, communications with the FDA, and any supplemental applications and/or amendments thereto, including, but not limited to, all investigational new drug ("IND") applications, regardless of whether they were filed with the FDA.

- RFP 44: All documents and things related to NDA No. 214324 for TYVASO DPI®, including without limitation the complete file of NDA No. 214324 for TYVASO DPI®, communications with the FDA, and any supplemental applications and/or amendments thereto, including, but not limited to investigational new drug ("IND") applications, regardless of whether they were filed with the FDA.

Regards,
John Habibi

John Habibi
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
(enter from 12th and E Streets)
Washington, DC  20004-2400
+1 202 776 2137 office
jhabibi@cooley.com

www.cooley.com/people/john-habibi

Twitter | Facebook | LinkedIn

Cooley is committed to racial justice

# EXHIBIT 7

**Diaz, Larissa Michelle**

| | |
|---|---|
| **From:** | Upton, Rozzi D |
| **Sent:** | Thursday, October 31, 2024 8:57 PM |
| **To:** | Dykhuis, Art; McDermott, Sydney; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com; Flynn, Michael J. |
| **Cc:** | z/Liquidia v UTC 308970-201; DG-ILD; UTCvLiquidia-Del-23cv975 |
| **Subject:** | UTC v. Liquidia: Follow-up on Bunce deposition |

Counsel,

UTC identified Mr. Dean Bunce in its initial disclosures and its first amended initial disclosures as knowledgeable about "NDA Nos. 22387, 22387/S-017, and 214324; development and regulatory approval of TYVASO® and TYVASO DPI®" and further identified Mr. Bunce for 30(b)(6) Topic 21:

> The factual basis for the following statements made by Martine A. Rothblatt during UTC's FQ1 2018 Earnings Call concerning the use of Tyvaso®: "both through the effort of our medical affairs group over the years in supporting investigator-sponsored studies and through the kindness and generosity of certain payers around the country who have gone ahead and upon the initiative of their physicians, were able to enable some WHO Group III patients to benefit, there were unmistakable signals the some of the leading physicians in this field. I called out one of them on the call, Dr. Waxman, but there are many others, who said to UT, 'This drug works.' In fact, they believe that this drug works even better in that indication than in the Group I indication in terms of, at least, the exercise ability that they saw in their patients, discounting any placebo effects that might be involved. So with that kind of data, some of which has been presented in posters and maybe even publications -- I don't know, but I've definitely seen posters, we went ahead and then had the statistics to power of the study for statistical significance, the one in the ILD population and the other in the COPD population, which are 2 distinct populations." LIQ_PHILD_00000001 at 10.

*See* Counsel's October 24 email "UTC v. Liquidia (23-975) - Deposition dates for witnesses."

However, it was clear from Mr. Bunce's October 29, 2024 deposition that he was insufficiently prepared for this subject matter, and thus we repeat our request to depose Dr. Martine Rothblatt. We expressly raised our objection to Mr. Bunce's lack of preparedness during his deposition after testimony repeatedly confirming his lack of familiarity and knowledge on this subject matter, including Mr. Bunce's ███████████████████████████ *See* Bunce Tr. at 8:8-19; *see also id.* at 48:13-19. ██████████████ *See, e.g.*, *id.* at 32:14-33:19; 35:2-36:17; 41:13-22; 43:4-14; 44:10-45:7; 54:16-55:4; 56:8-17. ████████████████████████████████

We specifically request the deposition of Dr. Rothblatt.

Separately, Liquidia requests that UTC produce the following documents ██████████████████ ████████:

█ ████████████████████████████████

█ ████████████████████████████████

███████████████████████████████████████████ If we are incorrect, please identify where these specific documents are located within UTC's production.

Thank you,

Rozzi Upton, JD PhD
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
+1 202 776 2094 office
+1 202 842 7899 fax
rupton@cooley.com

# EXHIBIT 8

Message

_____

**From:**    ███████████████████████████

**Sent:**    2/19/2015 6:45:06 PM

**To:**    ███████████████████████████████████████████████████████████████████

**Subject:**    Meeting summary and actions_Feb 16-████████████████████

**Attachments:**    MEETING SUMMARY_ REDACTED 16_Feb_2014.docx

All

Attached is the meeting summary from Monday Feb 16, salient discussions and agreements are in red text.

Action items are in the table below, please refer to the summary for details. I have also itemized below the topics for discussion with ████████████

███████████████ could you please inform on how soon you can provide the data for ████ to review?

Please let me know if you have edits,

█████

████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

**From:**  ████████████████████████████

**Sent:**  Wednesday, February 18, 2015 9:47 PM

**To:**  ████████████████████████████████████████

**Cc:**  ████████████████████████

**Subject:** Re: ████████████████████████

Hi ████████

We have spoken to ████████████ and he agrees with a face to face meeting as soon as possible.

████████████████████████████ REDACTED ████████████████████████████████

Can we lock a date for the meeting within next 30 days. I'm confident we will need atleast a full day to resolve all issue, if not 1 and 1/2 days.

████████████ I and ████████ will attend from the scientific advisory prospective . Given the time commitment required, I would request all necessary UT team members and executives be present as deemed fit.

████████████████████    ████████████████ _PH-ILD_000005

In the meantime, █████ and I will work diligently with you to resolve many of the questions. In this regards, we will make ourselves available for as many teleconferences as required to sort of many of the details.

Look forward to an exciting future with all of you.

Regards

██████████

On Feb 2, 2015, at 4:39 PM, ██████████████████████ > wrote:

Dear ██████
Attached is the updated version of the protocol after review from our protocol development team (includes representation from our Clinical, Medical Monitoring, Safety, Statistics, Regulatory, and Data Management divisions).
The protocol was updated after careful consideration by the team and is based on the current needs for ██████████████████████REDACTED██████████████████████ I understand that several options were explored during the early stages of the protocol that may not be included in this version. We have provided some rationale but are happy to discuss the streamlining further via teleconference as needed. I have listed the salient changes and rationale in the attached table (pasted below for convenience).
We would also appreciate your expertise on several questions that came up (these are listed in the table as well).
We look forward to working together to finalize the protocol. Please let us know your thoughts.



_PH-ILD_000007

Thank you,



United Theraputics
55 T. W. Alexander Drive
Research Triangle Park, NC 27709

<Changes to Draft1 Table ██████████docx>
<██████████Draft 2_ 2Feb2015.docx>

# EXHIBIT 9



**REDACTED**

Protocol Discussion Summary
RM 20227 RTP, Feb 16, 2015, 9:30-10:30 AM EST

███████████████████

| Attendees | | Regrets |
|---|---|---|
| ██████████████████████████████████████████████ | | |

| Protocol Section | Discussion points |
|---|---|
| Title and Objective (Sec 2) | ████████████████████████████████████████ |
| **Endpoints** <br><br> (Sec 2.1-2.4) | ████████████████████████████████████████ |



REDACTED

Protocol Discussion Summary
RM 20227 RTP, Feb 16, 2015, 9:30-10:30 AM EST

| | |
|---|---|
| **Study Design**<br><br>(sec 3.1) | |
| **Inclusion/ Exclusion Criteria**<br><br>(Sec 4) | |
| **Assessments**<br><br>(Sec 3.2 and 3.3) | |





Protocol Discussion Summary
RM 20227 RTP, Feb 16, 2015, 9:30-10:30 AM EST

| Questions |  |
| --- | --- |

# EXHIBIT 10

Message

_____

**From:** ███████████████████████
**Sent:** 10/10/2014 2:16:28 PM
**To:** ████████████████████████████████████████
**CC:** ████████████████████████████████████████
**Subject:** RE: Draft of ████████████████████

can we do on 10/16 at 4 PM EST; I am in the MICU but would really like to be part of the initial discussions, thanks... if this back and forth does not work, may I suggest that ████ start a Doodle Poll? thanks



_____

**From:** ████████████████████████
**Sent:** Friday, October 10, 2014 10:57 AM
**To:** ████████████████████
**Cc:** ████████████████████████
**Subject:** Re: ████████████████████████████████

████████,

Next week is very busy, but I can do 8:30am to 9:30am pst thursday oct 16th.

████████████

On Fri, Oct 10, 2014 at 7:10 AM, ████████████████████████████████████████> wrote:

Dear All,

I have had the opportunity to update the protocol and have included many of your comments as I revised the protocol. I would like to schedule a teleconference to discuss and clarify some of the comments you provided. Please let me know if any of the following dates and times work for your schedule:

Monday, October 13th at 10am or 11am EST

Tuesday, October 14th at 11:30am EST

Thursday, October 16th at 11:30am EST.

Thank you,

████████

**From:** ████████████████████████
**Sent:** Wednesday, October 08, 2014 11:00 PM
**To:** ████████████████████████

**Subject:** Re: Draft of ████████████ REDACTED ████████████

Any questions?

Sent from my iPhone

On Sep 29, 2014, at 7:11 AM, ███████████████████████ wrote:

Dear All,

Thank you for your comments and edits to the ████REDACTED████ I will work on updating the document, and I will send a revised protocol for your review prior to discussing any additional issues via teleconference.

Warm Regards,

████████

███████████████████████

United Therapeutics
55 TW Alexander Drive
Research Triangle Park, NC 27709
█████████████████

**From:** ████████████████████
**Sent:** Monday, September 29, 2014 12:38 AM
**To:** ████████████████████
**Cc:** ████████████████████
**Subject:** Re: Draft of ████REDACTED████

Dear ██████████

Please see attached comments. Many of the changes are related to our prior discussion over the past 1 year and at ATS.  These comments are in addition to the those suggested by ██████████

Once we have approved the changes, will need to review the details of the tables.

Look forward to the teleconference.

Regards,

██████████████

On Sun, Sep 7, 2014 at 7:04 PM, ████████████████████ wrote:

Thank you ██████████████

We apologize for the delay...

We are reviewing the protocol in detail in concert with the changes suggested by ████████ We will send a revised comment draft in next 48 hours.

Appreciate your time dedicated to this project.

Regards,

████████

On Thu, Sep 4, 2014 at 12:21 AM, ██████████████████████ wrote:

Dear all,

I've reviewed  the draft protocol and have a few comments:

**From:** █████████████████████

**Date:** Wednesday, September 3, 2014 at 2:29 PM

**To:** ███████████████████████████████████████████████

█████████████████████

**Cc:** ███████████████████████████████████████

**Subject:** Draft of ███████████████ REDACTED ███████████████

Dear All – since our last meeting at ATS and following ██████ re-analysis of the sample size for the protocol we have been working on the draft protocol for the ███████████ REDACTED ███████ study. ██████████████ has been working on this protocol which is attached for your review and comments.  In the next few weeks ████████ will try to set up a meeting based on your schedules to go over any comments, discuss timelines, and next steps for this protocol to move towards finalization and implementation.  Obviously there is a decent amount of work to get to that point but feel we can have a protocol out to sites (that you as the leadership of the study agree to) late this fall with enrollment beginning in late Q1 next year.

We will look forward to hearing your comments on the protocol.  As I mentioned, ██████████ will be in touch to set up our next teleconference.

Best Regards,

████████████████████████████████████████

United Therapeutics Corp

████████████████████████████

# EXHIBIT 11

Message
_____

**From**: ████████████████████████
**Sent**: 3/9/2015 8:20:39 PM
**To**: ████████████████████████████████
**CC**: ████████████████████████████████
**Subject**: Re: ██REDACTED██████████

████

This is fine. Devils in the details. We are ready to address and justify each step. I just want to make sure there are no issues and the design is agreed by all parties. Our phone conferences were too short to address the entire protocol.

With your direct involvement we can successfully move forward.

Regards

████████

Sent from my iPhone

On Mar 9, 2015, at 3:51 PM, ████████████████████████ wrote:

Hi Both – hope you are well.

████████ mentioned to me your comments at ██████████ about the pace of the ██REDACT██ study and hoping it can get up and running soon. ████████REDACTED████████ review the protocol remotely, have a teleconference and move on with the conduct of the study.  We have greatly appreciated your assistance with protocol design but am getting the sense that we can talk about the design and inclusion/exclusion criteria for a long time without ever getting started if we continue with the current plan.

What do you think of my "next steps" proposal?

Thanks!

████████

████████████████████████████████

United Therapeutics Corp
████████████████████

# EXHIBIT 12

Message

**From:** ████████████████████

**Sent:** 5/27/2014 3:59:10 PM

**To:** ████████████████████████████████

**CC:**

**Subject:** Re: Meeting at ATS for    REDACTED


I'm not sure I see the need to power a Phase 2 study at 90%

---

**From:** ████████████████████████

**Date:** Tuesday, May 27, 2014 3:48 PM

**To:** ████████████████████

**Cc:** ████████████████████████████████████

████████████████████████████

**Subject:** RE: Meeting at ATS for    REDACTED


Hello All -- it was nice to get together as a group at ATS to discuss the ████ REDACTED ████ protocol.  As discussed, ████████████

I just wanted to pass along this info as we continue to think through our options for this ████████ and next steps.  On our side we will continue to work on the protocol document factoring in the above calculations and then get something back over to the group in June most likely.

Best Regards,

████

---

**From:** ████████████████████
**Sent:** Thursday, May 15, 2014 9:12 PM
**To:** ████████████████████████████████
**Cc:**
**Subject:** Re: Meeting at ATS for ████REDACTED████ Study

Hi ████ and Colleagues:

Please see attached protocol for the ████████████REDACTED████████████ for review.

I have also attached our statistical analysis used to calculate the patients required.

We look forward to speaking live at ATS.

Regards

████████████

On Wed, May 7, 2014 at 10:49 AM, ████████████████████ wrote:

Dear All – thank you again for the previous meeting where we discussed the proposed ████████████ protocol.   The following details have been confirmed for our meeting at ATS:

·   Date and Time:  Monday, May 19 from 12-2PM
·   Location:  Café Chloe 721 9th Ave, San Diego, CA 92101 (on the corner of 9th and G)
o  Reservation is in my name – we will meet in their small private room

We look forward to seeing a draft of the protocol before the meeting so we can have a good discussion.  Please let us know if you need anything from UT in advance of this meeting.

Best Regards,

████████████████████

United Therapeutics Corp

████████████████

_PH-ILD_000023

# EXHIBIT 13

Message

**From:** ████████████████████
**Sent:** 12/11/2015 11:58:27 AM
**To:** ████████████████████████████████████
**CC:** ████████████████████████████████████████████████
**Subject:** ██████████████REDACTED██████████

████████

████████████████████████████████████████████████████████

Thank you very much for all the hard work you and your staff have put into this trial thus far and we appreciate your participation in this study.

Thank you,

████████████████

United Therapeutics Corporation
55 TW Alexander Drive
RTP, NC 27709

████████████████

www.unither.com

*Medicines for Life*

# EXHIBIT 14

| | |
|---|---|
| **From:** | Preston, Rachel L |
| **Sent:** | Tuesday, October 29, 2024 11:24 AM |
| **To:** | Dykhuis, Art; McDermott, Sydney; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com; mflynn@morrisnichols.com |
| **Cc:** | z/Liquidia v UTC 308970-201; DG-ILD; UTCvLiquidia-Del-23cv975 |
| **Subject:** | UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production |

Counsel,

UTC's recent production, under the Rajan_Saggar bates prefix, conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs, served on May 16, 2024, including at least RFPs 21, 26, 27, 40, 43, and 44, which we recently discussed during the parties' October 23, 2024 meet and confer. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ These documents are unquestionably relevant and must be produced.  Art indicated during the meet and confer that UTC is considering Liquidia's RFPs and positions.  Please provide a response this week, otherwise we intend to bring this issue to the Court.

Further, Art indicated that UTC would be producing Saggar and Faria-Urbina transcripts identifying the information deemed by UTC to be Highly Confidential.  This issue has been pending for a month.  Please provide those transcripts and any agreement UTC intends to rely on to substantiate its claims of confidentiality this week.

Regards,
Rachel

**Rachel Preston**
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

# EXHIBIT 15

| | |
|---|---|
| **From:** | Dykhuis, Art <Adykhuis@mwe.com> |
| **Sent:** | Wednesday, October 30, 2024 1:21 PM |
| **To:** | Preston, Rachel L; McDermott, Sydney; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com; mflynn@morrisnichols.com |
| **Cc:** | z/Liquidia v UTC 308970-201; DG-ILD; UTCvLiquidia-Del-23cv975 |
| **Subject:** | Re: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production |

**[External]**

Rachel,

Your email is wrong in several ways. First, your use of "UTC's production" to refer to documents that you know were produced by Rajan Saggar—a third party—is misleading and incorrect. Indeed, it's telling that you did not respond to the transmittal email, which said (highlighting added):

> "Attached please find documents ==produced by Dr. Rajan Saggar== bearing production numbers RAJAN_SAGGAR_PH-ILD_000001 - RAJAN_SAGGAR_PH-ILD_000024. UTC has applied the Bates numbering and confidentiality designations to the documents that Dr. Saggar produced. UTC has not made any other changes to the documents."

Relatedly, please promptly confirm whether Dr. Saggar has produced any documents to Liquidia and if so, provide them to UTC immediately.

Second, it is incorrect to say that anything has "conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs." During the meet and confer process, the parties are supposed to consider the other party's positions. And we have done that. But I was clear on the meet and confer that we have already collected millions of documents, and reviewed and produced, subject to UTC's objections, all responsive communications to/from/cc either Saggar brother within the files of the custodians we collected from.  I also noted on our call that UTC disclosed its list of document custodians to Liquidia months ago (on April 5, 2024), and Liquidia never objected.  If Liquidia wanted UTC to search the records of additional document custodians, it should have made this request months ago, not two weeks before the close of fact discovery. As we have explained, we have conducted a reasonable search, review, and production of UTC's documents.

Liquidia nevertheless appears to be insisting that UTC conduct additional document collections, from multiple new custodians—possibly eight or more. UTC will not do that at this stage.

Regarding the Saggar and Faria-Urbina transcripts, it seems clear that this is an attempt to pressure and distract UTC rather than any true interest in the transcripts' designation. In any event, we will respond to you separately regarding those transcripts.

**From:** Preston, Rachel L <RPreston@cooley.com>
**Date:** Tuesday, October 29, 2024 at 8:24 AM
**To:** Dykhuis, Art <Adykhuis@mwe.com>, McDermott, Sydney <Smcdermott@mwe.com>, Pappas, Katherine <Kpappas@mwe.com>, Vallen, Jake <Jvallen@mwe.com>, Burrowbridge, Adam <Aburrowbridge@mwe.com>, Carsten, Douglas <Dcarsten@mwe.com>, WJackson@goodwinlaw.com <WJackson@goodwinlaw.com>, mflynn@morrisnichols.com <mflynn@morrisnichols.com>
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>, DG-ILD <DG-ILD@goodwinlaw.com>, UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

<mark>[ External Email ]</mark>

Counsel,

UTC's recent production, under the Rajan_Saggar bates prefix, conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs, served on May 16, 2024, including at least RFPs 21, 26, 27, 40, 43, and 44, which we recently discussed during the parties' October 23, 2024 meet and confer. ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ These documents are unquestionably relevant and must be produced.  Art indicated during the meet and confer that UTC is considering Liquidia's RFPs and positions.  Please provide a response this week, otherwise we intend to bring this issue to the Court.

Further, Art indicated that UTC would be producing Saggar and Faria-Urbina transcripts identifying the information deemed by UTC to be Highly Confidential.  This issue has been pending for a month.  Please provide those transcripts and any agreement UTC intends to rely on to substantiate its claims of confidentiality this week.

Regards,
Rachel

Rachel Preston
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

*********************************************************************************************************

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly

prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT 16

| | |
|---|---|
| **From:** | Preston, Rachel L |
| **Sent:** | Thursday, October 31, 2024 5:25 PM |
| **To:** | Dykhuis, Art; McDermott, Sydney; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com; mflynn@morrisnichols.com |
| **Cc:** | z/Liquidia v UTC 308970-201; DG-ILD; UTCvLiquidia-Del-23cv975 |
| **Subject:** | RE: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production |

Art,

Thank you for confirming that the documents were produced by Dr. Rajan Saggar, and not UTC.  This further establishes that UTC has not complied with its discovery obligations because it did not produce these highly material communications from its own files. We will be producing, shortly, documents Dr. Rajan Saggar provided to Liquidia pursuant to its subpoena.

Because UTC has confirmed it will not search for, collect or produce additional documents responsive to these RFPs, the November 8th Laliberte deposition will need to be postponed and rescheduled for a later date once the Court resolves this dispute. That you identified custodians months ago is of no moment for several reasons. First, as we repeatedly raised, despite naming custodians months ago, UTC only began producing custodial documents after Oct 8. Second, because UTC did not produce the documents responsive to Liquidia's RFPs and Liquidia only learned of these new individuals after taking a deposition of a 3rd party, Liquidia had the right to seek these documents from these relevant individuals, which already fell within the scope of the RFPs.  Finally, UTC identified several new individuals, including Laliberte, as having relevant information on October 16, and we have immediately sought responsive custodial documents.  UTC has steadfastly refused.

The parties have already conferred on these RFPs several times and we will notify the Court of the dispute.

Regards,
Rachel

---

**From:** Dykhuis, Art <Adykhuis@mwe.com>
**Sent:** Wednesday, October 30, 2024 1:21 PM
**To:** Preston, Rachel L <RPreston@cooley.com>; McDermott, Sydney <Smcdermott@mwe.com>; Pappas, Katherine <Kpappas@mwe.com>; Vallen, Jake <Jvallen@mwe.com>; Burrowbridge, Adam <Aburrowbridge@mwe.com>; Carsten, Douglas <Dcarsten@mwe.com>; WJackson@goodwinlaw.com; mflynn@morrisnichols.com
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; DG-ILD <DG-ILD@goodwinlaw.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** Re: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

**[External]**

Rachel,

Your email is wrong in several ways. First, your use of "UTC's production" to refer to documents that you know were produced by Rajan Saggar—a third party—is misleading and incorrect. Indeed, it's telling that you did not respond to the transmittal email, which said (highlighting added):

"Attached please find documents <mark>produced by Dr. Rajan Saggar</mark> bearing production numbers RAJAN_SAGGAR_PH-ILD_000001 - RAJAN_SAGGAR_PH-ILD_000024. UTC has applied the Bates numbering and confidentiality designations to the documents that Dr. Saggar produced. UTC has not made any other changes to the documents."

Relatedly, please promptly confirm whether Dr. Saggar has produced any documents to Liquidia and if so, provide them to UTC immediately.

Second, it is incorrect to say that anything has "conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs." During the meet and confer process, the parties are supposed to consider the other party's positions. And we have done that. But I was clear on the meet and confer that we have already collected millions of documents, and reviewed and produced, subject to UTC's objections, all responsive communications to/from/cc either Saggar brother within the files of the custodians we collected from.  I also noted on our call that UTC disclosed its list of document custodians to Liquidia months ago (on April 5, 2024), and Liquidia never objected.  If Liquidia wanted UTC to search the records of additional document custodians, it should have made this request months ago, not two weeks before the close of fact discovery. As we have explained, we have conducted a reasonable search, review, and production of UTC's documents.

Liquidia nevertheless appears to be insisting that UTC conduct additional document collections, from multiple new custodians—possibly eight or more. UTC will not do that at this stage.

Regarding the Saggar and Faria-Urbina transcripts, it seems clear that this is an attempt to pressure and distract UTC rather than any true interest in the transcripts' designation. In any event, we will respond to you separately regarding those transcripts.

---

**From:** Preston, Rachel L <RPreston@cooley.com>
**Date:** Tuesday, October 29, 2024 at 8:24 AM
**To:** Dykhuis, Art <Adykhuis@mwe.com>, McDermott, Sydney <Smcdermott@mwe.com>, Pappas, Katherine <Kpappas@mwe.com>, Vallen, Jake <Jvallen@mwe.com>, Burrowbridge, Adam <Aburrowbridge@mwe.com>, Carsten, Douglas <Dcarsten@mwe.com>, WJackson@goodwinlaw.com <WJackson@goodwinlaw.com>, mflynn@morrisnichols.com <mflynn@morrisnichols.com>
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>, DG-ILD <DG-ILD@goodwinlaw.com>, UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

<mark>[ External Email ]</mark>
Counsel,

UTC's recent production, under the Rajan_Saggar bates prefix, conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs, served on May 16, 2024, including at least RFPs 21, 26, 27, 40, 43, and 44, which we recently discussed during the parties' October 23, 2024 meet and confer.

█████████████████████████████████████████████████████████

These documents are unquestionably relevant and must be

produced.  Art indicated during the meet and confer that UTC is considering Liquidia's RFPs and positions.  Please provide a response this week, otherwise we intend to bring this issue to the Court.

Further, Art indicated that UTC would be producing Saggar and Faria-Urbina transcripts identifying the information deemed by UTC to be Highly Confidential.  This issue has been pending for a month.  Please provide those transcripts and any agreement UTC intends to rely on to substantiate its claims of confidentiality this week.

Regards,
Rachel

## Rachel Preston
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

# EXHIBIT 17

| | |
|---|---|
| **From:** | McDermott, Sydney <Smcdermott@mwe.com> |
| **Sent:** | Sunday, November 3, 2024 7:30 AM |
| **To:** | Preston, Rachel L; Dykhuis, Art; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com; mflynn@morrisnichols.com |
| **Cc:** | z/Liquidia v UTC 308970-201; DG-ILD; UTCvLiquidia-Del-23cv975 |
| **Subject:** | RE: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production |

**[External]**

Counsel,

For the third time, Liquidia refuses to take a previously scheduled and agreed-to deposition, with little notice and without reasonable justification. Liquidia's pattern of demanding last-minute postponements of depositions to manufacture discovery disputes is unacceptable, baseless, and highly prejudicial to both UTC and its witnesses. Mr. Laliberte is a third-party witness not employed by UTC, and Liquidia has not provided any reason that would justify the considerable burden involved with moving his deposition at this late stage. UTC therefore will not agree to postpone Mr. Laliberte's deposition. Consistent with the parties' prior agreement, UTC will make Mr. Laliberte available for deposition in Raleigh on November 8 and on no other date. We expect to see you there.

Liquidia's unilateral demand to postpone Mr. Laliberte's deposition is particularly egregious given that Liquidia had **_accepted_** the date for the deposition just **_three days earlier_** on October 28. _See_ 10/28/2024 email from R. Preston. This acceptance came nearly six weeks after ████████████████████████. Further, as of October 28, UTC had produced **_over 3,500 documents_** bearing Mr. Laliberte's name, the vast majority of which were produced prior to August 14. Moreover, UTC had already informed Liquidia on October 21 that it had no plans to collect documents from additional custodians—including Mr. Laliberte—and that Liquidia's request for such a collection and production was both untimely and unduly burdensome. _See_ 10/21/2024 email from K. Pappas. Liquidia nevertheless requested a deposition date for Mr. Laliberte that same day, and UTC quickly responded that Mr. Laliberte would be available on November 8. _See_ 10/21/2024 email from R. Preston; 10/22/2024 email from S. McDermott. In short, Liquidia had more than enough information to decide whether it would proceed with Mr. Laliberte's deposition as offered. If Liquidia somehow felt that the thousands of documents UTC had already produced with Mr. Laliberte's name on them were insufficient to depose him on November 8, it had every opportunity **_not_** to agree to that date. Yet, on October 28, Liquidia **_did agree_**, and both UTC and Mr. Laliberte relied on that representation to make arrangements for his deposition. Liquidia has offered no reasonable explanation as to why it was apparently prepared to depose Mr. Laliberte on October 28 but was unprepared to do so three days later on October 31.

Liquidia's demand to postpone and reschedule Mr. Laliberte's deposition is unjustifiable, unfounded, and profoundly inconsiderate. UTC will make Mr. Laliberte available for deposition as originally agreed on November 8 at Brooks Pierce in Raleigh, North Carolina. Should Liquidia decline to attend and unilaterally cancel Mr. Laliberte's deposition pursuant to L.R. 30.2 by raising a discovery dispute, UTC will not offer Mr. Laliberte for deposition at a later date absent a court order requiring same.

We look forward to your attendance at Mr. Laliberte's deposition. Please confirm your attendee list at your earliest convenience so that we may provide such to building security.

Thank you,

SYDNEY MCDERMOTT (SHE/HER/HERS)
Associate
**McDermott Will & Emery LLP**  The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531
**Tel** +1 202 756 8045    **Email** smcdermott@mwe.com
**Website** | **vCard** | **LinkedIn**

**From:** Preston, Rachel L <RPreston@cooley.com>
**Sent:** Thursday, October 31, 2024 5:25 PM
**To:** Dykhuis, Art <Adykhuis@mwe.com>; McDermott, Sydney <Smcdermott@mwe.com>; Pappas, Katherine <Kpappas@mwe.com>; Vallen, Jake <Jvallen@mwe.com>; Burrowbridge, Adam <Aburrowbridge@mwe.com>; Carsten, Douglas <Dcarsten@mwe.com>; WJackson@goodwinlaw.com; mflynn@morrisnichols.com
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; DG-ILD <DG-ILD@goodwinlaw.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** RE: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

**[ External Email ]**
Art,

Thank you for confirming that the documents were produced by Dr. Rajan Saggar, and not UTC.  This further establishes that UTC has not complied with its discovery obligations because it did not produce these highly material communications from its own files. We will be producing, shortly, documents Dr. Rajan Saggar provided to Liquidia pursuant to its subpoena.

Because UTC has confirmed it will not search for, collect or produce additional documents responsive to these RFPs, the November 8th Laliberte deposition will need to be postponed and rescheduled for a later date once the Court resolves this dispute. That you identified custodians months ago is of no moment for several reasons. First, as we repeatedly raised, despite naming custodians months ago, UTC only began producing custodial documents after Oct 8. Second, because UTC did not produce the documents responsive to Liquidia's RFPs and Liquidia only learned of these new individuals after taking a deposition of a 3rd party, Liquidia had the right to seek these documents from these relevant individuals, which already fell within the scope of the RFPs.  Finally, UTC identified several new individuals, including Laliberte, as having relevant information on October 16, and we have immediately sought responsive custodial documents.  UTC has steadfastly refused.

The parties have already conferred on these RFPs several times and we will notify the Court of the dispute.

Regards,
Rachel

**From:** Dykhuis, Art <Adykhuis@mwe.com>
**Sent:** Wednesday, October 30, 2024 1:21 PM
**To:** Preston, Rachel L <RPreston@cooley.com>; McDermott, Sydney <Smcdermott@mwe.com>; Pappas, Katherine <Kpappas@mwe.com>; Vallen, Jake <Jvallen@mwe.com>; Burrowbridge, Adam <Aburrowbridge@mwe.com>; Carsten, Douglas <Dcarsten@mwe.com>; WJackson@goodwinlaw.com; mflynn@morrisnichols.com
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; DG-ILD <DG-ILD@goodwinlaw.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** Re: UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

**[External]**

Rachel,

Your email is wrong in several ways. First, your use of "UTC's production" to refer to documents that you know were produced by Rajan Saggar—a third party—is misleading and incorrect. Indeed, it's telling that you did not respond to the transmittal email, which said (highlighting added):

> "Attached please find documents ==produced by Dr. Rajan Saggar== bearing production numbers RAJAN_SAGGAR_PH-ILD_000001 - RAJAN_SAGGAR_PH-ILD_000024. UTC has applied the Bates numbering and confidentiality designations to the documents that Dr. Saggar produced. UTC has not made any other changes to the documents."

Relatedly, please promptly confirm whether Dr. Saggar has produced any documents to Liquidia and if so, provide them to UTC immediately.

Second, it is incorrect to say that anything has "conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs." During the meet and confer process, the parties are supposed to consider the other party's positions. And we have done that. But I was clear on the meet and confer that we have already collected millions of documents, and reviewed and produced, subject to UTC's objections, all responsive communications to/from/cc either Saggar brother within the files of the custodians we collected from. I also noted on our call that UTC disclosed its list of document custodians to Liquidia months ago (on April 5, 2024), and Liquidia never objected. If Liquidia wanted UTC to search the records of additional document custodians, it should have made this request months ago, not two weeks before the close of fact discovery. As we have explained, we have conducted a reasonable search, review, and production of UTC's documents.

Liquidia nevertheless appears to be insisting that UTC conduct additional document collections, from multiple new custodians—possibly eight or more. UTC will not do that at this stage.

Regarding the Saggar and Faria-Urbina transcripts, it seems clear that this is an attempt to pressure and distract UTC rather than any true interest in the transcripts' designation. In any event, we will respond to you separately regarding those transcripts.

---

**From:** Preston, Rachel L <RPreston@cooley.com>
**Date:** Tuesday, October 29, 2024 at 8:24 AM
**To:** Dykhuis, Art <Adykhuis@mwe.com>, McDermott, Sydney <Smcdermott@mwe.com>, Pappas, Katherine <Kpappas@mwe.com>, Vallen, Jake <Jvallen@mwe.com>, Burrowbridge, Adam <Aburrowbridge@mwe.com>, Carsten, Douglas <Dcarsten@mwe.com>, WJackson@goodwinlaw.com <WJackson@goodwinlaw.com>, mflynn@morrisnichols.com <mflynn@morrisnichols.com>
**Cc:** z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>, DG-ILD <DG-ILD@goodwinlaw.com>, UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** UTC v. Liquidia (23-975) - 10/23 M&C follow-up and Saggar production

[ External Email ]
Counsel,

UTC's recent production, under the Rajan_Saggar bates prefix, conclusively established that UTC has been withholding highly material documents falling squarely within Liquidia's RFPs, served on May 16, 2024, including

3

at least RFPs 21, 26, 27, 40, 43, and 44, which we recently discussed during the parties' October 23, 2024 meet and confer. ███████████████████████████████████████

████████████████████████████████████████████████████████████████ These documents are unquestionably relevant and must be produced.  Art indicated during the meet and confer that UTC is considering Liquidia's RFPs and positions.  Please provide a response this week, otherwise we intend to bring this issue to the Court.

Further, Art indicated that UTC would be producing Saggar and Faria-Urbina transcripts identifying the information deemed by UTC to be Highly Confidential.  This issue has been pending for a month.  Please provide those transcripts and any agreement UTC intends to rely on to substantiate its claims of confidentiality this week.

Regards,
Rachel

## Rachel Preston
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC  20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

*********************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
*********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED THERAPEUTICS
CORPORATION,

             Plaintiff,

    v.

LIQUIDIA TECHNOLOGIES, INC.,

             Defendant.

C.A. No. 1:23-cv-00975-RGA

**HIGHLY CONFIDENTIAL**

**DEFENDANT LIQUIDIA TECHNOLOGIES, INC.'S
SECOND AMENDED INVALIDITY CONTENTIONS**

# TABLE OF CONTENTS

**Page**

I.    GENERAL INFORMATION.................................................................................. 2

    A.    Identification of Asserted Claims .......................................................... 4

II.   U.S. PATENT NO. 11,826,327 ........................................................................... 4

    A.    Patent Claims and Specification ........................................................... 4

    B.    Provisional Applications and Priority Date of the '327 Patent............................. 6

III.  SCOPE AND CONTENT OF THE PRIOR ART FOR THE '327 PATENT................. 7

    A.    State of the Art as of April 2020 ........................................................... 8

        1.    PH-ILD.......................................................................................... 8

        2.    Treprostinil and PH-ILD................................................................ 9

        3.    Long Before April 2020, Physicians Were Using Inhaled Treprostinil to Treat PH-ILD ...................................................... 11

        4.    The INCREASE Study Confirmed Known Benefits of Inhaled Treprostinil in PH-ILD Patients............................................... 14

    B.    Description of the Prior Art ................................................................. 16

        1.    The '793 Patent ....................................................................... 16

        2.    The 2009 Tyvaso® Label ......................................................... 20

        3.    The 2017 INCREASE Study Description...................................... 21

        4.    Agarwal 2015 ......................................................................... 22

        5.    Saggar 2014 ............................................................................ 24

        6.    Faria-Urbina 2018 .................................................................... 24

        7.    Parikh 2016 ............................................................................ 26

IV.   THE ASSERTED CLAIMS ARE INVALID AS ANTICIPATED BY THE PRIOR ART................................................................................................... 27

    A.    Asserted Claims 1-11 and 14-19 of the '327 Patent Are Anticipated by the '793 Patent ................................................................................... 28

        1.    Claim 1 of the '327 Patent is Anticipated by the '793 Patent.................. 28

        2.    Dependent Claims 2–11 and 14–19 of the '327 Patent Are Anticipated by the '793 Patent.................................................. 36

    B.    The 2017 INCREASE Study Description Anticipates Asserted Claims 1-11 and 15-19 of the '327 Patent................................................... 44

        1.    Claim 1 of the '327 Patent is Anticipated by the 2017 INCREASE Study Description................................................ 44

# TABLE OF CONTENTS
(continued)

Page

2.    Dependent Claims 2–11 and 15–19 Are Anticipated by the 2017 INCREASE Study Description ............................................................... 46

C.    The 2009 Tyvaso® Label Anticipates Claims 1–11 and 15–19 of the '327 Patent.................................................................................................... 54

    1.    Claim 1 of the '327 Patent is Anticipated by the 2009 Tyvaso® Label........................................................................................ 54

    2.    Dependent Claims 2–11 and 15–19 Are Anticipated by the 2009 Tyvaso® Label....................................................................... 58

D.    UTC's Prior Sale of Tyvaso® Invalidates Claims 1-11 and 15-19 of the '327 Patent .......................................................................................... 65

    1.    Claim 1 of the '327 Patent is Invalid by UTC's Prior Sale of Tyvaso®. ................................................................................. 67

    2.    Dependent Claims 2-10 are Invalid by UTC's Prior Sale of Tyvaso® ................................................................................... 68

    3.    Dependent Claims 11, 15-19 are Invalid by UTC's Prior Sale of Tyvaso® ................................................................................... 69

E.    Agarwal 2015 Anticipates Claims 1-3, 6, 11 ad 15-19 of the '327 Patent .......... 70

    1.    Claim 1 of the '327 Patent is Anticipated by Agarwal 2015. ................. 71

    2.    Dependent Claims 2, 3, 6, and 15–19 Are Anticipated by Agarwal 2015................................................................................ 72

V.    THE ASSERTED CLAIMS OF THE '327 PATENT ARE INVALID AS OBVIOUS UNDER 35 U.S.C. § 103 ............................................................... 75

A.    Asserted Claims 1–11 and 14–19 of the '327 Patent Are Invalid for Obviousness-Type Double Patenting over the Claims of the '793 Patent........... 76

    1.    Claim 1 of the '327 Patent is Invalid for Obviousness-type Double Patenting Over the '793 Patent ............................................... 76

    2.    Dependent Claims 2-3, 11, and 14-19 Are Invalid for Obviousness-type Double Patenting Over the Claims of the '793 Patent.................... 78

B.    Asserted Claims 1–11 and 14–19 of the '327 Patent Are Rendered Obvious by the '793 Patent in Combination with Agarwal 2015 and Saggar 2014 .................................................................................... 81

    1.    Motivation to Combine the '793 Patent with Agarwal 2015 and Saggar 2014 with a Reasonable Expectation of Success ........................ 81

    2.    Claim 1 of the '327 Patent Are Obvious Over the '793 Patent in Combination with Agarwal 2015 and Saggar 2014................................ 85

**TABLE OF CONTENTS**

(continued)

3.    Dependent Claims 2-11 and 14-19 Are Obvious Over '793 Patent in Combination with Agarwal 2015 and Saggar 2014 ............................ 87

C.    Asserted Claims 1–11 and 14–19 of the '327 Patent Are Rendered Obvious by the '793 Patent in Combination with Faria-Urbina 2018 and Saggar 2014 ................................................................................................. 95

    1.    Motivation to Combine the '793 Patent in Combination with Faria-Urbina 2018 and Saggar 2014 with a Reasonable Expectation of Success. .................................................................................................. 95

    2.    Claim 1 of the '327 Patent Is Obvious Over the '793 Patent in Combination with Faria-Urbina 2018 and Saggar 2014 ......................... 97

    3.    Dependent Claims 2–11 and 14–19 Are Obvious Over '793 Patent in Combination with Faria-Urbina 2018 and Saggar 2014 .................... 99

D.    Asserted Claims 1–11 and 14–19 of the '327 Patent Are Rendered Obvious by the '793 Patent in Combination with Parikh 2016 and Saggar 2014 ................................................................................................. 108

    1.    Motivation to Combine the '793 Patent in Combination with Parikh 2016 and Saggar 2014 with a Reasonable Expectation of Success. .................................................................................................. 108

    2.    Claim 1 of the '327 Patent Is Obvious Over the '793 Patent in Combination with Parikh 2016 and Saggar 2014 ................................. 111

    3.    Dependent Claims 2–11 and 14–19 Are Obvious Over '793 Patent in Combination with Parikh 2016 and Saggar 2014 ............................. 113

E.    Asserted Claims 1–11 and 14–19 of the '327 Patent Are Rendered Obvious by Agarwal 2015 and Saggar 2014 ..................................................... 121

    1.    Motivation to Combine Agarwal 2015 and Saggar 2014 with a Reasonable Expectation of Success. ...................................................... 121

    2.    Claim 1 of the '327 Patent Is Obvious Over Agarwal 2015 and Saggar 2014 ....................................................................................... 121

    3.    Dependent Claims 2–8 and 15–19 Are Obvious Over Agarwal 2015 and Saggar 2014 ...................................................................... 122

F.    Asserted Claims 1–11 and 15–19 of the '327 Patent Are Rendered Obvious by the 2017 INCREASE Study Description in Combination with Agarwal 2015 and Saggar 2014 ...................................................................... 128

    1.    Motivation to combine ....................................................................... 128

    2.    Claim 1 of the '327 Patent Is Obvious Over the 2017 INCREASE Study Description in Combination with Agarwal 2015 and Saggar 2014 ....................................................................................... 130

**TABLE OF CONTENTS**

(continued)

3.    Dependent Claims 2–11 and 15–19 Are Rendered Obvious by the 2017 INCREASE Study Description in Combination with Agarwal 2015 and Saggar 2014 .......................................................................... 132

G.    Asserted Claims 1–11 and 15–19 of the '327 Patent Are Rendered Obvious by the 2009 Tyvaso® Label in Combination with Agarwal 2015 and Saggar 2014 ................................................................................. 141

1.    Motivation to Combine .......................................................................... 141

2.    Claim 1 of the '327 Patent Is Obvious Over the 2009 Tyvaso® Label Combination with Agarwal 2015 and Saggar 2014 .................... 142

3.    Dependent Claims 2–11 and 15–19 Are Rendered Obvious by the 2009 Tyvaso® Label in Combination with Agarwal 2015 and Saggar 2014 .......................................................................................... 144

H.    UTC'S Alleged Evidence of Secondary Considerations is Unavailing ............ 152

1.    No Unexpected Results ............................................................................ 152

2.    No Long-Felt but Unmet Need ............................................................... 154

3.    No Failure of Others ............................................................................... 156

4.    No Commercial Success .......................................................................... 158

5.    Liquidia Does Not Copy Claims 11 and 14 of the '327 Patent ............. 159

VI.    ASSERTED CLAIMS 1, 2, 4, 6-9, AND 14 OF THE '327 PATENT ARE INVALID UNDER 35 U.S.C. § 112 ................................................................... 159

A.    The Asserted Claims of the '327 Patent Lack Adequate Written Description ........................................................................................................ 160

1.    The Limitation reciting "statistically significant . . . in the patient" is not adequately described ...................................................... 160

2.    The Limitation "FVC" is not adequately described .............................. 161

3.    The Limitation "pulsed inhalation device is a dry powder inhaler" is not adequately described ...................................................... 163

4.    The subject matter of Asserted Claims 6-8 is not adequately described ................................................................................................... 164

B.    The Asserted Claims of the '327 Patent Are Not Enabled ................................ 165

1.    The Limitations Reciting "Statistically Significant . . . in a Patient" Lack Enablement ....................................................................... 165

2.    The Limitation "FVC" Lacks Enablement ............................................. 166

# TABLE OF CONTENTS
(continued)

Page

3.  The Limitation "Pulsed Inhalation Device is a Dry Powder Inhaler" Lacks Enablement ................................................... 169

C.  The Asserted Claims of the '327 Patent Are Indefinite ................................. 169

1.  The Limitations Reciting "Statistically Significant . . . in a Patient" Are Indefinite ................................................... 169

2.  The Limitation "Maximum Tolerated Dose" Is Indefinite ................... 170

VII.  THE ASSERTED CLAIMS OF THE '327 PATENT ARE UNENFORCEABLE ...... 171

A.  Prosecution of the '327 Patent .................................................................. 172

B.  The '793 IPR Proceedings, the District Court Proceedings, and Dr. Rothblatt's Statement Are Material to the Patentability of the '327 Patent ...... 175

C.  Mr. Maebius and UTC, including Mr. Snader, Owed a Duty of Candor to The Patent Office During Prosecution of the '327 Patent ................................. 175

D.  UTC, including Mr. Snader and Mr. Maebius Failed to Disclose Arguments and Decisions made during '793 IPR Which Were Material to the Prosecution of the '327 Patent .................................................... 176

E.  UTC, including Mr. Snader and Mr. Maebius Failed to Disclose the Material District Court Proceedings .................................................. 180

F.  UTC, including Mr. Snader and Mr. Maebius, Failed to Disclose the Material Statements of Martine Rothblatt ........................................... 183

G.  The Most Reasonable Inference to Be Drawn Is That Messrs. Maebius and Snader Intended to Deceive the USPTO .......................................... 184

H.  The Claims of the '327 Patent are Unenforceable ............................................ 187

VIII.  CONCLUSION .......................................................................................... 188

('793 patent at UTC_PH-ILD_009791 (7:60-64).) It further discloses that treprostinil is preferably administer in 3, 2, or 1 breaths, which do not exceed the 15 breaths limitation covered by claim 16. (*Id.*)

> **n.     Claim 17: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 10 m after 8 weeks of the administering."**

For the same reasons discussed for claims 2 and 3 above, the '793 patent anticipates Asserted Claim 17 of the '327 patent.

> **o.     Claim 18: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 12 weeks of the administering."**

For the same reasons discussed for claims 2 and 3 above, the '793 patent anticipates Asserted Claim 18 of the '327 patent.

> **p.     Claim 19: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 16 weeks of the administering."**

For the same reasons discussed for claims 2 and 3 above, the '793 patent anticipates Asserted Claim 8 of the '327 patent.

## B.     The 2017 INCREASE Study Description Anticipates Asserted Claims 1-11 and 15-19 of the '327 Patent

Long before April 2020, UTC had already publicly disclosed the protocol for INCREASE on clinicaltrials.gov through the 2017 INCREASE Study Description. This Study Description anticipates Asserted Claims 1-11 and 15-19 of the '327 patent.

### 1.     Claim 1 of the '327 Patent is Anticipated by the 2017 INCREASE Study Description

> **a.     Claim 1[a]: "A method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease, comprising"**

With respect to Asserted Claim 1 of the '327 patent, the 2017 INCREASE Study

n. **Claim 18: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 12 weeks of the administering."**

For the same reasons discussed for claim 2 above, the 2009 Tyvaso® Label anticipates Asserted Claim 18 of the '327 patent.

o. **Claim 19: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 16 weeks of the administering."**

For the same reasons discussed for claim 2 above, the 2009 Tyvaso® Label anticipates Asserted Claim 19 of the '327 patent.

D. **UTC's Prior Sale of Tyvaso® Invalidates Claims 1-11 and 15-19 of the '327 Patent**

The Asserted Claims of the '327 patent are also invalid because the claimed invention was on sale before the effective filing date of the '327 patent. Under 35 U.S.C. § 102(1), "a person shall be entitled to a patent unless . . . the claimed invention was . . . on sale, or otherwise available to the public before the effective filing date of the claimed invention[.]" *See also Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 127 (2019). The on-sale bar applies when two conditions are met: (1) the product must be the subject of a commercial offer for sale; and (2) the invention must be ready for patenting. *Id.* at 130. An invention is ready for patenting if there is proof that, prior to the priority date of the patent, the invention was sufficiently disclosed such that a POSA would be able to practice the invention. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 65, 67-68 (1998). Additionally, there is no requirement that the offer specifically identify all of the elements, nor must all parties to the transaction recognize or appreciate that all the elements are present. *Scaltech Inc. v. RetecTetra, L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999).

At least by 2018, Tyvaso® was prescribed and sold for the treatment of patients with PH-ILD. UTC's CEO, Dr. Martine Rothblatt stated publicly to investors that

h. **Claim 18: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 12 weeks of the administering."**

For the same reasons discussed for Asserted Claim 2 above, Asserted Claim 18 of the '327 patent is invalid for obviousness-type double patenting over the claims of the '793 patent.

i. **Claim 19: "The method of claim 1, wherein said administering increases a 6 minutes walk distance of the patient by at least 15 m after 16 weeks of the administering."**

For the same reasons discussed for Asserted Claim 2 above, Asserted Claim 19 of the '327 patent is invalid for obviousness-type double patenting over the claims of the '793 patent.

**B. Asserted Claims 1–11 and 14–19 of the '327 Patent Are Rendered Obvious by the '793 Patent in Combination with Agarwal 2015 and Saggar 2014**

**1. Motivation to Combine the '793 Patent with Agarwal 2015 and Saggar 2014 with a Reasonable Expectation of Success**

A POSA would have been motivated to combine the teachings of the '793 patent with Agarwal 2015 and Saggar 2014 and would have had a reasonable expectation of success in combining these teachings. As an initial matter, a POSA would have been motivated to first combine the '793 patent and Agarwal 2015 since both references are in the same field. Both references describe administering inhaled treprostinil to patients with Group 3 PH as explained in Sections III.B.4 and III.B.5 above, and they describe treating PH-ILD patients with inhaled treprostinil according to similar dosing schemes (i.e., between 15 µg and 90 µg in 3 breaths with a nebulizer and administered several times per day).

As explained by Dr. Channick, and as shown by Agarwal 2015, POSAs were administering inhaled treprostinil to PH-ILD patients prior to April 2020. (Channick Decl., ¶¶41–52.) Physicians were also measuring hemodynamics in these patients and also saw significant improvements in exercise capacity. Thus, POSAs were motivated to combine the teachings of prior art references and were doing so in practice long before April 2020.

Contentions. Discovery and Liquidia's investigation are ongoing, and Liquidia reserves the right to modify and/or supplement its First Amended Invalidity Contentions.

OF COUNSEL:

Sanya Sukduang
Jonathan R. Davies
Phillip E. Morton
Adam Pivovar
Brittany Cazakoff
Rachel Preston
COOLEY LLP
1299 Pennsylvania Avenue, NW Suite 700
Washington, DC 20004-2400
(202) 776-2982
(202) 776-2049

Lauren Strosnick
Kyung Taeck Minn
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5065
(650) 843-5673

Dated: October 30, 2024

*/s/ Sanya Sukduang*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, Delaware 19801
(302) 298-0702
kkeller@shawkeller.com
nhoeschen@shawkeller.com
edibenedetto@shawkeller.com

*Attorneys for Defendant*
*Liquidia Technologies, Inc.*

189

## CERTIFICATE OF SERVICE

I certify that I caused copies of the foregoing document to be served on October 30, 2024

upon the following in the manner indicated:

**BY EMAIL**

Jack B. Blumenfeld
Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
JBlumenfeld@mnat.com
michael.flynn@mnat.com

William C. Jackson
Katherine Cheng
GOODWIN PROCTER LLP
1900 N St NW
Washington, DC 20036
(202) 346-4000
WJackson@goodwinlaw.com

Eric T. Romeo
Louis L. Lobel
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
eromeo@goodwinlaw.com
llobel@goodwinlaw.com

Douglas Carsten
Art Dykhuis
MCDERMOTT WILL & EMERY LLP
18565 Jamboree Road, Suite 250
Irvine, CA 92615
(949) 851-0633
dcarsten@mwe.com
adykhuis@mwe.com

Adam Burrowbridge
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street
Washington, DC 20001-1531
(202) 756-8797
aburrowbridge@mwe.com

*/s/ Sanya Sukduang*
Sanya Sukduang

# EXHIBIT 19

## Salter, LaTasha Patrice

| | |
|---|---|
| **From:** | McDermott, Sydney <Smcdermott@mwe.com> |
| **Sent:** | Thursday, November 14, 2024 8:55 AM |
| **To:** | Upton, Rozzi D; Preston, Rachel L; mflynn@morrisnichols.com; Dykhuis, Art; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com |
| **Cc:** | DG-ILD; z/Liquidia v UTC 308970-201; UTCvLiquidia-Del-23cv975; Karen Keller; nhoeschen@shawkeller.com |
| **Subject:** | RE: UTC v. Liquidia (23-975) Nov. 13 M&C |

## [External]

Counsel,

Following up on the meet and confer:

As evidenced by yesterday's meet and confer, we continue to believe that Liquidia's motion concerning the confidentiality designations of the Saggar transcript and Faria-Urbina's transcript is premature and unnecessary. For example, we discussed whether reducing designations to "Confidential" under the PO could help resolve the parties' dispute. Liquidia did not agree on the call and asked if we could agree that Rusty Schundler could view materials marked as Confidential under the PO. That would be allowed, if he was identified under the PO, ¶12.b. Can you explain why Liquidia would not simply identify him under the PO, which was a document with procedures carefully negotiated by the parties and adopted by the Court?

These disagreements concerning third party deposition transcripts lack urgency and do not warrant the Court's intervention at this time, if ever. We believe that given the progress made in the meet and confer yesterday the parties can fully resolve any remaining dispute without the Court's intervention. To further that goal, we can de-designate pages 1-81, 110, 112, 115-139, 141-159, 161-182 of the Saggar transcript and can consider further designations upon understanding Liquidia's position concerning "confidentiality" designations discussed above. Further, we continue to work with Dr. Faria-Urbina to determine whether we can agree to re-designate her transcript. As you are aware, Dr. Faria-Urbina is a third-party witness that was asked questions about work provided for her prior employer. Given the lack of any stated urgency as to why these disputes currently impact the case, we propose that Liquidia remove the transcript designation disputes from Liquidia's motion and continue to work on resolving any remaining disputes in good faith.

For several reasons, we believe that the document request demands made on the meet and confer yesterday have either already been met by UTC or are not ripe for the Court, overly burdensome to UTC, and unproportional to the needs of the case. UTC awaits additional details concerning the specific scope of documents Liquidia intends to seek from RFP Nos. 20, 21, 26, 27, 28, 40, 43, and 44 .

SYDNEY MCDERMOTT (SHE/HER/HERS)
Associate
**McDermott Will & Emery LLP** The McDermott Building, 500 North Capitol Street, NW, Washington, DC 20001-1531
**Tel** +1 202 756 8045  **Email** smcdermott@mwe.com
**Website | vCard | LinkedIn**

**From:** Upton, Rozzi D <rupton@cooley.com>
**Sent:** Wednesday, November 13, 2024 4:11 PM

**To:** Preston, Rachel L <RPreston@cooley.com>; mflynn@morrisnichols.com; Dykhuis, Art <Adykhuis@mwe.com>; McDermott, Sydney <Smcdermott@mwe.com>; Pappas, Katherine <Kpappas@mwe.com>; Vallen, Jake <Jvallen@mwe.com>; Burrowbridge, Adam <Aburrowbridge@mwe.com>; Carsten, Douglas <Dcarsten@mwe.com>; WJackson@goodwinlaw.com
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>; Karen Keller <kkeller@shawkeller.com>; nhoeschen@shawkeller.com
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

[ **External Email** ]

Hi Art,

Further to our discussion, we will look for your responses on the two discovery issues that Liquidia otherwise intends to raise with the Court tomorrow.

1. **De-designation of the deposition transcripts of Faria-Urbina and Rajan Saggar.** We understand you will respond this evening regarding de-designation and agreement for Russell Schundler to view these transcripts to the extent you maintain any of the information is Confidential under the Protective Order. We will consider such a proposal in potentially avoiding an issue for the Court to consider. With respect to Dr. Saggar's deposition, you have not provided any document evidencing that Dr. Saggar was bound by any relevant confidentiality agreement with UTC during the relevant time.

   Any resolution by the parties of this confidentiality dispute is not an acquiescence by Liquidia that any information in the Saggar transcript is in any way confidential or that he owed a duty of confidentiality to UTC.

   . We will look for your response later today.

2. **Production of documents and communications, as indicated in the October 18 email from John Habibi.** As discussed, Liquidia's position is that, given deposition testimony in this case and productions from third party witness, Rajan Saggar, UTC's search and production to-date are clearly inadequate. We seek a further targeted search for these communications to include email of the additional UTC employees identified in John Habibi's email of October 18 (attached). We further seek production of

   . We will look for your response later today.

Also, as we discussed, and in view of the significant ongoing fact discovery in this case (including but not limited to the deposition of Aaron Waxman scheduled to occur one day before opening expert reports are currently due), we propose the following one month extension of expert discovery deadlines which can be accommodated within the current trial date. As we indicated, if UTC agrees to these proposed extensions, Liquidia will not further seek the deposition of Dr. Rothblatt in this case. We believe that Judge Fallon's decision to deny the deposition (without prejudice) was incorrect in light of information and testimony that has come to light after the parties submitted their briefing on this issue. Please indicate your position with respect to the proposed extensions this week.

|  | **Scheduling Order (DI 45)** | **Proposed Changes** |
|---|---|---|
| **Expert Discovery** | | |
| 9a. Opening Expert Reports | December 13, 2024 | January 16, 2025 |
| 9a. Rebuttal Expert Reports | January 16, 2025 | February 14, 2025 |
| 9a. Reply Expert Reports | February 14, 2025 | March 14, 2025 |
| 9a. Expert Deposition Deadline | March 7, 2025 | April 4, 2025 |
| 9b. Opening *Daubert* Motions | March 28, 2025 | April 25, 2025 |

| 9b. Answering *Daubert* Briefs | April 17, 2025 | May 1, 2025 |
|---|---|---|
| 9b. Reply *Daubert* Briefs | May 1, 2025 | May 15, 2025 |
| 13. Motions *in Limine* – Meet and confer on motions and briefing schedule | May 2, 2025 | May 16, 2025 |
| 12. Pretrial Order and Motions *in Limine* | June 9, 2025 | No Change |
| 12. Pretrial Conference | June 13, 2025 | No Change |
| 15. Trial | June 23, 2025 | No Change |

Thank you,

Rozzi

**From:** Preston, Rachel L <RPreston@cooley.com>
**Sent:** Wednesday, November 13, 2024 11:47 AM
**To:** Flynn, Michael J. <mflynn@morrisnichols.com>; Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

Here is the zoom information for today's M&C:

Topic: 11.13.24 M&C
Time: Nov 13, 2024 02:00 PM Eastern Time (US and Canada)

Join from PC, Mac, Linux, iOS or Android: https://cooley.zoom.us/j/91517704106

Or iPhone one-tap (US Toll): +13126266799,91517704106# or +16469313860,91517704106#

Or Telephone:
  Dial:
  +1 312 626 6799 (US Toll)
  +1 646 931 3860 (US Toll)
  +1 301 715 8592 (US Toll)
  +1 564 217 2000 (US Toll)
  +1 669 444 9171 (US Toll)
  +1 253 205 0468 (US Toll)
  833 928 4608 (US Toll Free)
  833 928 4609 (US Toll Free)
  833 548 0276 (US Toll Free)

3

833 548 0282 (US Toll Free)
Meeting ID: 915 1770 4106
International numbers available: https://cooley.zoom.us/u/aBUGLd8uh

Or an H.323/SIP room system:
H.323: 162.255.37.11 (US West) or 162.255.36.11 (US East)
Meeting ID: 915 1770 4106

SIP: 91517704106@zoomcrc.com

Thanks,
Rachel

**From:** Flynn, Michael J. <mflynn@morrisnichols.com>
**Sent:** Wednesday, November 13, 2024 11:35 AM
**To:** Preston, Rachel L <RPreston@cooley.com>; Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

## [External]

Rachel,

UTC is available at 2:00 ET for a call on this. Can you please circulate a dial-in?

**MICHAEL J. FLYNN**
Partner | Morris, Nichols, Arsht & Tunnell LLP
(302) 351-9661 Direct
**mflynn@morrisnichols.com**

**From:** Preston, Rachel L <RPreston@cooley.com>
**Sent:** Wednesday, November 13, 2024 8:57 AM
**To:** Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>; Flynn, Michael J. <mflynn@morrisnichols.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** [EXT] RE: UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

Please provide your availability today for the court-ordered meet and confer.

Regards,
Rachel

4

**From:** Preston, Rachel L
**Sent:** Tuesday, November 12, 2024 5:13 PM
**To:** Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>; mflynn@morrisnichols.com
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

We're writing pursuant to the Court's November 8th order (D.I. 190) requiring the parties to engage in a meet and confer re Liquidia's November 8th motion to resolve discovery disputes. Please provide your availability to meet and confer on November 13, as required by the Court. In addition, during the meet and confer we intend to address the extension of fact and expert discovery and the deposition of Dr. Rothblatt. During the call, please confirm your availability to address these issues on November 19, November 21 (2pm or later), November 22, or the date the Court selects.

Regards,
Rachel

### Rachel Preston
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please visit http://www.mwe.com/ for more information about our Firm.

6

# EXHIBIT 20

```
 1

 2                    HIGHLY CONFIDENTIAL

 3                      ROUGH DRAFT

 4                    GREGORY BOTTORFF

 5            THE VIDEOGRAPHER:  We're on the record.

 6      November 12, 2024, and the time is 9:08 a.m.

 7      This is media unit 1 of the video deposition

 8      of Gregory Bottorff, taken in the matter of

 9      United Therapeutics Corporation, plaintiff,

10      vs. Liquidia Technologies, Inc., defendants

11      Inc.  Filed in the United States District

12      Court for the district of Delaware.  Case

13      Number 23-975RGA-SRF.  The location of this

14      deposition is 414 Fayetteville Street, suite

15      400, Raleigh, North Carolina 27601.  My name

16      is Meghan Encinias.  The court reporter is

17      Audra Smith from the firm Veritext Legal

18      Solutions.  Will Counsel and all present

19      please state your experiences and

20      affiliations for the record beginning with

21      the noticing attorney.

22            MR. TOUCHIE:  Thomas Touchie with

23      Cooley.
```

■      ■    ■

■      ■    ████████████████████████

25      Q    And what products does UTC currently

15

1    produce and market?

2        A    The entire portfolio or specific to the

3    discussions today.

4        Q    Let's talk specifically about those

5    with the active ingredient treprostinil?

6        A    ^So we have an oral treprostinil

7    Orenitram, inhaled treprostinil TYVASO and TYVASO

8    DPI, and we have an infused treprostinil Remodulin.

9        Q    And do you know what the approved

10    indications are for TYVASO?

11    A    Yes.

12    Q    What are they?

13    A    To improve exercise capacity.

14        Q    I'm sorry.  I'm asking specifically

15    about the indications, so the diseases that they're

16    targeting?

17        A    To impose exercise capacity for

18    pulmonary arterial hypertension and to improve

19    exercise capacity for pulmonary hypertension related

20    to interstitial lung disease.

21          Q       So today in our discussion when we're

22      discussing pulmonary arterial hypertension, would it

23      be okay if we say "PAH"?

24          A       Yes.

25          Q       And for pulmonary hypertension related

⌃                                                                    16

1       to interstitial lung disease, would it be okay if we

2       said "PH-ILD"?

3           A       Yes.

4           Q       Would it be fair to say both TYVASO and

5       TYVASO DPI are indicated for the treatment of both

6       PAH and PH-ILD?

7           A       Yes.

8           Q       So you've been designated to testify

9       regarding UTC's market share for TYVASO and TYVASO

10      DPI for the treatment of PH-ILD, regarding patient

11      update, adherence or continuation rates, the

12      relevant market, competing products, and any

13      internal or external evaluations of UTC's market

14      position relevant to competing products.



17



██  ████████████████████████████████████

██  ████████████████████████████████

4              What is patient adherence rates?

5      A      Basically patients staying on therapy.

6      Q      What do you mean by "staying on

7  therapy"?

8      A      Continues to receive shipments.

9      Q      Okay.  So the patient would be

10  prescribed the product and then would continue to

11  use the product?

12              MS. PAPPAS:  Objection.  Form.

13      A      Correct.

14  BY MR. TOUCHIE:

15      Q      Okay.  And what about patient

16  continuation rates?

17              MS. PAPPAS:  Objection.  Form.

18      A      I'm not familiar with that terminology.

19  It sounds synonymous with adherence.

20  BY MR. TOUCHIE:

21      Q      As in it would be the rate at which

22  patients continue to use the product over time; is

23  that fair?

24      A      That's what it sounds like it means.

25      Q      Okay.

38

```
1        A    I don't really use that terminology.

2        Q    What terminology do you use?

3        A    Adherence.

4        Q    Adherence.
```



39



# EXHIBIT 21

## Smoot, Brandon

| | |
|---|---|
| **From:** | Dykhuis, Art <Adykhuis@mwe.com> |
| **Sent:** | Thursday, November 14, 2024 1:43 AM |
| **To:** | Upton, Rozzi D; Preston, Rachel L; mflynn@morrisnichols.com; McDermott, Sydney; Pappas, Katherine; Vallen, Jake; Burrowbridge, Adam; Carsten, Douglas; WJackson@goodwinlaw.com |
| **Cc:** | DG-ILD; z/Liquidia v UTC 308970-201; UTCvLiquidia-Del-23cv975; Karen Keller; nhoeschen@shawkeller.com |
| **Subject:** | Re: UTC v. Liquidia (23-975) Nov. 13 M&C |

## [External]

Rozzi, as an update, we are still working on UTC's responsive email regarding the issues discussed on the meet and confer earlier today and we will respond further when able.

Thanks,

Art

**From:** Upton, Rozzi D <rupton@cooley.com>
**Date:** Wednesday, November 13, 2024 at 1:12 PM
**To:** Preston, Rachel L <RPreston@cooley.com>, mflynn@morrisnichols.com
<mflynn@morrisnichols.com>, Dykhuis, Art <Adykhuis@mwe.com>, McDermott, Sydney
<Smcdermott@mwe.com>, Pappas, Katherine <Kpappas@mwe.com>, Vallen, Jake
<Jvallen@mwe.com>, Burrowbridge, Adam <Aburrowbridge@mwe.com>, Carsten, Douglas
<Dcarsten@mwe.com>, WJackson@goodwinlaw.com <WJackson@goodwinlaw.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>, z/Liquidia v UTC 308970-201
<zLiquidiavUTC308970201@cooley.com>, UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-
23cv975@mwe.com>, Karen Keller <kkeller@shawkeller.com>, nhoeschen@shawkeller.com
<nhoeschen@shawkeller.com>
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

**[ External Email ]**

Hi Art,

Further to our discussion, we will look for your responses on the two discovery issues that Liquidia otherwise intends to raise with the Court tomorrow.

1. **De-designation of the deposition transcripts of Faria-Urbina and Rajan Saggar.** We understand you will respond this evening regarding de-designation and agreement for Russell Schundler to view these transcripts to the extent you maintain any of the information is Confidential under the Protective Order. We will consider such a proposal in potentially avoiding an issue for the Court to consider. With respect to Dr. Saggar's deposition, you have not provided any document evidencing that Dr. Saggar was bound by any relevant confidentiality agreement with UTC during the relevant time. ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ Any resolution by the parties of this confidentiality dispute is not an acquiescence by Liqudia that any information in the Saggar transcript is in any way confidential or that he owed a duty of confidentiality

1

to UTC. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. We will look for your response later today.

2. **Production of documents and communications, as indicated in the October 18 email from John Habibi.** As discussed, Liquidia's position is that, given deposition testimony in this case and productions from third party witness, Rajan Saggar, UTC's search and production to-date are clearly inadequate. We seek a further targeted search for these communications to include email of the additional UTC employees identified in John Habibi's email of October 18 (attached). We further seek production of ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮. We will look for your response later today.

Also, as we discussed, and in view of the significant ongoing fact discovery in this case (including but not limited to the deposition of Aaron Waxman scheduled to occur one day before opening expert reports are currently due), we propose the following one month extension of expert discovery deadlines which can be accommodated within the current trial date. As we indicated, if UTC agrees to these proposed extensions, Liquidia will not further seek the deposition of Dr. Rothblatt in this case. We believe that Judge Fallon's decision to deny the deposition (without prejudice) was incorrect in light of information and testimony that has come to light after the parties submitted their briefing on this issue. Please indicate your position with respect to the proposed extensions this week.

|  | **Scheduling Order (DI 45)** | **Proposed Changes** |
|---|---|---|
| **Expert Discovery** | | |
| 9a. Opening Expert Reports | December 13, 2024 | January 16, 2025 |
| 9a. Rebuttal Expert Reports | January 16, 2025 | February 14, 2025 |
| 9a. Reply Expert Reports | February 14, 2025 | March 14, 2025 |
| 9a. Expert Deposition Deadline | March 7, 2025 | April 4, 2025 |
| 9b. Opening *Daubert* Motions | March 28, 2025 | April 25, 2025 |
| 9b. Answering *Daubert* Briefs | April 17, 2025 | May 1, 2025 |
| 9b. Reply *Daubert* Briefs | May 1, 2025 | May 15, 2025 |
| 13. Motions *in Limine* – Meet and confer on motions and briefing schedule | May 2, 2025 | May 16, 2025 |
| 12. Pretrial Order and Motions *in Limine* | June 9, 2025 | No Change |
| 12. Pretrial Conference | June 13, 2025 | No Change |
| 15. Trial | June 23, 2025 | No Change |

Thank you,

Rozzi

**From:** Preston, Rachel L <RPreston@cooley.com>
**Sent:** Wednesday, November 13, 2024 11:47 AM
**To:** Flynn, Michael J. <mflynn@morrisnichols.com>; Adykhuis@mwe.com; McDermott, Sydney
<Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com;
Jackson, William C <WJackson@goodwinlaw.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>;
UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

Here is the zoom information for today's M&C:

Topic: 11.13.24 M&C
Time: Nov 13, 2024 02:00 PM Eastern Time (US and Canada)

Join from PC, Mac, Linux, iOS or Android: https://cooley.zoom.us/j/91517704106

Or iPhone one-tap (US Toll): +13126266799,91517704106# or +16469313860,91517704106#

Or Telephone:
  Dial:
  +1 312 626 6799 (US Toll)
  +1 646 931 3860 (US Toll)
  +1 301 715 8592 (US Toll)
  +1 564 217 2000 (US Toll)
  +1 669 444 9171 (US Toll)
  +1 253 205 0468 (US Toll)
  833 928 4608 (US Toll Free)
  833 928 4609 (US Toll Free)
  833 548 0276 (US Toll Free)
  833 548 0282 (US Toll Free)
  Meeting ID: 915 1770 4106
  International numbers available: https://cooley.zoom.us/u/aBUGLd8uh

Or an H.323/SIP room system:
  H.323: 162.255.37.11 (US West) or 162.255.36.11 (US East)
  Meeting ID: 915 1770 4106

  SIP: 91517704106@zoomcrc.com

Thanks,
Rachel


**From:** Flynn, Michael J. <mflynn@morrisnichols.com>
**Sent:** Wednesday, November 13, 2024 11:35 AM
**To:** Preston, Rachel L <RPreston@cooley.com>; Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>;
kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C
<WJackson@goodwinlaw.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>;
UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** RE: UTC v. Liquidia (23-975) Nov. 13 M&C

## [External]

Rachel,

UTC is available at 2:00 ET for a call on this.  Can you please circulate a dial-in?

_____

**MICHAEL J. FLYNN**
Partner | Morris, Nichols, Arsht & Tunnell LLP

(302) 351-9661 Direct
**mflynn@morrisnichols.com**

**From:** Preston, Rachel L <RPreston@cooley.com>
**Sent:** Wednesday, November 13, 2024 8:57 AM
**To:** Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>; Flynn, Michael J. <mflynn@morrisnichols.com>
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** [EXT] RE: UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

Please provide your availability today for the court-ordered meet and confer.

Regards,
Rachel

**From:** Preston, Rachel L
**Sent:** Tuesday, November 12, 2024 5:13 PM
**To:** Adykhuis@mwe.com; McDermott, Sydney <Smcdermott@mwe.com>; kpappas@mwe.com; jvallen@mwe.com; aburrowbridge@mwe.com; Dcarsten@mwe.com; Jackson, William C <WJackson@goodwinlaw.com>; mflynn@morrisnichols.com
**Cc:** DG-ILD <DG-ILD@goodwinlaw.com>; z/Liquidia v UTC 308970-201 <zLiquidiavUTC308970201@cooley.com>; UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>
**Subject:** UTC v. Liquidia (23-975) Nov. 13 M&C

Counsel,

We're writing pursuant to the Court's November 8th order (D.I. 190) requiring the parties to engage in a meet and confer re Liquidia's November 8th motion to resolve discovery disputes. Please provide your availability to meet and confer on November 13, as required by the Court. In addition, during the meet and confer we intend to address the extension of fact and expert discovery and the deposition of Dr. Rothblatt. During the call, please confirm your availability to address these issues on November 19, November 21 (2pm or later), November 22, or the date the Court selects.

Regards,
Rachel

### Rachel Preston
Cooley LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
+1 202 776 2315 office
rpreston@cooley.com
Pronouns: She, Her, Hers

www.cooley.com

Cooley is committed to racial and social justice

4

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This message, including any accompanying documents or attachments, may contain information that is confidential or that is privileged. If you are not the intended recipient of this message, please note that the dissemination, distribution, use or copying of this message or any of the accompanying documents or attachments is strictly prohibited. If you believe that you may have received this message in error, please contact me at (302) 658-9200 or by return e-mail.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

********************************************************************************************************

This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.