IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) **Redacted - Public Version** |
| v. | ) ) C.A. No. 23-975-RGA-SRF |
| LIQUIDIA TECHNOLOGIES, INC., | ) ) ████████████ |
| Defendant. | ) ) ) |

**LIQUIDIA'S OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SUR-REPLY BRIEF**

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Adam Pivovar
Phillip E. Morton
Rachel Preston
John. A. Habibi
Rosalynd D. Upton
Jordan Landers
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

---

[1] Liquidia believes that this brief could be filed publicly, but is provisionally filing it under seal out of an abundance of caution because UTC's Motion for Leave was filed under seal.

Daniel Knauss
Lauren Strosnick
Kyung Taeck Minn
Andrew Lau
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Thomas Touchie
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Annie Beveridge
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
(858) 550-6000

Dated: August 13, 2025

# <u>TABLE OF CONTENTS</u>

**Page**

I.     UTC's Motion for Leave Should Be Denied Because Liquidia's Reply Brief Was Directly Responsive to UTC's Answering Brief. ............................................... 1

II.    UTC's Motion for Leave Should be Denied Because the Proposed Sur-Reply Does Not Respond to Liquidia's Reply and Is an Improper Attempt to Supplement the Record ............................................................................................ 2

III.   Conclusion ................................................................................................. 5

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Trans Video Elecs., Ltd. v. Netflix, Inc.*,
    C. A. No. 12-1743-LPS, 2014 WL 900929 (D. Del. Mar. 4, 2014) ................................1

*Volterra Semiconductor LLC v. Monolithic Power Sys., Inc.*,
    C. A. No. 19-cv-2240-CFC-SRF (D. Del. Nov. 30, 2021) ...............................................1

**Other Authorities**

Fed. R. Evid. 801(c) ...........................................................................................................2

Fed. R. Evid. 802 ...............................................................................................................2

Fed. R. Civ. P. 37 ...............................................................................................................3

L.R. 7.1.2 ............................................................................................................................2

UTC's motion for leave and proposed sur-reply should be denied because they are nothing more than post-trial attempts to provide new documentary evidence allegedly "critical" to UTC's undisclosed and ill-fated (b)(2)(C) defense. Liquidia did not present a "new argument" in its reply, but instead properly responded to UTC's newly presented "Liquidia admitted" allegation, rendering a sur-reply improper. And the proposed improper sur-reply actually supports Liquidia's motion to strike because UTC, for the first-time, attempts to provide documentary evidence allegedly supporting common ownership as of April 17, 2020—evidence not disclosed in response to Rog. 1, in expert reports, in the JPTO, in UTC's exhibit list, or at trial. UTC's improper eleventh-hour effort to cobble together a disparate collection of documents outside the trial record via a sur-reply to a motion to strike confirms that UTC failed to meet its burden of production at trial.

## I.    UTC's Motion for Leave Should Be Denied Because Liquidia's Reply Brief Was Directly Responsive to UTC's Answering Brief

UTC's motion for leave should be denied because Liquidia's reply did not raise any new arguments or rely on new evidence that was not directly responsive to UTC's opposition. *Trans Video Elecs., Ltd. v. Netflix, Inc.*, C. A. No. 12-1743-LPS, 2014 WL 900929, at *1 n.1 (D. Del. Mar. 4, 2014). Notably, UTC does not dispute that its argument that Liquidia "admitted" common ownership was new. *See* D.I. 449 Ex. A. As such, § II of Liquidia's Reply, including citation to the post-effective filing date '810 assignment (D.I. 448-1, Ex. F), was directly responsive to UTC's new argument that it was "undisputed" that the '327 and '793 patents were commonly owned by UTC at "all relevant times" and that Liquidia allegedly admitted to common ownership. D.I. 448 at 3. Because Liquidia's reply and citation to the October/November 2020 dated assignment was for the limited purpose of responding to UTC's specific arguments, UTC's motion for sur-reply must be denied. *Volterra Semiconductor LLC v. Monolithic Power Sys., Inc.*, C. A. No. 19-cv-

2240-CFC-SRF, at *9-10 (D. Del. Nov. 30, 2021) (denying sur-reply where arguments in reply were directly responsive to answering brief) (Ex. 1).

## II.    UTC's Motion for Leave Should be Denied Because the Proposed Sur-Reply Does Not Respond to Liquidia's Reply and Is an Improper Attempt to Supplement the Record

UTC's motion for leave should also be denied because it is an improper post-trial attempt to establish ownership with new arguments and newly identified information entirely within UTC's control that it did not disclose in response to Rog. 1, chose not to present at trial or even identify on its exhibit list.[2]  UTC's sole witness on (b)(2)(C), Dr. Byrd, never testified that he saw or considered any purported assignment or employment agreements, and to the extent UTC continues to misinterpret his testimony to extend to these newly identified documents, there is no evidence in the record to suggest that Dr. Byrd is qualified to testify about contract interpretation. Moreover, to the extent UTC contends that its eleventh-hour supplementation of the record is permissible (it is not), there is no reason UTC could not have presented these documents in its opposition when it first argued that common ownership was "undisputed."  In view of this lack of evidence, UTC's request to meet and confer revealed its true intent—to get this allegedly "critical information" before the Court.  Ex. 2.  L.R. 7.1.2 does not allow a party to submit a sur-reply to correct its own failure of proof.

UTC's reliance on the executed '810 application assignment (D.I. 448-1, Ex. F) to prove anything about the alleged truth of UTC's ownership in April 2020 lacks any factual foundation and is hearsay.  FED. R. EVID. 801(c), 802.  And while UTC attempts to rely on "past-tense"

_____

[2] That UTC did not include either the '810 application assignment or the "employment agreements" on its trial exhibit list speaks volumes as to their insufficiency to establish common ownership of the '793 and '327 patents as of April 17, 2020, and why UTC tried to establish (b)(2)(C) through Dr. Byrd.

language to suggest that there had been a prior assignment, it ignores the continuing clause, in present tense, stating each inventor "hereby sells, assigns and transfers[.]" D.I. 448-1, Ex. F at 1. Because UTC made the choice to ignore the '810 assignment at trial, there is no testimony about the assignment allegedly being "confirmatory," or reconciliation of the conflicting past and present tense clauses. Nothing more can be said other than it post-dates April 17, 2020.

Regarding the "additional" allegedly "critical" documents (Exs. 18-21), UTC claims they are the operative employment agreements. But like the '810 assignment, there is zero evidence supporting UTC's newly-made attorney argument. UTC offered no foundation or testimony to prove that any of these "additional" documents are operative agreements between UTC and the inventors or that they were in effect at the relevant time. Moreover, for the reasons discussed in Liquidia's Motion to Strike, these documents should be excluded under Federal Rule of Civil Procedure 37 because none were identified in UTC's original or revised interrogatory responses, expert reports, the JPTO, the exhibit list, or in Dr. Byrd's testimony. Additionally, because none of these purportedly "critical" documents were identified in UTC's responses to Rog. 1 or exhibit list, UTC's suggestion that Liquidia should have pieced them together to construct UTC's undisclosed (b)(2)(C) defense and then cross-examined witnesses in deposition or at trial regarding them is a frivolous proposition. Finally, UTC's reliance on the documents is contrary to UTC's abandonment of its (b)(2)(C) "obligation to assign" argument. *See* D.I. 435, 1-3.

Regarding Ms. Peterson's purported employment agreement dated nearly 12 years before the effective filing date (Ex. 18), there is no testimony establishing it was operative as of April 2020, or whether some other unidentified agreement controls. Further, UTC's two highlighted paragraphs are internally inconsistent, rendering it unclear whether Ms. Peterson had assigned any patent rights or whether, under Section 5(d) "Assignment," she had an agreement to later assign

3

patent rights, which she did in November 2020.  *Compare* Ex. 18 § 5(a) *with id.* § 5(c); D.I. 448-1, Ex. F at 2.

Regarding the new documents offered for Messrs. Deng and Smith, the record is even more ambiguous because it is a cobbled together collection of unconnected documents from different parts of the document production without any foundation or testimony establishing what the documents are, how they are supposedly linked together, and whether they were even operative as of April 2020.  What UTC claims is a "copy of agreement electronically signed by P. Smith and C. Deng" (Ex. 20) is undated, unsigned, and with nothing to suggest it is anything more than an unexecuted blank draft of a potential agreement.  The complete lack of any date or identifier renders it meaningless with respect to (b)(2)(C), and nothing on the face of the document suggests any connection between it and either Messrs. Deng and Smith, whether they ever signed it, when they may have signed it, whether changes were made before they signed it, and whether it was an operative agreement as of April 2020.  *See* Ex. 20.  Even more troubling is UTC's attempt to link Ex. 20 with two grainy screenshots from different parts of the document production that UTC claims, via attorney argument, are "documentation of electronic signature[s]" by Mr. Smith and Mr. Deng.  Ex. A at 3; Exs. 19 & 21.  Nothing in the record establishes what these screenshots are, where they came from, when or why they were created, how they purportedly document an "electronic signature," how they are linked to Ex. 20, and how they allegedly establish that Messrs. Deng and Smith actually signed Ex. 20 on any particular date.  The screenshots are also hearsay because UTC relies upon them for the truth of the matter that Ex. 20 was signed by the inventors. There is no basis to conclude that these foundationless, ambiguous and hearsay screenshots establish anything at all, let alone UTC's ownership of the '327 patent as of April 2020.

Finally, UTC has still not provided any evidence that it commonly owned ***both*** the '793 and '327 patents as of April 2020, a necessary part of UTC's burden of production for the (b)(2)(C) defense. D.I. 435, 2.

## III. Conclusion

The fact that UTC only now seeks to provide information allegedly critical to its (b)(2)(C) defense only confirms the propriety of Liquidia's Motion to Strike. UTC made the decision not to disclose this evidence in response to Rog. 1 and the Court should refuse UTC's attempt to belatedly correct its litigation strategies. For the foregoing reasons, UTC's motion for sur-reply should be denied.

*/s/ Nathan R. Hoeschen*
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Sanya Sukduang
Jonathan Davies
Adam Pivovar
Phillip E. Morton
Rachel Preston
John. A. Habibi
Rosalynd D. Upton
Jordan Landers
COOLEY LLP
1299 Pennsylvania Avenue, NW, Suite 700
Washington, DC 20004-2400
(202) 842-7800

Daniel Knauss
Lauren Strosnick
Kyung Taeck Minn
Andrew Lau
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304-1130
(650) 843-5000

Thomas Touchie
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
(212) 479-6000

Annie Beveridge
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
(858) 550-6000

Dated: August 13, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, this document was served on DG-ILD@goodwinlaw.com, UTCvLiquidia-Del-23cv975@mwe.com and the persons listed below in the manner indicated:

**BY EMAIL**

Michael J. Flynn
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
mflynn@morrisnichols.com

Adam J. Horowitz
Gabriel B. Ferrante
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800
ahorowitz@goodwinlaw.com
gferrante@goodwinlaw.com

Douglas Carsten
Art Dykhuis
Katherine Pappas
MCDERMOTT WILL & SCHULTE LLP
12636 High Bluff Drive, Suite 325
San Diego CA 92130-7025
(619) 467-1801
dcarsten@mwe.com
adykhuis@mwe.com
kpappas@mwe.com

William C. Jackson
Katherine Cheng
Eric Levi
GOODWIN PROCTER LLP
1900 N Street NW
Washington, DC  20036
(202) 346-4000
wjackson@goodwinlaw.com
katherinecheng@goodwinlaw.com
elevi@goodwinlaw.com

Eric T. Romeo
Louis L. Lobel
Jonathan Everett Rankin
Harrison C. Gunn
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
eromeo@goodwinlaw.com
llobel@goodwinlaw.com
jrankin@goodwinlaw.com
hgunn@goodwinlaw.com

Kyle Sorenson
Benjamin Ediger
MCDERMOTT WILL & SCHULTE LLP
300 Colorado Street, Suite 2200
Austin, TX 78701
(512) 726-2600
ksorenson@mwe.com
bediger@mwe.com

Adam W. Burrowbridge
Courtney Seams
Lillian Spetrino
Jake B. Vallen
Ian B. Brooks
MCDERMOTT WILL & SCHULTE LLP
The McDermott Building
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8000
aburrowbridge@mwe.com
cseams@mwe.com
lspetrino@mwe.com
jvallen@mwe.com
ibrooks@mwe.com

/s/ Nathan R. Hoeschen
Karen E. Keller (No. 4489)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

8

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VOLTERRA SEMICONDUCTOR LLC,    )
                              )
            Plaintiff,         )
                              )
        v.                    )        Civil Action No. 19-2240-CFC-SRF
                              )
MONOLITHIC POWER SYSTEMS, INC., )
                              )
            Defendant.         )

### MEMORANDUM OPINION

## I.    INTRODUCTION

Presently before the court in this patent infringement action are three pending motions:

(1) plaintiff Volterra Semiconductor LLC's ("Volterra") motion for leave to serve amended

infringement contentions (D.I. 164); (2) defendant Monolithic Power Systems, Inc.'s

("Monolithic") motion for leave to file a sur-reply brief in opposition to Volterra's motion for

leave to amend (D.I. 190); and (3) Monolithic's motion for leave to serve amended invalidity

contentions (D.I. 239).[1]  For the following reasons, Volterra's motion for leave to serve amended

infringement contentions is GRANTED, Monolithic's motion for leave to file a sur-reply brief is

DENIED, and Monolithic's motion for leave to serve amended invalidity contentions is

GRANTED.[2]

## II.    BACKGROUND

Volterra is a developer of low-voltage power delivery solutions.  (D.I. 71 at ¶ 13)

Monolithic is a provider of electronics, including DC-to-DC power converters.  (*Id.* at ¶ 6)  On

---

[1] The briefing and declarations associated with the pending motions are found at D.I. 165, D.I.
166, D.I. 177, D.I. 178, D.I. 180, D.I. 181, D.I. 200, D.I. 240, D.I. 248, D.I. 249, and D.I. 256.
[2] In a November 18, 2021 letter to the court, Volterra confirmed its withdrawal of its opposition
to Monolithic's motion for leave to serve amended invalidity contentions.  (D.I. 267)  The court
grants Monolithic's motion to amend on this basis and does not reach the merits of the motion.

December 9, 2019, Volterra brought this action for infringement of U.S. Patent Nos. 6,362,986 ("the '986 patent"), 7,525,408 ("the '408 patent"), and 7,772,955 ("the '955 patent;" collectively, the "Asserted Patents"). (D.I. 1) In the complaint, Volterra accused Monolithic's DC-to-DC power converters of infringing the Asserted Patents. (*Id.* at ¶ 18) In particular, Volterra identified as a "non-exhaustive example" the 48V-1V Power Solution for CPU, SoC or ASIC Controller (the "48V-1V") that Monolithic demonstrated at the 2019 IEEE Applied Power Electronics Conference and Exposition (the "APEC 2019"). (*Id.*) The 48V-1V is a two-phase DC-to-DC power converter with coupled inductors. (D.I. 71 at ¶¶ 46(d), 78) The Asserted Patents are directed to DC-to-DC converters with coupled inductive windings and methods for making those windings. (D.I. 244 at 1) The '986 patent has a March 22, 2001 priority date, and the '955 and '408 patents have a priority date of December 13, 2002. (D.I. 71, Exs. A-C)

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

In June 2020, Monolithic objected to the breadth and lack of specificity of Volterra's pleaded accusations against Monolithic's entire DC-to-DC power converter line of products. (D.I. 37; D.I. 38) Volterra served written discovery requests and the second amended complaint

("SAC") in September 2020,[3] limiting the realm of accused products to the 48V-1V and other substantially similar products. (D.I. 166, Ex. C at 1, 4; D.I. 71 at ¶ 18) Volterra's initial infringement contentions served on October 14, 2020 also defined the accused products as the 48V-1V and "any other substantially similar products." (D.I. 166, Ex. B) In response to Volterra's narrowed discovery requests, Monolithic identified only the 48V-1V as the Accused Product. (D.I. 166, Ex. D at 6)

On October 30, 2020, Monolithic produced a specification from ▮▮▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮, a coupled inductor manufacturer, that indicated the ▮▮▮ product was ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 166, Ex. E at MPS_DE-00000917) Volterra highlighted this document in a December 17, 2020 letter to Monolithic, noting "[i]t . . . appears that [Monolithic] developed a Power Solution with Nvidia that utilizes coupled inductors in a substantially similar manner as the products demonstrated at APEC 2019. . . ." (D.I. 178, Ex. A) Monolithic responded on December 23, 2020, stating that the NVIDIA version of the 48V-1V (the "NVIDIA Power Solution") was the only version of the Accused Product that was available to the public at that time, and no other versions of the Accused Product were available to Monolithic customers. (D.I. 166, Ex. A)

In its second set of discovery requests served in January 2021, Volterra specifically sought discovery on the NVIDIA Power Solution. (D.I. 166, Exs. H & I) A subsequent letter from Monolithic dated January 25, 2021 retracted Monolithic's previous representation that certain technical documents produced in discovery were attributable to the NVIDIA Power

---

[3] Monolithic moved to dismiss the SAC on October 9, 2020. (D.I. 83) On September 30, 2021, the District Judge entered a Memorandum Opinion and Order granting-in-part and denying-in-part the motion to dismiss. (D.I. 244; D.I. 245) Specifically, the Court granted the motion to dismiss with respect to the allegations of contributory infringement and denied the motion in all other respects. (D.I. 244 at 15)

Solution. (D.I. 166, Ex. J at 1) Monolithic also responded to Volterra's second set of discovery requests, indicating that it could not produce certain responsive documents until it first obtained the consent of various third parties. (D.I. 166, Ex. S at 8-9)

Monolithic produced technical documents and correspondence responsive to Volterra's second set of discovery requests between mid-April and mid-May 2021. (D.I. 166, Exs. M-O) On May 28, 2021, Volterra served its proposed amended infringement contentions on Monolithic. (D.I. 166, Ex. R) The amended infringement contentions discuss the NVIDIA Power Solution, relying on Bates-numbered technical documents and communications from the productions made in April and May 2021 to map the NVIDIA Power Solution to the claim elements of the Asserted Patents. (*Id.*)

Claim construction briefing concluded on June 21, 2021. (D.I. 168) Discovery closed on August 6, 2021. (D.I. 69 at ¶ 9(a)) Opening expert reports were exchanged on September 17, 2021, and rebuttal reports were exchanged on October 1, 2021. (D.I. 237; D.I. 246) A Markman hearing was held on November 12, 2021. (10/4/2021 Oral Order) Pursuant to the parties' joint stipulation, the deadline to file case dispositive motions was extended to November 19, 2021. (D.I. 251) The pretrial conference and trial dates set in the original scheduling order have been vacated pending resolution of dispositive motions. (10/13/2021 Oral Order)

## III.    LEGAL STANDARD

The operative scheduling order in this case provides that "[a]mendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause." (D.I. 69 at ¶ 7); *see British Telecommc'ns PLC v. IAC/InterActiveCorp*, C.A. No. 18-366-WCB, 2020 WL 3047989, at *2 (D. Del. June 8, 2020). Good cause requires a showing of diligence both in discovering that amendment was necessary

4

and in moving to amend after the discovery. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006). "Non-exhaustive examples of circumstances that may . . . support a finding of good cause include (a) a recent discovery of material prior art despite earlier diligent search and (b) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." (D.I. 69 at ¶ 7)

## IV.    ANALYSIS

### A. Motion to Amend Infringement Contentions

#### 1. Diligence

In support of its motion for leave to amend, Volterra contends that it was diligent both in seeking information regarding the NVIDIA Power Solution product and in seeking leave to amend its infringement contentions. (D.I. 165 at 7-12) Volterra provides a comprehensive timeline in its brief outlining its efforts to identify and obtain discovery on products substantially similar to the 48V-1V. (*Id.* at 8-10) Volterra further explains that it promptly moved to amend its infringement contentions only two weeks after Monolithic produced technical documents establishing that the NVIDIA Power Solution product was substantially similar to the 48V-1V. (*Id.* at 10-12)

In response, Monolithic alleges that Volterra's proposed amendment is untimely for three reasons: (1) Volterra has known of the NVIDIA Power Solution product since early 2017; (2)

████████████████████████████████████████████████

████ (3) Monolithic disclosed the NVIDIA Power Solution product to Volterra in September 2020. (D.I. 177 at 11-15)

5

The record before the court establishes that Volterra exercised diligence in seeking discovery on the NVIDIA Power Solution and in promptly amending its infringement contentions upon the discovery of nonpublic information about the NVIDIA Power Solution. Since September 2020, Volterra served discovery requests seeking to establish the identity of additional accused products and obtain evidence on products substantially similar to the accused 48V-1V. (D.I. 166, Ex. C at 1, 4; Exs. H & I) Nonetheless, Monolithic did not promptly identify the NVIDIA Power Solution in response to Volterra's requests,[4] and Monolithic's production of technical documents and communications regarding the NVIDIA Power Solution did not materialize until April and May 2021. (D.I. 166, Ex. D at 6; Exs. M-O) The production of these documents represents the kind of "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions" that is contemplated by the scheduling order. (D.I. 69 at ¶ 7) Volterra did not delay in seeking leave to amend its infringement contentions within weeks of receiving the documents. (D.I. 166, Ex. R)

Monolithic suggests that a document produced on October 30, 2020 provided Volterra with sufficient technical information to amend its contentions to include the NVIDIA Power Solution. (D.I. 177 at 16-17) This product specification of a ▮▮▮▮▮▮▮▮ power inductor contains a single footnote suggesting that a DC current controlling surface temperature in the product is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 178, Ex. J at MPS_DE-00000917) Although the document put Volterra on notice that Monolithic developed a product

---

[4] Without citing supporting documentation, Monolithic alleges that it expressly identified the NVIDIA Power Solution to Volterra in a September 21, 2020 meet and confer. (D.I. 177 at 7, 15-17) Despite this representation, Monolithic did not include the NVIDIA Power Solution in its interrogatory responses served on October 14, 2020, which sought the identification of products substantially similar to the 48V-1V. (D.I. 166, Ex. D at 5-6)

with NVIDIA using coupled inductors, (D.I. 178, Ex. B at 1), it did not provide the level of

technical detail necessary for Volterra to satisfy its obligations under the scheduling order, which

requires infringement contentions to be accompanied by "[a] chart identifying specifically where

and how each limitation of each asserted claim is found within each Accused Instrumentality,"

(D.I. 69 at ¶ 3(c)).  Monolithic attempts to equate Volterra's knowledge of the existence of the

NVIDIA Power Solution with Volterra's ability to provide detailed infringement contentions

regarding the product, but the record shows that Volterra relied on the production from April and

May 2021 to achieve the requisite level of technical detail in its contentions as demanded by

Monolithic and described in the scheduling order.  (D.I. 177 at 15-17 (challenging the lack of

detail in Volterra's initial infringement contentions); D.I. 178, Ex. R (string citing Bates ranges

from the April-May 2021 productions)).  The same is true of Monolithic's arguments based on

█████████████████████████.[5]  (D.I. 177 at 12-14)

     Monolithic also contends that Volterra lacked diligence because it knew of the NVIDIA

Power Solution as early as 2017, prior to the filing of the lawsuit.  (D.I. 177 at 11)  In support of

this allegation, Monolithic cites to Maxim's December 2017 response to NVIDIA's request for

information seeking a power solution proposal from Maxim including a coupled inductor.  (Id.;

see D.I. 178, Ex. C at NVIDIA_0000113)  But Monolithic fails to explain how Maxim's 2017

coupled inductor proposal, which was rejected by NVIDIA, can form the technical basis of

Volterra's infringement contentions regarding Monolithic's NVIDIA Power Solution, which has

a Monolithic controller and a coupled inductor made by a third-party manufacturer.

---

[5] Monolithic's arguments regarding █████████████ are largely directed to case dispositive issues beyond the scope of the pending motion.  (D.I. 177 at 13-14)  The court declines to █████████████████████ and makes no findings as to ████████ ████████████████████████.

Volterra's exercise of diligence both in discovering the need for an amendment and in
moving to amend its infringement contentions supports a finding of good cause in this case. *See
British Telecommc'ns*, 2020 WL 3047989, at *2.

### 2. Prejudice

Volterra's proposed amendment of its infringement contentions would not result in the
expenditure of significant additional resources, nor is it likely to significantly delay resolution of
the case because briefing on case dispositive motions is not yet complete and the trial date was
vacated. The record establishes that Monolithic has been on notice that the NVIDIA Power
Solution was an accused product since at least September 2020. During the September 10, 2020
scheduling conference, counsel for Monolithic suggested that the case be limited to the 48V-1V
and substantially similar products with a different name. (D.I. 166, Ex. Q at 14:11-18)
Consistent with this discussion, Volterra's SAC accused products "substantially similar" to the
48V-1V of infringement. (D.I. 71 at ¶ 18) Monolithic admits that it disclosed the existence of
the NVIDIA Power Solution and confirmed its new controllers were used in the NVIDIA Power
Solution during a September 21, 2020 meet and confer. (D.I. 177 at 7, 15) And Monolithic's
December 2020 letter to Volterra identified the NVIDIA Power Solution as a version of the 48V-
1V. (D.I. 166, Ex. A)

Monolithic alleges that Volterra's delay deprives Monolithic of presenting claim
construction issues that depend on Volterra's new infringement theories. (D.I. 177 at 17) But
Monolithic does not describe how inclusion of the NVIDIA Power Solution would have changed
the arguments it would have raised on claim construction, nor does it explain how infringement
by the "substantially similar" NVIDIA Power Solution amounts to a new theory of infringement.
The short shrift given to the prejudice factor in Monolithic's briefing confirms that "the degree

of potential prejudice is not so great as to make prejudice a dispositive factor in deciding the motion." *British Telecommc'ns*, 2020 WL 3047989, at *4.

Good cause exists to allow Volterra's proposed amended infringement contentions because Volterra has demonstrated diligence and allegations of undue prejudice are not supported by the record. For these reasons, Volterra's motion to amend its infringement contentions is granted.

### B. Motion for Leave to File Sur-Reply

Monolithic's motion for leave to file a sur-reply brief is denied. Local Rule 7.1.2(b) provides that parties may submit additional papers after the completion of briefing only with court approval, and courts in this district generally disfavor sur-replies. *See* D. Del. LR 7.1.2(b); *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 103 (D. Del. 2016). Accordingly, leave to file a sur-reply is granted only if it is necessary to respond to new evidence, facts, or arguments raised for the first time in the reply brief. *Novartis AG v. Actavis, Inc.*, 243 F. Supp. 3d 534, 540 (D. Del. 2017) (citing *St. Clair Intellectual Prop. Consultants, Inc. v. Samsung Elecs. Co.*, 291 F.R.D. 75, 80 (D. Del. 2013)).

Here, Volterra's arguments in reply "involve content that is directly responsive to arguments made in [Monolithic's] answering brief." *Execware, LLC v. BJ's Wholesale Club, Inc. et al.*, C.A. No. 14-233-LPS-CJB *et al.*, 2015 WL 4275314, at *2 n.3 (D. Del. July 15, 2015), *reversed in part on other grounds by* 2015 WL 5734434 (D. Del. Sept. 30, 2015)). Specifically, Monolithic's answering brief addresses NVIDIA's request for information and Maxim's ███████████████, and it attaches the associated documents as exhibits to the brief. (D.I. 177 at 11-14; D.I. 178, Exs. C, D) Volterra was within its rights to respond to these arguments in its reply brief. *See Siemens Med. Sols. USA, Inc. v. Humedica, Inc.*, C.A. No.

9

14-880-LPS-CJB, 2015 WL 1738186, at *1 n.1 (D. Del. Apr. 8, 2015) (denying motion for leave to file sur-reply where "complained-of material was responsive to theories and arguments raised in [defendant's] answering brief"); *Kabbaj v. Simpson*, C.A. No. 12-1322-RGA-MPT, 2013 WL 867751, at *6 (D. Del. Mar. 7, 2013) ("Generally, courts grant leave for sur-reply briefing when a party raises new arguments in its reply brief . . . [that] are beyond responding to the answering brief."). Consequently, Monolithic's motion for leave to file a sur-reply brief is denied.

## V.    CONCLUSION

For the foregoing reasons, Volterra's motion for leave to serve amended infringement contentions is GRANTED (D.I. 164), Monolithic's motion for leave to file a sur-reply brief is DENIED (D.I. 190), and Monolithic's motion for leave to serve amended invalidity contentions is GRANTED (D.I. 239). An Order consistent with this Memorandum Opinion shall issue.

Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Opinion under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Opinion should be redacted, the parties shall jointly submit a proposed redacted version by no later than **December 6, 2021**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within thirty (30) days of the date the Memorandum Opinion issued.

This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each. The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: November 30, 2021

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

11

# EXHIBIT 2

| | |
|---|---|
| **From:** | Dykhuis, Art <Adykhuis@mwe.com> |
| **Sent:** | Tuesday, August 12, 2025 12:46 PM |
| **To:** | Courtney Harris; z/Liquidia v UTC 308970-201; nhoeschen@shawkeller.com; Karen Keller; SKLiquidia@shawkeller.com |
| **Cc:** | AHorowitz@goodwinlaw.com; Burrowbridge, Adam; Seams, Courtney; DG-ILD@goodwinlaw.com; Carsten, Douglas; elevi@goodwinlaw.com; eromeo@goodwinlaw.com; gferrante@goodwinlaw.com; HGunn@goodwinlaw.com; Brooks, Ian B.; Vallen, Jake; JRankin@goodwinlaw.com; KatherineCheng@goodwinlaw.com; Pappas, Katherine; Sorenson, Kyle; Spetrino, Lillian; Lobel, Louis; mflynn@morrisnichols.com; mnat_ip_efiling@morrisnichols.com; UTCvLiquidia-Del-23cv975; WJackson@goodwinlaw.com |
| **Subject:** | Re: C.A. No. 23-975-RGA-SRF United Therapeutics Corporation v. Liquidia Technologies, Inc. |

---

**CAUTION: This Message Is From an External Sender**

This message came from outside your organization.

---

Counsel,

Liquidia's Reply Brief in Support of Defendant's Motion to Strike (D.I. 448), filed yesterday, contains new argument based on the document attached as Exhibit F, which Liquidia did not cite in its opening brief.  Liquidia's new argument is procedurally improper under L.R. 7.1.3(c)(2) and omits critical information while wrongly accusing UTC of having "withheld" facts from the Court.  D.I. 448 at 3.  Liquidia also hurled elevated and inaccurate allegations against UTC's counsel. UTC intends to file a motion for leave to file a short sur-reply that responds to Liquidia's new argument and corrects the record.  Please indicate whether Liquidia will oppose this motion.  If you will oppose this motion, please immediately provide your availability to meet and confer regarding this issue today.

**Art Dykhuis**

Partner

**T:** +1 619 467 1803 | **F:** +1 858 720 7800

adykhuis@mwe.com | LinkedIn

McDermott Will & Schulte LLP | mwe.com
12636 High Bluff Drive, Suite 325, San Diego, CA 92130



**From:** Courtney Harris <charris@shawkeller.com>
**Date:** Monday, August 11, 2025 at 12:21 PM
**To:** AHorowitz@goodwinlaw.com <AHorowitz@goodwinlaw.com>, Burrowbridge, Adam <Aburrowbridge@mwe.com>, Dykhuis, Art <Adykhuis@mwe.com>, Seams, Courtney <Cseams@mwe.com>, DG-ILD@goodwinlaw.com <DG-ILD@goodwinlaw.com>, Carsten, Douglas <Dcarsten@mwe.com>, elevi@goodwinlaw.com <ELevi@goodwinlaw.com>, eromeo@goodwinlaw.com

<eromeo@goodwinlaw.com>, gferrante@goodwinlaw.com <gferrante@goodwinlaw.com>, HGunn@goodwinlaw.com <HGunn@goodwinlaw.com>, Brooks, Ian B. <Ibrooks@mwe.com>, Vallen, Jake <Jvallen@mwe.com>, JRankin@goodwinlaw.com <JRankin@goodwinlaw.com>, KatherineCheng@goodwinlaw.com <KatherineCheng@goodwinlaw.com>, Pappas, Katherine <Kpappas@mwe.com>, Sorenson, Kyle <Ksorenson@mwe.com>, Spetrino, Lillian <Lspetrino@mwe.com>, Lobel, Louis <llobel@goodwinlaw.com>, mflynn@morrisnichols.com <mflynn@morrisnichols.com>, mnat_ip_efiling@morrisnichols.com <mnat_ip_efiling@morrisnichols.com>, UTCvLiquidia-Del-23cv975 <UTCvLiquidia-Del-23cv975@mwe.com>, WJackson@goodwinlaw.com <WJackson@goodwinlaw.com>
**Subject:** C.A. No. 23-975-RGA-SRF United Therapeutics Corporation v. Liquidia Technologies, Inc.

[ External Email ]

Please find attached the following document filed today:

DI 448 **REPLY BRIEF re [436] MOTION to Strike filed by Liquidia Technologies, Inc.. (Attachments: # (1) Exhibit F, # (2) Exhibit G)(Hoeschen, Nathan)**

Courtney N. Harris
*Senior Litigation Paralegal*
**Shaw Keller llp**
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0716- Telephone
(302) 300-4026- Facsimile

NOTE: This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individuals(s) to which it is addressed. If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copy of this email or the information contained in it or attached to it is strictly prohibited. If you have received this email in error, please delete it and immediately notify the person named above by reply email. Thank you.

*********************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information. Thank you.
*********************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.