# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of Interrogatories (Nos. 1–6).

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action. Each response is provided subject to all appropriate objections (including, without limitation, objections relating to competency, relevancy, propriety, proportionality, and admissibility) that would require the exclusion of any statement provided herein if that statement were made by a witness testifying in court. All such objections are reserved and may be interposed at the time of trial.

The following responses are made based on the facts and information presently known to UTC. The responses refer only to the contentions that have been asserted to date, based on facts known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may bring to light additional facts, add meaning to known facts, establish new factual or legal

1

contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

## GENERAL OBJECTIONS

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the information they seek.

4. UTC objects to each Definition, Instruction, and Interrogatory to the extent that it

2

is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5.      UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6.      UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's possession, custody, or control.

8.      UTC has not completed its investigation of the facts relating to the present

3

litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.      By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, definitions, and instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

12.      UTC objects to each Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged

information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13. Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14. UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15. UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Defendant or persons who are not parties to this action. Information that is equally accessible to Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such

information on UTC.

16.     UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

## OBJECTIONS TO DEFINITIONS

1.     UTC objects to Defendant's definition of "You," "Your," or "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets this term as referring to the party United Therapeutics Corporation in this action.

2.     UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.     UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.     UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring to" and all requests incorporating these terms as overly broad, vague, ambiguous, requiring subjective judgment on the part of UTC and/or its attorneys, and calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

1.     UTC objects to the instructions accompanying Liquidia's Interrogatories to the extent that such instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.     UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to obtain such facts, and identify each document (specifically identified by production number) that relates to such facts.

**RESPONSE TO INTERROGATORY NO. 1:**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts," and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks information more appropriately addressed through other forms of discovery, including by

8

deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as UTC's voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity and unenforceability arguments.[1] UTC further objects to the timing and content of this request, this response is made to

---

[1] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I.    The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the '327 patent.[2]

---

[2] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's

A. **Liquidia fails to establish anticipation by the '793 patent**

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(b)(2)(C) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation argument and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed data discuss improved exercise capacity."); *see also, e.g.*, Channick Dep. Tr. (April 6, 2024) at

---

February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

11

98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16–129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20–129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793 patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-

12

16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

> Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[3]

Liquidia's inherency arguments also fail because, as the experts agree and the Court has recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-

---

[3] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at *3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.,* '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017

14

INCREASE Study cohort—the '793 patent merely contemplates humans suffering from the condition of pulmonary hypertension and subjects purportedly with pulmonary fibrosis and pulmonary hypertension. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare e.g.,* INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved force vital capacity (claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims because Liquidia has not shown anticipation of the parent claims.

**B.**     **Liquidia fails to establish anticipation by the 2017 INCREASE Study Description**

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE study description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare see, e.g.,* INCREASE Study Report at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan Decl.) ¶¶ 178–180. Thus, the proposed protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012) is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed

16

certain results, and the differences between proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

## C.    Liquidia fails to establish anticipation by the 2009 Tyvaso® Label

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and Usage":

> Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.

17

UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent

18

claims at least because it fails to anticipate their parent claims.

### D.        Liquidia fails to establish anticipation by UTC's sale of Tyvaso®

UTC's sale of Tyvaso® does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide

19

invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. Liquidia's Invalidity Contentions cite *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the invention would work for its intended purpose." *See also id.* ("Testing is required to demonstrate reduction to practice in some instances because without such testing there cannot be sufficient certainty that the invention will work for its intended purpose.") (quoting *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007)). Liquidia makes conclusory allegations that further testing was not needed to establish that the use of Tyvaso would work for the intended purpose of improving exercise capacity in PH-ILD patients. Invalidity Contentions at 65. However, as discussed below, the POSA would not have believed that, prior to the INCREASE study outcome, the invention would work for its intended purpose. *Infra*, § II. Instead, the POSA would have been skeptical of the efficacy of a PAH drug to improve exercise capacity in PH-ILD patients and would have been concerned that the use of the Tyvaso could cause harm. D.I. 28

20

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>                Plaintiff,<br><br>        v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>                Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United

Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby

responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of

Interrogatories (Nos. 1-6).

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action.

Each response is provided subject to all appropriate objections (including, without limitation,

objections relating to competency, relevancy, propriety, proportionality, and admissibility) that

would require the exclusion of any statement provided herein if that statement were made by a

witness testifying in court. All such objections are reserved and may be interposed at the time of

trial.

The following responses are made based on the facts and information presently known to

UTC. The responses refer only to the contentions that have been asserted to date, based on facts

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may

bring to light additional facts, add meaning to known facts, establish new factual or legal

1

contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

## **GENERAL OBJECTIONS**

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual Interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any Interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the information they seek.

4.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it

2

is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5. UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6. UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7. UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's possession, custody, or control.

8. UTC has not completed its investigation of the facts relating to the present

3

litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.      By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, Definitions, and Instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

12.      UTC objects to each Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged

4

information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13.     Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14.     UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15.     UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Defendant or persons who are not parties to this action. Information that is equally accessible to Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such

5

information on UTC.

16.    UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

**<u>OBJECTIONS TO DEFINITIONS</u>**

1.    UTC objects to Defendant's definition of "You," "Your," and "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets these terms as referring to the party United Therapeutics Corporation in this action.

2.    UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable Interrogatories exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.    UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable Interrogatories exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.    UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring to" and all Interrogatories incorporating these terms as overly broad, vague, ambiguous, requiring subjective judgment on the part of UTC and/or its attorneys, and/or calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

6

**OBJECTIONS TO INSTRUCTIONS**

1.     UTC objects to the Instructions accompanying Liquidia's Interrogatories to the extent that such Instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these Instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.     UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to obtain such facts, and identify each document (specifically identified by production number) that relates to such facts.

7

**RESPONSE TO INTERROGATORY NO. 1:**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts," and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks information more appropriately addressed through other forms of discovery, including by

8

deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as UTC voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for Liquidia's invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity and unenforceability arguments.[1] UTC further objects to the timing and content of this

---

[1] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

Interrogatory, and this response is made to the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I.     The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the Asserted Claims.[2]

---

[2] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion

10

## A. **Liquidia fails to establish anticipation by the '793 patent**

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(a), (b) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation arguments and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed

that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

11

data discuss improved exercise capacity."); *see also, e.g.*, D.I. 66, Ex. 8 ("Channick Dep. Tr. (April 6, 2024)") at 98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16-129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at section IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20-129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793 patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing*

*Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

> Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[3]

Liquidia's inherency arguments also fail because, as the experts agree and the Court has recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they

---

[3] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at *3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.*, '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for

14

approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017 INCREASE Study cohort. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare, e.g.*, INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383, *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved forced vital capacity ("FVC") (claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims at least because Liquidia has not shown anticipation of the parent claims.

15

**B.     Liquidia fails to establish anticipation by the 2017 INCREASE Study Description**

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE Study Description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the INCREASE study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare, e.g.*, INCREASE Study Report at UTC_PH-ILD_010382-383, *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan Decl.) ¶¶ 178-180. Thus, the proposed protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012), is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed

16

certain results, and the differences between the proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

### C.    Liquidia fails to establish anticipation by the 2009 Tyvaso® Label

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and Usage":

> Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.

17

UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent

18

claims at least because it fails to anticipate their parent claims.

**D.    Liquidia fails to establish anticipation by UTC's sale of Tyvaso®**

UTC's sale of Tyvaso does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide

19

invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. Liquidia's Invalidity Contentions cite to *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the invention would work for its intended purpose." *See also id.* ("Testing is required to demonstrate reduction to practice in some instances because without such testing there cannot be sufficient certainty that the invention will work for its intended purpose.") (quoting *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007)). Liquidia makes conclusory allegations that further testing was not needed to establish that the use of Tyvaso would work for the intended purpose of improving exercise capacity in PH-ILD patients. Invalidity Contentions at 65. However, as discussed below, the POSA would not have believed that, prior to the INCREASE study outcome, the invention would work for its intended purpose. *Infra*, § II. Instead, the POSA would have been skeptical of the efficacy of a PAH drug to improve exercise capacity in PH-ILD patients and would have been concerned that the use of the Tyvaso could cause harm. D.I. 28

20

# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>          Plaintiff,<br><br>     v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>          Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United

Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby

responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of

Interrogatories (Nos. 1–6).

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action.

Each response is provided subject to all appropriate objections (including, without limitation,

objections relating to competency, relevancy, propriety, proportionality, and admissibility) that

would require the exclusion of any statement provided herein if that statement were made by a

witness testifying in court. All such objections are reserved and may be interposed at the time of

trial.

The following responses are made based on the facts and information presently known to

UTC. The responses refer only to the contentions that have been asserted to date, based on facts

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may

bring to light additional facts, add meaning to known facts, establish new factual or legal

1

contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

**GENERAL OBJECTIONS**

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual ~~interrogatory~~Interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any ~~interrogatory~~Interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the information they seek.

4.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it

2

is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5.    UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6.    UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7.    UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's possession, custody, or control.

8.    UTC has not completed its investigation of the facts relating to the present

3

litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.      By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, ~~definitions~~Definitions, and ~~instructions~~Instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

12.      UTC objects to each Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable

4

doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13.     Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14.     UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15.     UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Defendant or persons who are not parties to this action. Information that is equally accessible to Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly

5

burdensome and expensive to place the burden of identifying, collecting, and copying such information on UTC.

16.     UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

## OBJECTIONS TO DEFINITIONS

1.     UTC objects to Defendant's definition of "You," "Your," ~~or~~and "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets ~~this term~~these terms as referring to the party United Therapeutics Corporation in this action.

2.     UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable ~~Requests~~Interrogatories exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.     UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable ~~Requests~~Interrogatories exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.     UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring to" and all ~~requests~~Interrogatories incorporating these terms as overly broad, vague, ambiguous, requiring subjective judgment on the part of UTC and/or its attorneys, and/or calling for

6

conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

1.      UTC objects to the ~~instructions~~Instructions accompanying Liquidia's Interrogatories to the extent that such ~~instructions~~Instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these ~~instructions~~Instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.      UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to obtain such facts, and identify each document (specifically identified by production number) that

7

relates to such facts.

**RESPONSE TO INTERROGATORY NO. 1:**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts," and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks

8

information more appropriately addressed through other forms of discovery, including by deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as ~~UTC's~~UTC voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for Liquidia's invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity

and unenforceability arguments.[1] UTC further objects to the timing and content of this ~~request,~~Interrogatory, and this response is made to the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I. The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the ~~'327~~

---

[1] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

10

~~patent~~Asserted Claims.[2]

### A. Liquidia fails to establish anticipation by the '793 patent

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(a), (b~~)(2)(C~~) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation ~~argument~~arguments and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The

---

[2] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed data discuss improved exercise capacity."); *see also, e.g.*, D.I. 66, Ex. 8 ("Channick Dep. Tr. (April 6, 2024))") at 98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16–129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at section IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20–129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793 patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The*

12

*Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

> Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[3]

Liquidia's inherency arguments also fail because, as the experts agree and the Court has

---

[3] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

13

recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at *3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.*, '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not

14

taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017 INCREASE Study cohort—the '793 patent merely contemplates humans suffering from the condition of pulmonary hypertension and subjects purportedly with pulmonary fibrosis and pulmonary hypertension. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare, e.g.*, INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383, *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved forceforced vital capacity ("FVC") (claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow

15

for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims at least because Liquidia has not shown anticipation of the parent claims.

**B.    Liquidia fails to establish anticipation by the 2017 INCREASE Study Description**

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE study descriptionStudy Description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the INCREASE study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare see, e.g.*, INCREASE Study Report at UTC_PH-ILD_010382-383, *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan Decl.) ¶¶ 178-180. Thus, the proposed protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012)), is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

16

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain results, and the differences between the proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

### C.  Liquidia fails to establish anticipation by the 2009 Tyvaso® Label

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and

17

Usage":

> Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.

UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE

18

Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent claims at least because it fails to anticipate their parent claims.

### D.     Liquidia fails to establish anticipation by UTC's sale of Tyvaso®

UTC's sale of Tyvaso® does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified

19

any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. Liquidia's Invalidity Contentions cite to *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998), but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the invention would work for its intended purpose." *See also id.* ("Testing is required to demonstrate reduction to practice in some instances because without such testing there cannot be sufficient certainty that the invention will work for its intended purpose.") (quoting *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1352 (Fed. Cir. 2007)). Liquidia makes conclusory allegations that further testing was not needed to establish that the use of Tyvaso would work for the intended purpose of improving exercise capacity in PH-ILD patients. Invalidity Contentions at 65. However, as discussed below, the POSA would not have believed that, prior to the INCREASE

20

# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>LIQUIDIA TECHNOLOGIES, INC.,<br><br>   Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United

Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby

responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of

Interrogatories (Nos. 1–6).[1]

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action.

Each response is provided subject to all appropriate objections (including, without limitation,

objections relating to competency, relevancy, propriety, proportionality, and admissibility) that

would require the exclusion of any statement provided herein if that statement were made by a

witness testifying in court. All such objections are reserved and may be interposed at the time of

trial.

The following responses are made based on the facts and information presently known to

UTC. The responses refer only to the contentions that have been asserted to date, based on facts

---

[1] UTC offers supplemental responses to Liquidia's Interrogatory Nos. 1, 2, 3, and 6, below. Consistent with the Court's November 12, 2024 Memorandum Order (D.I. 193),  UTC will serve supplemental responses to Liquidia's Interrogatory Nos. 4 and 5 on November 19, 2024.

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may bring to light additional facts, add meaning to known facts, establish new factual or legal contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

## **GENERAL OBJECTIONS**

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the

2

information they seek.

4.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5.      UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6.      UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's

3

possession, custody, or control.

8.      UTC has not completed its investigation of the facts relating to the present litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.      By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, definitions, and instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

12.     UTC objects to each Interrogatory to the extent that it calls for information

4

protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13. Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14. UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15. UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Defendant or persons who are not parties to this action. Information that is equally accessible to

5

Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such information on UTC.

16.    UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

## **OBJECTIONS TO DEFINITIONS**

1.    UTC objects to Defendant's definition of "You," "Your," or "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets this term as referring to the party United Therapeutics Corporation in this action.

2.    UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.    UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.    UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring to" and all requests incorporating these terms as overly broad, vague, ambiguous, requiring

6

subjective judgment on the part of UTC and/or its attorneys, and calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

1.      UTC objects to the instructions accompanying Liquidia's Interrogatories to the extent that such instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.      UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to

7

obtain such facts, and identify each document (specifically identified by production number) that relates to such facts.

**RESPONSE TO INTERROGATORY NO. 1 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts," and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further

8

objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks information more appropriately addressed through other forms of discovery, including by deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as UTC's voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity and unenforceability

9

arguments.[2] UTC further objects to the timing and content of this request, this response is made to the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I.     The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without

---

[2] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the '327 patent.[3]

### A. Liquidia fails to establish anticipation by the '793 patent

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(b)(2)(C) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation argument and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving

---

[3] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed data discuss improved exercise capacity."); *see also, e.g.*, Channick Dep. Tr. (April 6, 2024) at 98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16–129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20–129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793

patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[4]

---

[4] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in

Liquidia's inherency arguments also fail because, as the experts agree and the Court has recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at \*4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at \*3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.,* '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not

---

Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017 INCREASE Study cohort—the '793 patent merely contemplates humans suffering from the condition of pulmonary hypertension and subjects purportedly with pulmonary fibrosis and pulmonary hypertension. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare e.g.,* INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved force vital capacity

15

(claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims because Liquidia has not shown anticipation of the parent claims.

### B. Liquidia fails to establish anticipation by the 2017 INCREASE Study Description

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE study description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare see, e.g.,* INCREASE Study Report at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan Decl.) ¶¶ 178–180. Thus, the proposed

16

protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012) is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain results, and the differences between proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

17

**C.      Liquidia fails to establish anticipation by the 2009 Tyvaso® Label**

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and Usage":

Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.  UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

18

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent claims at least because it fails to anticipate their parent claims.

### D.    Liquidia fails to establish anticipation by UTC's sale of Tyvaso®

UTC's sale of Tyvaso® does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not

19

invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998) but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the invention would work for its intended

20

correspondence, Liquidia's allegations of inequitable conduct related to the 2018 Investor Call (*see* Liquidia Second Amended Invalidity Contentions at 183-84) are improper and cannot be maintained because they are unpled. *See* Email from A. Dykhuis to R. Preston *et al.* (Oct. 8, 2024 at 7:56 PM ET).

Discovery and UTC's investigation into facts relevant to this case is ongoing, and UTC expressly reserves the right to amend and/or supplement its answer to this Interrogatory as discovery and the case continues.

**INTERROGATORY NO. 2:**

Separately, for each of the Asserted Claims, describe fully any objective indicia of non-obviousness, including without limitation, identification on a claim-by-claim basis of any purported objective indicia that supports or refutes any contention by You that the Asserted Claims would have been non-obvious, identification of all documents (specifically identified by production number) that support or refute Your assertions regarding objective indicia of non-obviousness, identification of the nexus between the objective indicia of non-obviousness and each of the Asserted Claims, and identification of the persons most knowledgeable about Your contentions regarding objective indicia of non-obviousness.

**RESPONSE TO INTERROGATORY NO. 2 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions.

Discovery and UTC's investigation into facts relevant to this case is ongoing, and UTC expressly reserves the right to amend and/or supplement its answer to this Interrogatory as discovery and the case continues.

**INTERROGATORY NO. 3:**

Describe the contribution of all individuals involved with the prosecution of the '327 patent, including by identifying each individual involved either directly or indirectly with the prosecution and describing their contribution to the prosecution of the '327 patent.

**RESPONSE TO INTERROGATORY NO. 3 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories and not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding a response describing "each individual involved," "the contribution of all individuals," and "identifying each individual involved either directly or indirectly with the prosecution . . . of the '327 patent." UTC objects to this Interrogatory as vague, particularly as to the phrases "the contribution of all individuals," "identifying each individual involved either

49

Discovery and UTC's investigation into facts relevant to this case is ongoing, and UTC expressly reserves the right to amend and/or supplement its answer to this Interrogatory as discovery and the case continues.

**INTERROGATORY NO. 4:**

Describe fully the mechanism(s) of action of inhaled treprostinil in patients with pulmonary hypertension associated with interstitial lung disease, including the mechanism of action by which inhaled treprostinil improves exercise capacity, increases six (6) minute walk distance, reduces plasma concentration of NT-proBNP, reduces at least one exacerbation of interstitial lung disease, reduces clinical worsening events due to interstitial lung disease, and improves forced vital capacity (FVC).

**RESPONSE TO INTERROGATORY NO. 4 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories and not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding a response to "[d]escribe fully the mechanism(s) of action." UTC

to Fed. R. Civ. P. 33(d) in due course. To the extent appropriate, UTC also expects that the subject matter of this Interrogatory may be addressed during expert discovery.

Discovery and UTC's investigation into facts relevant to this case is ongoing, and UTC expressly reserves the right to amend and/or supplement its answer to this Interrogatory as discovery and the case continues.

**INTERROGATORY NO. 5:**

Describe the basis that each Asserted Claim is entitled to claim the benefit of Provisional Application No. 63/011,810 filed on April 17, 2020, including, without limitation, where support, sufficient for priority purposes and on a claim-by-claim basis, can be found in Provisional Application No. 63/011,810.

**RESPONSE TO INTERROGATORY NO. 5 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories and not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding a response "on a claim by claim basis." UTC further objects because this Interrogatory

to, the nature and amount of any damages, and time period of accrual for each category of damages. A complete response must include the proposed length of time of any injunction sought and describe, with specificity and not by reference to the First Amended Complaint or any other document, the act or acts sought to be enjoined or restrained, as required under Rule 65 of the Federal Rules of Civil Procedure.

**RESPONSE TO INTERROGATORY NO. 6 (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as seeks expert opinions. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories and is not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding a response "in detail each category of relief," "facts evidencing or supporting any such relief . . . the nature and amount of any damages, and time period of accrual for each category of damages," "proposed length of time of any injunction sought," and "describe, with specificity and not by reference to the First Amended Complaint or any other document, the act or acts sought to be enjoined or restrained." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague and ambiguous, including, for example, with respect to the term

# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LIQUIDIA TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of Interrogatories (Nos. 1–6).[1]

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action. Each response is provided subject to all appropriate objections (including, without limitation, objections relating to competency, relevancy, propriety, proportionality, and admissibility) that would require the exclusion of any statement provided herein if that statement were made by a witness testifying in court. All such objections are reserved and may be interposed at the time of trial.

The following responses are made based on the facts and information presently known to UTC. The responses refer only to the contentions that have been asserted to date, based on facts

---

[1] UTC offers supplemental responses to Liquidia's Interrogatory Nos. 1, 2, 3, and 6, below. Consistent with the Court's November 12, 2024 Memorandum Order (D.I. 193), UTC will serve supplemental responses to Liquidia's Interrogatory Nos. 4 and 5 on November 19, 2024.

1

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may bring to light additional facts, add meaning to known facts, establish new factual or legal contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

## **GENERAL OBJECTIONS**

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3. UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the

2

information they seek.

4. UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5. UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6. UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7. UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's

3

possession, custody, or control.

8.      UTC has not completed its investigation of the facts relating to the present litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.      By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, definitions, and instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

12.     UTC objects to each Interrogatory to the extent that it calls for information

4

protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13.     Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14.     UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15.     UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of Defendant or persons who are not parties to this action. Information that is equally accessible to

5

Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such information on UTC.

16.     UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

**OBJECTIONS TO DEFINITIONS**

1.     UTC objects to Defendant's definition of "You," "Your," or "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets this term as referring to the party United Therapeutics Corporation in this action.

2.     UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.     UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.     UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring to" and all requests incorporating these terms as overly broad, vague, ambiguous, requiring

6

subjective judgment on the part of UTC and/or its attorneys, and calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

1.      UTC objects to the instructions accompanying Liquidia's Interrogatories to the extent that such instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.      UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

## RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to

7

obtain such facts, and identify each document (specifically identified by production number) that relates to such facts.

**RESPONSE TO INTERROGATORY NO. 1: (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further objects as fact discovery in this case is ongoing, document production is not complete, expert discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions. UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as to comprise multiple distinct interrogatories not properly propounded as a single interrogatory. UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts," and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further

8

objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks information more appropriately addressed through other forms of discovery, including by deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as UTC's voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity and unenforceability

9

arguments.[2] UTC further objects to the timing and content of this request, this response is made to the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I. The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without

---

[2] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

10

undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed. Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the '327 patent.[3]

**A.  Liquidia fails to establish anticipation by the '793 patent**

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(b)(2)(C) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation argument and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving

---

[3] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed data discuss improved exercise capacity."); *see also, e.g.*, Channick Dep. Tr. (April 6, 2024) at 98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16–129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20–129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793

12

patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[4]

---

[4] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in

Liquidia's inherency arguments also fail because, as the experts agree and the Court has recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at *3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.,* '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not

Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

14

conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017 INCREASE Study cohort—the '793 patent merely contemplates humans suffering from the condition of pulmonary hypertension and subjects purportedly with pulmonary fibrosis and pulmonary hypertension. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare e.g.,* INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved force vital capacity

15

(claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims because Liquidia has not shown anticipation of the parent claims.

### B.   Liquidia fails to establish anticipation by the 2017 INCREASE Study Description

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE study description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare see, e.g.,* INCREASE Study Report at UTC_PH-ILD_010382-383 *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan Decl.) ¶¶ 178–180. Thus, the proposed

16

protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012) is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain results, and the differences between proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

17

### C.    Liquidia fails to establish anticipation by the 2009 Tyvaso® Label

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and Usage":

> Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.

_UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695 *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

18

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent claims at least because it fails to anticipate their parent claims.

### D.     Liquidia fails to establish anticipation by UTC's sale of Tyvaso®

UTC's sale of Tyvaso® does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not

19

invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. ~~Liquidia's Invalidity Contentions cite~~ *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998~~),~~) but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the

20

# Exhibit 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED THERAPEUTICS CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> LIQUIDIA TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 1:23-cv-00975-RGA-SRF |

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF (NOS. 1-6)**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff United Therapeutics Corporation ("UTC" or "Plaintiff"), by and through its undersigned counsel, hereby responds to Defendant Liquidia Technologies, Inc.'s ("Liquidia" or "Defendant") First Set of Interrogatories (Nos. 1-6).[1]

**PRELIMINARY STATEMENT**

The following responses are made solely for the purpose of, and in relation to, this action. Each response is provided subject to all appropriate objections (including, without limitation, objections relating to competency, relevancy, propriety, proportionality, and admissibility) that would require the exclusion of any statement provided herein if that statement were made by a witness testifying in court. All such objections are reserved and may be interposed at the time of trial.

The following responses are made based on the facts and information presently known to UTC. The responses refer only to the contentions that have been asserted to date, based on facts

---

[1] UTC offers supplemental responses to Liquidia's Interrogatory Nos. 1, 2, 3, and 6, below. Consistent with the Court's November 12, 2024 Memorandum Order (D.I. 193), UTC will serve supplemental responses to Liquidia's Interrogatory Nos. 4 and 5 on November 19, 2024.

1

known to UTC. Discovery, investigation, and research are all still ongoing in this case, which may bring to light additional facts, add meaning to known facts, establish new factual or legal contentions, or lead to possible additions or variations to these responses. UTC reserves the right to amend or supplement these responses as this process continues.

**GENERAL OBJECTIONS**

UTC asserts each of the following General Objections to each of the Interrogatories. These General Objections are incorporated by reference into UTC's response to each individual ~~Interrogatory~~interrogatory, to the extent applicable, whether or not stated in any individual response. UTC's responses are qualified by the objections, whether general or specific, asserted herein. A response does not waive any objections asserted.

UTC asserts each of the following General Objections and expressly incorporates them into each response set forth below. By providing a response to any ~~Interrogatory~~interrogatory, UTC does not waive or otherwise limit these General Objections. Furthermore, reference to any of these General Objections in any specific response shall not waive or otherwise limit the applicability of all of these General Objections to each and every response.

1.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information that is neither relevant to the claims or defenses in this action nor proportional to the needs of the case.

2.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they purport to require UTC to draw legal conclusions or to the extent they assume a disputed factual or legal contention in defining the information requested. Any response or specific objection by UTC is made without prejudice to this objection.

3.     UTC objects to all Definitions, Instructions, and Interrogatories to the extent they are vague, ambiguous, indefinite, cumulative, unintelligible, or otherwise unclear as to the

2

information they seek.

4.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is unduly burdensome and oppressive, overly broad, vague, ambiguous and/or to the extent it is inconsistent with and/or seeks to impose upon UTC obligations beyond those required by the Federal Rules of Civil Procedure, Local Rules for the United States District Court for the District of Delaware or any Court Order in this matter, including this Court's Scheduling Order. In responding to these Interrogatories, UTC will only comply with the obligations imposed on it by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any applicable orders of this Court, and any stipulation or agreement between the parties.

5.      UTC objects to each Definition, Instruction, and Interrogatory on the ground they are overly broad and unduly burdensome, including to the extent they require identification of "all facts," "all documents," or "all individuals" when the relevant information can be supplied by identification of fewer than "all facts," "all documents," or "all individuals," and because discovery is ongoing. Unless otherwise stated, UTC will respond to Interrogatories seeking identification of "all facts," "all documents," or "all individuals" with an identification of facts, documents, or individuals sufficient to show the information requested.

6.      UTC objects to each Definition, Instruction, and Interrogatory as overly broad and unduly burdensome to the extent that it fails to identify the relevant time period for the information requested.

7.      UTC objects to each Definition, Instruction, and Interrogatory to the extent that it seeks information not reasonably available to, or not within the possession, custody, or control of UTC. Any response given will be based upon information and/or documents within UTC's

3

possession, custody, or control.

8.     UTC has not completed its investigation of the facts relating to the present litigation. UTC's responses to the Interrogatories are therefore made to the best of UTC's current knowledge, information, and belief. UTC accordingly reserves the right to modify or supplement its responses after it has substantially completed its investigation, and as additional facts are ascertained, analysis is made, legal research is completed, and contentions are made.

9.     By agreeing to provide information responsive to a particular Interrogatory, UTC does not admit the relevance or admissibility of the information provided. Nothing contained in any response herein shall be deemed an admission, concession, or waiver by UTC as to the relevance, materiality, or admissibility of information provided in response to the Interrogatory.

10.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it prematurely and improperly seeks discovery of expert opinions. Such information will be disclosed in accordance with the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

11.     UTC objects to each Definition, Instruction, and Interrogatory to the extent that it is not properly limited in subject matter, scope and/or time, employs vague, undefined, or uncertain terms or phrases, and/or calls for investigations or activities the costs or burdens of which are unreasonable under the circumstances. UTC will make every effort to construe these Interrogatories, ~~Definitions~~definitions, and ~~Instructions~~instructions in good faith consistent with its obligations under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

4

12.     UTC objects to each Interrogatory to the extent that it calls for information protected by the attorney-client privilege, the work product doctrine, or any other applicable doctrine, privilege, or immunity from disclosure. UTC will not provide or disclose such privileged information. Any inadvertent disclosure of any such information shall not signify any intent by UTC to waive such privilege, protection, or immunity. Inadvertent production of any document or information that is subject to such privilege, protection, or immunity in response to an Interrogatory shall not constitute or be deemed to constitute a waiver of such privilege, protection, or immunity. Nothing contained in these responses is intended as a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, prohibition, or limitation, and UTC reserves the right to assert objections on the basis of such privileges, immunities, prohibitions, and limitations to the greatest extent permitted by law.

13.     Subject to the provisions of Local Rules for the United States District Court for the District of Delaware, UTC objects to all Definitions, Instructions, and Interrogatories to the extent they seek the disclosure of information which contains proprietary business information, trade secrets, or other confidential information, including information which is subject to a confidentiality agreement or protective order.

14.     UTC objects to each Interrogatory to the extent that it contains multiple discrete subparts, is compound, and constitutes multiple interrogatories.

15.     UTC objects to each Interrogatory to the extent that it seeks information obtainable from some other source that is more convenient, less burdensome, less expensive, or in the public domain. UTC objects to the extent that responsive information may be derived or ascertained from the following sources to which Defendant has the same or better access than UTC: (a) persons who are not parties to this action; and (b) information in the possession, custody, and control of

5

Defendant or persons who are not parties to this action. Information that is equally accessible to Defendant as it is to UTC is beyond the proper scope of discovery and it would be unduly burdensome and expensive to place the burden of identifying, collecting, and copying such information on UTC.

16.    UTC hereby incorporates by reference, as if fully set forth herein, the General Objections and objections set forth in UTC's Responses and Objections to Liquidia's First Set of Requests for Production of Documents and Things to Plaintiff (Nos. 1-75), dated June 17, 2024.

**OBJECTIONS TO DEFINITIONS**

1.    UTC objects to Defendant's definition of "You," "Your," ~~and~~or "UTC" as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. UTC interprets ~~these terms~~this term as referring to the party United Therapeutics Corporation in this action.

2.    UTC objects to Liquidia's definition of "Related Patents and Applications" to the extent that the definition creates overbroad, unduly burdensome, and/or unreasonable ~~Interrogatories~~Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order.

3.    UTC objects to Liquidia's definition of "Communication" to the extent the definition creates vague, ambiguous, overbroad, unduly burdensome, and/or unreasonable ~~Interrogatories~~Requests exceeding the scope of permissible discovery under the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, or any Court Order in this matter, including the Court's Scheduling Order; and to the extent the definition is broader than or contradictory to any agreement or stipulation between UTC and Liquidia, or any Court orders relating to discovery.

4.    UTC objects to Liquidia's definition of "Concerning," "relating to," and "referring

6

to" and all ~~Interrogatories~~requests incorporating these terms as overly broad, vague, ambiguous, requiring subjective judgment on the part of UTC and/or its attorneys, and~~/or~~ calling for conclusions or opinions of counsel in violation of the attorney work product doctrine.

## OBJECTIONS TO INSTRUCTIONS

1.      UTC objects to the ~~Instructions~~instructions accompanying Liquidia's Interrogatories to the extent that such ~~Instructions~~instructions are not consistent with the provisions of the Federal Rules of Civil Procedure, and the extent to which these ~~Instructions~~instructions purport to require UTC to take actions or provide information not required by, or exceeding the scope of that required by, or otherwise imposing discovery obligations on UTC that are broader than the Federal Rules of Civil Procedure, the Default Standard for Discovery, or other applicable local rules and rules of the Court.

2.      UTC objects to Liquidia's Instruction Nos. 19-23 to the extent that they seek to impose discovery obligations broader than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the District of Delaware, any Court orders, or any agreements or stipulations entered into by the parties. UTC will produce documents and information in the manner they are maintained in the ordinary course of business, consistent with the obligations imposed by applicable Federal and Local Rules.

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Separately, for each of the Asserted Claims, describe fully the basis that each Asserted Claim is valid, including the basis for any disagreement with Liquidia's invalidity contentions, including any disagreement as to whether any of the cited references do not constitute prior art, and a detailed recitation of all facts (whether tending to support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on which You intend to rely, the persons

7

most knowledgeable with respect to such facts, the persons You solicited, obtained, or relied on to

obtain such facts, and identify each document (specifically identified by production number) that

relates to such facts.

**RESPONSE TO INTERROGATORY NO. 1: (6/5/2024):**

UTC incorporates the Preliminary Statement, General Objections, Objections to

Definitions, and Objections to Instructions by reference as if fully stated herein. UTC further

objects as fact discovery in this case is ongoing, document production is not complete, expert

discovery has not yet begun, and the Court has not yet construed any claim terms. UTC objects to

this Interrogatory as premature as it seeks expert opinions and necessarily implicates the Court's

claim construction. UTC further objects to the extent this Interrogatory calls for legal conclusions.

UTC objects to this Interrogatory as compound to the extent it comprises multiple subparts so as

to comprise multiple distinct interrogatories not properly propounded as a single interrogatory.

UTC objects to this Interrogatory to the extent it calls for information protected by attorney-client

privilege, the work-product doctrine, or any other applicable privilege or immunity. UTC objects

to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the

case, including for demanding that UTC "describe fully the basis that each Asserted Claim is valid,

including the basis for any disagreement with Liquidia's invalidity contentions, including any

disagreement as to whether any of the cited references do not constitute prior art, and a detailed

recitation of all facts." UTC further objects because this Interrogatory seeks expert testimony. UTC

objects to this Interrogatory as vague, particularly as to the phrases "the basis for any disagreement

with Liquidia's invalidity contentions," "a detailed recitation of all facts (whether tending to

support Your conclusion of validity or tending to negate Liquidia's contention of invalidity) on

which You intend to rely," "the persons You solicited, obtained, or relied on to obtain such facts,"

8

and "relates to such fact," and the alleged bases for Liquidia's invalidity arguments. UTC further objects to this Interrogatory to the extent it is cumulative and/or duplicative, and/or seeks information more appropriately addressed through other forms of discovery, including by deposition(s), subpoena(s), and/or review of documents, or that will be addressed through expert reports and expert discovery. UTC objects to this Interrogatory as premature because it necessarily implicates the Court's claim construction.

UTC further objects to this Interrogatory to the extent it attempts to shift the burden of proof to UTC. Liquidia has the burden of proving invalidity by clear and convincing evidence, and that burden does not ever shift to UTC. *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). Nothing in this response should be construed as ~~UTC~~UTC's voluntarily taking on any burden that is allocated by law to Liquidia. UTC's response is limited in scope to responding to Liquidia's Initial Invalidity Contentions dated June 3, 2024 ("Invalidity Contentions"). Liquidia's Invalidity Contentions are deficient in multiple respects and do not provide UTC with sufficient information to fully understand the bases for ~~Liquidia's~~ invalidity allegations. UTC reserves the right to supplement, modify, and/or amend this response as discovery proceeds, including through claim construction, based on UTC's own continued investigation, Liquidia's responses to UTC's requests for documents and/or things, interrogatories, disclosures, fact witness deposition testimony, expert witness reports and testimony, future rulings from the Court, any additional items of evidence, as permitted by statute, rule, court order, and/or applicable case law. Further, UTC reserves the right to supplement, modify, and/or amend this response to defend against Liquidia's claims of invalidity based on Liquidia's failures of proof, regardless of when they occur. UTC further objects to this Interrogatory as vague and ambiguous, as it seeks UTC's position regarding why "each Asserted Claim is valid, including the basis for any disagreement with

9

Liquidia's invalidity contentions." The Invalidity Contentions, however, contain both invalidity and unenforceability arguments.[2] UTC further objects to the timing and content of this ~~Interrogatory, and~~request, this response is made to the best of UTC's knowledge based on information reasonably available to UTC as of this date and UTC's understanding of this Interrogatory and the Invalidity Contentions. UTC reserves the right to identify documents responsive to this Interrogatory to the extent UTC has agreed to produce such documents in response to Liquidia's requests for production of documents and things.

Subject to its objections, and to the extent UTC understands this Interrogatory, UTC responds as follows:

The claims of the '327 patent are presumed valid. 35 U.S.C. § 282. A party challenging a patent always bears the ultimate burden of proving invalidity by clear and convincing evidence and that burden—the burden of persuasion—never shifts to the patentee. *See, e.g.*, *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1077-78 (Fed. Cir. 2012). Liquidia has failed to meet that burden, and its Invalidity Contentions fail to establish any ground of invalidity, let alone by clear and convincing evidence. Accordingly, UTC reserves the right to supplement its response to this Interrogatory as the litigation proceeds.

## I.    The Asserted Claims are not anticipated

The Asserted Claims are not anticipated because no single, enabling reference identified by Liquidia discloses each and every element of the claimed invention. *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008) ("In order to anticipate a claimed invention, a prior art reference must enable one of ordinary skill in the art to make the invention without undue experimentation.") (citing *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1336 (Fed.

---

[2] Consistent with UTC's understanding of the plain language of this Interrogatory, UTC's response is limited to the validity of the Asserted Claims.

Cir. 2008)). None of the references cited in the Invalidity Contentions anticipate the ~~Asserted Claims~~'327 patent.[3]

## A. Liquidia fails to establish anticipation by the '793 patent

The '793 patent does not anticipate the Asserted Claims. The examiner considered the '793 patent during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013088 (considering the '793 patent on February 27, 2023), UTC_PH-ILD_013123-UTC_PH-ILD_013128 (Notice of Allowance and Notice of Allowability). And that assumes that the '793 patent is prior art, which Liquidia has not proven. *See* 35 U.S.C. § 102(~~a), (b~~)(2)(C) (post-AIA). Likewise, in connection with UTC's motion for a preliminary injunction, the Court considered Liquidia's anticipation ~~arguments~~argument and concluded that the '793 patent failed to raise a substantial question of validity. D.I. 96 at 12.

The '793 patent also fails to disclose all of the limitations of the Asserted Claims. UTC has already addressed deficiencies with Liquidia's anticipation arguments based on the '793 patent in the papers associated with UTC's motion for a preliminary injunction, which UTC hereby incorporates by reference. *E.g.*, D.I. 26, 28, 65, 96. Further, for example, the '793 patent fails to disclose "a method of improving exercise capacity in a patient having pulmonary hypertension associated with interstitial lung disease." There is no disclosure in the '793 patent of improving

---

[3] In a section regarding the priority date for the '327 patent, Liquidia asserts in conclusory fashion that "[b]ecause the '327 patent is not entitled to an April 17, 2020 priority date, additional prior art renders the Asserted Claims invalid for anticipation and obviousness, including UTC's February 24, 2020 press release title [sic] 'United Therapeutics Announces INCREASE Study of Tyvaso® Meets Primary and All Secondary Endpoints.'" Invalidity Contentions at 6. Liquidia, however, does not explain (1) why each Asserted Claim is not entitled to a priority date of April 17, 2020; (2) why the February, 24, 2020 press release would anticipate and/or render obvious any particular Asserted Claim; or (3) what "additional prior art" beyond the February 24, 2020 press release Liquidia is relying on to assert invalidity. *Id.* at 5-6. Given this lack of disclosure, UTC responds that the February 24, 2020 press release cited by Liquidia is not prior art to the '327 patent and thus cannot be relied on by Liquidia to establish invalidity.

exercise capacity, whether in Examples 1 and 2 (cited in Invalidity Contentions) or otherwise. The Court agrees. D.I. 96 at 10 ("Based on the record before me, the '793 patent does not teach administering inhaled treprostinil to specifically improve exercise capacity, nor does the disclosed data discuss improved exercise capacity."); *see also, e.g.*, ~~D.I. 66, Ex. 8 ("~~Channick Dep. Tr. (April 6, 2024~~)")~~ at 98:11-20, 177:4-178:19. Further, the '793 patent does not disclose the dosing regimen that is claimed by the methods of the '327 patent. Channick Dep. Tr. (April 6, 2024) 118:16 129:17. And the '793 patent does not disclose anything that would allow an individual to perform the claimed methods with the intentional purpose or expectation of improving exercise capacity, as required by claim 1 of the '327 patent. D.I. 28 (Nathan Decl.) at ¶¶ 165-66; D.I. 94, Ex. A at 1 (Liquidia agrees that the preamble of claim 1 is limiting); UTC's Opening Claim Construction Brief at ~~section~~ IV (same). Instead, the '327 patent discloses and claims a new and unknown method of use of inhaled treprostinil for a different purpose and in a new patient population. *See, e.g.*, *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1378-79 (Fed. Cir. 2005) (finding that a "new use" of a composition is not inherent and may be patentable).

The '793 patent's description of Examples 1 and 2 do not disclose the Asserted Claims' limitations either. Even if any of the patients in these Examples could be considered as having PH-ILD, which Liquidia has not proven, these Examples do not provide the POSA sufficient information to know whether any of the alleged PH-ILD patients received treprostinil at the doses required by any claim of the '327 patent or at all. '793 patent at 8:57-18:11; Channick Dep. Tr. (April 6, 2024) at 116:20 129:17.

Further, Liquidia asserts that hemodynamics are correlated with improved exercise capacity, but this position (a) contradicts Liquidia's prior expert testimony and Dr. Channick's prior statements and (b) ignores this Court's holding that the therapeutic effect claimed in the '793

patent was directed to hemodynamic improvements. *See* LeVarge, B. & Channick, R., *The Changing Paradigm in Pulmonary Hypertension Trials: Longer Duration, New Endpoints*, 21 Current Op. Pulmonary Med. 438, 443; Apr. 3, 2024 Transcript of PCMH Congress, *Managing Pulmonary Arterial Hypertension: Therapeutic Selection and Care Coordination* (September 14-16, 2018), https://www.youtube.com/watch?v=gmyeDbpolvM 16:1-11; Rebuttal Expert Report of Dr. Nicholas Hill, *United Therapeutics Corp. v. Liquidia Techs., Inc.*, No. 20-755, D.I. 234 (D. Del. Nov. 12, 2021) at ¶ 56; Channick Dep. Tr. (April 6, 2024) at 86:23-92:2; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 624 F. Supp. 3d 436, 461-62 (D. Del. 2022). Also, all experts in the present litigation agree that while patients may experience both hemodynamic improvements and improved exercise capacity, improved exercise capacity is far from guaranteed. D.I. 28 (Nathan Decl.) at ¶¶ 73-75, 193-94, 209; Channick Dep. Tr. (Apr. 6, 2024) at 90:22-23; Trial Transcript (Mar. 28, 2022), *United Therapeutics Corp. v. Liquidia Techs.*, Inc., No. 20-755, D.I. 402 (D. Del.) at 24:18-25:8. Moreover, the Court has already observed that:

Defendant's contention that Plaintiffs own experts have equated a positive hemodynamic effect with improvements in exercise capacity is unpersuasive. The exhibits Defendant relies on do not support Defendant's position. (*See* D.I. 53-1 at 356-57 of 561 (Ex. 11 ¶277), *id.* at 490-91 of 561 (Ex. 16 ¶¶60-61), *id.* at 498-500 of 561 (Ex. 17 ¶¶73-75), *id.* at 515-18 of 561 (Ex. 18 at 57:5-60:2), D.I. 53-2 at 456, 458, 462 of 482 (Ex. 37 at 40:12-14, 42:14-22, 152:1-8)). This evidence merely shows that depending on context, a therapeutically effective amount may be defined based on hemodynamic effects or based on improvements in exercise capacity. The record does not show that Plaintiff has equated the two.

D.I. 96 at 10.[4]

---

[4] D.I. 53-1 and D.I. 53-2 contain Liquidia's Exhibits 1-39 in support of its Answering Brief in

Liquidia's inherency arguments also fail because, as the experts agree and the Court has recognized (as noted above), improving hemodynamics or performing the methods in the '793 patent do not necessarily and inevitably cause improvements in exercise capacity (nor do they necessarily and inevitably cause the other limitations of the '327 patent (e.g., claims 2-10 and 17-19), such as improvements in NT-proBNP and clinical worsening, etc.). Moreover, Liquidia has not proven that "virtually all the designated recipients" of treprostinil under the '793 patent, including those who allegedly suffered from PH-ILD (which Liquidia has also not proven), would necessarily experience improved exercise capacity. *See Glaxo Grp. Ltd. v. Kali Labs., Inc.*, 2005 WL 1398507, at *4 (D.N.J. June 10, 2005). In fact, Dr. Channick admits that the method will not work for every PH-ILD patient. Channick Dep. Tr. (Apr. 6, 2024) at 95:2-25. The Court agrees, concluding that "Defendant has not shown that 'virtually all' patients who take treprostinil experience an improvement in exercise capacity." D.I. 96 at 11-12 (citing *Glaxo Grp.*, 2005 WL 1398507, at *3-4).

The '793 patent also fails to disclose "an effective amount of at least" and "up to a maximum tolerated dose." The '793 patent at most refers only to dose escalation studies that could yield a population dose estimate; it does not describe any doses as effective at improving exercise capacity in PH-ILD patients, nor does it describe titrating doses upward in individual patients until reaching an individual patient's maximum tolerated dose. *E.g.,* '793 patent at 12:35-38, 13:50-65, 14:48-57, 15:1-5, 15:42-16:18, 16:48-18:11, Table 3. Further, the INCREASE Study was not

Opposition to UTC's Motion for Preliminary Injunction. Specifically, Exhibit 11 is Joint PTO Ex. 2, UTC's Statement of Contested Facts in *United Therapeutics Corp. v. Liquidia Techs.*, C.A. No. 20-755 (RGA) ("Case 1"); Exhibit 16 is the excerpted Initial Expert Report of Dr. Andrew Clark in Case 1; Exhibit 17 is the excerpted Initial Expert Report of Dr. Aaron Waxman in Case 1; Exhibit 18 is the excerpted January 14, 2022 Deposition Transcript of Dr. Andrew Clark in Case 1; and Exhibit 37 is the Jan. 8, 2022 Deposition Transcript of Dr. Aaron Waxman in *Liquidia Techs., Inc. v. United Therapeutics Corp.*, No. IPR2021-00406.

14

conducted according to the '793 patent's disclosure at least for the reasons discussed above. Thus, the results achieved by the actual dosing regimen implemented in the INCREASE Study cannot be used to demonstrate that these results were the necessary or inevitable outcome of the '793 patent's disclosure.

The proposed dosing regimen described by the 2017 INCREASE Study Description is not taught by the '793 patent. The '793 patent at least fails to disclose dose titration and administering treprostinil to "patients with pulmonary hypertension associated with interstitial lung disease for approximately 16 weeks." The '793 patent also fails to disclose the complexion of the 2017 INCREASE Study cohort—the '793 patent merely contemplates humans suffering from the condition of pulmonary hypertension and subjects purportedly with pulmonary fibrosis and pulmonary hypertension. The proposed dosing regimen described by the 2017 INCREASE Study Description was also not the dosing regimen implemented in the INCREASE Study. *Compare, e.g.,* INCREASE Study Report, UTC_PH-ILD_010356 at UTC_PH-ILD_010382-383, *with* 2017 INCREASE Study Description, LIQ_PH-ILD_00000185 at LIQ_PH-ILD_00000193-194. Thus, the 2017 INCREASE Study Description is not evidence that the Asserted Claims are inherent, and the INCREASE Study results do not confirm that the proposed dosing regimen taught by the 2017 INCREASE Study Description necessarily and inevitably achieves the limitations required by the Asserted Claims.

The '793 patent also fails to disclose "a statistically significant increase of a 6 minutes walk distance" and "increas[ing] a 6 minutes walk distance of . . . at least 10 m" (claims 2-3), either expressly or inherently. The '793 patent also fails to disclose, expressly or inherently, the claimed improvements relating to NT-proBNP (claims 4-5), reduction in exacerbations of and clinical worsening events due to interstitial lung disease (claims 6-8), and improved ~~forced~~force vital

15

capacity ~~("FVC")~~ (claims 9-10). Each of these arguments also fail because Liquidia has not shown anticipation of the parent claims and because, for each of these claims, Liquidia cites the INCREASE Study results as reported in Waxman 2021. But Waxman 2021 does not predate the earliest provisional application to which the '327 patent claims priority and, consistent with the Court's findings (D.I. 96), the results in Waxman 2021 do not necessarily and inevitably follow for each patient administered treprostinil according to the methods claimed by the '327 patent.

The '793 patent also fails to disclose the limitations of claims 11 and 14-19 and the other dependent claims ~~at least~~ because Liquidia has not shown anticipation of the parent claims.

**B.    Liquidia fails to establish anticipation by the 2017 INCREASE Study Description**

The 2017 INCREASE Study Description does not anticipate the Asserted Claims. The examiner considered the 2017 INCREASE Study Description during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013100-105 (considering the 2017 INCREASE ~~Study Description~~study description on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). Among other reasons, the Asserted Claims require the purpose or expectation of improving exercise capacity, which cannot be achieved without data that supports the adoption of that purpose or expectation (as opposed to a mere hope). The 2017 INCREASE Study Description does not provide the ~~INCREASE~~ study's results or the specific limitations of the Asserted Claims. Moreover, the INCREASE Study and 2017 INCREASE Study Description procedures are not the same, so the INCREASE Study's results are not inherent in the 2017 INCREASE Study Description. *Compare_see, e.g.,* INCREASE Study Report at UTC_PH-ILD_010382-383~~,~~ *with* 2017 INCREASE Study Description at LIQ_PH-ILD_00000193-194. And the protocol used in the INCREASE Study did not necessarily and inevitably improve exercise capacity. D.I. 28 (Nathan

16

Decl.) ¶¶ 178–180. Thus, the proposed protocol in the 2017 INCREASE Study Description would not necessarily and inevitably improve exercise capacity, and this lack of inevitability is an example reason why *In re Montgomery*, 677 F.3d 1375 (Fed Cir. 2012),) is inapposite. The 2017 INCREASE Study Description also fails to teach "an effective amount" of inhaled treprostinil, as it does not and cannot disclose this limitation.

Because the 2017 INCREASE Study Description lacks disclosure of results, and its proposed dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain results, and the differences between the proposed dosing regimen described by the 2017 INCREASE Study Description and the INCREASE Study's protocol), the 2017 INCREASE Study Description does not anticipate dependent claims 2-10 or 17-19.

The 2017 INCREASE Study Description also fails to anticipate claims 11 and 14. Liquidia has asserted that it does not infringe claim 11 (and by extension claim 14) because, supposedly, "the two references [U.S. Patent App. Pub. 2019/0321290 and WO2019/237028] do not include any mention of a 'pulsed inhalation device' let alone the term 'pulsed.'" Liquidia Resp. to Interrogatory 1 (June 5, 2024) at 13-14. If the word "pulse" needs to be present, the 2017 INCREASE Study Description similarly fails to disclose the pulsed inhalation device required by claim 11 and thus fails to anticipate claims 11 and 14. Moreover, the 2017 INCREASE Study Description does not disclose the use of a dry powder inhaler to administer treprostinil to PH-ILD patients.

The 2017 INCREASE Study Description also fails to disclose the limitations of claims 15-16, and the other dependent claims, because it fails to anticipate their parent claims.

17

C.    **Liquidia fails to establish anticipation by the 2009 Tyvaso® Label**

The 2009 Tyvaso Label does not anticipate the Asserted Claims. The examiner considered the 2009 Tyvaso Label during prosecution of the '327 patent and allowed issuance of the Asserted Claims. UTC_PH-ILD_011016 at UTC_PH-ILD_013107 (considering the 2009 Tyvaso Label on February 27, 2023), UTC_PH-ILD_013123-128 (Notice of Allowance and Notice of Allowability). The 2009 Tyvaso Label contemplates information FDA requires to be included with UTC's Tyvaso product, which in 2009 was only approved for the following "Indications and Usage":

> Tyvaso is a prostacyclin vasodilator indicated for the treatment of pulmonary arterial hypertension (WHO Group I) in patients with NYHA Class III symptoms, to increase walk distance.

_UTC_PH-ILD_010692 ("2009 Tyvaso Label") at UTC_PH-ILD_010693. The 2009 Tyvaso Label is silent regarding PH-ILD, and thus necessarily fails to anticipate the Asserted Claims. Further, the 2009 Tyvaso Label's inadequacy as an anticipatory reference is clear from Defendant's repeated reference to documents outside the four corners of the 2009 Tyvaso Label.

The 2009 Tyvaso Label is silent regarding PH-ILD, and thus fails to expressly anticipate claim 1. The 2009 Tyvaso Label also fails to inherently anticipate claim 1, at least because it does not teach the INCREASE Study's dosing regimen. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* INCREASE Study Report at UTC_PH-ILD_010382-383. Additionally, the "DOSAGE AND ADMINISTRATION" sections of the 2009 Tyvaso Label and the 2021 Tyvaso Label or not the same. *Compare* 2009 Tyvaso Label at UTC_PH-ILD_010693-695, *with* 2021 Tyvaso Label at UTC_PH-ILD_010746. This lack of disclosure also demonstrates that the 2009 Tyvaso Label fails to teach an effective amount for improving exercise capacity in a PH-ILD patient.

18

Defendant's position regarding what doctors were allegedly doing with Tyvaso is irrelevant to analyzing the 2009 Tyvaso Label under 35 U.S.C. § 102, as are Liquidia's incorrect inferences and arguments premised upon Dr. Nathan's testimony regarding, allegedly, whether inhaled treprostinil treats the alleged PH or ILD components of PH-ILD. *See* Invalidity Contentions at 54.

Because the 2009 Tyvaso Label lacks disclosure of results for studies directed to assessment of treatment for PH-ILD, and its recommended dosing regimen would not necessarily and inevitably yield the limitations of the Asserted Claims (at least in view of the INCREASE Study, which shows that not all patients are guaranteed certain outcomes), the 2009 Tyvaso Label does not anticipate dependent claims 2-10 or 17-19.

The 2009 Tyvaso Label also fails to anticipate claims 11 and 15-19 and the other dependent claims at least because it fails to anticipate their parent claims.

### D.    Liquidia fails to establish anticipation by UTC's sale of Tyvaso®

UTC's sale of Tyvaso® does not anticipate any Asserted Claims. The Asserted Claims are all method claims. These methods were not on sale. The on-sale bar of 35 U.S.C. § 102 requires (1) that the claimed invention be "the subject of a commercial offer for sale" and (2) that the invention was "ready for patenting" at the time of the alleged sale. *BASF Corp. v. SNF Holding Co.*, 955 F.3d 958, 969 (Fed. Cir. 2020).

First, the invention of the '327 patent was not on sale before the priority date of the '327 patent. Each Asserted Claim is directed to a method of improving exercise capacity in a PH-ILD patient, and Liquidia offers no evidence that this method was on sale. Liquidia also cites *Scaltech Inc.*, but the court there held that the district court "must determine if the process offered for sale, in its normal use, inherently satisfies each claim limitation." *Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1384 (Fed. Cir. 1999) (vacating and remanding district court's ruling that patent was invalid under statutory "on sale" bar). As the Federal Circuit has made clear, a sale is not

19

invalidating unless the sale *requires* that a claimed method be used. *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1163 (Fed. Cir. 2006). Here, Tyvaso did not receive regulatory approval for the treatment of PH-ILD until after the priority date of the '327 patent. The applicable Tyvaso drug label at the time of Liquidia's alleged invalidating sales therefore did not—and indeed could not—instruct healthcare providers or patients to use the drug to improve exercise capacity in a patient with PH-ILD. As discussed above, the use of Tyvaso according to its label to treat PAH does not inherently anticipate any of the Asserted Claims. Further, Liquidia has not identified any individual sale of Tyvaso for use to improve exercise capacity in a patient with PH-ILD before the critical date, nor alleged sufficient facts to demonstrate that, even if such a sale had taken place, that the alleged sale practiced all the limitations of *any* Asserted Claim. Liquidia cannot provide invalidity by clear and convincing evidence because it has cited no evidence that sales of Tyvaso prior to the filing date of the '327 patent embody the Asserted Claims. Finally, Defendant's position regarding the on-sale bar rehashes many of the same arguments it made regarding the 2009 Tyvaso Label. UTC disagrees with those arguments for the same reasons set forth above. S*upra*, § I.C. Because Liquidia has not alleged sufficient facts to demonstrate that the claimed inventions of the '327 patent were "on sale" prior to the filing of the '327 patent the '327 patent cannot have been anticipated by prior sales of Tyvaso.

Second, the invention of the '327 patent was not "ready for patenting" prior to the filing of the '327 patent. ~~Liquidia's Invalidity Contentions cite to~~ *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998~~),~~) but the mere sale of Tyvaso and availability of its label does not show that the POSA "would be able to practice the invention" (Invalidity Contentions at 63). In *In re Omeprazole Pat. Litig.*, 536 F.3d 1361, 1373-74 (Fed. Cir. 2008), the Federal Circuit affirmed a determination that an invention was not "ready for patenting" because the inventors had not yet "determined that the

20